# EXHIBIT C

# EXHIBIT C

## FLOW LPA REPRESENTATIONS AND WARRANTIES

Freedom Mortgage Corp. ...................................................................................................................2

Deutsche Bank, AG (as successor to Mortgage It, Inc. d/b/a MIT Lending) ..................................6

Greenpoint Mortgage Funding, Inc. .................................................................................................8

HSBC Mortgage Services Inc. ........................................................................................................10

**Freedom Mortgage Corp.**

Mortgage Loan Purchase Agreement made by and between Lehman Brothers Bank, FSB, ("LBB") and Freedom Mortgage Corporation ("Freedom"), dated as of July 9, 2004, and the June 1, 2006 Flow Mortgage Loan Purchase and Warranties Agreement made by and between LBB and Freedom and the Purchase Price and Terms Letters dated as of November 3, 2006, December 15, 2006, December 27, 2006, and January 9, 2007 and the Side Letter Agreement dated October 18, 2006.

**Section 7.  Representations and Warranties Regarding Individual Mortgage Loans.**

(a) <u>Mortgage Loans as Described</u>. The information set forth in the related Mortgage Loan Schedule is complete, true and correct;

(k) <u>Validity of Mortgage Documents</u>. The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.  With respect to each Cooperative Loan, the Mortgage Note, the Mortgage, the Pledge Agreement, and related documents are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Mortgage Note, the Mortgage, the Pledge Agreement, the Proprietary Lease, the Stock Power, Recognition Agreement and the Assignment of Proprietary Lease had legal capacity to enter into the Mortgage Loan and to execute and deliver such documents, and such documents have been duly and properly executed by such parties;

(u) <u>Conformance with Underwriting Guidelines; Underwriting Methodology</u>.  Each Mortgage Loan fully conforms to all underwriting guidelines and other requirements of Fannie Mae and Freddie Mac other than with respect to the original principal amount.  The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time the Mortgage Loan was originated. The Mortgage Note and Mortgage are on forms acceptable to participants in the secondary mortgage market for similar types of Mortgage Loans.  The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension.  Such

2

| |
|---|
| underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan; |
| (z) <u>Acceptable Investment</u>. The Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor, the Mortgage File or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan, or cause the Mortgage Loans to prepay during any period materially faster or slower than the mortgage loans originated by the Seller generally; |
| (aaa) <u>Origination Practices</u>.  No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person including without limitation the Seller, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan; no predatory or deceptive lending practices or deceptive trade practices, including, without limitation, the extension of credit without regard to the ability of the borrower to repay and the extension of credit which has no apparent benefit to the borrower, were employed in the origination of the Mortgage Loan.  No Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at any time within 2 months prior to the origination of the Mortgage Loan, nor has any Mortgagor had a foreclosure proceeding commenced against such Mortgagor within 2 months prior to origination of the Mortgage Loan; |
| **Section 9.  Indemnification.** |
| The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to (i) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the related Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, (ii) any assertion based on, grounded upon, or resulting from a Breach of any of the Seller's representations and warranties contained herein, (iii) the Seller's inability to effect or cause the transfer of the servicing to a successor servicer and (iv) the failure of the Seller to perform in any way its duties and service the Mortgage Loans in strict compliance with the terms of this Agreement or the Interim Servicing Agreement.  The Seller shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, assume (with the consent of the Purchaser and with counsel reasonably satisfactory to the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim but failure to so notify the Purchaser shall not limit its obligations hereunder.  The Seller agrees that it will not enter into any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim. In addition to the obligations of the Seller set forth in this |

3

Section 9, the Purchaser may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages. The provisions of this Section 9 shall survive termination of this Agreement.

    (i)    Notwithstanding anything else in this Agreement to the contrary, the Seller shall indemnify the Purchaser, each affiliate of the Purchaser, and each of the following parties participating in a Securitization Transaction: each sponsor and issuing entity; each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction; each broker dealer acting as underwriter, placement agent or initial purchaser, each Person who controls any of such parties or the Depositor (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act); and the respective present and former directors, officers, employees and agents of each of the foregoing and of the Depositor, and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon:

    (A)    (1)    any untrue statement of a material fact contained or alleged to be contained in any information, report, accountants' letter or other material provided under this Agreement by or on behalf of the Seller, or provided in written or electronic form under this Agreement by or on behalf of any Third-Party Originator (collectively, the "Seller Information"), or (2) the omission or alleged omission to state in the Seller Information a material fact required to be stated in the Seller Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; *provided, by way of clarification,* that clause (2) of this paragraph shall be construed solely by reference to the Seller Information and not to any other information communicated in connection with a sale or purchase of securities, without regard to whether the Seller Information or any portion thereof is presented together with or separately from such other information;

    (B)    any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Agreement; or

    (C)    any breach by the Seller of a representation or warranty set forth in Section 6(B)(i) or in a writing furnished pursuant to Section 6(B)(ii) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Section 6(B)(ii) to the extent made as of a date subsequent to such closing date.

    In the case of any failure of performance described in clause (B) of this Section 9(i), the Seller shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction for all costs reasonably incurred

4

by each such party in order to obtain the information, report, accountants' letter or other material not delivered as required by the Seller or any Third-Party Originator.

    (ii)    (A)    Any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Agreement, or any breach by the Seller of a representation or warranty set forth in Section 6(B)(i) or in a writing furnished pursuant to Section 6(B)(ii) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Section 6(B)(ii) to the extent made as of a date subsequent to such closing date, shall immediately and automatically, without notice or grace period, constitute an Event of Default with respect to the Seller under the Interim Servicing Agreement, and shall entitle the Purchaser or Depositor, as applicable, in its sole discretion to terminate the rights and obligations of the Seller as servicer under the Interim Servicing Agreement without payment (notwithstanding anything in this Agreement or the Interim Servicing Agreement to the contrary) of any compensation to the Seller; *provided* that to the extent that any provision of the Interim Servicing Agreement expressly provides for the survival of certain rights or obligations following termination of the Seller as servicer, such provision shall be given effect.

    (B)    The Seller shall promptly reimburse the Purchaser (or any designee of the Purchaser, such as a master servicer) and any Depositor, as applicable, for all reasonable expenses incurred by the Purchaser (or such designee) or such Depositor as such are incurred, in connection with the termination of the Seller as servicer under the Interim Servicing Agreement and the transfer of servicing of the Mortgage Loans to a successor servicer. The provisions of this paragraph shall not limit whatever rights the Purchaser or any Depositor may have under other provisions of this Agreement, the Interim Servicing Agreement or otherwise, whether in equity or at law, such as an action for damages, specific performance or injunctive relief.

5

**Deutsche Bank, AG (as successor to Mortgage It, Inc. d/b/a MIT Lending)**

| |
|---|
| Mortgage Loan Purchase Agreement made by and between LBB and [Deutsche Bank, AG, as successor to] Mortgage It, Inc. d/b/a MIT Lending, dated as of December 31, 2003, and the January 1, 2004 Flow Mortgage Loan Purchase and Warranties Agreement made by and between LBB and MortgageIT, and (ii) the Purchase Price and Terms Letters dated as of November 10, 2006, November 16, 2006, December 7, 2006, and February 15, 2007 |

| |
|---|
| **Section 7.  Representations and Warranties regarding Individual Mortgage Loans** |
| (k) <u>Validity of Mortgage Documents.</u>  The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms.  All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and another related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties.  The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  No fraud was committed in connection with the origination of the Mortgage Loan.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. |
| (v) <u>Conformance with Underwriting Guidelines</u>. The Mortgage Loan was underwritten substantially in accordance with the Seller's underwriting guidelines in effect at the time the Mortgage Loan was originated, a copy of which underwriting guidelines are attached as <u>Exhibit H</u> hereto. The Mortgage Loan is in conformity with the standards of Freddie Mac or Fannie Mae under one of their respective home mortgage purchase programs (except that the principal balance of certain Mortgage Loans may have exceeded the limits of Fannie Mae and Freddie Mac) and the Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae; |
| (z) <u>Acceptable Investment</u>. The Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan; |
| (yy) <u>Origination</u>. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan; no predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of |

| |
|---|
| credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Mortgage Loan. |
| (ggg) <u>Underwriting Methodology</u>.  The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension.  Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan |

| |
|---|
| **Section 9.  Indemnification.** |
| The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to (i) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the related Servicing Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, (ii) any assertion based on, grounded upon resulting from a Breach of any of the Seller's representations and warranties contained herein, (iii) the Seller's inability to effect or cause the transfer of the servicing to a successor servicer and (iv) the failure of the Seller to perform in any way its duties and service the Mortgage Loans in strict compliance with the terms of this Agreement or the Interim Servicing Agreement. The Seller shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, assume (with the consent of the Purchaser and with counsel reasonably satisfactory to the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim but failure to so notify the Purchaser shall not limit its obligations hereunder. The Seller agrees that it will not enter into any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim. In addition to the obligations of the Seller set forth in this Section 9, the Purchaser may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages. The provisions of this Section 9 shall survive termination of this Agreement. |

**Greenpoint Mortgage Funding, Inc.**

December 21, 2001 Flow Mortgage Loan Purchase and Warranties Agreement, Conventional Residential Fixed and Adjustable Rate Mortgage Loans, Group 2001, amended as of March 14, 2003, and December 2, 2005; the December 12, 2001 Flow Interim Servicing Agreement, Conventional Residential Fixed and Adjustable Rate Mortgage Loans, Group 2001, amended as of March 14, 2003, and December 2, 2005; the February 1, 2007 Amended and Restated Flow Mortgage Loan Purchase and Warranties Agreement; the February 1, 2007 Amended and Restated Flow Interim Servicing Agreement, and the Purchase Price and Terms Letters dated as of June 6, 2005; November 17, 2005; November 30, 2005; April 21 2006; and January 3, 2007

**Section 7. Representations and Warranties Regarding Individual Mortgage Loans.**

(a) <u>Mortgage Loans as Described</u>. The information set forth in the related Mortgage Loan Schedule is complete, true and correct;

(k) <u>Validity of Mortgage Documents</u>. The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein;

(q) <u>No Defaults</u>. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Seller nor its predecessors have waived any default, breach, violation or event of acceleration. With respect to each Second Lien Mortgage Loan, (i) the prior mortgage is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such prior mortgage or the related mortgage note, (iii) no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, and either (A) the prior mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the Second Lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure any default by payment in full or otherwise under the prior mortgage;

8

(v) <u>Conformance with Underwriting Guidelines</u>. The Mortgage Loan was underwritten in accordance with the related Seller's Underwriting Guidelines. The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae;

(z) <u>Acceptable Investment</u>. The Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan;

(aa) <u>Delivery of Mortgage Documents</u>. The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered by the Seller under this Agreement have been delivered to the Purchaser or the Custodian. The Seller is in possession of a complete, true and accurate Mortgage File in compliance with <u>Exhibit B</u>, except for such documents the originals of which have been delivered to the Purchaser or the Custodian;

(mm) <u>No Denial of Insurance</u>. The Seller has caused or will cause to be performed any and all acts required to preserve the rights and remedies of the Purchaser in any insurance policies applicable to the Mortgage Loans including, without limitation, any necessary notifications of insurers, assignments of policies or interests therein, and establishments of coinsured, joint loss payee and mortgagee rights in favor of the Purchaser. No action, inaction, or event has occurred and no state of fact exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance;

(nn) <u>Origination</u>. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan; no predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Mortgage Loan.

**Section 9. Indemnification.**

The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to (i) any act or omission on the part of the Seller or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the

related Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, (ii) any assertion based on, grounded upon resulting from a Breach of any of the Seller's representations and warranties contained herein, (iii) the Seller's inability to effect or cause the transfer of the servicing to a successor servicer and (iv) the failure of the Seller to perform in any way its duties and service the Mortgage Loans in strict compliance with the terms of this Agreement or the Flow Interim Servicing Agreement. The Seller shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, assume (with the consent of the Purchaser and with counsel reasonably satisfactory to the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim but failure to so notify the Purchaser shall not limit its obligations hereunder. The Seller agrees that it will not enter into any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim. In addition to the obligations of the Seller set forth in this Section 9, the Purchaser may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages. The provisions of this Section 9 shall survive termination of this Agreement.

## HSBC Mortgage Services Inc.

Mortgage Loan Purchase, Warranties and Interim Servicing Agreement made by and between LBB and HSBC Mortgage Services Inc., dated as of June 28, 2007 and the Purchase Price and Terms Letter, dated as of May 24, 2007

**Section 7. Representations and Warranties Regarding Individual Mortgage Loans.**

(a) <u>Mortgage Loans as Described</u>. The information set forth in the Mortgage Loan Schedule is complete, true and correct;

(k) <u>Validity of Mortgage Documents</u>. The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan.

| |
|---|
| With respect to each Cooperative Loan, the Mortgage Note, the Mortgage, the Pledge Agreement, and related documents are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note, the Mortgage, the Pledge Agreement, the Proprietary Lease, the Stock Power, Recognition Agreement and the Assignment of Proprietary Lease had legal capacity to enter into the Mortgage Loan and to execute and deliver such documents, and such documents have been duly and properly executed by such parties; |
| (p) <u>No Defaults</u>. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and, as of the Closing Date and Transfer Date, the Seller has not waived any default, breach, violation or event of acceleration, except in accordance with Accepted Servicing Practices; |
| (u) <u>Conformance with Underwriting Guidelines; Underwriting Methodology</u>. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time the Mortgage Loan was originated or acquired by the Seller or an Affiliate. Notwithstanding the foregoing, no Mortgage Loan for which there is no credit report or credit score in the Mortgage File was underwritten without verification of the Mortgagor's income and assets. The Mortgage Note and Mortgage are on forms acceptable to participants in the secondary mortgage market for similar types of Mortgage Loans. The methodology used in underwriting the extension of credit for each Mortgage Loan does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan; |
| (x) <u>Loan-to-Value Ratio; Combined Loan-to-Value Ratio</u>. As of the date of origination, no Mortgage Loan had an LTV or a CLTV of greater than 100%; |
| (z) <u>Acceptable Investment</u>. Other than with respect to the fact that the Mortgage Loans may be classified as "subprime" or other similar classification, the Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor, the Mortgage File or the Mortgagor's credit standing that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan; |
| (aa) <u>Delivery of Mortgage Documents</u>. The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered by the Seller on or prior to the Closing Date pursuant to this Agreement have been delivered to the Purchaser or its designee; |
| (jj) <u>Appraisal</u>. The Mortgage File contains (i) an appraisal of the related Mortgaged Property made and signed prior to the approval of the Mortgage Loan application by a Qualified Appraiser, for which the Appraised Value is a reasonably accurate reflection of the value of the Mortgaged Property, taking into account relevant characteristics and amenities of the related |

11

Mortgaged Property and the surrounding neighborhood or (ii) with respect to those Mortgage Loans specifically identified on the Mortgage Loan Schedule, a statistical model used to estimate the value of the Mortgaged Property that is an accurate reflection of the value of the Mortgaged Property;

(nn) <u>Insurance</u>. No action, inaction, or event has occurred and no state of fact exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable pool insurance policy, special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance;

(xx) <u>Origination Practices</u>. No error, omission, negligence, misrepresentation or fraud with respect to a Mortgage Loan has taken place on the part of any person involved in the origination of the Mortgage Loans. To the best of Seller's knowledge, for loans originated after January 1, 2005, (i) at the time of origination no Mortgagor was encouraged or required by the originator to select a mortgage loan product with a higher cost than other mortgage loan products offered by the originator for which the Mortgagor was qualified, taking into account the Mortgagor's credit qualifications and purpose for obtaining the Mortgage Loan and (ii) with respect to any Mortgage Loan that contains a provision permitting imposition of a premium upon a prepayment prior to maturity, (a) the Mortgage Loan provides some benefit to the Mortgagor (for example but without limitation, a rate or fee reduction) associated with such prepayment penalty or (b) the Mortgagor was offered the option of obtaining a mortgage loan that did not require payment of such a premium;

### Section 9. Indemnification

The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser reasonably sustains arising out of or in connection with (i) any act or omission on the part any person or entity in the origination, processing, funding, servicing or the transfer of servicing of any Mortgage Loan prior to the related Transfer Date and (ii) the failure of the Seller to perform its duties and service and administer the Mortgage Loans in compliance with the terms of this Agreement. Notwithstanding the foregoing and for purposes of clarification, as set forth in Section 8, the obligations of the Seller set forth therein to cure or repurchase a defective Mortgage Loan and to indemnify the Purchaser as provided therein constitute the sole remedies of the Purchaser respecting a breach of the representations and warranties set forth in Section 6 and Section 7 of this Agreement. The Seller shall immediately notify the Purchaser if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, assume (with the consent of the Purchaser and with counsel reasonably satisfactory to the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim but failure to so notify the Purchaser shall not limit its obligations hereunder. The Seller agrees that it will not enter into

any settlement of any such claim without the consent of the Purchaser unless such settlement includes an unconditional release of the Purchaser from all liability that is the subject matter of such claim. The Purchaser shall promptly notify the Seller if a claim is made by a third party with respect to this Agreement or the Mortgage Loans, but failure to so notify the Seller shall not limit its obligations hereunder unless such failure or delay has materially prejudiced the Seller. The Seller shall be entitled to participate in the defense of any such claim and shall pay all expenses in connection therewith, including reasonable counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. In addition to the obligations of the Seller set forth in this Section 9, the Purchaser may pursue any and all remedies otherwise available at law or in equity, including, but not limited to, without duplication, the right to seek damages. The provisions of this Section 9 shall survive termination of this Agreement.

i.Notwithstanding anything else in this Agreement to the contrary, the Seller shall indemnify the Purchaser, each affiliate of the Purchaser, and each of the following parties participating in a Securitization Transaction: each sponsor and issuing entity; each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction; each broker dealer acting as underwriter, placement agent or initial purchaser, each Person who controls any of such parties or the Depositor (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act); and the respective present and former directors, officers, employees and agents of each of the foregoing and of the Depositor, and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon:

    A.    (1) any untrue statement of a material fact contained or alleged to be contained in any information, report, accountants' letter or other material provided pursuant to Section 27 of this Agreement by or on behalf of the Seller, or provided in written or electronic form under this Agreement by or on behalf of any Third-Party Originator (collectively, the "Seller Information"), or (2) the omission or alleged omission to state in the Seller Information a material fact required to be stated in the Seller Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; *provided, by way of clarification,* that clause (2) of this paragraph shall be construed solely by reference to the Seller Information and not to any other information communicated in connection with a sale or purchase of securities, without regard to whether the Seller Information or any portion thereof is presented together with or separately from such other information; or

    B.    any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Agreement.

    In the case of any failure of performance described in clause (B) of this Section 9(i), the Seller shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with

13

the Commission with respect to such Securitization Transaction for all costs reasonably incurred by each such party in order to obtain the information, report, accountants' letter or other material not delivered as required by the Seller or any Third-Party Originator.

ii.A.Any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Agreement, to the extent that such breach is not cured by the closing date of the related Securitization Transaction, shall entitle the Purchaser or Depositor, as applicable, in its sole discretion to terminate the rights and obligations of the Seller as servicer under this Agreement without payment of any compensation to the Seller; *provided* that to the extent that any provision of this Agreement expressly provides for the survival of certain rights or obligations following termination of the Seller as servicer, such provision shall be given effect.

B.The Seller shall promptly reimburse the Purchaser (or any designee of the Purchaser, such as a master servicer) and any Depositor, as applicable, for all reasonable expenses incurred by the Purchaser (or such designee) or such Depositor as such are incurred, in connection with the termination under Section 9(ii)(A) of the Seller as servicer under this Agreement and the transfer of servicing of the Mortgage Loans to a successor servicer.  The provisions of this paragraph shall not limit whatever rights the Purchaser or any Depositor may have under other provisions of this Agreement, whether in equity or at law, such as an action for damages, specific performance or injunctive relief.