Joel L. Incorvaia (Pro Hac Vice)
G. Ehrich Lenz (Pro Hac Vice)
INCORVAIA & ASSOCIATES
1947 Camino Vida Roble, Suite 230
Carlsbad, CA 92008
(858) 259-2220
FAX (858) 259-3131
Joel@Incorlaw.com
Ehrich@Incorlaw.com

Attorneys for GUILD MORTGAGE COMPANY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC.,<br><br>Plaintiff,<br><br>- against-<br><br>GUILD MORTGAGE COMPANY,<br><br>Defendant, | Adv. Pro. No. 17-01001-SCC |

**GUILD MORTGAGE COMPANY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS INDIVIDUAL MOTION TO TRANSFER VENUE**

TABLE OF CONTENTS

I.   INTRODUCTION ........................................................ 1

II.  FACTUAL SUMMARY ................................................ 2

     A.   The Representations and Warranties Applicable to the Guild

          Brokered Loans Under the Broker Agreement ............................. 3

     B.   The Representations and Warranties Applicable to the Liberty

          Loans Under the Loan Purchase Agreement ............................. 4

     C.   The Broker Agreement Contains a Forum Selection Clause While

          the LPA Does Not ................................................... 4

     D.   The Facts and Circumstances Regarding the Mortgage Loans

          at Issue in the Complaint .......................................... 5

          1.   The Guild Loans ............................................. 5

          2.   The Liberty Loans ........................................... 6

III. IN FURTHERANCE OF GUILD'S MOTION TO TRANSFER, THIS COURT

     MUST SEVER THE CLAIMS RELATED TO THE LIBERTY LOANS FROM

     THE GUILD LOANS BECAUSE THEY DO NOT INVOLVE COMMON

     QUESTIONS OR FACT OR LAW AND TO AVOID PREJUDICE ................... 7

IV.  VENUE IS PROPER AND THIS CASE COULD HAVE BEEN BROUGHT

     IN THE DISTRICT OF ARIZONA, THE WESTERN DISTRICT FOR THE

     STATE OF WASHINGTON OR THE SOUTHERN DISTRICT OF

     CALIFORNIA ......................................................... 9

V.   FOR CONVENIENCE OF THE PARTIES AND IN THE INTEREST OF

     JUSTICE, THIS ADVERSARIAL ACTION MUST BE TRANSFERRED ............... 10

i

A.      The Convenience of Party and Non-Party Witnesses .......................... 10

B.      The Location of Documents and Ease of Access to Sources

        of Proof  ......................................................... 11

C.      The Locus of Operative Facts ......................................... 12

D.      Litigating in the Present Forum will Substantially Burden Guild .............. 13

E.      Trial Efficiency and the Interests of Justice .............................. 13

VI.   THE FORUM SELECTION CLAUSE CONTAINED IN THE BROKER

      AGREEMENT DOES NOT APPLY TO THE LIBERTY LOANS AND IT

      WOULD BE UNJUST TO ENFORCE IT AGAINST GUILD......................... 14

ii

TABLE OF AUTHORITIES

CASES

Billing v. Commerce One, Inc. (S.D.N.Y. 2002) 186 F.Supp.2d 375, 378.) ............... 12

Erausquin v. Notz, Stucki Mgmt.(S.D.N.Y 2011) 806 F.Supp.2d 712, 720) ............... 7

Fteja v. Facebook, Inc. (SDNY 2012) 841 F. Supp.2d 829, 842 ......................... 12

In re Rolls Royce Corp. (2014) 775 F.3d 671 ...................................... 14

MBC Financial Services v. Boston Merch. Fin. LLC (S.D.N.Y. 2016) 2016 US Dist. LEXIS

140195, at *6) ................................................................ 15

Pence v. Gee Group, Inc. (SDNY 2017) 2017 WL 629470 ) ........................... 12

Phillips v .Roane County (In re Zyprexia Prods. Liab. Litigation) (E.D.N.Y. 2004) 2004 U.S.

Dist. LEXIS 24541, at *6 ................................................... 7


STATUTES

Federal Rules of Civil Procedure Rule 21 ........................................... 7

28 USC §1391(b) .................................................................. 9

28 USC §1391(b)(1-3) ............................................................. 9

28 USC §1391(b)(2) ............................................................... 10

## I.

### INTRODUCTION

In this action, Plaintiff, Lehman Brothers Holdings, Inc. ("LBHI"), has combined two distinctly separate categories of claims against Guild. One involves two mortgage loans that Guild originated and brokered to Lehman Brother's Bank ("LBB") under a written Broker Agreement (the "Guild Loans"). The other category is based upon LBHI's allegation that Guild has liability as the successor in interest to Liberty Financial Group, Inc. ("Liberty"). Liberty is a now dissolved mortgage lender based in Washington state, that originated, funded and sold three mortgage loans (the "Liberty Loans") to LBB under a written Loan Purchase Agreement (the "LPA").[1] The result of LBHI's improvident joinder of two distinctly different classes of claims is that key witnesses, documents, and the locus of events related to the underlying subject mortgage loans all occurred in diverse areas of the western United States. Accordingly, it is impossible to have one venue in which most key witnesses would be subject to compulsory process. Indeed, key witnesses to the underlying issues involved in the complaint reside in that states of Arizona, Nevada, Washington, Alaska, and California.

In addition, because the underlying contracts (the Broker Agreement and the LPA) imposed different rights and obligations upon Guild and Liberty, a joint trial of the claims related to the Guild Loans and the successor liability/Liberty Loans claims would certainly lead to jury confusion, and would prejudice Guild's ability to defend itself.

---

[1] Guild disputes that it has any liability to LBHI based upon the Liberty Loans and there is no factual or legal basis to support the imposition of successor liability on Guild under any legal theory. Guild did purchase certain limited assets of Liberty. However, under the asset purchase agreement with Guild, Liberty retained liability for any claims arising out of the Liberty Loans. After the completion of court ordered discovery regarding successor liability issues, Guild will bring a motion for summary judgment regarding this issue.

For these reasons, Guild requests that the court sever LBHI's claims related to the Guild Loans from those related to the Liberty Loans. Guild requests that the court transfer LBHI's claims related to the Guild Loans to the District Court of Arizona, where a majority of the critical witnesses– loan officers, borrowers, and employers reside. Guild respectfully requests that the court transfer LBHI's claims regarding the Liberty Loans to the District Court for the Western District of Washington–the state in which Liberty resides, and where all of the Liberty Loans were sold to LBB and where a number of key witnesses are located.

If the court is not inclined to sever the claims related to the Liberty Loans from those related to the Guild Loans, Guild requests that the court transfer this action to the District Court for the Western District of Washington. The state law of Washington applies to LBHI's successor liability claim against Guild based upon the Liberty Loans. Therefore, venue in the state of Washington is more appropriate because the District Court sitting in Washington has more familiarity with Washington law and many key witnesses live in that state.

## II.

### FACTUAL SUMMARY

LBHI's complaint alleges that Guild breached the indemnification provisions of a "Broker Agreement" between Guild and LBB when it refused to indemnify LBHI (as LBB's purported assignee) for losses arising from alleged borrower misrepresentations regarding the Guild Loans. In addition, LBHI's complaint seeks to hold Guild liable as the "successor in interest" to Liberty for the Liberty Loans pursuant to the terms of the LPA between Liberty and LBB. Significantly, Guild has **not** been determined to be the successor in interest to Liberty. Accordingly, there is no binding agreement for contractual indemnity between Guild and LBB (or LBHI) concerning the Liberty

2

Loans.    Moreover, as described below, the Broker Agreement and the LPA impose distinctly different contractual duties upon Guild and Liberty, respectively.

Guild is a California corporation with its principal place of business located in San Diego, California. (Schmidt Dec. ¶1)  LBB and LHBI are residents of Delaware.  Guild has never done business in the State of New York and has no contacts with the state of New York other than being named as a defendant in this action. (Schmidt Dec.¶ 8)  Liberty is a now dissolved Washington corporation which had its principal place of business in the state of Washington. (Schmidt ¶1)

A.    The Representations and Warranties Applicable to the Guild Brokered Loans Under the Broker Agreement.

Under the Broker Agreement, LBB assumed full responsibility for underwriting the loan applications submitted by Guild to ensure that they met the lender's criteria.  Paragraph 3 of the Broker Agreement states in relevant part as follows:

> **3.    Underwriting.  Loan underwriting approval decisions shall be made by Lender, in Lender's sole discretion, in accordance with Lender's approval criteria then in effect.  Lender's underwriting determination will be conclusive. . . .**
> (Schmidt Dec.¶3; Exhibit "B")

Section 8 of the Broker Agreement obligated Guild to make a "diligent inquiry" into the facts and circumstances of the loan.  Further, Guild represented to LBB that, to Guild's knowledge, the loan applications it submitted did not contain any misrepresentations or false or misleading statements. (Broker Agreement, §8(g)) Guild further represented that it had "no knowledge of nor any reason to know" of any fraudulent information or documentation used in the loan application packages submitted to Lehman. (Id.) Guild also represented that it complied with all terms, conditions and requirements of the "Lender's Guidelines and this Agreement" in originating each loan. (Broker Agreement, §8(k))

3

Accordingly, as to the Guild Loans, LBHI has the burden of proving (if in fact it is a proper

assignee of the Broker Agreement), that Guild had actual knowledge, or at least "a reason to know"

that the loan applications for the Guild Loans contained misrepresentations of fact in order to hold

Guild liable for indemnification. Further, because LBB was solely responsible for underwriting the

Guild Loans, merely pointing to facts showing that the borrower's application did not meet the

Lender Guidelines will be insufficient to meet LBHI's burden.

     B.    The Representations and Warranties Applicable to the Liberty Loans under the Loan Purchase Agreement.

Under the LPA, Liberty broadly warranted that the information contained in the loan

applications for the Liberty Loans was "true, correct and complete." (Schmidt Dec. ¶4; Exhibit "C")

The LPA also incorporates the representations and warranties under the Sellers Guide (including

section 703) into the LPA. Under the LPA, Liberty warranted that all the Liberty Loans were

underwritten (by Liberty) in accordance with the Underwriting Guidelines. Unlike the Broker

Agreement, the LPA contains broad language under which Liberty warranted the accuracy of the

information regarding the Liberty Loans and Liberty's compliance with underwriting requirements,

regardless of whether the breach of any such warranty was the result of negligent or intentional

conduct by Liberty. (Schmidt Dec. ¶4 Exhibits "C" and "D")

     C.    The Broker Agreement Contains a Forum Selection Clause While the LPA Does Not.

The Broker Agreement contains a choice of law provision requiring the application of New

York law to determine the rights and obligations of the parties under the Broker Agreement.

The Broker Agreement also required Guild to consent to jurisdiction and venue for disputes

concerning the Broker Agreement in New York. (Schmidt Dec. ¶3; Exhibit "B" par. 23)

4

The LPA contains a choice of law provision requiring the application of New York law. The LPA does **not** have a choice of jurisdiction or venue provision. (Schmidt Dec. ¶4; Exhibit "C" section 8)

      D.      <u>The Facts and Circumstances Regarding the Mortgage Loans at Issue in the Complaint</u>.

            1.      <u>The Guild Loans</u>.

The borrowers for the Guild Loans were Joshua Jones and Juanita F. Sanchez. The Jones Loan was a refinance loan on a second home located in Cave Creek, Arizona. The borrower in the Jones Loan was employed by a law firm and resided in San Diego, California. The loan officer in the Jones Loan was Travis Schmidt, who resides in Phoenix, Arizona. (Schmidt Dec. ¶5) LBHI alleges that the Jones Loan contained misrepresentations regarding the borrower's income and employment. (Schmidt Dec. ¶5; Exhibit "A" and Exhibits "B" and "C" to Complaint)

The Sanchez Loan was for the purchase of a home in Florence, Arizona by a borrower who resides in Phoenix, Arizona Cheyne Jones, the loan officer for the Sanchez Loan, resides in Phoenix, Arizona. (Schmidt Dec. ¶6) LBHI alleges that the Sanchez Loan contained misrepresentations regarding the borrower's income and employment. (Schmidt Dec. ¶6; Complaint Exhibits "B" and "C") The Guild Loans were all processed out of Guild's corporate office in San Diego, California. (Schmidt Dec. ¶6) The loan officers for the Guild Loans are no longer employed by Guild but are employed as loan officers for other lenders in the Phoenix, Arizona area. (Schmidt Dec. ¶5, ¶6) As described above, under the Broker Agreement, LBB was solely responsible for underwriting all loan applications for the Guild Loans, and had <u>complete discretion</u> as to whether or not to fund the loans. (Schmidt Dec. ¶3, Exhibit "B")

5

Thus, even if Guild breached the representations and warranties contained in the Broker Agreement, those breaches were committed by the respective loan officers at the time the Guild Loans were originated in Arizona, or when the loans were processed in San Diego, California. Finally, the decision made by Guild to refuse to indemnify LBHI for the Guild Brokered Loans, was made by Guild's executives in San Diego, California.  (Schmidt Dec. ¶2 )

       2.    The Liberty Loans.

The Liberty Loans were all processed by Liberty (a Washington corporation) prior to Guild's acquisition of certain assets of Liberty. (Schmidt Dec. ¶9)  However, the Liberty Loans involved borrowers and real property located in several different states in the western United States. The Liberty Loans borrowers were Brian Bement, Gloria Ramirez, and Richard Root.  The borrower in the Bement Loan resided in Issaquah, Washington and he obtained a loan for the purchase of a second home located in Scottsdale, Arizona.  LBHI alleges that the Bement Loan contained misrepresentations regarding the borrower's debts, income, employment and occupancy.  (Schmidt Dec. ¶7)  The loan officer for the Bement Loan was Janae Smith, who resides in Kirkland, Washington. (Schmidt Dec. ¶7; Exhibit "G")  Ms. Smith is not employed by Guild.

The Ramirez Loan involves a borrower residing in Las Vegas, Nevada, who purchased a home (as a primary residence) in Las Vegas, Nevada.  (Schmidt Dec. ¶7)  LBHI alleges that the Ramirez Loan contained  misrepresentations regarding occupancy, income and employment of the borrower.  The loan officer for the Ramirez Loan was Ruben Mendez, whose whereabouts are currently unknown.

The Root Loan involves a borrower residing in Anchorage, Alaska who  purchased an investment property in Fairbanks, Alaska. (Schmidt Dec. ¶7) LBHI alleges that the Root Loan

6

contained misrepresentations regarding the borrower's debts. The loan officer on the Root Loan was Jeff Hase, who resides in Anchorage, Alaska. Mr. Hase is not employed by Guild. As noted above, the loan officers for the Liberty Loans all processed and funded the loans out of the Liberty office in Bellevue, Washington. (Schmidt Dec. ¶7; Exhibit "H")

Accordingly, to the extent that Liberty breached the representations and warranties contained in the LPA, those breaches occurred in either the states where the Liberty Loans were originated (Washington, Nevada, or Alaska) or in the state of Washington, the location of Liberty's primary place of business and where the loans were sold to LBB.

### III.

**IN FURTHERANCE OF GUILD'S MOTION TO TRANSFER, THIS COURT MUST SEVER THE CLAIMS RELATED TO THE LIBERTY LOANS FROM THE GUILD LOANS BECAUSE THEY DO NOT INVOLVE COMMON QUESTIONS OR FACT OR LAW AND TO AVOID PREJUDICE.**

Rule 21 of the Federal Rules of Civil Procedure provides that the court may, "upon motion or on its own" sever any claims against a party. (FRCP Rule 21) In considering whether to sever claims, the courts look to the following factors: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether severance would serve judicial economy; (4) prejudice to the parties caused by the severance; and (5) whether the claims involve different witnesses and evidence. (Phillips v .Roane County (In re Zyprexia Prods. Liab. Litigation) (E.D.N.Y. 2004) 2004 U.S. Dist. LEXIS 24541, at *6; Erausquin v. Notz, Stucki Mgmt.(S.D.N.Y 2011) 806 F.Supp.2d 712, 720) This court has previously found it appropriate to sever claims to facilitate the transfer of venue. (Erausquin 806 F.Supp.2d 712, 723, and cases cited therein.)

The Guild and Liberty loan claims do not arise out of the same transaction or occurrence. The Guild Loans were brokered to LBB pursuant to the Broker Agreement. The Liberty Loans were underwritten and funded by Liberty, and then sold to LBB pursuant to a different written agreement (the LPA). The LPA imposed different obligations on Liberty than those applicable to Guild under the Broker Agreement. Accordingly, there are different standards a jury will have to apply to determine whether LBHI has proven its breach of warranty claims as to the Guild Loans on the one hand, and the Liberty Loans on the other hand. In addition to the different agreements containing different standards for potential liability applicable to the Guild Loans and Liberty Loans, the loans were originated by different loan officers for different borrowers located in different states, and will necessarily involve different witnesses and evidence. Therefore, the trial of the claims related to the Guild Loans and Liberty Loans do not involve common questions of law or fact and do not arise out of the same transaction or occurrence.

In addition, there is no evidence to suggest that any of the parties would be prejudiced by severance. However, Guild will certainly be prejudiced if severance is not granted, by being forced to defend in one action similar claims involving different operative agreements, different standards for liability, and the production of witnesses and documents located in five different western states, Arizona, California, Nevada, Washington and Alaska. It is simply not possible to try the claims related to the Liberty Loans and the Guild Loans in the same action without compromising Guild's ability to produce evidence and witnesses at trial required to defend both claims, and to avoid the inevitable confusion of jurors who will be required to apply different standards of liability applicable to the Guild Loans and Liberty Loans. For these reasons, it is likely that Guild would be prejudiced if the case is not severed and transferred as requested.

8

## IV.

## VENUE IS PROPER AND THIS CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF ARIZONA, THE WESTERN DISTRICT FOR THE STATE OF WASHINGTON OR THE SOUTHERN DISTRICT OF CALIFORNIA.

As discussed in the Omnibus brief, 28 USC §1391(b) provides that venue is proper in the judicial district in which any defendant resides or a judicial district in which a substantial part of the claim occurred, or in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action. (28 USC §1391(b)(1-3))

Accordingly, because Guild is domiciled in the State of California, venue is proper in the Southern District of California for this action. Further, a substantial part of the claims occurred in the states of California, Washington and Arizona, and therefore venue would also be proper in any of these states. The Guild Loans were all processed and brokered to LBB through its office in San Diego, California and Guild made the decision to deny LBB's demand for indemnification in California. (Schmidt Dec. ¶2) Accordingly, venue is proper for this action in the State of California.

Further, with regard to the Guild Loans, the loan officers are residents of Arizona, one of the borrowers is a resident of Arizona, and the real property involved in the transactions is located in Arizona. Arizona is the state where the loan applications were taken, the alleged misrepresentations were made, documents were provided by the borrowers to the loan officers, and where significant witnesses (the loan officers and borrowers) reside. Accordingly, venue for claims related to the Guild Loans would also be proper in the State of Arizona.

With regard to the Liberty Loans, the loans were processed and funded through Liberty's office in Washington State. Further, the borrower and loan officer on the Bement Loan are both residents of the State of Washington. Liberty's former principals, Barry Horn and Charles Nay, still

9

reside in the State of Washington. (Schmidt Dec. ¶9)    Accordingly, a majority of the activities

related to the Liberty Loans occurred in the State of Washington.   For these reasons, venue would

be proper in the states of California, Washington or Arizona. (23 USC §1391(b)(2))

Finally, under 28 USC §1391(b)(2) venue is proper in the judicial district where any

defendant is subject to personal jurisdiction. In this case, Guild does business in the states of

California, Arizona and Washington and therefore, it  is subject to personal jurisdiction in those

states. Guild <u>has not, and does not do business in the state of New York</u>.  For these reasons, venue

for this action would be proper in the states of California, Arizona or Washington.

**V.**

**FOR CONVENIENCE OF THE PARTIES AND IN THE INTEREST OF JUSTICE, THIS ADVERSARIAL ACTION MUST BE TRANSFERRED.**

Beside the reasons stated in the Omnibus Brief in support of defendants' joint motion to

transfer venue, Guild submits that the following relevant factors favor transfer of this lawsuit:

A.    <u>The Convenience of Party and Non-Party Witnesses.</u>

With regard to the Guild Loans, because Guild's liability to indemnify LBB under the Broker

Agreement must be based upon evidence  showing that Guild "knew" or should have known that

there was some inaccuracy in the information submitted to LBB in the loan application package, the

loan officers will be critical witnesses. Both of the loan officers (Mr. Schmidt and Mr. Jones– who

are not employed by Guild) reside in Phoenix, Arizona.  It will be much more convenient for these

witnesses to attend depositions and trial in Phoenix (or San Diego California which is a little more

than a one hour flight from Arizona), than in New York.  Further, if venue is located in Arizona, the

loan officers would be subject to compulsory process.  Guild anticipates that these witnesses would

10

provide critical evidence to show that Guild did not know, and had no reason to know, that there was any inaccuracies with the information provided to LBB in support of the Guild Loan application packages. Further, LBHI alleges that the Guild Loans contained misrepresentations regarding the borrower's income and employment. Accordingly, the borrower's employers in Arizona, would also be subject to compulsory process and will be able to provide information regarding the verifications of employment and income what were provided to LBB.

As to the Liberty Loans, Guild requests that this court sever LBHI's claims, which should be brought as a separate lawsuit in Washington. The state of Washington is an appropriate venue for the action. The state of Washington is the state where all of the Liberty Loans were processed and funded, the loan officer (Ms. Smith) and borrower for the Bement Loan reside in the state of Washington, and the former principals of Liberty (Mr. Nay and Mr. Horn) reside in Washington. It will be more convenient to have critical witnesses such as the borrowers, loan officers, underwriters, processors and executives involved in the Liberty Loans attend trial in Washington (where they will be subject to compulsory process) than in New York.

B.    The Location of Documents and Ease of Access to Sources of Proof.

It is likely that documents and evidence related to the claims of misrepresentation regarding the underlying loans may only be obtained through the issuance of compulsory process. For example, LBHI claims that the Guild Loans and the Liberty Loans contain misrepresentations regarding the borrowers' income and employment. Accordingly, it will be necessary to subpoena the records of the borrower's employers, and take depositions of persons most knowledgeable from the employers, as well as the borrowers, in order to defend against LBHI's claims. Guild will only be able to obtain this information if venue is located in a district that would allow for compulsory process, such as

11

Arizona and/or Washington.

    C.    <u>The Locus of Operative Facts</u>.

In contract cases, the locus of operative facts examines where the contract was negotiated or executed, where it was to be performed and where the alleged breach occurred. (<u>Fteja v. Facebook, Inc.</u> (SDNY 2012) 841 F. Supp.2d 829, 842) However, when the main cause of action alleged in the complaint is a breach of contract cause of action arising from the defendant's performance of the contract, the locus of the operative facts is where the contract was performed, not where it was performed and negotiated. (<u>Billing v. Commerce One, Inc.</u> (S.D.N.Y. 2002) 186 F.Supp.2d 375, 378.)

In <u>Pence v. Gee Group, Inc.</u> (SDNY 2017) 2017 WL 629470, this court concluded that the locus of operative facts weighed in favor of transfer of the action because the decision not to indemnify the plaintiff was made outside of New York, the source of potential reimbursement was located outside of New York, and the plaintiff who stood to benefit from the reimbursement payment was also located outside of New York. (<u>Pence</u>, at *11.)

Similarly in this case, the decision not to indemnify LBHI was made in California (by Guild), the source of funds which would pay for any such reimbursement would come from California, and LBHI and LBB are both residents of Delaware. (Schmidt ¶2) In addition, the facts and circumstances regarding Guild's performance under the Broker Agreement (originating and processing the Guild Loans) all occurred in either California or Arizona. Since Liberty's primary place of business was in the state of Washington, the locus of operative facts for the Liberty Loans is primarily Washington. For these reasons, this factor weighs in favor of transfer of this action from New York.

12

D.    Litigating in the Present Forum will Substantially Burden Guild.

Litigation of this case in New York would substantially burden Guild in that it eliminates any possibility of being able to compel the attendance of any of the relevant witnesses regarding the loans to testify at trial. The inability to compel former loan officers to testify at trial, which is particularly necessary as to the Guild Loans, will substantially prejudice Guild's ability to defend itself, particularly because LBHI must prove that Guild knew or should have known about the borrowers' alleged misrepresentations.

Further, the current venue in New York could not be further from Guild's residence in San Diego, and the western states where most of the relevant witnesses reside. Therefore, the travel expense to attend trial in New York will be exorbitantly burdensome to Guild as compared with trial in Arizona or Washington.

E.    Trial Efficiency and the Interests of Justice.

In this case, it will be more efficient to try this case, whether or not it is severed, in a forum in the western United States. As described above, all of the defendant's witnesses regarding the underlying Guild Loans and Liberty Loans reside in the western United States (California, Arizona, Washington, Nevada, or Alaska). Further, if Guild is required to litigate this case in New York, Guild will not have the ability to compel critical witnesses (loan officers, borrowers, the employer's of borrowers and others with knowledge of relevant information) to testify at trial. Therefore, maintaining this action in New York will effectively deprive Guild of a real opportunity to defend itself against LBHI's claims based upon both the Guild Loans and the Liberty Loans.

Finally as discussed above, the only way this lawsuit can be efficiently tried is to sever the claims regarding the Guild Loans from those regarding the Liberty Loans. Accordingly, the claims

13

regarding the Guild Loans should be tried in the District Court of Arizona, and the claims regarding

the Liberty Loans should be tried in the Western District of Washington.

## VI.

## THE FORUM SELECTION CLAUSE CONTAINED IN THE BROKER AGREEMENT DOES NOT APPLY TO THE LIBERTY LOANS AND IT WOULD BE UNJUST TO ENFORCE IT AGAINST GUILD.

Although Guild's Broker Agreement contains a forum selection clause, Liberty's LPA did

not. Guild is being sued for claims related to the Liberty Loans as the <u>successor in interest</u> to Liberty

based upon Liberty's alleged breach of the LPA. Thus, as to the Liberty Loans, there is <u>no forum</u>

<u>selection clause</u> that is applicable to LBHI's claims. Accordingly, it would be unjust to force Guild

to litigate LBHI's claims regarding the Liberty Loans in New York, where Guild will not have the

benefit of compulsory process over critical witnesses, in a forum that will be remote from the locus

of operative facts, and which will be inherently more expensive and inconvenient then in the state

of Washington.

In addition, the issue as to whether or not Guild is subject to successor liability for the acts

of Liberty must be determined under the law of the state of Washington. The District Court judges

sitting in Washington are more familiar with Washington state law regarding successor liability and

how to apply it. For this reason, this court must sever the Liberty Loan claims and transfer those

claims to the Western District of Washington. (See for example, <u>In re Rolls Royce Corp.</u> (2014) 775

F.3d 671 [Issuing writ of mandamus requiring the severance and transfer of only claims subject to

forum selection clause.])

As to LBHI's claims regarding the Guild Loans brokered under the Broker Agreement, Guild

submits that it would also be unjust to enforce the forum selection clause under the Broker

14

Agreement. A valid forum selection clause may not be enforced when the opposing party makes a sufficiently strong showing that enforcement would be unreasonable or unjust. (MBC Financial Services v. Boston Merch. Fin. LLC (S.D.N.Y. 2016) 2016 US Dist. LEXIS 140195, at *6) As described above, Guild would be deprived of a meaningful opportunity to defend itself if the forum selection clause is enforced. Further, it is apparent that LBB chose New York as the forum for litigation  specifically to increase the burden of litigation on Guild.   LBB is not a New York corporation, and does not conduct business in New York (the Broker Agreement indicates a corporate address in Colorado; See p. 7 Broker Agreement).   Therefore, venue of the case should not lie in the state of New York.

INCORVAIA & ASSOCIATES

/s/ G. Ehrich Lenz

Dated: August 7, 2017          By:_____
                                   Joel L. Incorvaia, Esq.
                                   G. Ehrich Lenz, Esq.
                                   Incorvaia & Associates
                                   1947 Camino Vida Roble., Suite 230
                                   Carlsbad, CA 92008
                                   Tel. (858)-259-2220
                                   Fax: (858)-259-3131

                                   Attorneys for Defendant,
                                   GUILD MORTGAGE COMPANY

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CMF/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all parties of record.

INCORVAIA & ASSOCIATES

By:     /s/ G. Ehrich Lenz
       G. Ehrich Lenz

16