# EXHIBIT "A"

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone:     (303) 945-7415
Facsimile:     (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (admission pending)
Caleb Durling
Corey J. Longhurst (application to be filed)

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:     (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

Counsel for Lehman Brothers Holdings Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Chapter 11 |
| Debtors. | Case No. 08-13555(SCC) |
| | Adv. Pro. No. _____ |
| LEHMAN BROTHERS HOLDINGS INC., | |
| Plaintiff, | |
| -against- | |
| GUILD MORTGAGE COMPANY, | |
| Defendant. | |

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 3 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20    :32    Main Document
Pg 2 of 17

## SECOND AMENDED ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan"), for its Complaint against Defendant Guild Mortgage Company

("Defendant") alleges upon knowledge as to itself and its own conduct, and upon information

and belief as to all other matters, as follows:

## NATURE OF ACTION

1.     In this action, LBHI seeks to enforce its right to contractual indemnification for

liabilities, losses, damages, claims, judgments and any other costs, fees and expenses LBHI

incurred as a result of Defendant's and Liberty Financial Group, Inc.'s ("Seller") sale and/or

submission of defective mortgage loans in breach of Defendant's and Seller's representations,

warranties, obligations, and/or covenants and/or for which LBHI incurred liability due to

Defendant's and Seller's acts, failures to act and/or omissions (the "Defective Loans").

2.     LBHI sold the Defective Loans to the Federal National Mortgage Association

("Fannie Mae") and/or the Federal Home Loan Mortgage Corporation ("Freddie Mac") under

agreements that included representations and warranties about the Defective Loans that were

coextensive with those made by Defendant and Seller.  LBHI retained the right to seek

indemnification from Defendant and Seller in the event it became liable for certain

indemnification events.  After Fannie Mae and Freddie Mac discovered that the mortgage loans

breached certain of those representations and warranties, Fannie Mae and Freddie Mac made

claims upon LBHI for losses suffered on the Defective Loans.  In January and February 2014,

respectively, the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153),

2

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 4 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20, /:32    Main Document
Pg 3 of 17

and (ii) LBHI and Freddie Mac (ECF No. 42754), triggering LBHI's indemnification claims

under the Agreements, as defined below, with Defendant and Seller.

3.    By this action, LBHI seeks to recover money damages from Defendant for the

indemnification claims.

4.    In addition to Defendant's direct liability for the Defective Loans it sold, LBHI

also seeks to recover damages from Defendant for Seller's indemnification obligations to LBHI.

As more fully explained below, Defendant acquired Seller's business in a *de facto* merger and is

continuing Seller's operations as a mere continuation of Seller's business with its former

management, officers, and/or shareholders. Defendant gave inadequate cash consideration for

the acquisition leaving Defendant unable to satisfy its obligations to creditors, such as LBHI.

Having transferred Seller's assets and business operations to Defendant, business operations by

the Seller entity ultimately ceased and dissolution of that entity was sought. As a result,

Defendant is liable for Seller's indemnification obligations to LBHI as a matter of law.[1]

## PARTIES

5.    On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary

case under chapter 11 of the Bankruptcy Code. LBHI is a Delaware corporation with its

principal place of business in New York, New York.

6.    Defendant is an entity that, at all times relevant, is organized in and does business

within the United States.

7.    Seller is an entity that, at all times relevant, was organized in and did business

within the United States.

---

[1] Defendant may be a successor-in-interest to other entities that sold and/or submitted defective mortgage
loans and are liable to LBHI for indemnification, including but not limited to Northwest Mortgage Group,
Inc., Sacramento 1st Mortgage, Inc., and Comstock Mortgage, Inc. LBHI reserves all rights against
Defendant with respect to Defendant's successor liability for any such entity.

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 5 of 90
17-01001-scc    Doc 1    .led 01/03/17    Entered 01/03/17 20. .:32    Main Document
Pg 4 of 17

## JURISDICTION AND VENUE

8.    This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9.    This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court, dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

10.    Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

11.    This Court has personal jurisdiction over Defendant under Rule 7004(f) of the Bankruptcy Rules. In addition, this Court has personal jurisdiction over Defendant because Defendant is organized in and does business within the United States, and because the transactions giving rise to this controversy occurred in the United States.

## FACTUAL BACKGROUND

12.    At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), then sold the loans to third parties, including Fannie Mae and Freddie Mac.

13.    At all relevant times, Defendant and Seller engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 6 of 90
17-01001-scc    Doc 1    led 01/03/17    Entered 01/03/17 20.    :32    Main Document
Pg 5 of 17

A.    **The Governing Agreements**

14.    This dispute arises out of Seller's sale of residential mortgage loans to LBHI's

assignor, LBB, under one or more Loan Purchase Agreements with LBB (each an "LPA")[2] and

Defendant's submission of residential mortgage loans to LBHI's assignor, LBB, under one or

more Broker Agreements with LBB (each a "Broker Agreement").[3]

15.    The dates of the relevant LPA[s] and Broker Agreement[s] are listed in Exhibit A

attached hereto.

16.    The LPA[s] specifically incorporate[s] the terms and conditions of the Seller's

Guide of loan administrator, Aurora Loan Services LLC (the "Seller's Guide", together with the

LPA[s] and Broker Agreement[s], "Agreements") which set forth additional duties and

obligations of Defendant and Seller.[4]    The Seller's Guide in its entirety is valid and binding on

Defendant and Seller.

17.    The Agreements set forth the duties and obligations of the parties with respect to

the purchase and sale of mortgage loans, including but not limited to purchase price, delivery,

and conveyance of the mortgage loans and mortgage loan documents.

18.    The Agreements also set forth Defendant's and Seller's duties and obligations

regarding underwriting; representations and warranties concerning the parties and individual

---

[2] Although the language of certain sections referenced throughout this Complaint may vary slightly from
LPA to LPA, it is generally consistent in all material respects.

[3] The operative Broker Agreement for each of the Defective Loans is the version in effect at the time the
Defendant sold the loan to LBB. Although the language of certain sections referenced throughout this
Complaint may vary slightly from Broker Agreement to Broker Agreement, it is generally consistent in
all material respects.

[4] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time the
Seller sold the loan to LBB. Although the language of certain sections referenced throughout this
Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all
material respects.

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 7 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20   :32    Main Document
Pg 6 of 17

mortgage loans purchased, sold or submitted; and Defendant's and Seller's indemnification obligations.

19.    Pursuant to the Agreements, Defendant and Seller sold and/or submitted Defective Loans to LBB that resulted in LBHI being exposed to and incurring liability, as described further below.

20.    The parties agreed that Defendant's and Seller's obligations would extend to any subsequent purchasers and/or assignees, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." *See* Seller's Guide § 8.

21.    The Broker Agreement[s] provide[s] that LBB as the "Lender, in its sole discretion, may assign this Agreement from time to time."

22.    In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the Defective Loans.

23.    Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the LPA[s]. *See* Seller's Guide § 711.

**B.    Defendant's Representations Under the Broker Agreement[s]**

24.    LBHI, as the assignee of the Broker Agreement[s], is entitled to all the benefits of the Broker Agreement[s], including the right to contractual indemnification.

25.    With respect to each of the loans submitted under the Broker Agreement[s], Defendant made a number of representations, warranties, and covenants concerning the quality, characteristics, and underwriting of the mortgage loans; the property securing the mortgage loans; and the borrowers of the mortgage loans.

6

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 8 of 90
17-01001-scc    Doc 1    :ed 01/03/17    Entered 01/03/17 20: 32    Main Document
Pg 7 of 17

26.    Specific examples of Defendant's representations, warranties and covenants

include, but are not limited to, the following:

> Broker has made diligent inquiry into all facts and circumstances in
> making the loan, including all material representations and
> warranties of the borrower, and to Broker's knowledge, none of the
> statements, information, or documentation included in the loan
> application, underwriting and closing packages contain any false or
> misleading statements or omit material facts necessary to make such
> statements accurate and not misleading. After review of the entire
> loan application package and closing documents . . . Broker has no
> knowledge of nor any reason to know of any fraudulent information
> or documentation present in the loan application package, closing
> documents or in the origination process used to generate the loan
> application package or closing documents. Broker Agreement §
> 8(g).

> Broker has no knowledge nor any reason to know of any
> circumstance or condition which might indicate that the appraisal is
> incomplete or inaccurate or that the value of the Property might not
> be at least the amount reported therein, or any circumstances or
> conditions with respect to the Property, the borrower or the
> borrower's credit that could reasonably be expected to cause private
> institutional investors to regard the loan as an unacceptable
> investment or cause the loan to become delinquent, or adversely
> affect the value or marketability of the loan. Broker Agreement §
> 8(h).

> Broker has complied with all terms, conditions, and requirements of
> Lender's Guidelines and this Agreement, and with Applicable Law
> relating to the loan application process. . . . Broker Agreement §
> 8(k).

27.    Defendant represented and/or warranted that it had the ability to perform its

obligations under, and satisfy all requirements of, the Broker Agreement[s].

28.    Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee)

from liabilities, claims, judgments, losses and expenses it might sustain as a result of the

Defective Loans, including attorneys' fees. Section 9 of the Broker Agreement[s], entitled

"Indemnification," provides, in pertinent part, as follows:

7

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 9 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20. .:32    Main Document
Pg 8 of 17

In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines: (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines. . . .

29. The Broker Agreement[s] also provide[s] for the "prevailing party" to recover attorneys' fees incurred to enforce the Broker Agreement[s]. Section 18 of the Broker Agreement[s], entitled "Attorney's Fees", provides as follows:

If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

**C.    Seller's Representations Under the LPA[s]**

30. LBHI as the "assignee" and third-party beneficiary of the LPA[s], and as "subsequent holder" of the Defective Loans, is entitled to all the benefits of the LPA[s], including the right to contractual indemnification.

31. With respect to each of the loans sold to LBHI (as, among other things, LBB's assignee) under the LPA[s], Seller made a number of representations, warranties, and covenants concerning the quality, characteristics, and underwriting of the mortgage loans; the property securing the mortgage loans; and the borrowers.

8

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 10 of 90
17-01001-scc    Doc 1    ed 01/03/17    Entered 01/03/17 20:    32    Main Document
Pg 9 of 17

32.    Specific examples of Seller's representations, warranties and covenants include,
but are not limited to, the following:

No document, report or material furnished to Purchaser in any
Mortgage Loan File or related to any Mortgage Loan (including,
without limitation, the Mortgagor's application for the Mortgage
Loan executed by the Mortgagor), was falsified or contains any
untrue statement of fact or omits to state a fact necessary to make
the statements contained therein not misleading. Seller's Guide §
703(1).

Seller . . . has duly and faithfully complied with and will continue to
comply with: (i) all applicable laws, rules, regulations, decrees,
pronouncements, directives, orders and contractual requirements
with respect to the origination, closing, underwriting, processing
and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

The documents, instruments and agreements submitted for loan
underwriting were not falsified and contain no untrue statement of
material fact or omit to state a material fact required to be stated
therein or necessary to make the information and statements therein
not misleading. No fraud was committed in connection with the
origination of the Mortgage Loan. The Seller has reviewed all of
the documents constituting the Mortgage Loan File and has made
such inquiries as it deems necessary to make and confirm the
accuracy of the representations set forth herein. Seller's Guide §
703(12).

There is no default, breach, violation or event of acceleration
existing under the Mortgage or the Note and, no event has occurred
or condition exists that, with the passage of time or with notice and
the expiration of any grace or cure period, would constitute a default,
breach, violation or event of acceleration and neither Seller nor its
predecessors has waived any default, breach, violation or event of
acceleration. Seller's Guide § 703(18).

The Mortgage Loan has been originated and processed by Seller or
Seller's correspondent in accordance with, and conforms with, the
terms of this Seller's Guide and the Loan Purchase Agreement, and
the Mortgage Loan has been underwritten in accordance with
Underwriting Guidelines in effect as of the date of the Delivery
Commitment applicable to the Mortgage Loan. The Mortgage Loan
complies with all the requirements of the related Program Profile
applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. Seller's Guide § 703(24).

Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any security thereof. The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan. Seller's Guide § 703(36).

33.    To the extent Seller was also the underwriter of certain loans as permitted under the Seller's Guide or other applicable agreements, Seller additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that with respect to such loans:

All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 12 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20_ ✓:32    Main Document
Pg 11 of 17

34.    Seller represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the LPA[s].  *See* Seller's Guide § 702(5).

35.    LBHI (as, among other things, LBB's assignee) relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans.  Specifically, Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

### D.    Seller's Indemnification Obligation Under the LPA[s]

36.    Seller agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorneys' fees.  Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.  In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder . . . .

11

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 13 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20    :32    Main Document
Pg 12 of 17

### E.    LBHI's Settlements With Fannie Mae and Freddie Mac

37.    When LBB acquired and/or received loans from Defendant, Seller, and others, it typically did not hold those loans on its books. The loans it acquired and/or received from Defendant, Seller, and other entities, including the Defective Loans, were sold to LBHI, and then sold to other industry participants, including Fannie Mae and Freddie Mac.

38.    When LBHI sold the Defective Loans to Fannie Mae and/or Freddie Mac, it relied on information provided to LBB by Defendant and Seller, and it made representations and warranties to Fannie Mae and/or Freddie Mac based, in part, on the representations Defendant and Seller made to LBB.

39.    Eventually, Fannie Mae and/or Freddie Mac discovered breaches of representations, warranties and/or covenants in the Defective Loans.

40.    Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on the Defective Loans and other loans sold to LBB.

41.    Many of the loans at issue in the Fannie Mae and Freddie Mac proofs of claims, and all of the Defective Loans, contained defects which caused LBHI to incur losses, judgments, costs, expenses, attorneys' fees, and liability to Fannie Mae and Freddie Mac.

42.    LBHI was forced to defend against and eventually settle with Fannie Mae and Freddie Mac.

43.    The Bankruptcy Court approved LBHI's settlements with Fannie Mae and Freddie Mac, including loan-level damages amounts for each Defective Loan (as shown in Exhibit A of each settlement agreement), finding the settlements to be "reasonable and appropriate."

44.    The types of defects which caused LBHI to incur expenses, costs, losses, judgments, attorneys' fees, and liability to Fannie Mae and Freddie Mac, include but are not

12

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 14 of 90
17-01001-scc    Doc 1    led 01/03/17    Entered 01/03/17 20..  /:32    Main Document
Pg 13 of 17

limited to defects concerning the quality and characteristics of the loans, the creditworthiness of

the borrowers, and the value and characteristics of the collateral, such as with respect to the

income, employment, assets, and debt obligations of the borrowers, the intended and actual

occupancy status of the properties, the appraised value of the properties and compliance with

appraisal standards, among other things; defects concerning underwriting and the collection and

review of the loan application and supporting documentation; and defects concerning origination

practices generally, including compliance with applicable laws, rules, regulations, decrees,

pronouncements, directives, orders and guidelines.

45.    As it concerns Defendant and Seller specifically, Exhibit B attached hereto

identifies each of the Defective Loans, and provides a non-exclusive list of the defects causing

LBHI to incur liability, expenses, losses, judgments, attorneys' fees, and other costs for each

Defective Loan. A general description of the defects identified in Exhibit B is included in

Exhibit C attached hereto.

46.    The liability incurred by LBHI to Fannie Mae and/or Freddie Mac was the result

of Defendant's and Seller's acts, failures, omissions, and breaches of its representations,

warranties, obligations, and/or covenants, which representations, warranties, obligations, and/or

covenants are co-extensive with the representations and warranties LBHI made to Fannie Mae

and Freddie Mac.

F.    **Defendant's and Seller's Obligation to Indemnify LBHI**

47.    Defendant and Seller agreed to indemnify LBHI (as, among other things, LBB's

assignee) from liabilities, claims, judgments, losses, attorneys' fees, and expenses it might

sustain as a result of the Defective Loans. *See* Seller's Guide § 711; Broker Agreement § 9.

48.    LBHI has demanded that Defendant and Seller indemnify LBHI, which demands

have been refused by Defendant and Seller.

13

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 15 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20. :32    Main Document
Pg 14 of 17

49.    Defendant's and Seller's failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae and/or Freddie Mac constitute breaches of Defendant's and Seller's contractual indemnification obligations.

50.    Pursuant to the Agreements, the laws of the State of New York govern this action.

51.    All conditions precedent to bringing this action have been met, occurred or have been waived.

**G.**    **Defendant's Liability for Seller's Obligations**

52.    Defendant acquired Seller's business, including substantially all of its assets used in or necessary for the operation of Seller's business (the "Acquisition"). The Acquisition amounted to a *de facto* merger of the two companies and Defendant is continuing Seller's enterprise as a mere continuation of Seller.

53.    Following the Acquisition, Seller no longer had any of the assets, employees, offices, phone lines, websites, and other requirements for doing business and its business operations promptly ceased.

54.    After Seller's assets and business operations were transferred to Defendant, Seller changed its name to LFG Wind Up Corporation and dissolution of that entity was sought.

55.    As part of the Acquisition, Defendant assumed liabilities that were ordinarily necessary for the continuation of Seller's business operations.

56.    Defendant continued Seller's enterprise, management, personnel, assets, branch locations, and general business operations.

57.    Defendant offered continued employment to certain of Seller's employees and management.

58.    Seller's former Chief Executive Officer and owner, Barry Horn, became Defendant's Executive Vice President and National Production Manager.

14

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 16 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 20. .:32    Main Document
Pg 15 of 17

59.     Seller's former Chief Operations Officer and owner, Charles Nay, became Senior Vice President and Regional Manager for the Northwest Region with Defendant.

60.     The Acquisition was structured to disadvantage creditors such as LBHI, including inadequate cash consideration given for the Seller's business, leaving Seller unable to satisfy obligations to its creditors, such as LBHI.

61.     Defendant is a mere continuation of Seller, and the Acquisition amounted to a *de facto* merger of the two companies.

## FIRST CLAIM FOR RELIEF

### (Contractual Indemnification)

62.     LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

63.     The Agreements are valid and enforceable contracts that are binding upon Defendant and Seller.

64.     LBHI and/or LBB have substantially performed all of their obligations under the Agreements.

65.     Defendant and Seller owe LBHI indemnity for its liabilities, losses, claims, attorneys' fees, judgments and any other costs, fees and expenses as to the Defective Loans.

66.     Defendant and Seller failed to indemnify LBHI for its liabilities, losses, claims, attorneys' fees, judgments and any other costs, fees and expenses as to the Defective Loans.

67.     Defendant's and Seller's breaches of the Agreements and other acts and/or omissions as to the Defective Loans resulted in LBHI incurring liability and/or losses in an amount to be determined at trial, comprised of the settlement amount for each of the Defective Loans as identified in the court-approved Fannie Mae and/or Freddie Mac settlement agreement,

15

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 17 of 90
17-01001-scc    Doc 1    led 01/03/17    Entered 01/03/17 20. .:32    Main Document
Pg 16 of 17

plus prejudgment interest pursuant to New York law, attorney's fees, litigation costs, and all other fees and costs provided by the Agreements.

    68.    Defendant is liable for LBHI's contractual indemnification claim against Seller, as alleged herein, because it is Seller's successor.

## **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against Defendant:

    a)    For all damages arising from or relating to Defendant's and Seller's obligations under the indemnification provisions of the Agreements, in an amount to be determined at trial;

    b)    For recoverable interest;

    c)    For the costs and expenses incurred by LBHI in enforcing Defendant's and Seller's obligations under the Agreements, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

    d)    Providing for such other relief as the Court deems just and proper.

Dated: January 3, 2017

                            */s/ Michael A. Rollin*
                            Michael A. Rollin
                            Maritza Dominguez Braswell (admission pending)
                            Caleb Durling
                            Corey J. Longhurst (application to be filed)

                            ROLLIN BRASWELL FISHER LLC
                            8350 E. Crescent Pkwy., Suite 100
                            Greenwood Village, Colorado 80111
                            Telephone:   (303) 945-7415
                            Facsimile:   (303) 974-7468

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 18 of 90
17-01001-scc    Doc 1    iled 01/03/17    Entered 01/03/17 2C. . J:32    Main Document
Pg 17 of 17

William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 19 of 90
17-01001-scc    Doc    1    Filed 01/03/17    Entered 01/03/17 20:40:32    Exhibit A -
Identification of Agreements    Pg 1 of 2

# EXHIBIT A

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 20 of 90
17-01001-scc   Ꭰ    1-1    Filed 01/03/17    Entered 01/0.._7 20:40:32    Exhibit A -
Identification of Agreements    Pg 2 of 2

**EXHIBIT A**

# AGREEMENTS

## Guild Mortgage Company individually and as
## successor in interest to Liberty Financial Group, Inc.

Broker Agreement dated April 17, 2002

Broker Agreement dated October 24, 2002

Loan Purchase Agreement dated October 30, 2003

Broker Agreement dated December 8, 2004

Loan Purchase Agreement dated January 14, 2005

Loan Purchase Agreement (Bulk Purchase) dated March 2, 2006

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 21 of 90
17-01001-scc    Doc    2    Filed 01/03/17    Entered 01/03/17    20:40:32    Exhibit B -
Identification of Defective Loans    Pg 1 of 2

# EXHIBIT B

**EXHIBIT B**

**Guild Mortgage Company individually and as**
**successor in interest to Liberty Financial Group, Inc.**

| Loan Number | Seller Loan Number | Claim Reason 1 | Claim Reason 2 | Claim Reason 3 | Claim Amount |
|---|---|---|---|---|---|
| 31680010 | 11113852 | MISREP - DEBTS | | | 92,852.43 |
| 33043555 | 11117033 | MISREP - DEBTS | MISREP - INCOME/EMPLOY | MISREP - OCCUPANCY | 192,828.61 |
| 33169798 | 11117637 | MISREP - OCCUPANCY | UW - INCOME/EMPLOY | | 177,516.18 |
| 45039286 | | MISREP - INCOME/EMPLOY | | | 141,083.74 |
| 46276358 | | MISREP - INCOME/EMPLOY | | | 123,623.77 |
| | | | | TOTAL | $727,904.73 |

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 23 of 90
17-01001-scc    Doc  3    Filed 01/03/17    Entered 01/03/1.  20:40:32    Exhibit C -
Description of Defect Types    Pg 1 of 6

# EXHIBIT C

16-01019-scc   Doc 461-1   Filed 08/07/17   Entered 08/07/17 17:38:34   Exhibit
Exhibits A through I   Pg 24 of 90
17-01001-scc   Doc   3   Filed 01/03/17   Entered 01/03/17   20:40:32   Exhibit C -
Description of Defect Types   Pg 2 of 6

**EXHIBIT C**

### I.  MISREPRESENTATION CLAIMS

A.  **MISREP – ASSETS:** The amount and/or source of the borrower's assets at origination and/or other information concerning the borrower's assets was misrepresented, which misrepresentation formed the basis of Defendant's breach.

B.  **MISREP – BORROWER:** The identity of the borrower, information concerning the identity of the borrower, and/or information concerning interested parties' relationship to the borrower was misrepresented at origination, which misrepresentation formed the basis of Defendant's breach.

C.  **MISREP – CREDIT/FICO:** Information related to the borrower's credit and/or creditworthiness at origination was misrepresented, which misrepresentation formed the basis of Defendant's breach.

D.  **MISREP – DEBTS:** One or more debts opened by the borrower prior to close of the subject transaction and/or sale of the subject loan were undisclosed/misrepresented at origination, which non-disclosure/misrepresentation formed the basis of Defendant's breach.

E.  **MISREP – IDENTITY THEFT:** The identity of the borrower at origination was misrepresented as that of someone else, which misrepresentation formed the basis of Defendant's breach.

F.  **MISREP – INCOME/EMPLOY:** The borrower's income at origination and/or information concerning his/her employment at origination was omitted/misrepresented, which omission/misrepresentation formed the basis of Defendant's breach.

G.  **MISREP – NAL OMISSION:** A non-arms-length/interested party relationship was omitted/misrepresented at origination, which omission/misrepresentation formed the basis of Defendant's breach.

H.  **MISREP – OCCUPANCY:** The borrower's intention about the occupancy of the subject property was misrepresented at origination, which misrepresentation formed the basis of Defendant's breach, or the borrower failed to satisfy the occupancy covenants set forth in the applicable security instrument.

I.  **MISREP – OTHER:** Information related to the borrower or subject transaction was misrepresented at origination, which misrepresentation formed the basis of Defendant's breach.

J.  **MISREP – VALUE:** The origination appraisal misrepresented the value of the subject property and/or violated one or more underwriting, Uniform Standards of Professional Appraisal Practice, or other requirements, which misrepresentation/violation formed the basis of Defendant's breach.

1

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 25 of 90
17-01001-scc    Doc    3    Filed 01/03/17    Entered 01/03/1⸱ ⸱0:40:32    Exhibit C -
Description of Defect Types    Pg 3 of 6

**EXHIBIT C**

K.    MISREP – VOR:  Information related to the borrower's rental and/or rental payment history was omitted/misrepresented at origination, which omission/misrepresentation formed the basis of Defendant's breach.

## II.    UNDERWRITING CLAIMS

A.    UW – APPRAISAL:  The origination appraisal violated one or more underwriting, Uniform Standards of Professional Appraisal Practice, or other requirements, which violation formed the basis of Defendant's breach.

B.    UW – ASSETS:  The subject transaction violated one or more underwriting or other requirements concerning verification of the borrower's assets and/or other information related to the borrower's assets, which violation formed the basis of Defendant's breach.

C.    UW – CONTRIBUTIONS/CONCESSIONS:  The subject transaction violated one or more underwriting or other requirements concerning costs paid by the seller or an interested third party, which violation formed the basis of Defendant's breach.

D.    UW – CREDIT/BANKRUPTCY:  The subject transaction violated one or more underwriting or other requirements concerning analysis of the borrower's credit, creditworthiness, and/or other information related to the borrower's credit, including but not limited to a prior or existing bankruptcy, which violation formed the basis of Defendant's breach.

E.    UW – CREDIT/FICO:  The subject transaction violated one or more underwriting or other requirements concerning analysis of the borrower's credit, creditworthiness, and/or other information related to the borrower's credit, which violation formed the basis of Defendant's breach.

F.    UW – DATA ERRORS:  The subject transaction violated one or more underwriting or other requirements concerning the use of an automated underwriting system, which violation formed the basis of Defendant's breach.

G.    UW – DEBT DISCLOSURE:  The subject transaction violated one or more underwriting or other requirements concerning the borrower's outstanding debt, which violation formed the basis of Defendant's breach.

H.    UW – DOCUMENTATION/ASSETS:  The subject transaction violated one or more underwriting or other requirements concerning verification of the borrower's assets and/or other information related to the borrower's assets, and/or verification of the borrower's rental and/or rental payment history, which violation formed the basis of Defendant's breach.

I.    UW – DOWN PAYMENT:  The subject transaction violated one or more underwriting or other requirements concerning the borrower's minimum down payment obligation, which violation formed the basis of Defendant's breach.

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 26 of 90
17-01001-scc    Doc   3    Filed 01/03/17    Entered 01/03/1   .0:40:32    Exhibit C -
Description of Defect Types    Pg 4 of 6

## EXHIBIT C

J.  UW – ESCROW:  The subject transaction violated one or more underwriting or other requirements concerning escrow accounts and/or escrow holdbacks, which violation formed the basis of Defendant's breach.

K.  UW – EXCESSIVE CASH OUT:  The subject transaction violated one or more underwriting or other requirements concerning the permissible amount of cash-out for the subject transaction, which violation formed the basis of Defendant's breach.

L.  UW – FAILURE TO ADDRESS POTENTIAL MISREPRESENTATIONS:  The subject transaction violated one or more underwriting or other requirements concerning misrepresentations about the occupancy of the subject property, which violation formed the basis of Defendant's breach.

M.  UW – FLIP TRANSACTIONS:  The subject transaction violated one or more underwriting or other requirements concerning ineligible property/land flip transactions, which violation formed the basis of Defendant's breach.

N.  UW – INCOME/EMPLOY:  The subject transaction violated one or more underwriting or other requirements concerning verification of the borrower's employment and/or income and/or the reasonableness of the borrower's ability to repay the mortgage debt, which violation formed the basis of Defendant's breach.

O.  UW – INCOME/RATIOS:  The subject transaction violated one or more underwriting or other requirements concerning analysis of the borrower's rental income, and/or ratio and/or qualifying guidelines, which violation formed the basis of Defendant's breach.

P.  UW – INCONSISTENT LOAN APPLICATIONS:  The subject transaction violated one or more underwriting or other requirements concerning verification of inconsistent information between the borrower's loan applications and/or the reasonableness of the borrower's ability to repay the mortgage debt, which violation formed the basis of Defendant's breach.

Q.  UW – INELIGIBLE INSTRUMENT: The subject transaction violated one or more underwriting requirements concerning the information disclosed on the note, which violation formed the basis of Defendant's breach.

R.  UW – INSUFFICIENT ASSETS/RESERVES:  The subject transaction violated one or more underwriting or other requirements concerning required asset and/or reserve amounts, which violation formed the basis of Defendant's breach.

S.  UW – INVESMENT PROPERTIES:  The subject transaction violated one or more underwriting or other requirements concerning non-owner occupied/investment properties, which violation formed the basis of Defendant's breach.

T.  UW – LACK OF NECESSARY INSURANCE:  The subject transaction violated one or more underwriting or other requirements concerning required private

3

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 27 of 90
17-01001-scc    Doc    J    Filed 01/03/17    Entered 01/03/1_  _0:40:32    Exhibit C -
Description of Defect Types    Pg 5 of 6

**EXHIBIT C**

mortgage and/or other mandated insurance coverage, which violation formed the basis of Defendant's breach.

U.    UW – LIEN POSITION:    The subject transaction violated one or more underwriting or other requirements related to the lien position of the subject transaction, which violation formed the basis of Defendant's breach.

V.    UW – MISSING DOCUMENTS: The subject transaction violated one or more underwriting or other requirements concerning necessary or required documentation related to the subject transaction, which violation formed the basis of Defendant's breach.

W.    UW – NAL TRANSACTION: The subject transaction violated one or more underwriting requirements concerning non-arms-length/interested party transactions, which violation formed the basis of Defendant's breach.

X.    UW – NON WARRANTABLE CONDOMINIUM:    The subject transaction violated one or more underwriting or other requirements concerning the financing/acceptability of condominium projects, which violation formed the basis of Defendant's breach.

Y.    UW – PAYMENT SHOCK:    In violation of applicable underwriting or other requirements the subject transaction resulted in signification payment shock (the payment for the subject transaction more than doubled the borrower's existing rental or mortgage payment), which violation formed the basis of Defendant's breach.

Z.    UW – PROPERTY: The subject transaction violated one or more underwriting or other requirements concerning verification of the type and/or classification of the subject property, which violation formed the basis of Defendant's breach.

AA.    UW – POINTS/FEES: The subject transaction violated one or more underwriting or other requirements concerning the points and fees paid by the borrower, which violation formed the basis of Defendant's breach.

BB.    UW – RATIOS: The subject transaction violated one or more underwriting or other requirements concerning ratio and/or qualifying guidelines, which violation formed the basis of Defendant's breach.

CC.    UW – RESIDENCY: The subject transaction violated one or more underwriting or other requirements concerning the borrower's residency, which violation formed the basis of Defendant's breach.

DD.    UW – STRAW TRANSACTION: The subject transaction violated one or more underwriting or other requirements related to ineligible straw borrower/straw buyer transactions, which violation formed the basis of Defendant's breach.

4

16-01019-scc   Doc 461-1   Filed 08/07/17   Entered 08/07/17 17:38:34   Exhibit
17-01001-scc   Doc   Exhibits A through I   Pg 28 of 90
Filed 01/03/1   Entered 01/03/.   20:40:32   Exhibit C -
Description of Defect Types   Pg 6 of 6

## EXHIBIT C

EE.   UW – TITLE: The subject transaction violated one or more underwriting or other requirements related to the property title and/or lien position of the subject transaction, which violation formed the basis of Defendant's breach.

FF.   UW – INELIGIBLE FOR LOAN PROGRAM: The subject transaction violated one or more underwriting or other requirements, which violation formed the basis of Defendant's breach.

## III.   OTHER

A.   COLLATERAL: The origination appraisal violated applicable underwriting, Uniform Standards of Professional Appraisal Practice, or other requirements, which violation formed the basis of Defendant's breach.

B.   DOCUMENTATION: Necessary or required documentation concerning the subject transaction was missing, unverified, or otherwise inadequate, and Defendant's failure to obtain, verify, or otherwise ensure the adequacy of documentation concerning the subject transaction formed the basis of Defendant's breach.

C.   IDENTITY THEFT: The borrower's identity at origination was that of someone else, which misinformation formed the basis of Defendant's breach.

D.   MI RESCISSION: Facts and/or events concerning the subject loan transaction resulted in the denial of liability or rescission of coverage by a mortgage insurer, which denial/rescission formed the basis of Defendant's breach.

E.   MISSING VVOE: Necessary or required documentation concerning the verbal verification of the borrower's employment was missing, unverified, or otherwise inadequate, and Defendant's failure to obtain, verify, or otherwise ensure the adequacy of documentation concerning the verbal verification of borrower's employment formed the basis of Defendant's breach.

# EXHIBIT "B"

# AURORA LOAN SERVICES

*A Lehman Brothers Company*

### BROKER AGREEMENT

THIS AGREEMENT (this "Agreement") is made as of/ <u>Dec.  8</u>., 2004 between:

December

    LEHMAN BROTHERS BANK, FSB, *a federal savings bank* ("Lender")

    and

    <u>GUILD MORTGAGE COMPANY</u>    , a <u>California Corpora-</u>("Broker").

tion

Broker desires from time to time to submit certain single family residential mortgage loans that meet Lender's eligibility criteria (the "loans"; individually, a "loan") to Lender for Lender's underwriting and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows:

    1.    <u>General Provisions</u>.  Broker agrees from time to time to submit loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement. This Agreement incorporates by this reference all other written materials, including without limitation, rate sheets, product profiles, underwriting guidelines, procedural guidelines, policies, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines").

    2.    <u>Broker Services</u>.  For each loan, Broker will submit to Lender a completed, original loan application package together with such related materials as may be required by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus *any additional documents required to establish income, employment and cash available for closing, if applicable*; (b) initiate/order requests for mortgage and other loan verifications; (c) initiate/order appraisals *of the property proposed as security for the loan* (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum *mortgage amount an applicant can afford pursuant to Lender's Guidelines*; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information *as needed; and* (i) initiate/order inspections or engineering reports, if applicable. In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order *engineering reports of the Property*, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable federal, state and local laws, rules and regulations (collectively, "Applicable Law") or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

    3.    <u>Underwriting</u>.  Loan underwriting approval decisions shall be made by Lender, in Lender's sole discretion, *in accordance with Lender's approval criteria then in effect*. Lender's underwriting determination will be conclusive. Lender will have absolutely no liability to Broker for any failure by Lender to underwrite any loan in accordance with Lender's Guidelines, unless such failure is due to gross negligence or willful misconduct by Lender. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement, in either case, until Broker receives written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment. Any

notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions").

4.    Closing, Funding and Conveyance of Loans.  Broker will assist Lender in the closing and funding of approved loans including, but not limited to, arranging for a closing of the loan after (i) all Closing Conditions have been satisfied and (ii) all closing documents have been either prepared or approved by Lender. Lender shall have no obligation to fund any loan until all Closing Conditions have been satisfied. All loans shall be closed in Lender's name

5.    Broker Compensation, Disclosure.  Broker shall properly and fully, in accordance with Applicable Law, disclose to the borrower all compensation that will be charged or earned by the Broker in connection with the loan, including any applicable yield spread premium.  Such compensation shall be set forth on the Good Faith Estimate provided to the borrower and to the Lender and shall not be changed unless Broker shall properly redisclose such changes at least seven days prior to the closing by providing proper disclosures to the borrower and Lender in accordance with Applicable Law.  Broker shall not charge the borrower any amount that exceeds Lender's Guidelines relating to loan pricing.

6.    Independent Contractor.  While engaging in any activities pursuant to this Agreement, Broker is acting solely as an independent contractor.  Broker is not an agent or employee of Lender and nothing contained in this Agreement shall be deemed to make Broker an agent or employee of Lender.  Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender.  Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender.  Broker shall not make any written or oral representations to any loan applicant that conflict with Broker's authority as set forth in this Agreement.

7.    Broker Responsible for Agents and Branches.  All references in this Agreement to "Broker" shall include Broker, and any of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name.  Broker is fully liable under this Agreement for all acts and omissions of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Lender may conclusively rely on any such submission of an application as conclusive evidence of such agent's, representative's, franchisee's, branch's or division's authority to act for Broker hereunder, unless and until Lender has received written notice from Broker advising Lender that any particular agent, representative, franchisee, branch or division is no longer authorized to submit loans on its behalf hereunder.

8.    Representations and Warranties of Broker  Broker makes and will be deemed to have made to Lender, as of the date hereof and as of the date of closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a)    Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, and is authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action.

(b)    This Agreement constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(c)    Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business where licensure of mortgage brokers is available under State law (even if a particular form of license is not technically required to be obtained by Broker because of the type of loan products offered by Broker or number of loans made by Broker), and Broker is the holder of all other licenses, permits and regulatory approvals as may be available to Broker by law in relation to the performance of Broker's responsibilities under this Agreement (even if a particular form of license is not technically required to be obtained by Broker).  Broker shall maintain all such licenses in good standing throughout the term of this Agreement.  Broker will retain on file with Lender current copies of all such licenses and will immediately notify Lender if any licenses or registrations held by Broker are suspended, revoked, terminated or otherwise expire.

-2-

(d)    Except as disclosed to Lender in writing, there is no suit, action, arbitration, proceeding or investigation (including without limitation, any proceeding alleging fraud on the part of Broker or any of its employees) pending, or to Broker's knowledge, threatened, against Broker or any of its current or former employees.

(e)    All of the statements, information and documentation submitted by Broker to Lender in connection with Broker's application to become an approved broker hereunder, including any statements, information and documentation submitted by Broker in connection with periodic renewals or recertifications of Broker's approval, are and will be true, correct and complete in all material respects.

(f)    Broker has received written authorization from the borrower to submit the loan application package to the Lender and to obtain and verify the borrower's credit information and other information contained in the loan application package.

(g)    Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.

(h)    Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(i)    Except as otherwise disclosed to Lender in writing before the funding of any loan, neither Broker, nor any of its principals, employees or agents: (i) has received, or has any agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, (ii) has any direct or indirect ownership interest in any Property, or (iii) is a mortgagor in the loan transaction. Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under Applicable Law and fully disclosed to Lender. Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(j)    The appraisal obtained in connection with the loan was performed by an appraiser who holds all required licenses or approvals and has no interest in the real property to be appraised and who will receive no compensation which is affected by the approval or declination of the loan application.

(k)    Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with Applicable Law relating to the loan application process. Broker has provided all disclosures to the borrower required by Lender or by Applicable Law to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by Applicable Law.

(l)    To Broker's knowledge, no loan will be classified as a (i) "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost," "threshold," "covered", "abusive" or "predatory" loan under any other Applicable Law.  No abusive or deceptive lending practices, including but not limited to, the extension of credit without regard for a borrower's ability to repay the loan and the extension of credit to a borrower which has no apparent benefit to the borrower, were employed in connection with the origination of a loan. Broker has not mislead the borrower about the costs or benefits of the loan, or any features of the loan, such as prepayment charges, type of interest rate and manner of adjustment thereto, and closing costs and fees.

-3-

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

9.    Indemnification. In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct; or (iv) any excess fees or charges charged or received by Broker in connection with the origination of a loan.

If Lender repurchases a loan from a third party to whom Lender has sold such loan as a result of any breach or alleged breach of this Agreement by Broker, Lender may (without waiving any right or remedy against Broker) market the loan or the related mortgaged property for resale in any commercially reasonable manner as it may deem appropriate with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. In the event of such sale, Lender's Claim against Broker shall include, without limitation, (i) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note, (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan and (iii) the difference between: (x) the repurchase price (including principal, interest, servicing advances and all other related costs and expenses) paid by Lender with respect to the repurchase of the loan and (y) the net sales price, if any, received by Lender upon the sale of such loan or the related mortgaged property.

Notwithstanding anything to the contrary contained in this Agreement, Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or closing document package or any portion thereof shall not limit or otherwise affect Lender's right to demand indemnification or any other relief provided by this Agreement.

Notwithstanding anything to the contrary, in no event shall a "full credit bid" made by Lender or any other party at a foreclosure sale of any property securing a loan limit the rights of Lender or the obligations of Broker under this Agreement.

10.    Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer, principal or owner, as applicable). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time.

11.    Adverse Action Notices. If Lender rejects a loan or makes a counteroffer, Lender may deliver to Broker a completed "adverse action notice" in the form required by the Equal Credit Opportunity Act specifying the reasons Lender has declined to fund the loan. If Lender delivers such notice to Broker, Broker shall deliver this adverse action notice to the applicant within the time period required by Applicable Law. Notwithstanding the foregoing, Lender shall have the right to deliver adverse action notices directly to the applicant.

12.    Right to Contact Applicants. Broker acknowledges that Lender shall have the right to contact any loan applicant or borrower in person or by mail, e-mail, or telephone, in connection with any application package submitted by Broker to Lender, and Lender shall have no liability to Broker for any such communication.

-4-

13.    Web Site Access.  To the extent that Broker is provided access to or use of any web site maintained by or on behalf of Lender, including the web site currently located at www.alservices.com, Broker shall comply with the terms of use and any other applicable policies and procedures maintained by or on behalf of Lender.  Without limiting the foregoing, Broker shall comply with all policies and procedures relating to the protection of passwords and other security measures in connection with Broker's use of any such web site.

14.    Non-Exclusive Agreement.  Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker.  Broker acknowledges that Lender provides the same or similar services to other brokers.

15.    Updates to Agreement.  Upon not less than ten (10) days prior written notice to Broker, Lender may modify and amend this Agreement.  Any such modification or amendment shall only be effective with respect to loans submitted by Broker after the effective date of such modification or amendment.  Such modification or amendment shall be deemed incorporated into this Agreement without further signature or acknowledgment by Broker.

16.    Termination.  This Agreement may be terminated by either party at any time upon delivery of written notice of termination to the other party.  Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender.  Any loans that do not have an interest rate lock-in agreement in place at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans.  All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

17.    Further Assurances.  Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement.  Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

18.    Attorney's Fees.  If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

19.    Non-Assignability.  This Agreement may not be assigned by Broker without the prior written consent of Lender.  Any attempted assignment without Lender's required consent shall be void.  No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender.  Lender, in its sole discretion, may assign this Agreement from time to time.

20.    No Waiver, Remedies Cumulative.  Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

21.    Notices; Electronic Communications.  All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, to the parties at the address specified below their signatures hereto or to such other address as any party hereto shall notify the other party hereto from time to time in writing.

Notwithstanding the foregoing, any notices or communications relating to loan pricing, loan underwriting, the status of any loan, any changes to Lender's Guidelines or to this Agreement, may be provided by Lender to Broker by any means permitted by law, including, without limitation, telephone, facsimile, electronic mail, or by posting to Lender's designated web site. To the extent any such consent is required by Applicable Law, Broker hereby consents to the receipt of such notice or communications by such means. The provisions of this paragraph constitute the express consent of Broker to the receipt of any and all facsimile communications from Lender or its affiliates (including any such communications constituting advertisements under Applicable Law) at the fax number set forth below, or at any other fax number supplied by Broker.

22.    Rights of Setoff.  Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

23.    Governing Law; Jurisdiction.  THIS AGREEMENT AND LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW.  BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.

24.    Waiver of Trial by Jury.  EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

25.    Privacy Laws.  Other than in accordance with this Agreement, Broker will not disclose non-public personal information regarding any mortgagors or prospective mortgagors, and shall comply in all respects with the Gramm-Leach-Bliley Act and any state privacy laws. Broker hereby indemnifies and holds Lender harmless against any damages arising from the violation of any state or federal laws regarding privacy.

26.    Cooperation with Authorities.  Broker hereby consents to the disclosure of information regarding Broker, files submitted to Lender by Broker for approval or funding, prospective or existing mortgagors or mortgaged properties, appraisers and other third parties engaged by Broker or through Broker's efforts, or any other information regarding the business of Broker, to state or federal agencies in response to administrative or court subpoenas or upon written request of such agencies. Broker hereby indemnifies and holds Lender harmless from complying with such requests for information

27.    Business Practice Report Acknowledgment  Broker acknowledges that it is in the best interest of both Broker and Lender for Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing business with individuals and companies such as Broker. Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities. Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber

-6-

to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

28.    <u>Non-Solicitation</u>. Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, Internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender for a period of one year from the date that such loan was funded by Lender hereunder. Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement. If Broker solicits any loan in contravention of this Section, Lender shall have all rights and remedies available under this Agreement, at law or in equity, including without limitation the right to injunctive relief and specific performance.

29.    <u>Restrictions on Publicity</u>. Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of Lender, Lehman Brothers or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers or any of their respective affiliates, in Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

30.    <u>Miscellaneous</u>. This Agreement, Lender's Guidelines, and any Addenda or other written agreement entered into pursuant to this Agreement, set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties. As used herein, references to this "Agreement" includes this Agreement, any Addenda hereto, and any amendments or modifications hereto or thereto. Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification. Except as otherwise set forth herein, no terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties agree that this Agreement will only become effective on the date on which Lender executes the Agreement as set forth below. This Agreement shall not be effective until so executed by Lender.

BROKER:

<u>GUILD MORTGAGE COMPANY</u>

By:_____
    Name:  Terry L. Schmidt
    Title:    CFO & SVP
    SS#
    EIN#:  95-2146137
    Date:   December 8, 2004

LENDER:

LEHMAN BROTHERS BANK, FSB

By:_____
    Name:  William Olwa
    Title:
    Date:

ADDRESS FOR NOTICES TO BROKER:

<u>9160 Gramercy Drive</u>
<u>San Diego, CA 92123</u>
_____
_____
Fax: <u>(858) 292-8056</u>

ADDRESS FOR NOTICES TO LENDER:

Lehman Brothers Bank, FSB
10350 Park Meadows Drive
Littleton, CO 80124
Attention: 2004 Broker Recertification
Fax:      720-945-4913

SIGN HERE

# EXHIBIT "C"

# LEHMAN BROTHERS BANK FSB

## FORM OF LOAN PURCHASE AGREEMENT

## (BULK PURCHASE/SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of _3/2/06_, [Seller No. _8212_ ], by and between Lehman Brothers Bank, FSB ("Lehman Bank") and _Liberty Financial Group Inc._ , having an office at _205 108th Ave NE Ste 270   Bellevue, WA 98004_ (the "Seller").

### WITNESSETH:

WHEREAS, the Seller desires to sell to Lehman Bank, and Lehman Bank desires to purchase, from the Seller from time to time, certain adjustable and/or fixed rate residential mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis on the date (each, a "Purchase Date") set forth in a Purchase Price and Terms Letter to be entered into between Lehman Bank and the Seller with respect to each sale of Mortgage Loans hereunder (each, a "PP&TL");

WHEREAS, each sale of Mortgage Loans to Lehman Bank shall be made upon the terms, conditions, representations and warranties set forth in this Agreement, the related PP&TL and that certain Aurora Loan Services, Inc. Seller Guide, as amended from time to time (the "Seller Guide"), except as otherwise set forth herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a valid lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, Lehman Bank and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller Guide, as modified by this Agreement; and

WHEREAS, this Agreement shall be deemed to be a "Loan Purchase Agreement" referred to in Section 100 of the Seller Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lehman Bank and the Seller agree as follows:

SECTION 1. Agreement to Purchase  The Seller agrees to sell, and Lehman Bank agrees to purchase, from time to time, those Mortgage Loans described in a PP&TL and the related Purchase Advice, together with the servicing rights related thereto, pursuant to the terms and conditions of the Seller Guide and this Agreement.

SECTION 2. Incorporation of Seller Guide; Conflicts; Seller Agreement.  Except as otherwise set forth herein (including any Annex or Addenda hereto), or in any related PP&TL, the terms and provisions of the Seller Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement.  In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller Guide and any of the express provisions of this Agreement, the express provisions of this Agreement shall control and be binding upon

- 1 -

Rev 07/2004

CONFIDENTIAL

LEH-LFG_0002782

# LEHMAN BROTHERS BANK FSB

Lehman Bank and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller Guide and (ii) agrees to be bound by the terms and conditions set forth therein and herein.

This Agreement includes and incorporates each of the following:

Annex 1        Additional Representations, Warranties,
               Covenants and Agreements of the Seller

SECTION 3.  Counterparts   This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4.  Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and Lehman Bank and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of Lehman Bank.

SECTION 5.  Defined Terms.  Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller Guide.

SECTION 6.  Costs.  All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7.  Notices.  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller Guide if to Lehman Bank, and (ii) as follows if to the Seller:

Liberty Financial Group Inc.
205 108th Ave NE Ste 270
Bellevue, WA 98004
Attn: Jason Delnch

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 8.  **Governing Law.  This Agreement and the Seller Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

SECTION 9.  Waivers  No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

Rev 07/2004

CONFIDENTIAL

LEH-LFG_0002783

# LEHMAN BROTHERS BANK FSB

SECTION 10.  Reproduction of Documents.  This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11.  Further Agreements.  The Seller and Lehman Bank each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller Guide.

SECTION 12.  Confidentiality.  The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without Lehman Bank's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13.  State of Incorporation.  The Seller is duly organized validly existing and in good standing under the laws of the state of _Washington_.

IN WITNESS WHEREOF, the Seller and Lehman Bank have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB

(Purchaser)

By: _____

Name: _____DENISE ELWELL_____

Title: _____VICE PRESIDENT_____

_Liberty Financial Group Inc_

(Seller)

By: _____

Name: _____Jason Oelrich_____

Title: _____President_____

Rev 07/2004

CONFIDENTIAL                LEH-LFG_0002784

# LEHMAN BROTHERS BANK FSB

Annex I

### ADDITIONAL REPRESENTATIONS, WARRANTIES,
### COVENANTS AND AGREEMENTS OF THE SELLER

## A. ADDITIONAL REPRESENTATIONS AND WARRANTIES

In addition to the representations and warranties contained in Section 703 of the Seller Guide, or elsewhere in the Seller Guide or this Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants to Lehman Bank as of the related Purchase Date, and covenants to Lehman Bank that:

1. Information Complete. All data, information and other written or electronic material provided to the Purchaser or its designees with respect to the Mortgage Loan including, without limitation, any data and information submitted for loan pricing purposes) was true, correct and complete and did not omit to state a fact necessary to make such data or information not misleading.

2. Conformance with Underwriting Guidelines. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines set forth in the Seller's Guide in effect at the time the Mortgage Loan was originated. Seller has, with respect to the Mortgage Loans, complied with all requirements applicable to sellers that have received Delegated Underwriting Authority.

3. Seller's Origination. The Seller's decision to originate any mortgage loan or to deny any mortgage loan application is an independent decision and is in no way made as a result of Purchaser's decision to purchase, or not to purchase, or the price Purchaser may offer to pay for, any such mortgage loan, if originated.

4. Delivery of Mortgage Documents. The Mortgage Note and all other Mortgage Loan documents required to be delivered by the Seller under the Seller Guide have been delivered to Lehman Bank or its designee.

5. Selection Process. The Mortgage Loans were not intentionally selected in a manner so as to affect adversely the interests of Lehman Bank.

6. Loan Characteristics. With respect to the Mortgage Loans to be sold to Lehman Bank on the Purchase Date, the Mortgage Loan characteristics set forth in the PP&TL are true and complete in the aggregate.

7. Predatory Lending Regulations; High Cost Loans. Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state and federal laws including, but not limited to, all applicable predatory and abusive lending laws. None of the Mortgage Loans are classified as "high cost", "threshold," or "predatory" loans as defined by applicable predatory and abusive lending laws (including, without limitation, under the Home Ownership and Equity Protection Act of 1994 or under any other applicable state, federal or local law).

8. Single Premium Credit Life Insurance. None of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

4    Rev 07/2004

CONFIDENTIAL

# LEHMAN BROTHERS BANK FSB

9. <u>No Commissions to Third Parties</u>. The Seller has not dealt with any broker or agent    or anyone else who might be entitled to a fee or commission in connection with this transaction.

## B. ADDITIONAL AGREEMENTS

1. At the option of the Purchaser, the Seller shall repurchase any Mortgage Loan if the first or second monthly payments due the Purchaser are not made within (30) days of each such monthly payments respective due date. Such repurchase will be made at the Repurchase Price in accordance with Section 710 of the Seller Guide.

2. If the Seller fails to provide the Purchaser with a complete electronic data file with respect to each Mortgage Loan containing all loan level data required by the Purchaser, the Purchaser shall have the right (but not obligation) to complete such electronic data file on the Seller's behalf. In such case, any data file completed by the Purchaser on the Seller's behalf shall for all purposes of the Agreement be deemed to have been provided to the Purchaser by the Seller and the Seller shall be liable to the Purchaser for the truth, accuracy and completeness of all such data, even if the Purchaser was negligent in completing such electronic data file.

3. Seller acknowledges that Lehman Bank may not have conducted any pre-Purchase Date review of the Mortgage Loan files to determine whether or not they are eligible for purchase by Lehman Bank under the Seller Guide. Lehman Bank expressly reserves the right (but not the obligation) to perform a purchase review of the Mortgage Loans and the Mortgage Loan files after the Purchase Date and to exercise any rights or remedies that may be available to Lehman Bank thereunder.

4. The "Good File Delivery Credit" referred to in Section 600 of the Seller Guide shall not apply to the transactions contemplated by this Agreement.

5

Rev 07/2004

CONFIDENTIAL

LEH-LFG_0002786

# EXHIBIT "D"

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 701 | REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER | 1 |
| 702 | CONCERNING SELLER AND GUARANTOR | 1 |
| 703 | CONCERNING INDIVIDUAL MORTGAGE LOANS | 5 |
| 704 | EVENTS OF DEFAULT | 17 |
| 705 | RIGHT TO DEMAND REASONABLE ASSURANCES | 18 |
| 706 | ADDITIONAL REMEDIES; SETOFF | 18 |
| 707 | WAIVER OF DEFAULTS | 19 |
| 708 | TERMINATION WITHOUT CAUSE | 19 |
| 709 | EFFECT OF TERMINATION | 19 |
| 710 | REPURCHASE OBLIGATION | 19 |
| 711 | INDEMNIFICATION AND THIRD PARTY CLAIMS | 20 |
| 712 | SURVIVAL OF REMEDIES | 21 |
| 713 | MISCELLANEOUS | 21 |
| 713.1 | GOVERNING LAW | 21 |
| 713.2 | SEVERABILITY OF PROVISIONS | 21 |
| 713.3 | ASSIGNMENT | 22 |
| 713.4 | GOVERNING CONTRACT | 22 |
| 713.5 | ENTIRE AGREEMENT; NO WAIVER | 22 |
| 713.6 | NO PARTNERSHIP | 22 |
| 713.7 | CONFIDENTIALITY | 22 |
| 713.8 | NON-EXCLUSIVE RELATIONSHIP | 23 |
| 714 | SOLICITATION FOR REFINANCING | 23 |
| 715 | EARLY PAYMENT DEFAULT | 23 |
| 716 | EARLY PAYOFF | 24 |
| 717 | DELEGATED UNDERWRITING | 24 |
| 718 | AUTOMATED UNDERWRITING | 25 |

CONFIDENTIAL    LEH-LFG_0003007

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

---

**700    CONTINUING ELIGIBILITY REQUIREMENTS**

To continue as an approved Seller or Seller/Servicer, each Seller must remain in compliance with all provisions of this Seller's Guide, the Purchase Agreement, and as applicable, the Servicing Agreement, the Custodial Agreement and any other agreement by and between Purchaser and Seller.  Additionally, each Seller/Servicer must maintain an acceptable claims experience with all mortgage insurers.

**701    REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER**

Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.  Seller makes the representations, warranties, and covenants set forth in this Section as of the date of the Loan Purchase Agreement and remakes them as of each Purchase Date, unless the representation or warranty provides otherwise.  Making such representations, warranties and covenants does not release Seller from its obligations under any representations, warranties or covenants contained in other sections of this Seller's Guide, including the exhibits hereto, or in the Loan Purchase Agreement.  It is expressly understood and agreed that Purchaser's rights in connection with Seller's representations, warranties and covenants survive the Purchase Date of any particular Mortgage Loan and any termination of the Loan Purchase Agreement, and are not affected by any investigation or review made by, or on behalf of, Purchaser, except to the extent expressly waived in writing by Purchaser.

In addition to Purchaser's right to assign its rights and duties under the Loan Purchase Agreement and the Seller's Guide, Seller agrees that Purchaser separately may assign to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide and Loan Purchase Agreement, along with any or all of the remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies.  Any such party shall be an intended third party beneficiary of these representations, warranties, covenants and remedies.

**702    CONCERNING SELLER AND GUARANTOR**

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide, Seller represents and warrants as of the respective dates of the Loan Purchase Agreement and as of each Purchase Date, and covenants that:

1. **Due Organization; Good Standing; Licensing.**  Seller and to Seller's knowledge, Seller's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain licenses, registrations and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by Seller, and, in any event, Seller is and will remain

---

CONFIDENTIAL                                                                  LEH-LFG_0003008

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

in compliance with the laws of any such state, and is and will remain in good standing with federal authorities to the extent necessary to ensure the enforceability of the related Mortgage Loan. Seller has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigations, examinations, audits, actions and/or sanctions that have been undertaken and/or imposed within two (2) years prior to the date of the Loan Purchase Agreement by any federal or state agency or instrumentality with respect to either the lending-related financial operations of Seller, or the ability of Seller to perform in accordance with the terms hereof. Except as may have been disclosed to and approved by Purchaser in writing, Seller is not operating under any type of agreement or order (including, without limitation, a supervisory agreement, memorandum of understanding, cease and desist order, capital directive, supervisory directive and consent decree) with or by the Office of Thrift Supervision, Federal Deposit Insurance Corporation Federal Reserve Board, Office of the Comptroller of the Currency, or any state banking department or other government banking agency, and Seller is in compliance with any and all capital, leverage or other financial standards imposed by any applicable regulatory authority. Each of the representations and warranties made by Seller is true, accurate and complete, and is deemed to be remade in its entirety as of the date of the Loan Purchase Agreement executed by Seller and as of each Purchase Date.

2. **Authority.** Seller has and will maintain the full corporate, limited liability company or partnership (as the case may be) power and authority to execute and deliver the Loan Purchase Agreement and to perform in accordance with each of the terms thereof and the terms of this Seller's Guide; the execution, delivery and performance of the Loan Purchase Agreement and the performance of the terms of this Seller's Guide (including, without limitation, all instruments of transfer to be delivered under the terms of the Loan Purchase Agreement) by Seller, and the consummation of the transactions contemplated thereby and hereby, have been duly and validly authorized; the Loan Purchase Agreement and the Seller's Guide evidence the legal valid, binding and enforceable obligations of Seller; except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles, and all requisite corporate, limited liability company or partnership (as the case may be) action has been taken by Seller to make the Loan Purchase Agreement and the terms of this Seller's Guide valid and binding upon Seller, and enforceable in accordance with their respective terms.

3. **Ordinary Course of Business.**  The consummation of the transactions contemplated by the Loan Purchase Agreement and the terms of this Seller's Guide are in the ordinary course of business of Seller, and the transfer, assignment and conveyance of the Mortgage Loans by Seller pursuant to the Loan Purchase Agreement and the terms of this Seller's Guide are not subject to the bulk transfer laws or any similar statutory provision in effect in any applicable jurisdiction.

4. **No Conflicts.** Neither the execution and delivery of the Loan Purchase Agreement, the acquisition and/or making of the Mortgage Loans by Seller, the sale of the Mortgage Loans to Purchaser or the transactions contemplated thereby or pursuant to this Seller's Guide, nor the fulfillment of or compliance with the terms and conditions of the Loan Purchase Agreement, will conflict with or result in a breach of

CONFIDENTIAL                    LEH-LFG_0003009

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

any of the terms, conditions or provisions of Seller's articles of incorporation, charter, by-laws, partnership agreement, operating agreement or other organizational document (as the case may be), or of any legal restriction or regulatory directive or any agreement or instrument to which Seller is now a party or by which it is bound, or constitute a default or result in any acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or any of its property is subject, or impair the ability of Purchaser to realize on any of the Mortgage Loans, or impair the value of any of the Mortgage Loans.

5.  **Ability to Perform.**  Seller has the ability to perform each and every obligation of, and/or satisfy each and every requirement imposed on Seller pursuant to the Loan Purchase Agreement and this Seller's Guide, and no offset, counterclaim or defense exists to the full performance by Seller of the requirements of the Loan Purchase Agreement and this Seller's Guide.

6.  **No Litigation Pending.**  There is no action, suit, proceeding, inquiry, review, audit or investigation pending or, to Seller's knowledge, threatened by or against Seller that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties or assets of Seller, or in any material liability on the part of Seller, or which would draw into question the validity or enforceability of any of the Loan Purchase Agreement, this Seller's Guide, or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Seller contemplated in the Loan Purchase Agreement or this Seller's Guide, or which would be likely to impair materially the ability of Seller to perform under the terms of the Loan Purchase Agreement or this Seller's Guide.

7.  **No Consent Required.**  No consent, approval, authority or order of any court or governmental agency or body is required for the execution and performance by Seller of, or compliance by Seller with, the Loan Purchase Agreement or this Seller's Guide, the sale of any of the Mortgage Loans, or the consummation of any of the transactions contemplated by the Loan Purchase Agreement, or, if required, such unconditional approval has been obtained prior to the related Purchase Date.

8.  **No Untrue Information.**  Neither the Seller Application Package, the Loan Purchase Agreement, nor any statement, report or other document furnished or to be furnished by Seller or Seller's correspondent pursuant to the Loan Purchase Agreement or this Seller's Guide, contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading. Seller meets the Eligibility Standards and shall take all steps necessary to continue to meet such Eligibility Standards.

9.  **Securities Law.**  Purchaser has made no representation whatsoever to Seller concerning the applicability or inapplicability of the Security Act of 1933, as amended (the "1933 Act") or of any state securities laws (each, a "State Act") to the transactions that are the subject of this Seller's Guide.  Seller hereby represents and warrants:

    a.  The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions

CONFIDENTIAL                                                                                    LEH-LFG_0003010

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

under the registration provisions of the 1933 Act, and the registration of the Mortgage Loans under the 1933 Act is not required in connection with any such offer, issuance, sale or delivery of the Mortgage Loans; and

b. The offer, issuance, sale and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions under applicable state acts, and neither the registration or qualification of the Mortgage Loans under such state acts nor the authorization, approval, or consent of any governmental authority or agency is required or necessary in connection with any such offer, issuance, sale or delivery of the Mortgage Loans.

10. **No Accrued Liabilities.** Except as may be otherwise disclosed by Seller and acknowledged by Purchaser in writing prior to the date of the Loan Purchase Agreement, there are no accrued liabilities of Seller with respect to any of the Mortgage Loans, or circumstances under which any such accrued liabilities will arise against Purchaser, as successor to Seller's interests in and to the Mortgage Loans, with respect to any action or failure to act by Seller occurring on or prior to the Purchase Date.

11. **Origination, Servicing.** The origination and servicing of the Mortgage Loans by Seller have been legal, proper, prudent and customary and have conformed to customary standards of the residential mortgage origination and servicing business.

12. **Compliance with Laws.** Seller has complied with, and has not violated any law, ordinance, requirement, regulation, rule or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Seller or the ability of Seller to consummate the transactions contemplated by the Loan Purchase Agreement and this Seller's Guide.

13. **Compliance with Loan Purchase Agreement and Seller's Guide.** Seller will comply with all provisions of this Seller's Guide and the Loan Purchase Agreement, and will promptly notify Purchaser of any occurrence, act or omission regarding Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor of which Seller has knowledge, which occurrence, act or omission may materially affect Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor.

14. **Standards and Procedures.** The origination practices utilized by Seller with respect to the Mortgage Loans have been legal, proper, prudent and customary for mortgage loans of a type and credit quality similar to the Mortgage Loans and Seller maintains (i) a staff that is experienced and trained in the proper origination of mortgage loans of a type and credit quality similar to the Mortgage Loans, and (ii) operating procedures, including refined risk assessment strategies beyond simple credit risk analysis, that are prudent and customary in the origination of mortgage loans of a type and credit quality similar to the Mortgage Loans.

15. **No Brokers or Finders.** Seller has not in connection with any Mortgage Loan incurred any obligation, made any commitment or taken any action that might result in a claim against Purchaser or an obligation by Purchaser to pay a sales brokerage commission, finder's fee or similar fee in respect to the transactions between

CONFIDENTIAL                                                                    LEH-LFG_0003011

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Purchaser and Seller as described in this Seller's Guide or the Loan Purchase Agreement.

16. **No Insolvency, etc.** Seller has not transferred any Mortgage Loan to Purchaser with any intent to hinder, delay or defraud any of Seller's creditors. Seller is not insolvent and the sale of the Mortgage Loans will not cause Seller to become insolvent. The consideration received by Seller upon the sale of the Mortgage Loans under this Seller's Guide and the Loan Purchase Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

## 703    CONCERNING INDIVIDUAL MORTGAGE LOANS

In addition to the representations, warranties and covenants set forth elsewhere in this Seller's Guide or the Loan Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants as of the related Purchase Date, and covenants that:

1. **Mortgage Loans as Described.** No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan File (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

2. **Payments Current.** All payments required to be made through the related Purchase Date for the Mortgage Loan under the terms of the Note have been made and credited. No payment required under the Mortgage Loan is delinquent and no payment under the Mortgage Loan has been delinquent at any time since the origination of the Mortgage Loan. For the purpose of this paragraph, a payment under a Mortgage Loan will be deemed delinquent if that payment due was not paid by the Mortgagor prior to the date that the next payment was due under the Mortgage Loan. The Mortgage Loan has not at any time been modified, renewed or extended for the purpose of concealing the delinquency of the Mortgagor.

3. **No Outstanding Charges.** There has been no default under the terms of the Mortgage, and any and all taxes, including, without limitation, any and all transfer taxes due and payable to any state or municipality relating to the transfer of the ownership and occupancy interest in the Mortgaged Property, and all governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments and/or ground rents that previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item that remains unpaid and that has been assessed but is not yet due and payable.

4. **No Advances.** Except as has been clearly and conspicuously disclosed in writing to and approved by Purchaser prior to the Purchase Date: (i) Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Note or date of disbursement of the Mortgage Loan proceeds, whichever is greater, to the day that precedes by one (1) month the due date of the first installment of principal and interest; and (ii) the Mortgagor has, in compliance with the Underwriting

CONFIDENTIAL

LEH-LFG_0003012

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Guidelines, made any down payment required in connection with the Mortgage Loan, and has received no concession from Seller, any correspondent, the seller of the Mortgaged Property, or any other third party.

5. **Original Terms Unmodified.** The original terms of the Note and the Mortgage have not been impaired, waived, altered, or modified in any respect, except by a written instrument that Purchaser has approved and has been recorded, if necessary, to protect the interest of Purchaser and which has been delivered to Purchaser with the Mortgage Loan documents; the substance of any such waiver, alteration or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

6. **No Defense.** The Mortgage Loan is not subject to any unexpired right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury. The operation of any of the terms of the Note or the Mortgage, or the exercise of any right thereunder will not render either the Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, cancellation, set-off, counterclaim, or defense, including without limitation, the defense of usury, and no such right of rescission, cancellation, set-off, counterclaim or defense has been asserted with respect thereto. No Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

7. **Hazard and Flood Insurance.** Pursuant to the terms of the Mortgage, all buildings and improvements upon the Mortgaged Property are insured by an insurer acceptable to Purchaser against loss by fire, hazards of extended coverage and such other hazards as are customarily insured against in the area where each Mortgaged Property is located in an amount which is at least equal to the lesser of: (a) the outstanding principal balance of the applicable Mortgage Loan or if identified as a second lien mortgage, the total of the outstanding principal balance of the Mortgage Loan and any first lien loan affecting the Mortgaged Property; (b) the full replacement value of the Mortgaged Property, or (c) in the case of flood insurance, the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973. If the Mortgaged Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards and in which flood insurance has been made available, a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with an insurance carrier acceptable to Purchaser. All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Mortgagor thereunder to maintain the individual insurance policies at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. The amount of insurance is sufficient to prevent the application of any co-insurance contribution on any loss. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of Purchaser upon the consummation of the transactions contemplated by the Loan Purchase Agreement. Seller has not

CONFIDENTIAL    LEH-LFG_0003013

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

engaged in, and has no knowledge of the Mortgagor having engaged in, any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller. Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. Guaranteed initial flood zone determination documentation is included in each Mortgage Loan file delivered to Purchaser for Purchase.

8. **Origination, Underwriting and Servicing Compliance.** Seller, and, to the extent the Mortgage Loan was originated by, closed in the name of, or serviced by a correspondent, such correspondent, has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan; and (ii) any and all other applicable federal, state, county, municipal, or other local laws, including, without limitation, those laws relating to truth-in-lending, real estate settlement procedures, consumer credit protection, usury limitations, fair housing, equal credit opportunity, collection practices, money laundering and real estate appraisals.

9. **No Satisfaction of Mortgage.** The Mortgage has not been satisfied, canceled, subordinated, or rescinded in whole or in part, and the Mortgaged Property has not been released, in whole or in part, from the lien of the Mortgage, and no instrument has been executed that would affect any such release, cancellation, subordination or rescission. The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

10. **Location and Type of Mortgaged Property.** The Mortgaged Property is a fee simple or acceptable leasehold property located in the state identified in the Mortgage Loan File and unless otherwise provided for in the Loan Purchase Agreement, consists of a single parcel of real property with a single family residence erected thereon or a two-to-four family dwelling or an individual unit in a planned unit development or Condominium Project, provided, however, that any condominium or planned unit development shall conform with applicable requirements outlined in this Seller's Guide; no Mortgaged Property is a mobile home or a boat. No portion of the Mortgaged Property is used for commercial purposes in such a manner that the Mortgaged Property would be considered commercial rather than residential property by knowledgeable and sophisticated investors active in the residential secondary mortgage market.

11. **Valid Lien.** The Mortgage is a valid, existing, and enforceable lien on the Mortgaged Property, and on all buildings on the Mortgaged Property, and on all installations and

CONFIDENTIAL

LEH-LFG_0003014

Section 7
## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

mechanical, electrical, plumbing, heating, and air conditioning systems located in or affixed to such buildings, and on all additions, alterations, and replacements made at any time with respect to the foregoing in the lien position identified by Seller and in accordance with the appropriate Program Profile. The lien of the Mortgage is subject only to:

a. The lien of current real property taxes and assessments not yet due and payable;
b. Covenants, conditions, restrictions, rights of way, easements and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the Title Report delivered to the originator of the Mortgage Loan, none of which (i) were not referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan; or (ii) adversely affects the appraised value of the Mortgaged Property set forth in such appraisal;
c. Other matters to which like properties are commonly subject, which other matters do not materially interfere with the benefits of the security intended to be provided by the Mortgage, or the use, enjoyment, value, or marketability of the related Mortgaged Property; and
d. If the Mortgage is identified to Purchaser by the Seller as a second lien mortgage, the lien of the first mortgage.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable lien and security interest on the property described therein in the lien position identified by Seller and in accordance with the appropriate Program Profile and Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not, as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secured debt or other security interest creating a lien subordinate to the lien of the Mortgage other than any such subordinate lien disclosed in the Underwriting Package and considered in the underwriting review of the Mortgage Loan.

12. **Validity of Mortgage Documents.** The Note and the Mortgage are genuine, and each is a legal, valid, and binding obligation of the maker thereof, enforceable in accordance with its terms except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles. All parties to the Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Note and the Mortgage and any other related agreement, and the Note and the Mortgage have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

CONFIDENTIAL    LEH-LFG_0003015

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

13. **Full Disbursement of Proceeds.** The Mortgage Loan has been closed and, <u>except for home equity lines of credit,</u> the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for the future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds thereof have been complied with, unless otherwise provided for in the Seller's Guide. All costs, fees and expenses incurred in making or Closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

14. **Ownership of Mortgage Loans.** Immediately prior to the transfer of the Mortgage Loan to Purchaser, Seller is the sole owner of record and is the holder of the Mortgage Loan. Except for the security interest of a warehouse lender, which security interest has been disclosed in writing to Purchaser, the Mortgage Loan is not assigned or pledged, and Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim, security interest, right, option, assignment or servicing agreement, whatsoever (except pursuant to the Loan Purchase Agreement and this Seller's Guide), and Seller has full right and authority (subject to no interest or participation of, or agreement with, any other party) to sell and assign each Mortgage Loan pursuant to the Loan Purchase Agreement and this Seller's Guide.

15. **Doing Business.** All parties that have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee, or otherwise, are (or during the period in which they held and disposed of such interest, were) (i) in compliance with any and all applicable requirements concerning licensing and qualifications to do business under the laws of the state wherein the Mortgaged Property is located, and (ii) organized under the laws of such state, or (iii) qualified to do business in such state, or (iv) federal savings and loan associations or national banks having principal offices in such state, or (v) not doing business in such state.

16. **LTV/CLTV/HCLTV; PMI Policy.** The LTV/CLTV/HCLTV of each Mortgage Loan does not exceed the maximum LTV/CLTV/HCLTV permitted by the Underwriting Guidelines. All provisions of each PMI Policy have been and are being complied with, and such policy is written with a private mortgage insurance company acceptable to Purchaser, is the binding obligation of such insurer, is in full force and effect, and all premiums due thereunder have been paid. Seller, and if applicable, Seller's correspondent, has not engaged in any act or omission, and Seller has no knowledge of an act or omission by or on behalf of the Mortgagor of any other person, which act or omission would impair the coverage or validity of any such policy. The Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain such PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage interest rate for the Mortgage Loan is net of any such insurance premiums.

17. **Title Insurance.** Unless otherwise indicated in this Seller's Guide, the Mortgage Loan is covered by either (i) an attorney's opinion of title and abstract of title, or (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of

CONFIDENTIAL    LEH-LFG_0003016

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

insurance acceptable to FNMA or FHLMC or (iii) Lien Search if Cooperative Loan, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the appropriate priority lien of the Mortgage in the original principal amount of the Mortgage Loan (or to the extent that a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage interest rate and monthly payment, subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*. Where required by state law or regulations, the Mortgagor has been given the opportunity to choose the carrier of the required title insurance. Additionally, such Title Policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interests therein. Seller (or Seller's correspondent, as the case may be) is the sole insured of the Title Policy, and such Title Policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated herein and in the Loan Purchase Agreement. No claims have been made under such Title Policy, the accuracy of any attorney's opinion of title has not been disputed, and no prior holder of the Mortgage, including Seller, has done, by act or omission, anything that would impair the coverage of such Title Policy or the accuracy of such attorney's opinion of title including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person and no such unlawful item has been received, retained or realized by the Seller. The attorney's opinion of title, if applicable, is in a form and substance acceptable to mortgage lending institutions making mortgage loans in reliance upon an attorney's opinion of title in the state in which the Mortgaged Property is located.-

For any Mortgage Loan not requiring Title Insurance in accordance with this Seller's Guide, the Seller has obtained, examined and considered the matters disclosed in a title report for the Mortgaged Property meeting the requirements of the Seller's Guide (the "Title Report"). The Title Report was prepared and issued by a title insurer acceptable to FNMA, FHLMC or Purchaser and qualified to do business in the jurisdiction where the Mortgaged Property is located. The Seller does not have actual knowledge of any material inaccuracy in the Title Report or of any lien, claim or encumbrance affecting the Mortgaged Property that is not disclosed by the Title Report (other than the lien of the Mortgage). The Seller's examination of the Title Report indicates that the Mortgage is a valid and perfected lien on the Mortgaged Property, is in the position identified by Seller and in accordance with the appropriate Program Profile, and is in the original principal amount of the Mortgage Loan (or to the extent that a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage), subject only to the exceptions contained in clauses (a), (b), (c) and (d) of paragraph (11) of this *Section 703*.

18. **No Defaults.** There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period,

CONFIDENTIAL    LEH-LFG_0003017

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration.

19. **No Mechanic's Lien.** There is no mechanic's or similar lien or claim that has been filed for work, labor or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage.

20. **Location of Improvements; No Encroachments.** All improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer). No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulations.

21. **Origination; Payment Terms.** The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan. The related Note is payable on the first day of each month in self-amortizing equal monthly installments of principal and interest, with interest calculated and payable in arrears, providing for full amortization or a balloon payment by maturity, over an original term of not more than thirty (30) years with the exception of interest-only Mortgage Loans outlined in the applicable product descriptions for which each interest-only Mortgage Loan is subject to an initial period of interest-only payments. There is no negative amortization. Further, for each Adjustable-Rate Mortgage Loan, effective with the first payment due after each related Interest Rate Change Date, the monthly payment for each Adjustable-Rate Mortgage Loan will be adjusted to an amount that will amortize fully the unpaid principal balance of the Mortgage Loan over its remaining term and pay interest at the interest rate so adjusted, with the exception of interest-only Adjustable-Rate Mortgage Loans outlined in the applicable product descriptions for which each interest-only Mortgage Loan is subject to an initial period of interest-only payments.

22. **Customary Provisions.** The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of Mortgage designated as a deed of trust, by trustee's sale; and (ii) otherwise, by non-judicial foreclosure, if applicable, and if not, by judicial foreclosure. To the extent permissible under applicable law, any homestead or other exemption available to a Mortgagor, which exemption would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage, has been waived by the Mortgagor or any other necessary party. Upon default by Mortgagor on a Mortgage Loan and foreclosure

CONFIDENTIAL

LEH-LFG_0003018

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

on, or trustee's sale of the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to deliver good and merchantable title to the Mortgaged Property.

23. **Documents.**  The Mortgage Loan has been originated using the forms and loan documents expressly permitted or approved by Purchaser.

24. **Occupancy Certifications.**  The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities.  The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable.

25. **No Additional Collateral.**  The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage, the existence of which has previously been disclosed to, and approved by, Purchaser in writing.

26. **Deeds of Trust.**  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

27. **Acceptable Investment.**  Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

28. **Condominium Units.**  As to each condominium unit located in a Condominium Project:

  a.  The Condominium Project has been created and is existing in full compliance with the requirements of the condominium enabling statute of the jurisdiction in which the Condominium Project is located, and with other applicable laws;
  b.  The condominium constituent documents contain customary and enforceable provision protecting the right of the mortgagee of each unit, as specified in the Seller's Guide;
  c.  Not more than six months of regular common expense assessments for the Condominium Unit (and no other condominium assessments) will have priority over the lien of the Mortgage; all taxes, assessments and charges that may become liens prior to the Mortgage under local law relate only to the individual Condominium Unit and not to the Condominium Project as a whole; the

CONFIDENTIAL
LEH-LFG_0003019

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Condominium Unit is not located in a jurisdiction that allows for more than six months of regular common expense assessments to have priority over the Mortgage;

d.  Any mortgagee who obtains title to a Condominium Unit pursuant to the remedies provided in the Mortgage or by foreclosure of the Mortgage will not be liable for any fees or charges related to the collection of unpaid assessments that accrued prior to the acquisition of title to the Condominium Unit by the mortgagee;

e.  The requisite percentage of the units in the Condominium Project specified in the Underwriting Guidelines have been sold and conveyed to bona fide purchasers who have Closed or who are legally obligated to Close; multiple purchases of Condominium Units by one owner were counted as one sale when counting the number of sales within a Condominium Project to determine if this sale requirement has been met; and

f.  Condominium dues or charges include an adequate reserve fund for maintenance, repairs or replacement of those common elements that must be replaced on a periodic basis, and are payable in regular installments rather than by special assessments.

29.  **Transfer of Mortgage Loans.**  The Assignment of Mortgage from Seller to Purchaser (or Purchaser's designee) is in recordable form and is acceptable for recording or filing under the laws of the jurisdiction in which the Mortgaged Property is located.

30.  **Due-on-Sale.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

31.  **No Graduated Payments or Contingent Interest.**  Unless otherwise provided for in the Seller's Guide, the Mortgage Loan is not a graduated payment mortgage loan; and the Mortgage Loan does not have a shared appreciation or other feature providing for contingent interest or contingent principal.

32.  **Mortgaged Property Undamaged; No Condemnation.**  The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado, or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended.  The Mortgaged Property is in good repair.  There are no condemnation proceedings by any federal, state or local authority pending or, to Seller's knowledge, threatened against the Mortgaged Property.

33.  **Servicing Practices; Escrow Deposits.**  The origination and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects legal and proper.  Unless otherwise prohibited by applicable law or as otherwise set forth within this Seller's Guide, the mortgage documents permit the establishment and maintenance of an escrow account, an escrow account has been established in an amount sufficient to

CONFIDENTIAL                                                                    LEH-LFG_0003020

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

pay for all taxes, governmental assessments, insurance premiums, leasehold payments, ground rents and other similar items as the same become due and payable, and all Escrow Payments have been collected in full compliance with state and federal law. With respect to escrow deposits and Escrow Payments, all such payments are in the possession of Seller and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due Seller have been capitalized under the Mortgage or the Mortgage Note. All Mortgage Loans delivered for purchase shall contain the HUD required Initial Escrow Account Disclosure Statement. Any interest required to be paid pursuant to state and local law has been properly paid and credited. All interest rate adjustments have been made in compliance with state and federal law.

34. **No Other Hazards.** No hazardous or toxic materials or wastes, or products regulated by any law or ordinance, or asbestos or asbestos products or materials, or polychlorinated biphenyls or urea formaldehyde insulation material (collectively, "hazardous material"), is present on, in, at or under any Mortgaged Property such that: (a) the value of such Mortgaged Property is materially and adversely affected, or (b) under applicable federal, state or local law: (i) such hazardous material would be required to be eliminated before such property could be altered, renovated, demolished or transferred or, (ii) the presence of such hazardous material would subject the owner of such property, or the holder of a security interest therein, to liability for the cost of eliminating such hazardous material or the hazard created thereby. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation containing a prerequisite to the use and enjoyment of said property.

35. **Supervision of Originator of Mortgage Loan.** The Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

36. **Real Estate Valuations.** Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property

CONFIDENTIAL

LEH-LFG_0003021

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

or in any loan made on the security thereof.  The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan.

37. **Bankruptcy or Insolvency.**   To the best of Seller's knowledge (or Seller's correspondent's knowledge, if applicable) Mortgagor is not a debtor in any state or federal bankruptcy proceeding.

38. **Delivery of Mortgage Documents.**   The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered for the Mortgage Loan by the Seller under this Seller's Guide have been or shall be delivered to Purchaser in accordance with the terms set forth in this Seller's Guide. The Seller is in possession of a complete, true and accurate Mortgage Loan file, except for such documents the originals of which have been delivered to Purchaser.

39. **Consolidation of Future Advances.**   Any future advances made prior to the Purchase Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having the appropriate lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA and FHLMC.  The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

40. **No Construction Loans.**   No Mortgage Loan was made in connection with the construction or rehabilitation of a Mortgaged Property.

41. **No Denial of Insurance.**   No action, inaction or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage.  In connection with the placement of any such insurance, no commission, fee or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance.

42. **Mortgagor Acknowledgment.**   The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans.  The Seller shall maintain such statement in the Mortgage Loan File.

43. **Regarding the Mortgagor.**  The Mortgagor is one or more natural persons and/or trustees for a Land Trust (aka Illinois land trust), a trustee under an Inter Vivos Revocable Trust (living trust), or a trustee under a Blind Trust and such trust is in compliance with the guidelines for such trusts as outlined in the Seller's Guide including but not limited to the policies contained within the following forms:

CONFIDENTIAL                                                                 LEH-LFG_0003022

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

    a. **Form 407 Inter Vivos Revocable Trust, Land Trust, Blind Trust – Trust Review**
    b. **Form 407-LivT, Inter Vivos Revocable Trust – Closing Document Review**
    c. **Form 407-LandT, Land Trust – Closing Document Review**
    d. **Form 407-BT, Blind Trust – Closing Document Review**

44. **Soldiers' and Sailors' Relief Act.** The Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Soldiers' and Sailors' Civil Act of 1940.

45. **Prepayment Charges.** If the Mortgage Loan provides for any prepayment penalty or charge (a "Prepayment Charge") to be paid by the Mortgagor in connection with any prepayment, such Prepayment Charge is enforceable and is in compliance with all applicable laws, rules and regulations. If the Mortgage Loan provides for a Prepayment Charge, Seller warrants that only one Prepayment Charge has been contracted for between Seller and Mortgagor, the Prepayment Charge has been fully disclosed to Mortgagor and to Purchaser, and the Prepayment Charge complies with all requirements of the related Program Profile applicable to the Mortgage Loan. Any Prepayment Charge contracted for between Seller and Mortgagor that is not fully disclosed to Purchaser shall not be enforced by Seller, and Seller will be liable to Purchaser for any damages incurred by Purchaser as a result of Seller's failure to disclose the existence of any prepayment provision, rider or addendum and/or the unenforceability of any Prepayment Charge related to the Mortgage Loan.

46. **Cooperative Loan.** As to each Cooperative Loan:

    a. Each Security Instrument is a valid, enforceable, and subsisting first security interest in the stock in the residential housing corporation and the Proprietary Lease that were pledged to secure the Cooperative Loan related thereto, and the related Cooperative Loan Property is free and clear of all encumbrances and liens having priority over the lien of the Security Instrument except for the lien of the residential housing corporation for amounts, if any, due under the Proprietary Lease. The cooperative housing corporation which is the owner of the Co-op Premises owns a good, marketable and insurable title to such premises free and clear of all liens or encumbrances not otherwise approved by Purchaser.

    b. All cooperative maintenance fees affecting the Cooperative Loan Property which are due and owing have been paid.

    c. Seller and the cooperative housing corporation have entered into a recognition agreement in a form satisfactory to Purchaser, which such agreement sets forth the specific rights of Seller and its successors (including Purchaser) and any successor servicer and the responsibilities of the cooperative housing corporation to Seller and its successors (including Purchaser) and any successor servicer.

    d. The stock that is pledged as security for the Cooperative Loan is held by a Person as a tenant-stockholder (as that term is defined in Section 216 of the Internal Revenue Code) in a cooperative housing corporation (as that term is defined by Section 216 of the Internal Revenue Code).

CONFIDENTIAL

LEH-LFG_0003023

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

e. No Borrower is in default under the related Proprietary Lease. Seller has not received any notice to cure maintenance defaults.

f. Each Co-op Premises related to a Cooperative Loan Property is located in a cooperative project that is acceptable to Purchaser. Each Cooperative Loan meets all of the eligibility requirements set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans and Seller has or will promptly deliver to Purchaser each of the Cooperative Loan documents set forth in the Seller's Guide (including, without limitation, the Cooperative Loan Program Profile) for Cooperative Loans.

47. **Section 32 Mortgage Loans; Predatory Lending Laws.** The Mortgage Loan is not a Section 32 Mortgage Loan nor is it a "high cost," "threshold," "covered" or "predatory" loan under any other applicable state, federal or local law; none of the proceeds of the Mortgage Loan were used to finance single-premium credit life insurance policies.

48. **High Cost Loan.** Mortgaged Loan is not a High Cost Loan as defined by the appropriate Program Profile.

## 704    EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default on the part of Seller under this Seller's Guide and under the Loan Purchase Agreement:

1. Any breach of any of the representations, warranties or covenants set forth in this Seller's Guide or the Loan Purchase Agreement, including, without limitation, the Eligibility Standards and the provisions of Section 7 hereof; or the failure of Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement; or

2. The occurrence of an act of insolvency or bankruptcy concerning Seller, including, without limitation: (i) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against Seller; or (ii) Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings of or relating to Seller, or of or relating to all or substantially all of its property or (iii) Seller shall admit in writing its inability to pay its debts generally as they become due, or Seller files a petition to take advantage of any applicable insolvency or reorganization statue, makes an assignment for the benefit of its creditors, or voluntarily suspends payment of its obligations; or

3. Seller fails to meet any capital, leverage or other financial standard imposed by any laws or applicable regulatory authority, or in Purchaser's sole discretion, any material adverse change occurs in the financial condition of the Seller, or Seller fails to meet any net worth or ownership requirements as may be set forth in this Seller's Guide; or

CONFIDENTIAL    LEH-LFG_0003024

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

4. Any Guarantor of Seller's obligations defaults under the terms of the Guaranty Agreement (including, without limitation, any default by Guarantor in maintaining any minimum Tangible Net Worth required under, and as defined in, such Guaranty Agreement), or becomes insolvent or bankruptcy, or a material adverse change occurs in the financial condition of such Guarantor; or Guarantor fails to meet any capital, leverage or other financial standard imposed by any applicable regulatory authority; or

5. Seller defaults under the terms of any other agreement to which Seller and Purchaser are parties.

## 705    RIGHT TO DEMAND REASONABLE ASSURANCES

If, at any time during the term of the Loan Purchase Agreement, Purchaser has reason to believe that Seller is not conducting its business in accordance with: (i) all applicable statutes, regulations, rules and notices of federal, state or local government agencies or instrumentalities; or (ii) all applicable requirements of Purchaser, as set forth in this Seller's Guide or the Loan Purchase Agreement, then, in either case, Purchaser shall have the right to demand, pursuant to written notice from Purchaser to Seller, reasonable assurances from Seller that such a belief is in fact unfounded, and any failure of Seller to provide such reasonable assurances within a time frame specified in such written notices shall itself constitute an Event of Default hereunder; provided, however, that, notwithstanding anything set forth in this Seller's Guide or the Loan Purchase Agreement to the contrary, and so long as no other Event of Default hereunder has occurred and is continuing, Purchaser shall only be entitled to exercise such remedies hereunder (with respect to an Event of Default under this Section) as may be necessary or appropriate for Purchaser to insulate itself from any potential harm or loss relating to or caused by the facts or circumstances giving rise to such Event of Default. Nothing in this Section 7 shall be deemed or construed to limit, waive or impair any of Purchaser's rights or remedies with respect to any Event of Default under any other Section of this Seller's Guide.

## 706    ADDITIONAL REMEDIES; SETOFF

Upon the occurrence of any Event of Default, without affecting any repurchase obligation of Seller, and in addition to whatever rights Purchaser may have under the Seller's Guide, Loan Purchase Agreement or at law to damages or in equity, including, without limitation, injunctive relief and specific performance, Purchaser, by notice in writing to Seller, may immediately suspend all Registrations and Commitments and refuse to fund any or all Mortgage Loans, pending the cure, to Purchaser's satisfaction if such Event of Default is, in Purchaser's judgment, susceptible to cure within thirty (30) calendar days after the date of such notice of an Event of Default; if any such Event of Default is not cured to Purchaser's satisfaction within such thirty (30) day period, Purchaser may, by written notice to Seller, immediately terminate any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide. Notwithstanding the foregoing, upon the occurrence of an Event of Default of the type set forth in *Section 704(2)* or *704(3),* any and all duties and obligations of Purchaser under the Loan Purchase Agreement and this Seller's Guide shall immediately and automatically terminate without notice to Seller or any opportunity to cure such defaults.

CONFIDENTIAL    LEH-LFG_0003025

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Upon the failure by Seller to perform any of its obligations under this Seller's Guide or the Loan Purchase Agreement, including without limitation the failure to pay any and all monies due Purchaser, in addition to all rights Purchaser may have under this Seller's Guide, the Loan Purchase Agreement or at law or in equity, Purchaser shall have the right to deduct any amount due to Purchaser from any amount due to Seller, whether under Section 601 or otherwise.

## 707    WAIVER OF DEFAULTS

Purchaser may waive any default by Seller in the performance of Seller's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by Purchaser in exercising or failure to exercise any right arising from such default affect or impair Purchaser's rights as to such default or any subsequent default.

## 708    TERMINATION WITHOUT CAUSE

In addition to the provisions set forth elsewhere herein or in the Loan Purchase Agreement for termination of this Seller's Guide and the Loan Purchase Agreement, this Seller's Guide and the Loan Purchase Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party. The effective date of termination must be specified in such notice and must be at least thirty (30) days after the date such written notice is sent.

## 709    EFFECT OF TERMINATION

Any termination of the Loan Purchase Agreement shall not affect Seller's obligations with respect to Mortgage Loans previously sold or delivered to Purchaser prior to the effective date of such termination. Provided that termination is without cause, as provided in the immediately preceding section and provided that no Event of Default on the part of Seller has occurred, termination of the Loan Purchase Agreement by Purchaser shall not apply to any Mortgage Loans that have been Registered with Purchaser by Seller before the effective date of such termination notice. If Purchaser terminates the Loan Purchase Agreement due to an Event of Default, Purchaser may refuse to Register or Fund any of all Mortgage Loans after the effective date of termination.

## 710    REPURCHASE OBLIGATION

In the event of a breach of any of the representations, warranties or covenants contained in *Section 700* through *710* herein, which breach materially and adversely affects the value of the Mortgage Loans or the interest of Purchaser, or materially and adversely affects the interest of Purchaser in the related Mortgage Loan, and unless Purchaser determines that such breach has been cured, or if a loan becomes an Early Payment Default in accordance with *Section 715* herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan (in the case of a breach of the representations, warranties or covenants contained in *Section 703* hereof or an Early Payment Default), or all Mortgage Loans (in the case of a breach of any of the representations, warranties or covenants contained in *Section 702* hereof), at the Repurchase Price. Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such

CONFIDENTIAL                                                    LEH-LFG_0003026

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

breach. Seller must notify Purchaser immediately upon Seller's knowledge of any breach of any representation, warranty or covenant.

Seller agrees to pay any and all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with any such repurchase, including, without limitation, Purchaser's reasonable attorney's fees.

Any such repurchase shall be accomplished by wire transfer from Seller to Purchaser of immediately available funds. Upon receipt by Purchaser of the Repurchase Price, Purchaser shall release to Seller the related Mortgage Loan Files and shall execute and deliver to Seller such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in Seller, or its designee, title to such repurchased Mortgage Loans. Seller shall assume the cost of recordation of assignments and other costs of transfer of any repurchased Mortgage Loans.

Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, with respect to each Mortgage Loan that is the subject of any breach of one or more representations, warranties or covenants specified in *Section 702* or *703* hereof, if Purchaser (or Purchaser's agent or affiliate, or any subsequent owner of the Mortgage Loan or such owner's agent or affiliate) has acquired title to the related Mortgaged Property through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy of the defaulted Mortgage Loan, then, within thirty (30) days after Purchaser's demand therefor, Seller shall, at Purchaser's option: (i) purchase the Mortgaged Property from Purchaser at a purchase price equal to the Repurchase Price; or (ii) if Purchaser has sold or otherwise disposed of the Mortgaged Property, indemnify Purchaser as specified in *Section 711* hereof. If Purchaser determines, for any reason, not to acquire title to the Mortgaged Property relating to the defaulted Mortgage Loan, Seller will nonetheless remain responsible to indemnify Purchaser, pursuant to *Section 711* hereof, with respect to any breach of *Section 702* or *703* hereof.

All of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of (i) the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy and (ii) any limitation or qualification of a representation or warranty as being made "to Seller's knowledge" or "to the best of Seller's knowledge" or any similar qualification relating to the knowledge of Seller. Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if Purchaser discovers a breach after the Mortgage Loan is liquidated in foreclosure.

## 711    INDEMNIFICATION AND THIRD PARTY CLAIMS

In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses

CONFIDENTIAL

LEH-LFG_0003027

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above. It is understood and agreed that any subsequent holder of any Note acquired hereunder by Purchaser shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. The indemnification obligations of Seller hereunder shall survive the termination of this Seller's Guide and the related Loan Purchase Agreement.

The Seller immediately shall notify the Purchaser if a claim is made by a third party with respect to this Seller's Guide, the Loan Purchase Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. The Purchaser promptly shall reimburse the Seller for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Seller's indemnification with respect to a breach by the Seller of any representation or warranty, or the failure of the Seller with respect to any of the Seller's obligations under this Seller's Guide or the Loan Purchase Agreement.

## 712    SURVIVAL OF REMEDIES

It is understood and agreed that Purchaser's remedies for breach of the representations, warranties or covenants set forth herein and/or in the Loan Purchase Agreement shall survive the sale and delivery of the related Mortgage Loan to Purchaser and Funding of the related Purchase Price by Purchaser, and will continue in full force and effect, notwithstanding any termination of this Seller's Guide and the related Loan Purchase Agreement, or any restrictive or qualified endorsement on any Note or Assignment of Mortgage or loan approval or other examination of or failure to examine any related Mortgage Loan File by Purchaser.

## 713    MISCELLANEOUS

### 713.1    GOVERNING LAW

The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

### 713.2    SEVERABILITY OF PROVISIONS

If any one or more of the covenants, agreements, provisions or terms of the Loan Purchase Agreement or this Seller's Guide shall be held invalid for any reason whatsoever, then any such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions and terms of the Loan Purchase Agreement or this Seller's Guide and shall in no way affect the validity or

CONFIDENTIAL                                        LEH-LFG_0003028

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

enforceability of the other provisions of the Loan Purchase Agreement of this Seller's Guide.

713.3    ASSIGNMENT

Purchaser shall have the right to assign its rights and duties under the Loan Purchase Agreement and this Seller's Guide to any party without the consent of Seller. Purchaser shall notify Seller in writing of any such assignment. Seller shall have no right to assign its rights or duties under the Loan Purchase Agreement or this Seller's Guide without Purchaser's prior written consent. Purchaser also may assign separately to any other party any or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide or Loan Purchase Agreement, along with any or all of Purchaser's remedies available against the Seller for Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies.    Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.

713.4    GOVERNING CONTRACT

In the case of any inconsistency between this Seller's Guide and the Loan Purchase Agreement, the terms of the Loan Purchase Agreement shall control. In the event of any conflict between the substantive provisions of the Underwriting Guidelines and the other substantive provisions of this Seller's Guide, such other provisions of the Seller's Guide shall control.

713.5    ENTIRE AGREEMENT; NO WAIVER

This Seller's Guide, the Loan Purchase Agreement, and/or the exhibits hereto and thereto contain the final and entire agreement between Purchaser and Seller with respect to the purchase and sale of the Mortgage Loans, and are intended to be an integration of all prior negotiations and understandings.  No waiver of any of the provisions of this Seller's Guide or Loan Purchase Agreement shall be valid unless the same is in writing and is signed by the party against which such waiver is sought to be enforced. Delay by Purchaser in exercising any right or remedy under this Seller's Guide, under the Loan Purchase Agreement, or otherwise provided by law shall not operate as a waiver or preclude the later exercise of that right or remedy.

713.6    NO PARTNERSHIP

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto. At no time shall Seller represent that it is acting as an agent for or on behalf of Purchaser. At all times Seller shall act as an independent contractor.

713.7    CONFIDENTIALITY

As a result of its relationship with Purchaser and access to the Loan Purchase Agreement, Seller will learn or have access to various trade secrets, confidential and proprietary methods, techniques, processes, applications, approaches and other information in various forms, which such information is used or useful in the conduct of Purchaser's business, including its origination, purchase, sale and servicing of mortgage products, collectively referred to as "Confidential Information". Seller acknowledges that such Confidential Information is the exclusive property of Purchaser. Seller shall not, at

CONFIDENTIAL    LEH-LFG_0003029

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

any time, regardless of if, when and how its relationship with Purchaser may terminate, directly or indirectly use, disclose, publish, reveal, copy, disseminate or otherwise make available such Confidential Information, other than as expressly set forth herein or in the Loan Purchase Agreement.

713.8    **NON-EXCLUSIVE RELATIONSHIP**

Notwithstanding anything set forth herein or elsewhere to the contrary, Seller acknowledges, understand and agrees that its relationship with Purchaser is on a non-exclusive basis and that Purchaser may, in its discretion, at any time or from time to time, and without any liability or obligation to Seller: (i) contract with, designate, authorize, constitute or appoint one or more entities other than Seller to originate, solicit, process, underwrite, close, fund, bill, sell and/or invest in loans of any type for funding by or sale to, or as agent for and on behalf of, Purchaser, all of which activity may occur in all or any portion of the geographic territory in which Seller originates loans; and/or (ii) either directly or indirectly compete with Seller, either for Purchaser's own account or as agent for and on behalf of another, in the solicitation, processing, underwriting, closing, funding, billing, selling of and/or investing in loans in such geographic territory.

## 714    SOLICITATION FOR REFINANCING

During the remaining term of any Mortgage Loan purchased by Purchaser, neither Seller, nor any affiliate of Seller shall take any action personally, by telephone, mail or otherwise, to solicit the prepayment of Mortgage Loans, in whole or in part, without the prior written consent and approval of Purchaser. It is understood and agreed that promotions undertaken by the Seller or any Affiliate of Seller which are directed to the general public at large, including mass mailings based on commercially acquired mailing lists, newspaper, radio and television advertisements, shall not constitute solicitation under this Section.

## 715    EARLY PAYMENT DEFAULT

Early Payment Default loans are subject to repurchase by the Seller at the Repurchase Price in accordance with *Section 710* herein.

For Mortgage Loans prior-approved by Purchaser (i.e as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.

For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

Delegated Underwriting Authority applies to all loans *eligible* for a delegated underwriting decision by Seller, whether or not Purchaser elects to underwrite the loan prior to Purchase.

For Mortgage Loans delivered pursuant to Bulk Transactions, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

CONFIDENTIAL                                                                                    LEH-LFG_0003030

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## 716    EARLY PAYOFF

If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse Purchaser that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the Date of the payment in full and net of potential prepayment charges on loans that contain a valid prepayment penalty provision in effect during the Early Payoff Period.

## 717    DELEGATED UNDERWRITING

Unless otherwise indicated within this Seller's Guide, Sellers must have written authorization from Purchaser to utilize Delegated Underwriting Authority. Upon authorization to utilize delegated authority, Seller represents and warrants as of the Purchase Date of each Mortgage Loan delivered pursuant to Seller's Delegated Underwriting Authority, in addition to the other representations and warranties contained within this Section 7, the following:

1.  All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

2.  Seller shall not represent to any entity, person or party that it is acting as an agent for, or on behalf of, Purchaser. Nothing in this Seller's Guide shall be construed to create any agency, partnership or joint venture between Seller and Purchaser for any purpose.

3.  Seller agrees to perform all underwriting functions with the same care and diligence as an experienced, prudent underwriter performing such duties in the industry with respect to similar mortgage loan products and, in any event, with no less care and diligence than if it were underwriting Mortgage Loans for its own account.

4.  Seller agrees that it shall maintain an experienced, qualified and approved underwriting staff and shall cause such staff to perform all underwriting functions to be performed by Seller in compliance with the requirements of the Seller's Guide and all modifications thereto.  Seller shall cause the actual underwriting decisions and evaluations made during the underwriting process to be done only by employees of Seller who are qualified to make, and have substantial experience making, such decisions.  All Mortgage Loans delivered to Purchaser pursuant to Purchaser's Delegated Underwriting Authority have been underwritten by Seller directly and not by any third party underwriter, unless such third party underwriter has been specifically approved in writing by Purchaser.

5.  It is Seller's responsibility to insure that (i) Seller and its underwriters at all times maintain and use complete, up-to-date versions of the Seller's Guide, including all updates, bulletins, announcements, memorandums, and product descriptions and (ii) all of its employees performing underwriting duties and functions remain informed and knowledgeable regarding such guidelines and all requirements of the Seller's Guide.

CONFIDENTIAL

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

6. Seller shall be responsible for approving only marketable Mortgage Loans and shall document its underwriting of each and every loan in a manner that justifies and supports such approval and marketability on the secondary mortgage market.

7. Seller must include in each submission all underwriting worksheets and written comments from the underwriter in regard to the final loan decision in addition to any forms or documentation required by the Seller's Guide.

8. Seller further agrees to maintain sufficient quality control guidelines to insure that all of the above requirements are carried forth. Seller agrees to provide Purchaser full access to its quality control procedures and to keep Purchaser apprised as to such procedures and policies.

9. Purchaser shall have the right to perform pre-purchase and post-purchase reviews of all Mortgage Loans and to request any additional documentation to ensure compliance with Purchaser's guidelines. Purchaser reserves the right to refuse purchase or to require repurchase of Mortgage Loans that do not meet Purchaser's guidelines, determined at Purchaser's sole discretion.

10. Seller's delegated authority may be terminated upon written notice. Termination shall be effective as to all Mortgage Loans submitted to Purchaser on or after such notice of termination.

11. Seller represents and warrants that any Mortgage Loan submitted under this Delegated Underwriting Authority was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

Seller acknowledges that failure of Purchaser to review or discover any deficiency or error in the Mortgage Loan at time of Purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies.

## 718    AUTOMATED UNDERWRITING

All Loans submitted by Seller for Purchase by Purchaser that have been underwritten through Purchaser approved automated underwriting system shall meet the requirements specified within the Seller's Guide. Further, Seller represents and warrants that:

1. Seller is registered with the provider of the automated underwriting system and is a valid licensee of the automated underwriting system;

2. The Mortgage Loan received a recommendation/disposition from the automated underwriting system that is acceptable to Purchaser;

3. Any verification messages or approval conditions specified in the findings of the automated underwriting system were satisfactorily resolved before the Mortgage Loan is closed;

CONFIDENTIAL                                                                                LEH-LFG_0003032

Section 7
## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

4. The terms of the closed loan and the underwriting information in the Mortgage File both match the data on which the automated underwriting system's recommendations and findings were based.

Seller shall be deemed to make the following representation and warranty to Purchaser as of the related Funding Date. All data pertaining to the Mortgage Loan submitted to the applicable automated underwriting system was true, complete and accurate as of the date when entered and as of the closing date of the Mortgage Loan; verification of all such data is included in the Mortgage Loan File delivered to Purchaser and such verification complies with the requirements of the Seller's Guide; Seller has taken all appropriate action to satisfactorily resolve and comply with any verification messages/approval conditions produced by the automated underwriting system prior to closing the Mortgage Loan and documentation of such resolution is provided in the delivered loan file. This representation and warranty is made in addition to, and not in lieu of, any or all of the other representations and warranties contained elsewhere in the Seller's Guide or Loan Purchase Agreement.

Seller acknowledges that (i) in the event of a discrepancy between the data validated by Purchaser's review of the file and the data entered in the automated underwriting system by Seller, the findings of the automated underwriting system shall be considered null and void and Purchaser shall have no obligation to purchase/fund the loan, and (ii) failure of Purchaser to review or discover any deficiency or error in the Mortgage Loans(s) at the time of purchase by Purchaser will neither release Seller from its obligations to provide any required documentation or correct any errors, nor will it prevent or inhibit Purchaser's exercise of any of its remedies hereunder, including Mortgage Loan Repurchase in accordance with *Section 710* herein.

CONFIDENTIAL

LEH-LFG_0003033

# EXHIBIT "E"

7/5/2017

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 72 of 90
Consumer Access - Individual

# NMLS consumer access

## Travis Paul Schmidt

NMLS ID: 795903        Phone: 602-312-4032        Fax: 623-748-6582

Other Names : Travis Schmidt        Prior Other Names : None        Prior Legal Names : Travis P. Schmidt

Regulatory Actions : None posted in NMLS.

### Employment

Authorized to Represent : Movement Mortgage, LLC (39179)        Engaged in other businesses : No

| From | To | Employer | Position | City | State | Zip Code | Financial Services |
|---|---|---|---|---|---|---|---|
| 10/2013 | Present | Movement Mortgage, LLC | Mortgage Loan Originator | Scottsdale | AZ | 85260 | Yes |
| 01/2012 | 10/2013 | LHM FINANCIAL CORPORATION | Loan Officer Assistant | Scottsdale | AZ | 85254 | Yes |
| 07/2011 | 01/2012 | JPMorgan Chase Bank, National Association | N/A | Scottsdale | AZ | 85260 | Yes |
| 03/2011 | 07/2011 | Digital Media Communications | Sales Rep | Phoenix | AZ | 85018 | No |
| 03/2008 | 03/2011 | Remington Capital Inc. | Account Executive | Scottsdale | AZ | 85260 | Yes |
| 11/2005 | 03/2008 | Guild Mortgage | Mortgage Loan Originator | Phoenix | AZ | 85020 | Yes |
| 05/2001 | 11/2005 | The French Quarry | Office Assistant | Phoenix | AZ | 85050 | No |

### Office Locations

| Company | NMLS ID | Type | Street Address | City | State | Zip Code | Start Date |
|---|---|---|---|---|---|---|---|
| Movement Mortgage, LLC | 1564628 | Branch | 10601 N. Hayden Rd | Scottsdale | AZ | 85260 | 12/06/2016 |

### State Licenses/Registrations (Displaying 1 Active of 1 Total)

| Regulator | Lic/Reg Name | | Authorized to Conduct Business | Consumer Complaint |
|---|---|---|---|---|
| **Arizona** | Loan Originator License | | Yes | **Submit to Regulator** |

Lic/Reg #: 0920131    Original Issue Date : 03/02/2012

Status : Approved    Status Date: 04/08/2016    Renewed Through : 2017

Currently Authorized to Represent

Company: **Movement Mortgage, LLC ›**
NMLS ID: 39179
Start Date: 11/05/2013

Hide Previously Authorized to Represent

Company: **Guardian Mortgage Company, Inc. ›**
NMLS ID: 133751
Start Date:03/31/2016
End Date: 04/07/2016

Company: **LHM FINANCIAL CORPORATION ›**
NMLS ID: 148530
Start Date:03/01/2012
End Date: 11/05/2013

| Start | End | Authorized to Conduct Business |
|---|---|---|
| 11/6/2013 | Present | Yes |
| 11/5/2013 | 11/5/2013 | No |
| 3/2/2012 | 11/4/2013 | Yes |

Regulatory Actions

While some state and federal agencies may add actions taken in previous years against a licensee, the majority are adding only new actions from 2012 or later. To view complete information regarding regulatory actions posted by the agency, click any regulator link.

No regulatory actions have been posted in NMLS.

Information made available through NMLS Consumer Access℠ is derived from NMLS **(Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry)**, the financial services industry's online registration and licensing database. NMLS was created by the **Conference of State Bank Supervisors (CSBS)** and the **American Association of Residential Mortgage Regulators (AARMR)** and is owned and operated by the **State Regulatory Registry LLC (SRR)**, a wholly owned subsidiary of CSBS. For more information about the System, please visit the NMLS Resource Center or the NMLS Federal Registry Resource Center websites. | **Download PDF Reader**

# EXHIBIT "F"

7/5/2017

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Consumer Access - Individual
Exhibits A through I    Pg 75 of 90

# NMLS consumer access

# CHEYNE RICHARD JONES

NMLS ID: 210685        Phone: 602-743-0962        Fax: 602-748-4913

Other Names : Cheyne O Jones        Prior Other Names : None        Prior Legal Names : CHEYNE R JONES

Regulatory Actions : None posted in NMLS.

## Employment

Authorized to Represent : Movement Mortgage, LLC (39179)        Engaged in other businesses : No

| From | To | Employer | Position | City | State | Zip Code | Financial Services |
|------|-----|----------|----------|------|-------|----------|--------------------|
| 11/2016 | Present | Movement Mortgage, LLC | Loan Officer | Glendale | AZ | 85308 | Yes |
| 11/2013 | 11/2016 | Movement Mortgage, LLC | Branch Manager | Tempe | AZ | 85283 | Yes |
| 11/2009 | 11/2013 | LHM FINANCIAL CORPORATION | LOAN OFFICER | SCOTTSDALE | AZ | 85254 | Yes |
| 11/2008 | 10/2009 | SECURITY MORTGAGE CORP | LOAN OFFICER | SCOTTSDALE | AZ | 85254 | Yes |
| 03/2005 | 10/2008 | GUILD MORTGAGE COMPANY | LOAN OFFICER | PHOENIX | AZ | 85020 | Yes |
| 08/2004 | 02/2005 | 3 POINT MOTORSPORTS | OWNER | PHOENIX | AZ | 85020 | No |
| 09/2004 | 02/2005 | LIFETIME FITNESS | MEMBERSHIP SALES | TEMPE | AZ | 85284 | No |
| 07/2003 | 07/2004 | 24 HOUR FITNESS | ASST GENERAL MANAGER | PHOENIX | AZ | 85018 | No |
| 06/2002 | 06/2003 | PROFESSIONAL ATHLETE/UNEMPLOYED | TRACK & FIELD | IMPERIAL BEACH | CA | 91932 | No |
| 08/1997 | 05/2002 | FULL-TIME STUDENT | FULL-TIME STUDENT | IMPERIAL BEACH | CA | 91932 | No |

## Office Locations

| Company | NMLS ID | Type | Street Address | City | State | Zip Code | Start Date |
|---------|---------|------|----------------|------|-------|----------|------------|
| Movement Mortgage, LLC | 1553156 | Branch | 20241 N 67th Avenue Suite A-1 | Glendale | AZ | 85308 | 11/08/2016 |

## State Licenses/Registrations  (Displaying 3 Active of 3 Total)

| Regulator | Lic/Reg Name | Authorized to Conduct Business | Consumer Complaint |
|-----------|--------------|--------------------------------|--------------------|
| **Arizona** | Loan Originator License | Yes | **Submit to Regulator** |

Lic/Reg #: 0912681        Original Issue Date : 04/23/2010

Status : Approved        Status Date: 10/26/2016        Renewed Through : 2017

Currently Authorized to Represent

Company: **Movement Mortgage, LLC** ›
NMLS ID:  39179
Start Date: 11/25/2013

View Previously Authorized to Represent

| | | | |
|--|--|--|--|
| **California - DBO** | Mortgage Loan Originator License | Yes | **Submit to Regulator** |

Lic/Reg #: CA-DOC210685        Original Issue Date : 07/19/2010

Status : Approved        Status Date: 11/25/2014        Renewed Through : 2017

Currently Authorized to Represent

Company: **Movement Mortgage, LLC** ›
NMLS ID:  39179

7/5/2017

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit
Exhibits A through I    Pg 76 of 90
Consumer Access - Individual

Start Date: 12/05/2013

View Previously Authorized to Represent

| | | | |
|---|---|---|---|
| **Texas - SML** | Mortgage Loan Originator | Yes | **Submit to Regulator** |

Lic/Reg #: None    Original Issue Date : 03/29/2016

Status : Approved    Status Date: 03/29/2016    Renewed Through : 2017

Currently Authorized to Represent

Company: **Movement Mortgage, LLC** ›
NMLS ID:   39179
Start Date: 03/29/2016

View Previously Authorized to Represent

Regulatory Actions    While some state and federal agencies may add actions taken in previous years against a licensee, the majority are adding only new actions from 2012 or later. To view complete information regarding regulatory actions posted by the agency, click any regulator link.

No regulatory actions have been posted in NMLS.

Information made available through NMLS Consumer Access℠ is derived from NMLS **(Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry)**, the financial services industry's online registration and licensing database. NMLS was created by the **Conference of State Bank Supervisors (CSBS)** and the **American Association of Residential Mortgage Regulators (AARMR)** and is owned and operated by the **State Regulatory Registry LLC (SRR)**, a wholly owned subsidiary of CSBS. For more information about the System, please visit the **NMLS Resource Center** or the **NMLS Federal Registry Resource Center** websites. | **Download PDF Reader**

# EXHIBIT "G"

7/5/2017                                          Consumer Access - Individual

# NMLS consumer access

## Janae Marie Smith

NMLS ID: 493383        Phone: 425-629-1221        Fax: Not provided

Other Names : None        Prior Other Names : None        Prior Legal Names : None

Regulatory Actions  : None posted in NMLS.

### Employment

Authorized to Represent : None                                          Engaged in other businesses : No

| From | To | Employer | Position | City | State | Zip Code | Financial Services |
|------|------|----------|----------|------|-------|----------|--------------------|
| 07/2014 | Present | SecurityNational Mortgage Company | LO | Kirkland | WA | 98033 | Yes |
| 05/2014 | 07/2014 | SecurityNational Mortgage Company | Loan Originator | Bellevue | WA | 98005 | Yes |
| 10/2013 | 05/2014 | Bay Equity | Branch Operations Manager | Bellevue | WA | 98005 | Yes |
| 05/2011 | 10/2013 | Sound Mortgage, Inc | Operations Manager | Kirkland | WA | 98033 | Yes |
| 09/2002 | 05/2011 | Guild Mortgage Company, Inc | Processor | Kirkland | WA | 98033 | Yes |
| 06/2002 | 09/2002 | Homemaking | Homemaking | Eugene | OR | 97402 | No |
| 01/2000 | 06/2002 | Umpqua Bank | Bank Teller | Eugene | OR | 97401 | Yes |

### Office Locations

| Company | NMLS ID | Type | Street Address | City | State | Zip Code | Start Date |
|---------|---------|------|----------------|------|-------|----------|------------|
| None | | | | | | | |

### State Licenses/Registrations  (Displaying 0 Active, 1 Inactive of 1 Total)

| Regulator | Lic/Reg Name | Authorized to Conduct Business | Consumer Complaint |
|-----------|--------------|-------------------------------|--------------------|
| **Washington** | Mortgage Loan Originator License | No | **Submit to Regulator** |

    Lic/Reg #: MLO-493383      Original Issue Date : 05/20/2011

    Status : Approved-Inactive      Status Date: 06/07/2017      Renewed Through : 2017

Currently Authorized to Represent

None

    Hide Previously Authorized to Represent

| Company: **Bay Equity LLC** › | Company: **SecurityNational Mortgage Company** › | Company: **Sound Mortgage, Inc.** › |
|---|---|---|
| NMLS ID:  76988 | NMLS ID:  3116 | NMLS ID:  38439 |
| Start Date:10/14/2013 | Start Date:05/20/2014 | Start Date:06/08/2011 |
| End Date: 05/19/2014 | End Date: 06/07/2017 | End Date: 10/11/2013 |

| Start | End | Authorized to Conduct Business |
|-------|-----|-------------------------------|
| 6/8/2017 | Not Currently Authorized | No |
| 6/8/2011 | 6/7/2017 | Yes |

Regulatory Actions        While some state and federal agencies may add actions taken in previous years against a licensee, the majority are adding only new actions from 2012 or later. To view complete information regarding regulatory actions posted by the agency, click any regulator link.

No regulatory actions have been posted in NMLS.

Information made available through NMLS Consumer Access[SM] is derived from NMLS **(Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry),** the financial services industry's online registration and licensing database. NMLS was created by the **Conference of State Bank Supervisors (CSBS)** and the **American Association of Residential Mortgage Regulators (AARMR)** and is owned and operated by the **State Regulatory Registry LLC (SRR),** a wholly owned subsidiary of CSBS. For more information about the System, please visit the NMLS Resource Center or the NMLS Federal Registry Resource Center websites. | **Download PDF Reader**

**EXHIBIT "H"**

 **consumer access**

## Jeff Hase

NMLS ID: 424393   Phone: 907-257-1691   Fax: 907-222-5716

Other Names : Jeffrey David Hase   Prior Other Names : None   Prior Legal Names : None

Self-reported Disciplinary Actions : None posted in NMLS.

### Employment

Authorized to Represent : Denali Federal Credit Union (403077)   Engaged in other businesses : N/A

| From | To | Employer | Position | City | State | Zip Code | Financial Services |
|------|-----|----------|----------|------|-------|----------|-------------------|
| 09/2009 | Present | Denali Federal Credit Union | N/A | Anchorage | AK | 99503 | Yes |
| 01/2007 | 09/2009 | Bank of America/Countrywide Bank FSB | N/A | Anchorage | AK | 99503 | Yes |
| 01/2004 | 01/2007 | Liberty Financial Group | N/A | Anchorage | AK | 99517 | Yes |

### Office Locations

| Company | NMLS ID | Type | Street Address | City | State | Zip Code | Start Date |
|---------|---------|------|----------------|------|-------|----------|-----------|
| Denali Federal Credit Union | 403077 | Main | 471 W. 36th Avenue Suite 110 | Anchorage | AK | 99503 | 09/15/2009 |

### Federal Registration

| Registration Name | Status | Authorized to Conduct Business | Currently Authorized to Represent |
|-------------------|--------|-------------------------------|-----------------------------------|
| Federal Mortgage Loan Originator | Active | Yes | Denali Federal Credit Union |

Self-reported Disciplinary Actions   For federal registration purposes, individuals are required by Federal law to disclose information regarding certain matters, including certain criminal convictions, such as those involving dishonesty, certain regulatory actions, and certain civil judicial or litigation actions related to financial services. This information is self-reported by the individual and has not necessarily been verified by any regulatory agency. If no information is displayed below, the individual has not disclosed any such information.

No disciplinary actions have been posted in NMLS.

Information made available through NMLS Consumer Access℠ is derived from NMLS (Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry), the financial services industry's online registration and licensing database. NMLS was created by the Conference of State Bank Supervisors (CSBS) and the American Association of Residential Mortgage Regulators (AARMR) and is owned and operated by the State Regulatory Registry LLC (SRR), a wholly owned subsidiary of CSBS. For more information about the System, please visit the NMLS Resource Center or the NMLS Federal Registry Resource Center websites. | Download PDF Reader

# EXHIBIT "I"



## Guild Mortgage Company

NMLS ID: 3274     Street Address: 5898 Copley Drive            Phone: 858-560-6330    Website: www.guildcorrespondent.com,
                                Suite 300, 400 & 500      Toll-Free Number: 800-688-7880                 www.guildfisconsumer.com,
                                San Diego, CA 92111                                                      www.guildfismember.com, www.guildfismutual.com,
                 Mailing Address: PO Box 85304                   Fax: 858-627-3678                        www.guildmortgage.com
                                Attn: Compliance
                                San Diego, CA 92186                                           Email: compliance@guildmortgage.net

### Branch Locations   [Filter by Licensed State...▼]  [Filter by Location...▼]  ☐ Include Inactive Locations

| Street Address | City | State | Zip Code | Other Trade Names | NMLS ID | States Licensed In |
|---|---|---|---|---|---|---|
| 11075 Retreat Circle | Anchorage | AK | 99515 | None | 1169376 | 1... |
| 728 Gaffney Rd, Ste 100 | Fairbanks | AK | 99701 | None | 1510837 | 1... |
| 748 Gaffney Road, Suite 206 | Fairbanks | AK | 99701 | None | 1230912 | 1... |
| 71 Saint Nicholas Drive | North Pole | AK | 99705 | None | 928701 | 1... |
| 2331 Rainbow Drive, Space A | Gadsden | AL | 35901 | None | 1308123 | 1... |
| 6719 Taylor Circle | Montgomery | AL | 36117 | None | 1566723 | 1... |
| 2700 Hwy 280, Suite 180 | Mountain Brook | AL | 35223-2470 | None | 1566460 | 1... |
| 1225 Snow St, Ste 20 | Oxford | AL | 36203 | None | 1610760 | 1... |
| 705 McQueen Smith Rd S. | Prattville | AL | 36066 | None | 1570020 | 1... |
| 400 Harrison St. | Batesville | AR | 72501 | None | 1501639 | 1... |
| 816 N. Main Street, Suite D | Harrison | AR | 72601 | None | 1163356 | 2... |
| 1219 Commerce Dr, #3 | Mountain Home | AR | 72653 | None | 1598042 | 2... |
| 1217 W. Court St. | Paragould | AR | 72450 | None | 1328476 | 1... |
| 688 W. 4th St, Suite G | Benson | AZ | 85602 | None | 1536488 | 1... |
| 2 Main Street, Space C | Bisbee | AZ | 85603 | None | 1245653 | 1... |
| 13634 E. Williams Field Rd, #04 | Gilbert | AZ | 85295 | None | 156364 | 1... |
| 5331 South Superstition Mountain Rd., Ste C105, C106 | Gold Canyon | AZ | 85118 | None | 947387 | 2... |
| 316 W. White Mountain Blvd, Suite C | Lakeside | AZ | 85929 | The Sanders Brown Team | 156366 | 1... |
| 4111 E. Valley Auto Drive, Suite 106 | Mesa | AZ | 85206 | None | 1197074 | 2... |
| 2231 E. Camelback Rd, Suite 205 | Phoenix | AZ | 85016 | Miltenberger Team; The Lizy Hoeffer Team; Weston Team | 38110 | 1... |
| 7720 North 16th St, Suite 325 | Phoenix | AZ | 85020 | None | 1230617 | 3... |
| 678 E. Thunderbird Road | Phoenix | AZ | 85022 | None | 1379352 | 1... |
| 201 N. Montezuma, Suite 300 | Prescott | AZ | 86301 | The Collette Team; The Riggs Team | 1632286 | 2... |
| 7975 N. Hayden Rd, Suite C-101 | Scottsdale | AZ | 85258-3246 | None | 1368904 | 1... |
| 14350 N. 87th Street, Suite 135 | Scottsdale | AZ | 85260 | None | 689788 | 3... |
| 8360 E. Raintree Dr, #205 | Scottsdale | AZ | 85260 | None | 1467690 | 2... |
| 2151 S. Highway 92, Suite 118 | Sierra Vista | AZ | 85635 | None | 1062770 | 2... |
| 15331 W. Bell Rd, Suite 212, Unit 27 | Surprise | AZ | 85374 | None | 1504562 | 2... |
| 2151 E. Broadway Road, # 204 | Tempe | AZ | 85282 | None | 992985 | 2... |
| 2151 East Broadway Rd, Suite 111 | Tempe | AZ | 85282 | None | 1230629 | 2... |
| 7440 N ORACLE ROAD, BLDG 6 | Tucson | AZ | 85704 | None | 775344 | 2... |
| 3108 N. Swan Road | Tucson | AZ | 85712 | None | 156371 | 2... |

16-01019-scc    Doc 461-1    Filed 08/07/17    Entered 08/07/17 17:38:34    Exhibit Page 2 of 8
Consumer Access - Company Branches
Exhibits A through I    Pg 84 of 90

| | | | | | | |
|---|---|---|---|---|---|---|
| 1825 E. River Road, Suite 201 | Tucson | AZ | 85718 | None | 993161 | 2... |
| 360 W. 20th Street, Suite A & B | Yuma | AZ | 85364 | None | 691197 | 2... |
| 8141 E. Kaiser Blvd, Suite 311 | Anaheim Hills | CA | 92808 | None | 1509819 | 1... |
| 5091 Lone Tree Way | Antioch | CA | 94513 | None | 1414651 | 1... |
| 5829 Lone Tree Way, Suite D | Antioch | CA | 94531 | None | 1190807 | 1... |
| 5119 Lone Tree Way | Antioch | CA | 94531 | None | 1414643 | 1... |
| 5558 CALIFORNIA AVE #140 | BAKERSFIELD | CA | 93309-0710 | None | 339311 | 1... |
| 3400 Panama Lane, Suite J | Bakersfield | CA | 93313 | None | 1451418 | 1... |
| 84869 Highway 70 | Beckwourth | CA | 96129 | None | 1603088 | 1... |
| 471 West Lambert Road, Suite 101, 103 | Brea | CA | 92821-3921 | None | 328379 | 1... |
| 651 First Street | Brentwood | CA | 94513 | None | 1191101 | 1... |
| 812 First Street, Suite B | Brentwood | CA | 94513 | None | 1414654 | 1... |
| 2455 Sand Creek Rd, Suite 104 | Brentwood | CA | 94513 | None | 1190913 | 1... |
| 333 H STREET, STE 2010 | CHULA VISTA | CA | 91910 | None | 156378 | 3... |
| 1690 Ventura Blvd., | Camarillo | CA | 93010 | None | 1574220 | 1... |
| 1903 Wright Place, Suite 180 | Carlsbad | CA | 92008 | None | 887545 | 3... |
| 2653 Gateway Road, Suite 102 | Carlsbad | CA | 92009 | None | 1336684 | 1... |
| 2011 Palomar Airport Rd, Suite 304 | Carlsbad | CA | 92011 | Comstock Mortgage | 1202120 | 2... |
| Junipero between 5th & 6th Street | Carmel-by-the Sea | CA | 93291 | None | 1239100 | 1... |
| 8300 Stewart and Gray Road | Cerritos | CA | 90241 | None | 1254930 | 1... |
| 17785 Center Court Dr, #640 | Cerritos | CA | 90703 | None | 814495 | 1... |
| 2615 Forest Ave, Ste 160 | Chico | CA | 95928 | None | 1482781 | 1... |
| 120 Amber Grove Dr, Ste 124 | Chico | CA | 95973 | None | 1336681 | 1... |
| 404 Second Street | Davis | CA | 95616 | Comstock Mortgage | 1229668 | 1... |
| 1540 Discovery Bay Blvd, Suite B | Discovery Bay | CA | 94505 | None | 1191573 | 1... |
| 1671 W. Main Street, Suite D | El Centro | CA | 92243 | None | 240887 | 1... |
| 9261 Laguna Springs Drive, Suite 150 | Elk Grove | CA | 95758 | Comstock Mortgage | 1229602 | 1... |
| 15760 Ventura Blvd, Ste 700 | Encino | CA | 91436 | None | 1449808 | 2... |
| 613 West Valley Parkway, #310 | Escondido | CA | 92025 | None | 240819 | 1... |
| 428 1st Street | Eureka | CA | 95501 | None | 1399857 | 1... |
| 2365 Iron Point Road, Suite 230 | Folsom | CA | 95630 | Comstock Mortgage | 1229612 | 2... |
| 7108 N. Fresno, Suite 190 | Fresno | CA | 93720 | None | 1312447 | 1... |
| 132 East Main St. | Grass Valley | CA | 95945 | Comstock Mortgage | 1229615 | 2... |
| 1201 Vine St, Suite 102 | Healdsburg | CA | 95448 | None | 1244149 | 1... |
| 7777 CENTER AVENUE, Suite 430 | Huntington Beach | CA | 92647 | None | 240859 | 1... |
| 830 West Avenue L, Suite 133 & 135 | LANCASTER | CA | 93534 | None | 239408 | 1... |
| 2600 Kitty Hawk Road, Suite 101 | Livermore | CA | 94551 | None | 1088779 | 1... |
| 879 West 190th Street, Suite 1150 | Los Angeles | CA | 90248 | None | 1379319 | 1... |
| 2937 Veneman Ave, Suite B100 | Modesto | CA | 95356 | None | 1333954 | 1... |
| 501 Vineyard Town Center | Morgan Hill | CA | 95037 | None | 1239086 | 1... |
| 17200 Monterey Street, Suite b | Morgan Hill | CA | 95037 | None | 1239094 | 1... |
| 350 Woodview Avenue, Suite 300 | Morgan Hill | CA | 95037 | None | 38480 | 1... |
| 3186 Vista Way, #300 | Oceanside | CA | 92056 | None | 1635091 | 1... |
| 109 N. Blanche Street | Ojai | CA | 93023 | None | 872890 | 1... |
| 2831 N. Ventura Road | Oxnard | CA | 93036 | None | 872891 | 1... |
| 1000 Town Center Drive, Suite 520,550 | Oxnard | CA | 93036 | None | 240753 | 1... |
| 310 James Way, Suite 280 | Pismo Beach | CA | 93449 | None | 619452 | 1... |
| 7901 Stoneridge Drive, Suite 507 | Pleasanton | CA | 94588 | None | 1433650 | 1... |
| 40 Hilltop Drive, Suite C | Redding | CA | 96003 | None | 1359901 | 1... |

| Address | City | State | Zip | Company | Number | |
|---|---|---|---|---|---|---|
| 509 W Ward Ave, Ste C | Ridgecrest | CA | 93555 | None | 239669 | 1... |
| 2240 Douglas Blvd, Suite 200 | Roseville | CA | 95661 | Comstock Mortgage | 1229641 | 4... |
| 1545 River Park Dr, Suite 300 | Sacramento | CA | 95815 | None | 1528503 | 1... |
| 4211 Freeport Blvd | Sacramento | CA | 95822 | Comstock Mortgage | 1229667 | 1... |
| 2250 Del Paso Road, Suite A | Sacramento | CA | 95834 | Comstock Mortgage | 1229657 | 1... |
| 3626 Fair Oaks Blvd, Ste 100, 200, 300 | Sacramento | CA | 95864 | Comstock Mortgage | 1229663 | 4... |
| 5887 Copley Dr, 4th, 5th Floor | San Diego | CA | 92111 | Idaho Mortgage Lending | 1492888 | 28... |
| 6333 Greenwich Dr, Suite 210, 250, 260, 265 | San Diego | CA | 92122 | None | 1025983 | 34... |
| 5075 Shoreham Place, Ste 260 | San Diego | CA | 92122 | San Diego Mortgage Network | 156359 | 1... |
| 6333 Greenwich Dr, Suite 200, 201 | San Diego | CA | 92122 | None | 959528 | 16... |
| 5675 Ruffin Road, Suite 110 | San Diego | CA | 92123 | None | 928109 | 2... |
| 32122 Camino Capistrano, Ste 200 | San Juan Capistrano | CA | 92675 | None | 1226055 | 2... |
| 2236 S. BROADWAY, SUITE A,B, D | Santa Maria | CA | 93454 | None | 240857 | 1... |
| 2197 Lake Tahoe Blvd, Suite 2 | South Lake Tahoe | CA | 96150 | Comstock Mortgage | 1235605 | 2... |
| 1108 Sartori Ave, Suite 200 | Torrance | CA | 90501 | None | 240077 | 1... |
| 11050 Pioneer Trail, Suite 201 | Truckee | CA | 98161 | None | 1314006 | 2... |
| 2853 Geer Road, Suite B | Turlock | CA | 95382 | None | 1367461 | 1... |
| 12711 Newport Ave, # F | Tustin | CA | 92780 | None | 976131 | 1... |
| 1071 South Seaward Ave | Ventura | CA | 93001 | None | 1574212 | 1... |
| 6555 Telephone Rd, #5 | Ventura | CA | 93003 | None | 1502234 | 1... |
| 1441 S. Mooney Blvd, Suite A | Visalia | CA | 93277 | None | 1113732 | 1... |
| 3050 Citrus Circle, Suite 210 | Walnut Creek | CA | 94598 | None | 757707 | 1... |
| 3050 Citrus Circle, Suite 210, 222 | Walnut Creek | CA | 94598-2662 | None | 285887 | 3... |
| 100 North Citrus St, Suite 212, 680 | West Covina | CA | 91791 | None | 1560823 | 1... |
| 23873 Clinton Keith Road, Suite 109 & 110 | Wildomar | CA | 92595 | None | 324426 | 3... |
| 1877 Broadway Street, Suite 704 | Boulder | CO | 80302 | None | 1622803 | 1... |
| 6465 Greenwood Plaza Blvd, Suite 100, 180 & 1000 | Centennial | CO | 80111 | None | 192748 | 4... |
| 6465 Greenwood Plaza Blvd, Suite 180 | Centennial | CO | 80111 | None | 1486667 | 3... |
| 1155 Kelly Johnson Blvd, Suites 420 & 440 | Colorado Springs | CO | 80920 | None | 1633183 | 1... |
| 2441 Elliot St | Denver | CO | 80211 | None | 1497561 | 2... |
| 700 & 708 Main Avenue, Unit D | Durango | CO | 81301 | None | 1377989 | 2... |
| 3926 John F. Kennedy Pkwy, Suite 9C | Ft Collins | CO | 80525 | None | 1472164 | 1... |
| 501 Main Street | Grand Junction | CO | 81501-2607 | None | 1194367 | 1... |
| 215 UNION BLVD., SUITE 415 | Lakewood | CO | 80228 | None | 240721 | 2... |
| 12050 N. Pecos Street, Suite 100 | Westminster | CO | 80234 | None | 1226932 | 2... |
| 4724 Rendezvous Cove | Destin | FL | 32541 | None | 1607694 | 3... |
| 4300 W. Cypress, Suite 360 | Tampa | FL | 33607 | AmeriPro Home Loans | 1507066 | 1... |
| 5901 Peachtree Dunwoody Rd, Suite C100 | Atlanta | GA | 30328 | None | 1408562 | 5... |
| 175 Pine Grove Road, Suite 105 | Cartersville | GA | 30120 | None | 1394875 | 2... |
| 5820 Veterans Parkway, Suite 101 | Columbus | GA | 31904 | None | 1566743 | 2... |
| 327 Dahlonega Street, #303A, 303B | Cumming | GA | 30040 | None | 1281219 | 3... |
| 1209 West Walnut Ave, Suite 2 | Dalton | GA | 30720 | None | 1399048 | 1... |
| 725 Industrial Park Drive | Evans | GA | 30809 | None | 1399911 | 3... |
| 349 Mall Blvd, Suite 220 | Savannah | GA | 31406 | None | 1117983 | 1... |
| 1400 Buford Hwy, Suite R-1 | Sugar Hill | GA | 30518 | None | 1469737 | 1... |
| 208 Smithville Church Rd | Warner Robins | GA | 31088 | None | 1566751 | 3... |

16-01019-smc Doc 461-1 Filed 08/07/17 Entered 08/07/17 17:38:34 Exhibit Page 4 of 8
Consumer Access Company Branches
Exhibits A through I Pg 86 of 90

| Address | City | State | Zip | License | Number | |
|---|---|---|---|---|---|---|
| 500 Osigian Blvd, Suite 400, 500 | Warner Robins | GA | 31088 | None | 1399436 | 1... |
| 425 Kilauea Ave., Suite B-3 | Hilo | HI | 96720 | None | 1023995 | 1... |
| 677 Ala Moana Blvd., # 708 | Honolulu | HI | 96813 | None | 1247358 | 2... |
| 609 KAILUA ROAD, SUITE 200 | KAILUA | HI | 96734 | None | 240838 | 2... |
| 380 Huku Lii, Suite 201 | Kihei | HI | 96753 | None | 381108 | 1... |
| 94-849 Lumiaina Street, Suite 206 | Waipahu | HI | 96797 | None | 1391632 | 1... |
| 94-849 Lumiaina St, Suite 105 | Waipahu | HI | 96797 | None | 1219870 | 1... |
| 2570 106th Street, Suite D | Urbandale | IA | 50322 | None | 1412564 | 15... |
| 121 N 9TH ST STE 304 | BOISE | ID | 83702 | None | 779503 | 1... |
| 776 East Riverside Drive, Suite 100 & 150A | Eagle | ID | 83616 | Idaho Mortgage Lending | 97569 | 1... |
| 127 N Whitley Drive | Fruitland | ID | 83619 | None | 259172 | 2... |
| 1970 East 17th Street, Suite 203 | Idaho Falls | ID | 83404 | None | 1414257 | 1... |
| 1810 S. Eagle Road | Meridian | ID | 83642 | None | 107908 | 4... |
| 100 10th Avenue South | Nampa | ID | 83651 | None | 964941 | 1... |
| 5660 E. Franklin Road, Suite 130 | Nampa | ID | 83687 | None | 1428384 | 1... |
| 1246 Yellowstone, Suite E | Pocatello | ID | 83201 | None | 839443 | 1... |
| 158 S. Main St, 2nd Floor | Pocatello | ID | 83204 | None | 987179 | 2... |
| 1411 North College Rd E., Suite 300 | Twin Falls | ID | 83301 | None | 97506 | 3... |
| 1403 Metro Dr, Ste D | Alexandria | LA | 71303 | None | 1547631 | 2... |
| 16851 Jefferson Highway, #5B | Baton Rouge | LA | 70817-6435 | None | 1088666 | 1... |
| 3900 N. Causeway Blvd, Suite 1224 | Metairie | LA | 70002 | None | 1558671 | 1... |
| 1730 Fenpark Drive, Suite 1003 | Fenton | MO | 63026 | None | 1204498 | 1... |
| 3127 Central Avenue, Suite 4 | Billings | MT | 59102 | None | 140408 | 5... |
| 324 2nd Street, Apt 2 | Havre | MT | 59501 | None | 1438680 | 1... |
| Ford Building Suite 211, 17 Second St E. | Kalispell | MT | 59901 | None | 1460527 | 1... |
| 1001 S HIGGINS AVE, A2 | Missoula | MT | 59801 | None | 398152 | 2... |
| 7221 Pineville Matthews Rd, Suite 100 | Charlotte | NC | 28226-6176 | None | 1180472 | 1... |
| 30 1st Ave E | Dickinson | ND | 58601 | None | 1435502 | 1... |
| 17041 Lakeside Hills Plaza | Omaha | NE | 68130 | None | 1247267 | 2... |
| 3333 Farnam Street | Omaha | NE | 68131 | None | 1247287 | 6... |
| 1065 N 115th Street, Suite 150 | Omaha | NE | 68154 | None | 1178673 | 6... |
| 2201 San Pedro Dr NE, Bldg 2-100, 105 | Albuquerque | NM | 87110 | None | 1128156 | 2... |
| 4337 East Main Street, Suite 203 | Farmington | NM | 87402-8639 | None | 269677 | 1... |
| 4620 South Carson Street, Suite 1 | Carson City | NV | 89701 | None | 1120746 | 2... |
| 905 Railroad St, # 201 | Elko | NV | 89801 | None | 967258 | 2... |
| 930 Idaho Street | Elko | NV | 89801 | None | 1496935 | 1... |
| 9065 S. Pecos Rd., Suite 120 | Henderson | NV | 89074 | None | 1463399 | 2... |
| 701 Green Valley Parkway N, Suite 105, 110 & 284 | Henderson | NV | 89074-6178 | None | 858248 | 3... |
| 8485 W. Sunset Road, Suite 205 | Las Vegas | NV | 89113-2249 | None | 1326802 | 1... |
| 9420 W. Sahara, Suite 106 | Las Vegas | NV | 89117 | None | 307789 | 3... |
| 2760 Lake Sahara Drive, Ste 100 | Las Vegas | NV | 89117 | None | 884146 | 3... |
| 1645 Village Center Circle, Suite 271 | Las vegas | NV | 89134 | None | 1058485 | 3... |
| 1702 COUNTY ROAD, Suite A3, F & I | Minden | NV | 89423 | None | 240057 | 2... |
| 3255 S. Virginia Street, Suite C | Reno | NV | 89502 | None | 1272160 | 2... |
| 601 S. Arlington Ave | Reno | NV | 89509 | None | 1544567 | 3... |
| 6990 South McCarran Blvd, Suite 200 | Reno | NV | 89509 | None | 875082 | 2... |
| 5370 Kietzke Lane, 103 | Reno | NV | 89511 | None | 373438 | 1... |

| Address | City | State | Zip | Name | Number | |
|---|---|---|---|---|---|---|
| 5370 Kietzke Lane, Suite 104 | Reno | NV | 89511 | None | 1214345 | 1... |
| 5370 Kietzke Lane, Suite 201 | Reno | NV | 89511 | None | 1505054 | 3... |
| 3150 Vista Blvd, Suite 102 | Sparks | NV | 89436 | None | 1037736 | 2... |
| 183 HIGHWAY 50, UNIT B | ZEPHYR COVE | NV | 89448 | None | 156365 | 2... |
| 10 West Main St, Suite 307 | Ardmore | OK | 73401 | None | 1611764 | 1... |
| 2927 W. University Blvd. | Durant | OK | 74701 | None | 862381 | 2... |
| 2500 Boardwalk St, Suite 214 | Norman | OK | 73069 | None | 1619547 | 1... |
| 8988 S. Sheridan, Suite W | Tulsa | OK | 74133 | None | 1131981 | 2... |
| 8126 S. Mingo Rd, Ste 200 | Tulsa | OK | 74133 | AmeriPro Home Loans | 1507070 | 3... |
| 108 East Hersey St, Ste 2B | Ashland | OR | 97520 | None | 1408663 | 2... |
| 16100 NW Cornell Road, Suite 190 | Beaverton | OR | 97006 | None | 1242832 | 2... |
| 101 NE Greenwood Avenue, Suite 120 | Bend | OR | 97701 | None | 988369 | 2... |
| 397 SW Upper Terrace Drive, Suite 150 | Bend | OR | 97702 | None | 1152036 | 4... |
| 25 NW Minnesota Avenue, Suite 9 | Bend | OR | 97703 | None | 1528622 | 2... |
| 12550 SE 93rd Ave, Suite 120 | Clackamas | OR | 97015 | None | 959577 | 4... |
| 10135 SE Sunnyside Road, Suite 220 | Clackamas | OR | 97015 | None | 1242861 | 3... |
| 330 Central Ave | Coos Bay | OR | 97420 | None | 1377605 | 1... |
| 375 NW Harrison Blvd | Corvallis | OR | 97330 | None | 1546258 | 1... |
| 360 E. 10th Avenue, Suite 101 | Eugene | OR | 97401 | None | 375443 | 3... |
| 3350 Hwy 101 N., Suite E | Gearhart | OR | 97138 | None | 1438938 | 2... |
| 301 NE 7th St | Grants Pass | OR | 97526 | None | 1499352 | 2... |
| 409 Pine St, Suite 200A, 204 | Klamath Falls | OR | 97601 | None | 960559 | 1... |
| 409 Pine St, Suite 200A, 204 | Klamath Falls | OR | 97601 | None | 1209198 | 4... |
| 3689 Carman Drive, Suite 100 | Lake Oswego | OR | 97035 | None | 1242945 | 1... |
| 4500 Kruse Way, Suite 250 | Lake Oswego | OR | 97035 | None | 328603 | 5... |
| 5400 Meadows Road, Suite 150 | Lake Oswego | OR | 97035 | None | 1242937 | 2... |
| 609 E. Jackson Street | Medford | OR | 97504 | None | 1170615 | 2... |
| 700 Deborah Rd, Suite 100 | Newberg | OR | 97132 | The Stuart Group | 1196146 | 4... |
| 2504 Portland Road | Newberg | OR | 97132 | None | 1242965 | 3... |
| 129 S Main St | Pendleton | OR | 97801 | None | 1647257 | 1... |
| 1953 NW Kearney St | Portland | OR | 97209 | Mortgage Monkey | 1242967 | 3... |
| 10220 SW Greenburg Rd, 6th Fl | Portland | OR | 97223 | None | 1358246 | 1... |
| 10260 SW Greenburg Rd, Suite 900 | Portland | OR | 97223 | Emory Team | 1242991 | 4... |
| 9200 SW Barnes Road | Portland | OR | 97225 | None | 1242841 | 3... |
| 825 NE Multnomah Street, Suite 950 | Portland | OR | 97232 | Steph Noble Team | 1242961 | 1... |
| 8615 SE Division St, Suite 203 | Portland | OR | 97266 | None | 1485385 | 1... |
| 636 NW Cedar Avenue | Redmond | OR | 97756 | None | 1267721 | 1... |
| 2601 25th Street SE, Suite 200, 350 | Salem | OR | 97302 | Idaho Mortgage Lending | 1140900 | 3... |
| 51680 Columbia River HWY, Suite 100 | Scappoose | OR | 97056 | None | 1243002 | 2... |
| 300 N. Water Street | Silverton | OR | 97381 | None | 1211642 | 1... |
| 306 COURT STREET, SUITE B | The Dalles | OR | 97058-2128 | None | 834673 | 2... |
| 1520 SE Discovery Lane, Suite D | Warrenton | OR | 97146 | None | 789007 | 3... |
| 29100 S.W. Town Center Loop W., Suite 100 | Wilsonville | OR | 97070 | First Team | 799197 | 3... |
| 1310 Pine Log Road, Suite A | Aiken | SC | 29803 | None | 1552682 | 1... |
| 1751 St. Julian Place | Columbia | SC | 29204 | None | 939690 | 3... |
| 101 Westpark Blvd, Suite B, C | Columbia | SC | 29210 | None | 949333 | 2... |
| 566 Spears Creek Church Road, Suite 101 | Elgin | SC | 29045 | None | 1197001 | 1... |
| 3451 Pelham Rd. | Greenville | SC | 29615 | None | 908253 | 2... |

| Address | City | State | Zip | Name | Number | |
|---|---|---|---|---|---|---|
| 204 Caughman Farm Lane, Suite 101 | Lexington | SC | 29072 | None | 1217969 | 2... |
| 641 Little Tony Ave | Murrells Inlet | SC | 29576 | None | 1058314 | 1... |
| 2050 Corporate Centre Dr.,, Suite 200 | Myrtle Beach | SC | 29577 | None | 957652 | 2... |
| 4921 Centre Pointe Drive, Suite 100 | North Charleston | SC | 29418 | None | 1122641 | 1... |
| 2865 Summer Oaks Dr, Suite 200 | Memphis | TN | 38134 | None | 1223454 | 2... |
| 1500 Industrial Blvd., #100A | Abilene | TX | 79602 | None | 779502 | 1... |
| 3100 W. Arkansas Lane, Suite 103 | Arlington | TX | 76016 | None | 1440091 | 1... |
| 3100 W. Arkansas Lane #105 | Arlington | TX | 76016 | None | 865251 | 1... |
| 5113 Southwest Parkway, Suite 130 | Austin | TX | 78735 | AmeriPro Home Loans; The Flanary Team; The Vaughn Team | 996721 | 1... |
| 2110 W. Slaughter Ln, #160 | Austin | TX | 78748 | None | 1037510 | 1... |
| 6507 Jester Blvd, Ste 507 | Austin | TX | 78750 | None | 849500 | 1... |
| 8300 N. Mopac Expwy, Suite 125 | Austin | TX | 78759 | AmeriPro Home Loans | 925190 | 5... |
| 5925 Phelan Blvd, Unit I | Beaumont | TX | 77706 | None | 970246 | 1... |
| 575 N. 18th St., Suite 2 | Beaumont | TX | 77706 | AmeriPro Home Loans | 1507084 | 1... |
| 700 Lake Road | Belton | TX | 76513 | None | 1256396 | 1... |
| 104 E Bandera Rd, Ste 2 | Boerne | TX | 78006 | AmeriPro Home Loans | 1507103 | 1... |
| 1001 Rock St | Bowie | TX | 76230 | None | 847770 | 1... |
| 506 East Adams St. | Brownwood | TX | 76801 | None | 1278280 | 1... |
| 312 East Renfro, Suite 201 | Burleson | TX | 76028 | AmeriPro Home Loans | 1507089 | 1... |
| 785 W. Hidden Creek Pkwy, Suite 2100, 2101D | Burleson | TX | 76028 | None | 1332064 | 1... |
| 1212 S. Preston Rd. | Celina | TX | 75009 | None | 713804 | 1... |
| 2200 North FM 3083 West | Conroe | TX | 77304 | None | 1557405 | 1... |
| 4215 S. Staples St., Suite 100 | Corpus Christi | TX | 78411 | None | 393979 | 2... |
| 15205 S. Padre Island Dr, Suite 240A | Corpus Christi | TX | 78418 | AmeriPro Home Loans | 1507091 | 1... |
| 14725 S. Padre Island Dr, Ste 24 | Corpus Christi | TX | 78418 | None | 1519400 | 1... |
| 108 S. Beaton St, Suite i | Corsicana | TX | 75110 | None | 1248650 | 1... |
| 5956 Sherry Lane, Suite 500 | Dallas | TX | 75225 | None | 1540980 | 1... |
| 10440 N Central Expressway, Ste 800 | Dallas | TX | 75231 | The McElyea Team | 557400 | 1... |
| 2290 Springlake Rd, Suite 108 | Dallas | TX | 75234 | None | 1247332 | 4... |
| 10935 Estate Ln, Suite S364 & S381 | Dallas | TX | 75238 | None | 1632616 | 1... |
| 2201 S FM 51, Suite 500 | Decatur | TX | 76234 | None | 1621779 | 1... |
| 4504 Center St, Office 4 | Deer Park | TX | 77536 | None | 1624641 | 1... |
| 101 NW Main Street | Ennis | TX | 75119 | None | 393949 | 1... |
| 4880 Long Prairie Rd, Suite 240 | Flower Mound | TX | 75028 | AmeriPro Home Loans | 1505706 | 1... |
| 6115 Camp Bowie Blvd, Suite 290 | Fort Worth | TX | 76116 | None | 1597988 | 1... |
| 112 NW 24th Street, Suite 206 | Fort Worth | TX | 76164 | None | 1426994 | 1... |
| 406 N. Grand Ave, Ste 103 | Gainesville | TX | 76240 | None | 975268 | 1... |
| 3613 Williams Dr, Ste 201 | Georgetown | TX | 78628 | None | 1416728 | 1... |
| 207 Eastridge Road | Granbury | TX | 76049 | None | 393895 | 1... |
| 3324 E. HWY 377 | Granbury | TX | 76049 | None | 393947 | 1... |
| 3306 E Hwy 377 | Granbury | TX | 76049 | None | 1634208 | 1... |
| 2305 N. Ed Carey Dr | Harlingen | TX | 78550 | None | 1498027 | 1... |
| 2011 Leeland St | Houston | TX | 77003 | None | 1057681 | 1... |
| 1333 Heights Blvd, Ste 102 | Houston | TX | 77008 | None | 1247318 | 1... |
| 3300 S. Gessner, Suite 201 | Houston | TX | 77063 | None | 892581 | 1... |
| 5415 East 15th sT | Katy | TX | 77493 | None | 1618658 | 1... |
| 1727 Keller Parkway, Ste 26 | Keller | TX | 76248 | AmeriPro Home Loans | 1505730 | 1... |
| 1664 Keller Parkway, Suite 101 | Keller | TX | 76248 | None | 580143 | 1... |
| 13563 Hwy 29 W, Suite 1 | Liberty Hill | TX | 78642 | AmeriPro Home Loans | 1506430 | 1... |

| Address | City | State | ZIP | DBA | NMLS | |
|---|---|---|---|---|---|---|
| 1300 Hollybrook Drive | Longview | TX | 75605 | None | 1382903 | 1... |
| 2400 N. Hwy 287, Suite 106 | Mansfield | TX | 76063 | None | 1183092 | 1... |
| 201 W. Virgina St, Ste 101 & 103 | McKinney | TX | 75069 | None | 1479542 | 1... |
| 136 N. 8th St, Suite 400 | Midlothian | TX | 76065 | None | 1433860 | 1... |
| 4502 Riverstone Blvd, Suite 303, 304 | Missouri City | TX | 77459 | AmeriPro Home Loans | 1505750 | 1... |
| 9001 Airport Freeway, Suite 660 | North Richland Hills | TX | 76180 | None | 1558623 | 1... |
| 6900 Dallas Parkway, #610 | Plano | TX | 75024 | AmeriPro Home Loans | 1505745 | 2... |
| 6900 N. Dallas Parkway, Suite 123 | Plano | TX | 75024 | AmeriPro Home Loans | 1505761 | 1... |
| 111 E. Hwy 120, Suite 107 | Pottsboro | TX | 75076 | None | 1544123 | 1... |
| 100 Plaza Dr, Suite 500 | Red Oak | TX | 75154 | None | 1332255 | 1... |
| 465 W. President George Bush Hwy, Ste 220 | Richardson | TX | 75080 | The Craig Lemp Team | 988015 | 1... |
| 2882 Ridge Road | Rockwall | TX | 75032 | None | 1118347 | 2... |
| 1620 Red Bud Lane | Roundrock | TX | 78664 | AmeriPro Home Loans | 1507120 | 1... |
| 2801 Southwest Blvd | San Angelo | TX | 76904 | None | 934855 | 1... |
| 1149 E. Commerce St., Suite 210 | San Antonio | TX | 78205 | AmeriPro Home Loans | 1332096 | 2... |
| 12950 Country Parkway, Suite 175 | San Antonio | TX | 78216 | AmeriPro Home Loans; Helen's Money Team | 1507101 | 1... |
| 14100 San Pedro Avenue, Suite 210 | San Antonio | TX | 78232 | None | 393967 | 1... |
| 401 E. Sonterra Blvd, Suite 175 | San Antonio | TX | 78258 | None | 1540986 | 1... |
| 714 N. Travis Street | Sherman | TX | 75090 | Castle Team; Wegley Team | 1211748 | 2... |
| 1560 E. Southlake Blvd, Ste 220 | Southlake | TX | 76092 | AmeriPro Home Loans | 716533 | 1... |
| 26310 Oak Ridge Drive, Group 2 | Spring | TX | 77380 | None | 943857 | 1... |
| 1510 Meadow Sweet Drive | Sugar Land | TX | 77479 | None | 1390080 | 1... |
| 2118 Birdcreek Drive, Suite 100 | Temple | TX | 76502 | None | 1192404 | 1... |
| 3101 Kennedy Lane, Suite 100 | Texarkana | TX | 75503 | None | 1533111 | 2... |
| 103 Baker Drive | Tomball | TX | 77375 | AmeriPro Home Loans | 1507108 | 1... |
| 6775 Old Jacksonville Hwy, Suite 2 | Tyler | TX | 75703 | None | 1389542 | 1... |
| 2451 FM 1189 | Weatherford | TX | 76087 | None | 979753 | 1... |
| 175 N. Main St # 204 | Heber City | UT | 84032 | None | 1046641 | 1... |
| 4543 South Holladay Blvd, Ste 125 | Holladay | UT | 84117 | AmeriPro Home Loans | 1505788 | 1... |
| 1047 S 100 West, Suite 100 | Logan | UT | 84321 | None | 221952 | 4... |
| 6770 South 900 East, Suite 300 | Midvale | UT | 84047 | None | 1535567 | 1... |
| 955 East Chambers St, Suite 100 | Ogden | UT | 84403 | None | 1546455 | 1... |
| 218 N. Orem Blvd | Orem | UT | 84097 | None | 346010 | 1... |
| 1526 Ute Blvd, Unit 107 | Park City | UT | 84098 | None | 1467683 | 1... |
| 230 West Towne Ridge Parkway, Suite 310 | Sandy | UT | 84070 | None | 878754 | 5... |
| 10271 South 1300 East | Sandy | UT | 84094 | None | 240681 | 3... |
| 1224 S. River Road, Suite A-102 | St George | UT | 84790 | None | 1438642 | 1... |
| 1783 West 1000 South | Vernal | UT | 84078 | None | 252141 | 1... |
| 9069 South 1300 West, Suite D | West Jordan | UT | 84088 | None | 1361322 | 1... |
| 150-120th Ave NE, Ste 300 | Bellevue | WA | 98005 | None | 37794 | 5... |
| 150 120th Ave NE, Suite 405 | Bellevue | WA | 98005 | None | 295204 | 1... |
| 310 E. Magnolia St, Suite 101 | Bellingham | WA | 98225 | None | 271513 | 3... |
| 19809 SE 10th St. | Camas | WA | 98607 | None | 1242985 | 1... |
| 11244 South Lakeshore Drive | Chelan | WA | 98816 | None | 1425938 | 2... |
| 2909 Hewitt Avenue | Everett | WA | 98201 | None | 1218711 | 6... |
| 2731 Wetmore Ave Suite 303 | Everett | WA | 98201 | None | 1001115 | 1... |
| 2903A Hewitt Ave | Everett | WA | 98201 | None | 1530363 | 7... |
| 2915 Hewitt Ave | Everett | WA | 98201 | None | 1120107 | 7... |
| 2006 65TH AVE W | FIRCREST | WA | | None | 375701 | 1... |

|  |  |  | 98466-6200 |  |  |  |
| --- | --- | --- | --- | --- | --- | --- |
| 1010 S. 336th Street, Suite 110 | Federal Way | WA | 98003 | None | 1132526 | 1... |
| 8200 W Grandridge Blvd, Suite 110 | Kennewick | WA | 99336 | None | 1288939 | 2... |
| 5209 Lake Washington Blvd NE, Suite 105 | Kirkland | WA | 98033 | None | 290080 | 7... |
| 1338 Commerce Avenue, Suite 103 | Longview | WA | 98632 | None | 1171495 | 2... |
| 3500 188th St SW, Suite 103 | Lynnwood | WA | 98037 | None | 1335052 | 2... |
| 3400 188th St. SW, Suite 400 | Lynnwood | WA | 98037 | Miltenberger Team | 37801 | 1... |
| 1027 State Avenue, Suite 101 | Marysville | WA | 98270 | None | 320006 | 1... |
| 16329 Cascadian Way | Mill Creek | WA | 98012 | None | 1108164 | 4... |
| 506 E. Hill | Moses Lake | WA | 98837 | None | 170635 | 2... |
| 32785 State Route 20, Suite 5 & 6 | Oak Harbor | WA | 98277 | None | 270016 | 2... |
| 3009 Pacific Avenue SE, Suite 102 | Olympia | WA | 98501 | None | 1146208 | 1... |
| 1000 Dexter Avenue North, Suite 310 | Seattle | WA | 98109 | None | 1012222 | 2... |
| 155 NE 100th Street, Suite 401, 404 | Seattle | WA | 98125 | None | 78615 | 4... |
| 316 W. Boone Ave, Ste 880 | Spokane | WA | 99201 | None | 181079 | 1... |
| 12209 E MISSION AVE, Suite 7 | Spokane Valley | WA | 99206 | None | 341940 | 2... |
| 4801 S 19TH ST STE 200 | Tacoma | WA | 98405-1166 | None | 843670 | 1... |
| 4301 South Pine St, Suite 110, 160 | Tacoma | WA | 98409 | None | 273749 | 3... |
| 100 Balky Hill Rd | Twisp | WA | 98856 | None | 960512 | 1... |
| 201 NE PARK PLAZA DR, STE 242 | VANCOUVER | WA | 98684-5874 | None | 433939 | 5... |
| 222 NE Park Dr., Suite 113 | Vancouver | WA | 98684 | None | 337922 | 2... |
| 411 N. Mission Street | Wenatchee | WA | 98801 | None | 1230643 | 3... |
| 541 East Flaming Gorge Way, Unit E | Green River | WY | 82935 | None | 1434270 | 1... |
| 230 East Broadway, Suite 3B | Jackson | WY | 83001 | None | 1377578 | 3... |

Information made available through NMLS Consumer Access℠ is derived from NMLS (Nationwide Multistate Licensing System / Nationwide Mortgage Licensing System and Registry), the financial services industry's online registration and licensing database. NMLS was created by the Conference of State Bank Supervisors (CSBS) and the American Association of Residential Mortgage Regulators (AARMR) and is owned and operated by the State Regulatory Registry LLC (SRR), a wholly owned subsidiary of CSBS. For more information about the System, please visit the NMLS Resource Center or the NMLS Federal Registry Resource Center websites. | Download PDF Reader