**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., | Adversary Proceeding |
| Plaintiff, | No. 16-01019 (SCC) |
| - against - | |
| 1ST ADVANTAGE MORTGAGE, LLC *et al.*, | |
| Defendants. | |

**MEMORANDUM DECISION AND ORDER**
**DENYING OMNIBUS MOTION TO DISMISS FOR LACK OF**
**SUBJECT MATTER JURISDICTION AND IMPROPER VENUE**

A P P E A R A N C E S:

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
By:     William A. Maher, Esq.
        Paul R. DeFilippo, Esq.
        Adam M. Bialek, Esq.
        Mara R. Lieber, Esq.

        -and-

FOX ROTHSCHILD LLP
1225 17th Street
Suite 2200
Denver, CO 80202
By:     Michael A. Rollin, Esq.
        Maritza Dominguez Braswell, Esq.

*Counsel for Lehman Brothers Holdings Inc.*

MACKEY PRICE & MECHAM
57 West 200 South
Salt Lake City, UT 84101
By:    Gifford W. Price, Esq.

*Counsel for Security National Mortgage Company*

REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL, 60606
By:    Michael Leib, Esq.

*Counsel for Wintrust Mortgage Corporation*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
By:    Philip Rogers Stein, Esq.

*Counsel for Eagle Mortgage Holdings, LLC and Universal American Mortgage Company*

AMERICAN MORTGAGE LAW GROUP, PC
775 Baywood Drive, Suite 100
Petaluma, CA 94954
By:    Tracy L. Henderson, Esq.
       Jack Vincent Valinoti, Esq.

*Counsel for Approved Funding Corp.; Arlington Capital Mortgage Corporation; BWC Mortgage Services f/k/a Commerce Home Mortgage, Inc. f/k/a Simonich Corp.; CMG Mortgage, Inc.; Congressional Bancshares, Inc.; First California Mortgage Company; First Mortgage Corporation; Hartland Mortgage Centers, Inc.; Gateway Funding Diversified Mortgage Services, L.P.; Loan Simple, Inc. f/k/a Ascent Home Loans Inc.; MC Advantage, LLC f/k/a Republic Mortgage Home Loans, LLC; Mega Capital Funding, Inc.; New Fed Mortgage Corp.; Oaktree Funding Corp.; Republic State Mortgage Co.; Residential Home Funding Corp.; Ross Mortgage Corporation; Sterling National Mortgage Company, Inc.; Sun American Mortgage Company; Windsor Capital Mortgage Corporation; and WR Starkey Mortgage, LLP*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Certain Defendants' Omnibus Motion to Dismiss for Lack of Subject

Matter Jurisdiction and Improper Venue, dated March 31, 2017 [Dkt. No. 413][1] (the "Motion")

filed by the defendants listed on <u>Exhibit A</u> annexed hereto (collectively, the "Defendants").[2]  In

support of the Motion, the Defendants filed the Declaration of William T. Russell, Jr. [Dkt. No.

414] and the Supplemental Declaration of William T. Russell, Jr. [Dkt. No. 417].  On May 31,

2017, Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") filed its opposition

to the Motion [Dkt. No. 445] (the "Opposition"), together with the Declaration of Adam M.

Bialek [Dkt. No. 445] (the "Bialek Decl.").  The Defendants filed a reply to the Opposition [Dkt.

No. 456] (the "Reply").  The Court heard oral argument on the Motion on June 12, 2018.

## BACKGROUND

The Court assumes familiarity with the general background and history of the LBHI

chapter 11 cases; this Decision will provide limited background facts pertinent to the Motion.

Prior to its bankruptcy, LBHI, directly or through its affiliates, including Lehman

Brothers Bank, FSB ("LBB"), engaged in the purchase and sale of mortgage loans.  LBHI

arranged directly or through affiliates such as LBB to purchase mortgage loans from loan

originators and other third parties (the "Sellers") including the Defendants; it then packaged such

loans for securitization or sale to other third parties.  In transactions involving the Defendants,

---

[1]      Docket numbers used herein refer to documents filed in Adversary Proceeding No. 16-01019 unless
otherwise indicated.

[2]      The adversary proceedings filed against the Defendants listed on Exhibit A (and against certain other
parties) have been administratively coordinated pursuant to (i) the Case Management Order, dated November 1,
2016 [Dkt. No. 305] (the "CMO") and (ii) the Order to Administratively Coordinate Adversary Proceeding Dockets
Under the Case Management Order and Pursuant to U.S.C. § 105, dated March 6, 2017 [Dkt. No. 398].
Notwithstanding this administrative coordination and the single caption placed on this Decision pursuant to the
CMO, this Decision will be filed on the docket of each of the Adversary Proceedings listed on Exhibit A annexed
hereto and shall apply to each such Adversary Proceeding.

the Defendants sold the mortgage loans to LBB (which thereafter assigned its rights thereunder to LBHI)[3] pursuant to agreements (the "Agreements") in which, among other things, the Defendants contractually agreed to indemnify LBB and hold it harmless from liabilities or losses it might incur (including liabilities to third parties) as a result of breaches of the representations and warranties in the Agreements.[4]

The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and, together with Fannie Mae, the "GSEs") were two subsequent purchasers of mortgage loans from LBHI. On September 15, 2008, LBHI and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary chapter 11 cases in this Court. In September 2009, both GSEs filed proofs of claim against LBHI (collectively, the "GSE Claims"), asserting breaches of representations, warranties, or covenants in numerous sale agreements for loans they had acquired from LBHI.

The GSE Claims asserted claims for, among other things, "alleged indemnity/reimbursement obligations" and "indemnity claims" arising from the sale of mortgage loans to the GSEs, including mortgage loans originated by and purchased from the Defendants and ultimately sold to the GSEs.[5] In its review of the GSE Claims, LBHI determined that certain loans, including those brokered or sold by Defendants, contained various defects that violated the representations, warranties, and covenants under the Agreements. Lehman has alleged that the

---

[3]      The Complaints filed in the Adversary Proceedings (each as defined below) assert that LBB subsequently assigned to LBHI all of its rights and remedies under the Agreements pertaining to the loans at issue. *See* Ex. 3 to Bialek Decl. ¶ 20 (Complaint, *Lehman Brothers Holdings, Inc. v. Gateway Mortgage Group, LLC*, Adv. Pro. No. 16-01291 [Dkt. No. 1]) (the "Gateway Complaint"). The Gateway Complaint is an example of an adversary complaint the Plan Administrator filed against one of the Defendants in the Adversary Proceedings. In the Opposition, LBHI has stated that, unless otherwise noted, the allegations in the Complaints are substantially similar regarding all Defendants, a point Defendants have conceded for the purposes of the Motion. *See* Motion at 3 n.3.

[4]      *See* Gateway Complaint ¶¶ 28, 32, 44.

[5]      *See* Settlement Agreement, dated January 22, 2014, by and among LBHI, et al., and Fannie Mae (the "Fannie Settlement") §§ C, D [Case No. 08-13555, Dkt. No. 42153]; Settlement and Assignment Agreement, dated February 12, 2014, by and among LBHI, et al., and Freddie Mac (the "Freddie Settlement") §§ C, E [Case No. 08-13555, Dkt. No. 42754].

representations, warranties, and covenants in the sale agreements between the GSEs and LBHI were co-extensive with those in the Agreements between LBB and the Defendants.[6] Thus, Lehman asserts that Defendants' breaches, acts, and omissions caused LBHI to incur liability to the GSEs.

On December 6, 2011, this Court confirmed the Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors (the "Plan").[7] *See* Order Confirming Plan [Case No. 08-13555, Dkt. No. 23023] (the "Confirmation Order").[8]

In January 2014, LBHI settled its disputes with the GSEs regarding the allowance of the GSE Claims (the "GSE Settlements"). The Court approved the GSE Settlements by Orders, dated January 31, 2014 and February 19, 2014 (the "GSE Settlement Orders") [Case No. 08-13555, Dkt. Nos. 42420, 42918]. Pursuant to the Fannie Settlement, Fannie Mae received an allowed claim for $2.15 billion in LBHI Class 7 under the Plan, and, pursuant to the Freddie Settlement, Freddie Mac received a one-time cash payment of $767 million from LBHI, each in settlement of all claims and disputes between the parties.[9]

Subsequently, the Plan Administrator identified over 11,000 loans and over 3,000 potential counterparties against which LBHI allegedly held third-party contractual claims for indemnification and/or reimbursement by virtue of the GSE Settlements.[10] To manage this volume of indemnification claims, the Court permitted the Plan Administrator to implement a

---

[6]     *See* Gateway Complaint ¶¶ 2, 35, 43.
[7]     The Plan is attached to the Bialek Declaration as Ex. 2.
[8]     The Confirmation Order is attached to the Bialek Declaration as Ex. 1.
[9]     *See* Fannie Settlement §§ 2.1, 3.1, 5; Freddie Settlement §§ 2.1-2.3.
[10]    The settlement agreements with the GSEs obligated the GSEs to provide the Plan Administrator with certain documents and to otherwise assist the Plan Administrator in bringing indemnification claims against the Sellers to indemnify LBHI for its liability to the GSEs. *See* Fannie Settlement §§ 3.1-3.6 (provisions requiring Fannie Mae to assist the Plan Administrator in pursuing "Rep and Warranty Default" claims); Freddie Settlement §§ 4.1-4.6 (similar provisions to assist the Plan Administrator in pursuing claims related to "Liquidated Rep and Warranty Default Loans").

pre-litigation mediation protocol with the Sellers from which it sought indemnification.  *See* Alternative Dispute Resolution Procedures Order for Indemnification Claims of The Debtors Against Mortgage Loan Sellers, dated June 24, 2014 [Case No. 08-13555, Dkt. No. 45277].

To further facilitate its pursuit of recoveries from those Sellers with whom mediation was unsuccessful, the Plan Administrator initiated adversary proceedings in this Court, including those at issue here, against more than one hundred Sellers (including the Defendants) in tandem with six previously-filed adversary actions (collectively, the "Adversary Proceedings"). Pursuant to the CMO, the Adversary Proceedings have a central docket for court filings (Adv. Pro. No. 16-01019) and have been coordinated for administrative purposes, including scheduling motions and discovery procedures.

By the complaints filed in the Adversary Proceedings, the allegations of which are substantially identical across all Defendants (collectively, the "Complaints"), LBHI claims that each of the Defendants breached its obligations under the Agreements by selling or submitting defective mortgage loans into LBHI's loan sale and securitization channels, and, thus, LBHI has a third-party indemnification claim against each Defendant for LBHI's liability to the GSEs (collectively, the "Indemnification Claims").  Specifically, the Complaints allege that it was Defendants' breaches of the representations, warranties, and/or covenants under the Agreements that caused LBHI to have to compensate the GSEs pursuant to agreements between LBHI and the GSEs that contained representations, warranties, and/or covenants co-extensive with those contained in the Agreements.[11]

The CMO provides a time frame for (i) the filing of so-called threshold motions such as motions under Federal Rule of Civil Procedure 12(b) based on venue, jurisdiction, and/or failure

---

[11]        *See* Gateway Complaint ¶¶ 2, 35, 43.

to state a claim and (ii) objections to such motions.[12]  The Motion before the Court, which was

filed by the Defendants listed on Exhibit A annexed hereto[13] is an omnibus motion to dismiss the

Complaints filed against such Defendants pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction and (ii) Fed. R. Civ. P. 12(b)(3) for improper venue.

## SUBJECT MATTER JURISDICTION

### A.  Applicable Law

Congress has vested the district courts with "original but not exclusive jurisdiction of all

civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C.

§ 1334(b).  Pursuant to section 157 of title 28 of the United States Code, a district court may

refer "all cases under title 11 and any or all proceedings arising under title 11 or arising in or

related to a case under title 11 . . . to the bankruptcy judges for the district."  28 U.S.C. § 157(a).

This Court has jurisdiction over title 11 proceedings pursuant to the Amended Standing Order of

Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern

District of New York (M–431), dated January 31, 2012 (Preska, C.J.).

The Supreme Court has observed that Congress's choice of words to describe "related to"

jurisdiction in section 1334 of title 28 "suggests a grant of some breadth."  *See Celotex Corp. v.*

*Edwards*, 514 U.S. 300, 307-08 (1995) (stating that "[w]e agree with the views expressed by the

. . . Third Circuit . . . that 'Congress intended to grant comprehensive jurisdiction to the

---

[12]    *See* CMO ¶¶ 8-9 ("During Phase I, as set forth below, Defendants may file motions to dismiss pursuant to Fed. R. Civ. P. 12(b) and other threshold motions as set forth more fully below (the "Phase I Motions"). No other motions shall be filed during Phase I absent good cause shown. Within sixty (60) days after the commencement of Phase I, the Defendants shall file a single consolidated motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim upon which relief can be granted), 12 (b)(7) (failure to join a party under Rule 19), 12(e) (for a more definite statement), and 12(f) (to strike), addressing issues common to all Defendants . . . .").

[13]    Exhibit A to the Motion at the time of its filing on March 31, 2017 listed 72 movants.  Since that time, the Adversary Proceedings filed against certain of such movants have been dismissed and other Defendants have joined the omnibus Motion.  Accordingly, Exhibit A to this Decision contains a modified list of Defendants who remain as movants as of the date of this Decision.

bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate'") (citations omitted).  In determining whether an action is "related to" a bankruptcy proceeding for purposes of section 1334, courts commonly apply the so-called "conceivable effects" test pursuant to which an action is deemed to be related to a bankruptcy proceeding if its outcome might have a conceivable effect on the estate being administered in bankruptcy.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018); *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 702 (Bankr. S.D.N.Y. 1989) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also Publicker Industries Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (citing *In re Turner*, 724 F.2d 338, 340-41 (2d Cir. 1983)).

Although section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction, certain courts have rejected the "conceivable effects" test of "related to" jurisdiction in the post-confirmation stage, instead espousing a more stringent standard referred to as the "close nexus" test.  *See Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005) (citing *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-67 (3d Cir. 2004)).  Pursuant to the "close nexus" test, a party must demonstrate that a "close nexus" exists between the action and a confirmed plan or bankruptcy proceeding– rather than just a "conceivable effect" – by demonstrating that (i) the "matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement;" and (ii) the plan provides for the retention of jurisdiction over the matter.  *Id*. at 73-74 (citations omitted).

### B. Relevant Provisions of the Lehman Plan

The Plan provides for the orderly liquidation of all the Debtors' property.  *See* Plan §§

7.6;[14] *see also* Confirmation Order ¶ X.  LBHI was appointed the Plan Administrator charged

with liquidating the assets of all the Debtors' estates in accordance with the Plan.  *See* Plan §§

6.1(a)-(b), 7.6.  The Plan Administrator has the sole authority to liquidate assets, including

prosecuting Litigation Claims (defined below) to maximize distributions to creditors.  *See id.* §

6.1(b)(iii) and (iv).

The Plan provides that, except as provided therein, LBHI retains all Litigation Claims

that the Debtors had prior to the Effective Date of the Plan.  *See id.* § 13.8.  "Litigation Claims"

under the Plan are defined as "any and all Causes of Action held by a Debtor." *Id.* § 1.102.

"Causes of Action" are defined as

> without limitation, any and all actions, causes of action, controversies, liabilities,
> obligations, rights, suits, damages, judgments, Claims, and demands whatsoever,
> whether known or unknown, reduced to judgment, liquidated or *unliquidated*, fixed
> or *contingent*, matured or *unmatured*, disputed or undisputed, secured or unsecured,
> assertable directly or derivatively, existing or hereafter arising, in law, equity, or
> otherwise, *based in whole or in part upon any act or omission or other event
> occurring prior to the Effective Date*.

*Id.* § 1.17 (emphasis added)).  The Plan preserves LBHI's right to assert Litigation Claims for

"reimbursement" and "indemnification" on account of distributions made to holders of allowed

claims.  Specifically, section 8.14(b) of the Plan provides that

> [T]he Debtors' rights to assert or prosecute Litigation Claims for reimbursement,
> indemnification, recoupment or any other similar right . . . against any entity . . . on
> account of Distributions made to the holders of Allowed Claims . . . shall be fully
> preserved to the fullest extent permitted by applicable law.

---

[14]     Plan § 7.6 ("After the Effective Date, pursuant to the Plan, the Plan Administrator shall wind-down, sell
and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities in accordance with Section
6.1(b)(iii) of the Plan.").

*Id.* § 8.14(b).  The Confirmation Order also preserves LBHI's "rights to assert or prosecute

Litigation Claims for reimbursement [or] indemnification . . . to the fullest extent permitted by

applicable law."  Confirmation Order ¶ 79.

Article XIV of the Plan lists matters over which the Bankruptcy Court retains exclusive

jurisdiction.  *See* Plan § 14.1.  Specifically, it provides that "[t]he Bankruptcy Court shall retain

exclusive jurisdiction over all matters arising under, arising out of, or related to, the Chapter 11

Cases and the Plan . . . for, among other things, the following purposes . . . ."  *Id.*  Such purposes

include: (i) "[t]o determine any and all adversary proceedings, applications and contested matters

relating to the Chapter 11 Cases, in each case in accordance with applicable law" (*see* Plan §

14.1(b)) and (ii) "[t]o hear and determine any actions brought to recover all assets of the Debtors

and property of the estates, wherever located . . ." (*see* Plan § 14.1(k)).

### C.  The Indemnification Claims Have a "Close Nexus" to the Plan

In evaluating whether this Court has "related to" jurisdiction over the Indemnification

Claims, the Defendants submit that the Court should apply the "close nexus" test, as some other

courts have done in a post-confirmation context, rather than the "conceivable effects" test.[15]  The

Defendants argue that the Indemnification Claims, which are predicated on the GSE Settlements

that occurred years after confirmation of the Plan, have no plausible connection to the Plan and

therefore, cannot satisfy the "close nexus" test because (i) the Plan did not specifically provide

for the retention of jurisdiction over the Indemnification Claims; (ii) LBHI itself acknowledges

that the Indemnification Claims "arose" after confirmation of the Plan because they "arose" from

post-confirmation settlements with the GSEs; (iii) the Indemnification Claims are based on state

law, rather than bankruptcy law; and (iv) the Indemnification Claims do not involve

---

[15]        *See* Motion at 7-8.

interpretation, implementation, consummation, execution, or administration of the Plan, as

required by courts to demonstrate a close nexus.[16]

LBHI, in response, argues that the Defendants misinterpret the law, the Plan, and the

facts, pointing in particular to Defendants' misguided reliance on authority from outside this

District and this Circuit in support of their assertions.  Specifically, LBHI emphasizes that the

"close nexus" test has not been affirmatively adopted by this Circuit (a point Defendants concede

in the Reply);[17] notwithstanding, LBHI submits that, were such standard to be applied here, the

Indemnification Claims have a sufficiently close nexus to the Plan to provide "related to"

jurisdiction.

The applicability of the "close nexus" test rather than the "conceivable effects" test "is an

open question in the Second Circuit."  *Residential Funding Co., LLC v. Greenpoint Mortg.

Funding, Inc. (In re Residential Cap., LLC)*, 519 B.R. 593, 600 (S.D.N.Y. 2014) (hereinafter,

"*ResCap*"); *see also Allstate Ins. Co. v. CitiMortgage, Inc*., No. 11-cv-1927, 2012 WL 967582,

at *5 (S.D.N.Y. Mar. 13, 2012) ("[C]ourts in this district have reached different conclusions as to

whether the close nexus test should be applied.") (citations omitted).  Indeed, certain courts in

this District have declined to apply the "close nexus" standard in determining a bankruptcy

court's jurisdiction post-confirmation over a liquidation proceeding.  *See, e.g.*, *Am. Int'l Group,

Inc. v. Bank of Am. Corp*., No. 11-cv-6212, 2011 WL 6778473, at *5 (S.D.N.Y. Dec. 20, 2011)

---

[16]     *See generally* Motion at 9-16; *Reply* at 9-16.  The Defendants also suggest that this Court should consider a
seven factor test for "related to" jurisdiction in a post-confirmation context, which factors were initially considered
by the United States Bankruptcy Court for the Western District of Louisiana in *In re WRT Energy Corp.*, 402 B.R.
717, 724 (Bankr. W.D. La. 2007), and have also been utilized by the United States Bankruptcy Court for the District
of Connecticut in *In re New England Nat'l, LLC*, No. 02-cv-33699, 2013 WL 812380, at *22 (Bankr. D. Conn. Mar.
5, 2013), in considering whether the "close nexus" test has been satisfied.  *See* Motion at 10, 16.  While courts in
this District have not adopted the seven-factor test, nor will the Court herein, certain of the seven factors are
discussed in this Decision.
[17]     *See* Reply at 9 ("Defendants acknowledge that the Second Circuit has yet to issue a published opinion
determining whether the "close nexus" test applies in this Circuit.").

("The Court is not inclined to apply the 'close nexus' test here. The Second Circuit has not

squarely addressed the question of whether a 'close nexus' is required where a liquidation (rather

than reorganization) plan has been confirmed, and several courts have applied the 'conceivable

effects' test instead.") (citations omitted).

Because the Court finds that the Indemnification Claims have a close nexus to the Plan in

that the Plan provides for the retention of jurisdiction over such claims and that prosecution of

the Indemnification Claims by the Plan Administrator affects the implementation and

administration of the Plan, the Court need not resolve the debate over the applicability of the

"close nexus" test at this time.[18]

### 1.  The Plan Provides that the Court Retains Jurisdiction Over the Indemnification Claims

As noted by the Defendants, the rationale underpinning the more rigorous "close nexus"

test is based on the limited role of the bankruptcy court post-confirmation. *See In re Metro-*

*Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 555 (Bankr. S.D.N.Y. 2011) (collecting cases). "[I]t

is assumed the reorganized debtor is becoming self-sufficient, and no longer needs umbrella

protection from the bankruptcy court. Additionally, there is no estate, as property reverts to the

reorganized debtor." *ResCap*, 519 B.R. at 600 n. 3 (citing *In re Park Ave. Radiologists, P.C.*,

450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011)). However, courts have acknowledged that, where a

debtor's plan is a liquidating plan, the bankruptcy court's role post-confirmation does not

diminish, particularly where the debtor seeks to commence litigation to collect assets for the

---

[18]    Analyzing "related to" jurisdiction using the less stringent "conceivable effects" test, courts in this District have consistently found that an action which could affect the amount of property available for distribution to the creditors of a bankruptcy estate is "related to" the bankruptcy case. *See In re Kolinsky*, 100 B.R. at 702 (collecting cases). While the Defendants do not specifically address the "conceivable effects" test, in any event, were such test to be employed by this Court, the Court could find that the Indemnification Claims are related to the Debtors' cases because the Plan Administrator's litigation of the Indemnification Claims, if successful, will have a conceivable effect on the amount of distributions made to LBHI's creditors.

benefit of its creditors.  *See Cross Media Mktg. Corp. v. CAB Mktg., Inc. (In re Cross Media Mktg. Corp.)*, 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007) (citing to *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 106–07 (1st Cir. 2005)); *see also Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 437 B.R. 88, 97-98 (S.D.N.Y. 2010) (stating that "where a debtor's plan is a liquidating plan, and the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend, the bankruptcy court's post-confirmation jurisdiction is more broad because its jurisdiction relates directly to core functions of the bankruptcy court and its exercise of jurisdiction does not require the bankruptcy court to supervise a newly reorganized business") (citation and internal quotation marks omitted), *aff'd on other grounds*, 448 F. App'x 134 (2d Cir. 2011).

The District Court's decision in *ResCap*, the circumstances of which are nearly identical to these Adversary Proceedings, is particularly instructive.  There, the trustee of a liquidating trust established by the debtor's confirmed chapter 11 plan brought state law claims against the originator of residential mortgage loans purchased and pooled by the debtor.  The claims included breach of contract and indemnification claims stemming from pre-petition contracts governing the sale of such mortgage loans.  Applying the "close nexus" test to determine whether the bankruptcy court had "related to" post-confirmation jurisdiction over the trustee's claims, the District Court found that the bankruptcy court had jurisdiction because (i) the confirmed plan of liquidation preserved the claims at issue and transferred such claims to a liquidating trust; (ii) the plan expressly provided for retention of jurisdiction over such claims; and (iii) any funds recovered from such claims would be distributed to creditors of the estate 519 B.R. at 600; s*ee also ResCap Liquidating Trust v. Primary Cap. Adv., LLC (In re Residential*

13

*Cap., LLC)*, 527 B.R. 865, 870 (S.D.N.Y. 2014) (finding that the ResCap claims meet the "close

nexus" test on similar grounds); *Kirschner v. Grant Thornton LLP (In re Refco, Inc. Securities*

*Litigation)*, 628 F.Supp.2d 432, 443 (S.D.N.Y. 2008) (finding a "close nexus" to the bankruptcy

case where the claims asserted were transferred to a litigation trust pursuant to the plan and

where any recoveries would be distributed to the debtor's general unsecured creditors) (citations

omitted).

Here, as in *ResCap*, the Plan is a liquidating plan which preserves the Plan

Administrator's right to pursue the Indemnification Claims and provides for the retention of

jurisdiction by the bankruptcy court over such claims.  While the Defendants attempt to argue

that because the Plan does not expressly identify the Indemnification Claims (*e.g.*, it does not

explicitly refer to put-back mortgage litigation, litigation regarding mortgage originators, or the

GSEs), the Plan's jurisdictional provisions are therefore insufficient to establish "related to"

jurisdiction over the Indemnification Claims,[19] the Court finds this argument unavailing.  As

counsel for the Plan Administrator correctly pointed out during oral argument on the Motion,

there is no requirement in this District that each litigation claim sought to be pursued by a post-

confirmation debtor be specifically described in such debtor's plan in order for the bankruptcy

court to have jurisdiction over the claim.

Moreover, the Court finds that, contrary to Defendants' assertions, the Plan in fact

preserves the Plan Administrator's right to prosecute the Indemnification Claims and provides

for the bankruptcy court's retention of jurisdiction over such claims.  The Plan Administrator

was appointed to wind-down, sell, and otherwise liquidate the assets of the Debtors for the

---

[19]    *See* Reply at 3.

benefit of the Debtors' creditors.[20]  The Plan Administrator's authority to liquidate assets

includes prosecuting Litigation Claims to maximize distributions to creditors.[21]

Except as provided otherwise in the Plan, LBHI retained all Litigation Claims that the

Debtors possessed prior to the Effective Date of the Plan.  *See id.* § 13.8; Confirmation Order ¶

76.  "Litigation Claims" under the Plan are defined as "any and all Causes of Action held by a

Debtor." *Id.* § 1.102.  "Causes of Action" are defined as

> without limitation, any and all actions, causes of action, controversies, liabilities,
> obligations, rights, suits, damages, judgments, Claims, and demands whatsoever,
> whether known or unknown, reduced to judgment, liquidated or *unliquidated*, fixed
> or *contingent*, matured or *unmatured*, disputed or undisputed, secured or unsecured,
> assertable directly or derivatively, existing or hereafter arising, in law, equity, or
> otherwise, *based in whole or in part upon any act or omission or other event
> occurring prior to the Effective Date.*

*Id.* § 1.17 (emphasis added)).  In addition, the Plan preserves LBHI's right to assert Litigation

Claims for "reimbursement" and "indemnification" on account of distributions made to holders

of allowed claims.  Specifically, section 8.14(b) of the Plan provides that

> [T]he Debtors' rights to assert or prosecute Litigation Claims for reimbursement,
> indemnification, recoupment or any other similar right . . . against any entity . . . on
> account of Distributions made to the holders of Allowed Claims . . . shall be fully
> preserved to the fullest extent permitted by applicable law.

*Id.* § 8.14(b).  The Confirmation Order also preserves LBHI's "rights to assert or prosecute

Litigation Claims for reimbursement [or] indemnification . . . to the fullest extent permitted by

applicable law."  Confirmation Order ¶ 79.  Taken together, these sections of the Plan and

Confirmation Order leave no doubt that, under the Plan, the Indemnification Claims are

considered prepetition Litigation Claims of the Debtors which were preserved by the Plan and

which can now be asserted by the Plan Administrator.  Such claims accrued on account of

---

[20]    *See* Plan §§ 6.1(a)-(b), 7.6.
[21]    *See id.* § 6.1(b)(iii) and (iv).

15

distributions made under the Plan to the GSEs, who are holders of allowed claims under the Plan and, by the Adversary Proceedings, the Plan Administrator is prosecuting LBHI's claims for reimbursement and indemnification from the Defendants, as explicitly permitted by section 8.14(b) of the Plan.

Furthermore, the Plan provides that this Court retains exclusive jurisdiction "of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan" including for the purpose of "hear[ing] and determin[ing] any actions brought to recover all assets of the Debtors and property of the estates, wherever located . . ." and "[t]o determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases, in each case in accordance with applicable law." Plan § 14.1(k), (b). The Adversary Proceedings fall squarely within these jurisdictional provisions.

### 2. Pursuit of the Adversary Proceedings Affects the Implementation and Administration of the Plan

Finally, the Defendants argue that because the Indemnification Claims "arose" when the GSE Settlements were entered into post-confirmation (a fact which they assert that LBHI itself admits), the Indemnification Claims lack the requisite "close nexus" to the Plan, which plan was confirmed in 2011 and has already been substantially consummated. The Defendants assert that the Adversary Proceedings (which predominantly were filed more than two years after the GSE Settlements in 2014) are based on postpetition state law claims that do not affect the interpretation, implementation, consummation, execution, or administration of the Plan and cannot have a close nexus to the Plan.[22]

It bears emphasis that certain of the defendants in the Adversary Proceedings have previously argued before this Court that the Indemnification Claims are *prepetition* claims

---

[22]    Motion at 10-11.

16

because, they argue, such claims accrued at the time of each defendant's alleged breach of the

representations and warranties in the Agreements – that is, when the defendants sold the

allegedly breaching loans to LBB prior to the Debtors' bankruptcy filings.  Accordingly, such

defendants have argued that, because the Adversary Proceedings were not filed until more than

six years after the loans were sold to LBB, the Indemnification Claims are time-barred by New

York's six-year statute of limitations for breach of contract actions.[23]  Here, however, it appears

to suit such parties' purposes to argue otherwise.

Defendants' arguments then and now – here, that the Indemnification Claims are post-

confirmation claims with no close nexus to the Plan, and, previously, that the Indemnification

Claims accrued prepetition – are both inaccurate and ignore the genesis of such claims and the

facts surrounding them.

The definition of a "claim" under the Bankruptcy Code includes an "unmatured" or

"contingent" right of payment.  *See* 11 U.S.C. § 101(5).  A contingent claim is a debt that "does

not become an obligation until the occurrence of a future event, but is noncontingent when all of

the events giving rise to the liability for the debt occurred prior to the debtor's filing for

bankruptcy."  *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997).  "[T]he

---

[23]      As LBHI correctly points out, this Court has already rejected this argument and ruled that the
Indemnification Claims are timely because the claims did not accrue until LBHI's liability was fixed by the GSE
Settlement Agreements. *See Lehman Bros Holdings Inc. v. Hometrust Mortg. Co. (In re Lehman Bros. Holdings
Inc.)*, 530 B.R. 601, 613 (Bankr. S.D.N.Y. 2015) ("LBHI's claim for indemnification under section 711 of the
Seller's Guide did not accrue until its liability to a third party was fixed or payment was made"); *Lehman Bros.
Holdings Inc. v. LHM Fin. Corp.*, Adv. Pro. No. 14-2393, Dkt. No. 29 at 7 (Bankr. S.D.N.Y. May 7, 2015); *see also
Hometrust Mortg. Co. v. Lehman Bros. Holdings Inc., LHM Financial Corp. v. Lehman Bros. Holdings Inc. (In re
Lehman Bros. Holdings Inc.)*, No. 15CV4060, 15CV4061, 2015 WL 5674899, at *1-2 (S.D.N.Y. Sept. 25, 2015)
(denying motions for leave to appeal bankruptcy court's decision in *Hometrust* and *LHM*, noting that bankruptcy
court's holding was "sound" because "[i]t is black letter law in New York that indemnification claims do not accrue
until the liability to a third-party is fixed, or payment is made—in this case when LBHI settled with Fannie Mae and
Freddie Mac in 2014.").  This Court restated its prior rulings on *Hometrust* and *LHM* in a later ruling involving a
third counterparty. *See Lehman Bros. Holdings Inc. v. Std. Pac. Mortg.*, Adv. Pro. No. 16-01002, Dkt. No. 24 at
50:9-15 (Bankr. S.D.N.Y.).

Code's inclusion of 'unmatured' and 'contingent' claims is usually said to refer to obligations that will become due upon the happening of a future event that was 'within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.'" *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1004 (2d Cir. 1991) (citing *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd mem.*, 646 F.2d 193 (5th Cir. 1981)).  Contract indemnification claims remain contingent and unmatured until a right to indemnification is fixed.  *See, e.g.*, *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 129 (2d Cir. 2000).

Here, the Indemnification Claims arose, contingently, prepetition at the time the Defendants sold LBB the allegedly defective loans pursuant to the Agreements.  As discussed *supra*, by the Agreements, the Defendants contractually agreed to indemnify LBB and hold it harmless from liabilities or losses it might incur as a result of breaches of the representations and warranties in the Agreements;[24] the predicate facts creating the Indemnification Claims occurred prepetition.  As such, the Indemnification Claims existed as contingent and unmatured contract indemnification claims until the right to indemnification was fixed.  LBHI held such claims at the time of the Debtors' bankruptcy filing before the claims were ripe for litigation, and the Plan preserved such claims and re-vested them in the Plan Administrator for liquidation once such claims matured and, ultimately, distribution, if litigation of such claims was successful.[25]

Entry of the GSE Settlement Orders caused the Indemnification Claims to mature into claims on which the Plan Administrator could pursue the Defendants for indemnification and reimbursement for the benefit of LBHI's creditors under the Plan.  As the Plan Administrator correctly asserts, "[t]he post-confirmation GSE Settlements did not create the Indemnification

---

[24]    *See* Gateway Complaint ¶¶ 28, 32, 44.
[25]    *See* Confirmation Order ¶ 79; Plan §§ 1.17, 6.1(b), 8.14(b), 13.8.

Claims but were simply the events that fixed LBHI's liability to the GSEs and caused the Indemnification Claims to accrue, mature, and ripen for prosecution."[26]

The Plan tasks the Plan Administrator with prosecuting the Indemnification Claims when they mature and with distributing any recoveries from such litigation to creditors of the estate. Specifically, the Plan contemplates the post-confirmation monetization of Litigation Claims, including the Indemnification Claims and those claims maturing after the allowance of the GSEs' proofs of claim. Section 8.14(b) of the Plan and Paragraph 79 of the Confirmation Order state, in pertinent part, that "the Debtors' rights to assert or prosecute Litigation Claims for reimbursement, *indemnification*, recoupment or any other similar right . . . against any entity . . . on account of Distributions made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law."[27]

Unlike chapter 11 cases in which post-confirmation litigation recoveries inure solely to the benefit of the reorganized debtor,[28] any recovery from the Indemnification Claims here will inure to the benefit of the Debtors' creditors in the form of distributions under the Plan. This is not a case in which the post-confirmation litigation at issue is based on a claim that was created through a purely post-confirmation event which has no relationship to the confirmed plan and over which the bankruptcy court clearly would not have jurisdiction. Instead, here, the Indemnification Claims arose prepetition, were held by LBHI as contingent claims throughout the cases, and ripened into litigable claims by virtue of the entry of the GSE Settlement Orders. The Plan provides for the bankruptcy court's retention of jurisdiction over such claims, and

---

[26]     Opposition at 23.

[27]     Plan § 8.14(b); Confirmation Order ¶ 79.

[28]     *See*, *e.g.*, *Gen. Media*, 335 B.R. at 75 (holding that matter lacked a "close nexus" to the plan because the claims did not arise under the plan and the case had been "fully administered and all of the recovery will go to the reorganized debtor rather than to the creditors.").

prosecution of the Adversary Proceedings affects the implementation and administration of the

Plan because any recoveries from such proceedings will be paid to creditors.  These facts create a

close nexus between the Indemnification Claims and the Plan that easily meets the standard for

"related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and applicable law in this District.  *See*,

*e.g.*, *In re Refco, Inc. Sec. Litig.* 628 F. Supp. 2d at 443 (finding that action shared a close nexus

with bankruptcy proceeding and implementation and execution of confirmed plan were directly

at issue because claims being prosecuted arose under plan and any recoveries would be

distributed to creditors); *ResCap Liquidating Trust v. Primary Cap. Adv.*, 527 B.R. at 871

(holding that indemnification claims preserved and transferred for prosecution under Plan meet

the close nexus standard); *Neilson v. Straight-Out Promotions, LLC (In re Tyson)*, 2007 Bankr.

LEXIS 2832 at *8-9 (Bankr. S.D.N.Y. Aug. 17, 2007) (finding close nexus test met because any

proceeds recovered in adversary proceeding would be paid to creditors, the chapter 11

proceedings had not yet been fully administered, and the plan provided for the court's retention

of jurisdiction "to hear and resolve any causes of action involving the Debtors, the Reorganized

Debtor, or the Estates that arose prior to the Effective Date or in connection with the

implementation of the Plan.").

　　　　For the foregoing reasons, the Court finds that it has subject matter jurisdiction over the

Indemnification Claims and the Adversary Proceedings.  The Motion seeking dismissal of the

Adversary Proceedings against the Defendants on the basis of lack of subject matter jurisdiction

is denied.

## VENUE

### A.  Applicable Law

Section 1409 of title 28 of the United States Code governs the venue of "a proceeding arising under title 11 or arising in or related to a case under title 11" which, "[e]xcept as otherwise provided in subsections (b) and (d), . . . may be commenced in the district court in which such case is pending."  28 U.S.C. § 1409(a).[29]  Subsections (b) and (d) of section 1409 operate as exceptions to the general rule under subsection (a).[30]  Section 1409(d) restricts the trustee's ability to proceed in bankruptcy court if the proceeding it seeks to pursue is based on a claim arising after the bankruptcy was commenced and out of the operation of the debtor's business.  Specifically, section 1409(d) provides that

> [a] trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such [bankruptcy] case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

28 U.S.C. § 1409(d).  "Section 1409(d) applies to claims in favor of the debtor, and permits the trustee to sue only in the district where the suit could have been brought in the absence of bankruptcy."  *Eagle-Picher Indus., Inc. v. Blue Dove Dev. Assoc. (In re Eagle-Picher Indus., Inc.)*, 162 B.R. 140, 142 (Bankr. S.D. Ohio 1993) (citing H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 447 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6402).  Unlike the permissive nature of subsection (a), the venue provisions of section 1409(d) are exclusive; a debtor *must* look to

---

[29]    Subject to such exceptions, "venue of adversary proceedings is always proper, in the first instance, in the district court where the title 11 case is pending."  *Enron Corp. v. Dynegy Inc. (In re Enron Corp.)*, No. 01-16034, 2002 WL 32153911, at *1 (Bankr. S.D.N.Y. Apr. 12, 2002).  *See also Iridium Operating LLC v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 836 (S.D.N.Y. 2002) ("The Second Circuit has held that the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.") (citation and internal quotation marks omitted).

[30]    None of the parties disputes that 28 U.S.C. § 1409(b) is not applicable here.

applicable nonbankruptcy venue provisions to determine proper venue if the claim arises after the bankruptcy petition was filed and from the operation of the business of the debtor. *Cont'l Air Lines, Inc. v. Hillblom (In re Cont'l Air Lines, Inc.)*, 61 B.R. 758, 769-70 (S.D. Tex. 1986).

Courts have observed that the "home-court default" venue provision found in section 1409(a) is based upon a need for expeditious and economical administration of a bankruptcy case. *See PermaLife Prods., LLC v. TSJ Dirt, LLC (In re PermaLife Prods., LLC)*, 432 B.R. 503, 510 (Bankr. D.N.J. 2010) (citing *In re B&L Oil Co.*, 834 F.2d 156, 159 n.8 (10th Cir. 1987)). The exception to section 1409(a) reflected in section 1409(d) for claims arising out of postpetition operations of the debtor's business operates as a potential "brake" on the speed of the bankruptcy system, and it reflects the concern of Congress that venue at a debtor-in-possession's "home court" may present possible unfairness to a defendant under the circumstances set forth in 1409(d). *PermaLife Prods., LLC*, 432 B.R. at 510. Importantly, courts have noted that the exception found in section 1409(d) may only be employed in the context of a debtor that is continuing in its ongoing business operations postpetition – "[i]n carrying on its business after the filing of bankruptcy, the presumption in favor of venue in the home bankruptcy court dissipates, and the debtor is exposed to liability in any court where the controversy might be heard as if the debtor were an ordinary citizen." *In re Cont'l Air Lines, Inc.*, 61 B.R. at 770. However, courts have held that "merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *PermaLife Prods., LLC*, 432 B.R. at 513 (citations omitted).

Courts in this Circuit have held that "[o]n a motion to dismiss based on improper venue, the plaintiff has the burden of showing that its choice of venue was a proper one." *Official*

*Comm. of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*, 329 B.R. 411, 433 (Bankr. S.D.N.Y. 2005) (citations omitted).  In meeting that burden, the plaintiff may rely on the allegations in the complaint which the court must accept as true, unless contradicted by affidavits; and "[t]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  *Id.* (citations omitted).

### B.  This Court is the Proper Venue for These Proceedings Because Section 1409(d) Does Not Apply Here.

LBHI and the Defendants disagree as to whether the exception set forth in section 1409(d) is applicable to the Indemnification Claims.  The Defendants contend that section 1409(d) applies here because (i) "LBHI has taken the position that its state law claims for contractual indemnification did not accrue until LBHI settled with, and made payment to, Fannie Mae and Freddie Mac, which occurred well after the commencement of the bankruptcy;"[31] and (ii) the settling of such claims and the pursuit of indemnification from the Defendants is part of the business of LBHI.[32]  Accordingly, the Defendants submit that the Indemnification Claims arose after the commencement of LBHI's chapter 11 case from the operation of the business of LBHI, and section 1409(d) thus requires LBHI to prosecute the Adversary Proceedings only in the districts in which the suits could have been brought in the absence of bankruptcy.  The Defendants assert that, under applicable non-bankruptcy law, they cannot be sued in the Southern District of New York and, consequently, venue is improper in this Court.

In sharp contrast, LBHI argues that section 1409(d) is inapplicable here because neither of the elements set forth therein are present here; namely, (i) the Indemnification Claims do not arise from the ongoing business of LBHI because, at all times during the postpetition period,

---

[31]    Motion at 23.

[32]    *See* Motion at 26.

LBHI has not been in the business of purchasing mortgage loans and selling/securitizing them and (ii) such claims arose prepetition, as the Agreements were executed and the allegedly defective loans were conveyed by Defendants prepetition.[33]  As such, LBHI submits that venue of the Adversary Proceedings in this Court is proper pursuant to section 1409(a) of title 28.  The Court agrees with LBHI's analysis, for the following rather straightforward reasons.

The Court's analysis of the applicability of section 1409(d) here begins – and ends – with an examination of whether the Indemnification Claims arose "from the operation of the business of the debtor," as required by the statute.

The Defendants allege that LBHI entered into the GSE Settlements and sought indemnification from the Defendants in the normal scope of its business operations – *i.e.*, buying and selling mortgage loans – and that the facts here would have occurred even if LBHI had not filed for bankruptcy.[34]  LBHI, on the other hand, contends that, while its Indemnification Claims are based on the Agreements which were executed pre-petition when LBHI was still in the business of buying and selling mortgage loans, LBHI is no longer engaged in such business.  Now, LBHI asserts, its sole purpose as the Plan Administrator is to liquidate the assets of the estates to maximize distributions to the Debtors' creditors.[35]  LBHI points out that there has been no postpetition continuation of its prepetition business of buying and selling mortgage loans, and the Defendants "fall to appreciate . . . the difference between transacting in loans in the ordinary

---

[33]        Opposition at 29.
[34]        *See* Motion at 26.
[35]        *See* Opposition at 32; June 12, 2018 Hr'g Tr. at 72:16-24 (Rollin: "Maybe from the Defendant[s'] perspective, because they are still in business, the obligation from time to time to . . . pay indemnity for defective loans is part of their ordinary course of business; that is not part of Lehman's post-petition business.  Lehman, rather, administers the assets of the estate for the benefit of its creditors.  And on that basis alone, on that prong alone, 1409(d) is inapplicable and the Court should deny the Motion to Dismiss for Improper Venue.").

course of business and asserting rights of the estate with respect to those loans against loan

sellers as part of the administration and liquidation of the Debtor's estate."[36]

LBHI has the burden to prove that its choice of venue is proper, and the Court must

accept the allegations in the Complaints as true.[37] LBHI has demonstrated that it is no longer

operating in the mortgage sale and securitization business, notwithstanding that some of the

administration of its estate may involve mortgage loans and pursuit of claims against third party

loan sellers. Courts have held that "[m]erely collecting, taking steps to preserve, and/or holding

assets, as well as other aspects of administering and liquidating the estate, do not constitute

'carrying on business' as that term has been judicially interpreted." *PermaLife Prods., LLC*, 432

B.R. at 513 (citations omitted). LBHI is doing exactly this. These chapter 11 cases are in

liquidation; there is no operating business. The Court finds that LBHI ceased to be engaged in

the business of purchasing and selling mortgage loans when it filed its chapter 11 petition and,

pursuant to the Plan, now exists solely as the Plan Administrator to liquidate the Debtors'

estates.[38] For these reasons, the Court determines that the Indemnification Claims do not arise

from any post-petition business of LBHI and, therefore, section 1409(d) does not apply here.

Because this element of section 1409(d) is not present, the Motion must be denied and the

Court need not reach the other requirement of section 1409(d) – that the claims at issue arose

---

[36]    *See* June 12, 2018 Hr'g Tr. at 70:5-9.
[37]    The Defendants rely heavily on *PermaLife Prods., LLC v. TSJ Dirt, LLC (In re PermaLife Prods., LLC)*, 432 B.R. 503 (Bankr. D.N.J. 2010), in support of their arguments and criticize LBHI for not addressing this decision in its Opposition. In that case, the Bankruptcy Court for the District of New Jersey concluded that the claim sought to be pursued by the debtor, which was related to a prepetition lease for space in which the debtor ultimately never operated, had "significant bankruptcy administration underpinnings, and no indicia of origin in the day-to-day business activities of the debtor after commencement of the case." 432 B.R. at 515. Contrary to supporting Defendants' position here, the *PermaLife* court's analysis of the facts and its conclusion supports LBHI's position. Moreover, *PermaLife* is distinguishable from the instant case because courts in the Third Circuit require that the *defendant* prove that the exception set forth in section 1409(d) is applicable (*see id. at 510*); here, the burden of proof is on the plaintiff.
[38]    *See* Plan § 7.6 ("the Plan Administrator shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities in accordance with Section 6.1(b)(iii) of the Plan").

postpetition.  Notwithstanding, the Court notes that the Motion could be denied on that basis as

well, as that Court has already found, *supra*, that the Indemnification Claims first arose

prepetition at the time the Agreements were entered into and the loans at issue were conveyed

from the Defendants to LBB.  The Indemnification Claims existed as prepetition contingent

claims not yet ripe for assertion at the time of LBHI's chapter 11 filing.  This fact remains

unchanged even though the Indemnification Claims matured postpetition upon LBHI's entry into

the GSE Settlements.  Accordingly, neither of the elements required by section 1409(d) can be

established here.

Because the Court finds that section 1409(d) does not apply to the Adversary

Proceedings, venue is proper here, in the district in which LBHI's chapter 11 case has been

pending for almost ten years, pursuant to section 1409(a), which provides that "a proceeding

arising under title 11 or arising in or related to a case under title 11 . . . may be commenced in the

district court in which such case is pending."  The Court observes that maintaining venue in this

District and permitting the Adversary Proceedings to be resolved in one centralized forum by a

Court extremely familiar with the Debtors' chapter 11 cases *and* the Adversary Proceedings is

consistent with the policy underlying section 1409(a): promoting the expeditious and economical

administration of a bankruptcy case.  The Court declines to address Defendants' remaining

arguments with respect to the venue analysis to be conducted under applicable non-bankruptcy

law in cases where section 1409(d) is found to apply.  The Motion seeking dismissal of the

Adversary Proceedings against the Defendants on the basis of improper venue is denied.

## **CONCLUSION**

For all of the foregoing reasons, the Motion is denied.  IT IS SO ORDERED.

Dated: August 13, 2018
New York, New York

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

<u>FOR PUBLICATION</u>

**<u>Exhibit A</u>**

| Defendant | Adv. Pro. No. |
|---|---|
| American Pacific Mortgage Corporation | 16-01360 |
| America's Mortgage Alliance, Inc. | 16-01378 |
| America's Mortgage, LLC | 16-01378 |
| Approved Funding Corp. | 16-01284 |
| Arlington Capital Mortgage Corporation | 16-01351 |
| Bank of England | 16-01285 |
| Bondcorp Realty Services Inc. | 16-01302 |
| Broadview Mortgage Corporation | 16-01286 |
| BWC Mortgage Services f/k/a Commerce Home Mortgage, Inc. f/k/a Simonich Corp. | 16-01376 |
| Capital Bank Corporation, as successor by merger to TIB Bank | 16-01367 |
| Cherry Creek Mortgage Co., Inc. | 16-01287 |
| Circle One Mortgage Company | 16-01364 |
| CMG Mortgage, Inc. | 16-01332 |
| Congressional Bancshares, Inc. | 16-01003 |
| Cornerstone Mortgage, Inc. | 16-01288 |
| Crestline Funding Corporation | 16-01306 |
| CTX Mortgage Company, LLC | 16-01359 |
| DHI Mortgage Company Ltd. | 16-01374 |
| Director's Mortgage, Inc. | 16-01345 |
| Eagle Mortgage Holdings, LLC as successor by merger to Eagle Home Mortgage, Inc.; and Universal American Mortgage Company | 16-01383 |
| First Bank | 16-01289 |
| First California Mortgage Company | 16-01313 |
| First Equity Mortgage Bankers, Inc. | 16-01305 |
| First Mortgage Corporation | 16-01290 |
| First National Bank | 16-01364 |
| Freedom Mortgage Corporation | 16-01373 |
| Gateway Funding Diversified Mortgage Services, L.P. | 16-01351 |
| Gateway Mortgage Group, LLC | 16-01291 |
| Guaranteed Rate, Inc. | 16-1292 |
| Guild Mortgage Company | 17-01001 |
| Hartland Mortgage Centers, Inc. | 16-01317 |
| Home Loan Center, Inc. | 16-01342 |
| iMortgage.com, Inc. | 16-01283 |
| loanDepot.com | 16-01283 |
| Loan Simple, Inc. f/k/a Ascent Home Loans Inc. | 16-01309 |

| Defendant | Adv. Pro. No. |
|---|---|
| MC Advantage, LLC f/k/a Republic Mortgage Home Loans, LLC | 16-01334 |
| Mega Capital Funding, Inc. | 16-01304 |
| MegaStar Financial Corp. | 16-01301 |
| Mortgage Capital Associates, Inc. | 16-01318 |
| Mountain West Financial, Inc. | 16-01349 |
| New Fed Mortgage Corp. | 16-01299 |
| North Atlantic Mortgage Corporation | 16-01339 |
| Oaktree Funding Corp. | 16-01298 |
| Paramount Residential Mortgage Group, Inc. | 16-01293 |
| Parkside Lending, LLC | 16-01308 |
| PMAC Lending Services, Inc. | 16-01353 |
| PMC Bancorp | 16-01353 |
| Reliant Mortgage Company, LLC | 16-01353 |
| Republic State Mortgage Co. | 16-01365 |
| Residential Home Funding Corp. | 16-01361 |
| Response Mortgage Services, Inc. | 16-1343 |
| Ross Mortgage Corporation | 16-01324 |
| Sacramento 1st Mortgage, Inc. | 16-01350 |
| Santander Bank, N.A, f/k/a Sovereign Bank, FSB | 16-01357 |
| Security One Lending | 16-01344 |
| Security National Mortgage Company | 16-01325 |
| Shea Mortgage, Inc. | 16-01294 |
| Sierra Pacific Mortgage Co., Inc. | 16-1341 |
| Southeast Funding Alliance, Inc. | 16-01314 |
| Stearns Lending, LLC | 16-01001 |
| Standard Pacific Mortgage, Inc. f/k/a Family Lending Services, Inc. | |
| Sterling National Mortgage Company, Inc. | 16-01316 |
| Suburban Mortgage, Inc. | 16-01295 |
| Sun American Mortgage Company | 16-01296 |
| Universal American Mortgage Company, LLC | 16-01297 |
| Windsor Capital Mortgage Corporation | 16-01333 |
| Wintrust Mortgage Corporation, as successor by merger to SGB Corp. | 16-01369 |
| WR Starkey Mortgage, LLP | 16-01326 |
| WEI Mortgage LLC f/k/a WEI Mortgage Corporation | 16-01346 |