**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS HOLDINGS INC., | |
| Plaintiff, | Adversary Proceeding |
| - against - | No. 16-01019 (SCC) |
| 1ST ADVANTAGE MORTGAGE, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM DECISION AND ORDER**
**DENYING MOTIONS TO TRANSFER VENUE**

A P P E A R A N C E S :

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
By:    William A. Maher, Esq.
       Paul R. DeFilippo, Esq.
       Adam M. Bialek, Esq.
       Mara R. Lieber, Esq.

       -and-

FOX ROTHSCHILD LLP
1225 17th Street
Suite 2200
Denver, CO 80202
By:    Michael A. Rollin, Esq.
       Maritza Dominguez Braswell, Esq.

*Counsel for Lehman Brothers Holdings Inc.*

AMERICAN MORTGAGE LAW GROUP, PC
775 Baywood Drive, Suite 100
Petaluma, CA 94954
By:     Tracy L. Henderson, Esq.
        Jack Vincent Valinoti, Esq.

*Counsel for Approved Funding Corp.; Arlington Capital Mortgage Corporation; Broadview
Mortgage Corporation; BWC Mortgage Services f/k/a Commerce Home Mortgage, Inc. f/k/a
Simonich Corp.; CMG Mortgage, Inc.; Congressional Bancshares, Inc.; First California
Mortgage Company; First Mortgage Corporation; Hartland Mortgage Centers, Inc.; Gateway
Funding Diversified Mortgage Services, L.P.; Loan Simple, Inc. f/k/a Ascent Home Loans Inc.;
MC Advantage, LLC f/k/a Republic Mortgage Home Loans, LLC; Mega Capital Funding, Inc.;
New Fed Mortgage Corp.; Oaktree Funding Corp.; Republic State Mortgage Co.; Residential
Home Funding Corp.; Ross Mortgage Corporation; Sun American Mortgage Company; Windsor
Capital Mortgage Corporation; and WR Starkey Mortgage, LLP*

MOYE WHITE LLP
1400 16th Street
Denver, CO 80202
By:     Timothy M. Swanson, Esq.
        Paul R. Franke, III, Esq.

*Counsel for Cherry Creek Mortgage Co.*

REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
By:     Michael Leib, Esq.

*Counsel for Wintrust Mortgage*

LANI ADLER PARTNERS LLC
275 West 96th Street, Suite 15G
New York, NY 10025
By:     Lani Aloha Adler, Esq.

*Counsel for Suburban Mortgage, Inc.*

MEDLIN & HARGRAVE
A Professional Corporation
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
By:    Joshua A. Rosenthal, Esq.

*Counsel for American Pacific Mortgage Inc.; Cornerstone Mortgage Inc.; Parkside Lending, LLC; and Sacramento 1ˢᵗ Mortgage, Inc.*

ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
By:    Alec Harris, Esq.
       Mashach Y. Rhoades, Esq.
       Martin Estevao, Esq.

*Counsel for America's Mortgage Alliance, Inc. and America's Mortgage, LLC*

MAYER BROWN LLP
1675 Broadway
New York, NY 10028
By:    Matthew Ingber, Esq.
       Christopher J. Houpt, Esq.

71 South Wacker Drive
Chicago, IL 60606
By:    Christopher S. Comstock, Esq.
       Lucia Nale, Esq.
       Thomas V. Panoff, Esq.

*Counsel for Guaranteed Rate, Inc.*

INCORVAIA & ASSOCIATES
1947 Camino Vida Roble, Suite 230
Carlsbad, CA 92008
By:    Joel L. Incorvaia, Esq.
       G. Ehrich Lenz, Esq.

*Counsel for Guild Mortgage Company*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Certain Defendants' Omnibus Motion to Transfer Venue, dated

August 7, 2017 [Dkt. No. 457][1] (the "Omnibus Motion"), filed by the defendants listed on

Exhibit A[2] annexed hereto (collectively, the "Defendants")[3] seeking transfer of the adversary

proceedings set forth on Exhibit A to the district courts specified therein.  In addition to the

Omnibus Motion, certain Defendants filed (i) individual motions to address issues unique to such

Defendants (the "Supplemental Motions" and, together with the Omnibus Motion, the

"Motions")[4] and (ii) an affidavit or declaration (the "Individual Defendant Declarations"), each

as listed herein.  On October 6, 2017, in opposition to the Motions, Lehman Brothers Holdings

Inc. ("LBHI") filed its Memorandum of Law of Plaintiff Lehman Brothers Holdings Inc. in

Opposition to Certain Defendants' Motions to Transfer Venue [Dkt. No. 522] (the

"Opposition"), together with the Declaration of John Baker [Dkt. No. 522-2] and the Declaration

of Michael A. Rollin [Dkt. No. 522-3] (the "Rollin Decl.").

---

[1]     Docket numbers used herein refer to documents filed in Adversary Proceeding No. 16-01019 unless otherwise indicated.

[2]     Since the filing of the Omnibus Motion, the Adversary Proceedings (as defined below) filed against certain of the movants listed on Exhibit A to the Omnibus Motion have been dismissed or certain Defendants have withdrawn as movants.  Accordingly, Exhibit A to this Decision contains a modified list of Defendants who remain as movants as of the date of this Decision.

[3]     The adversary proceedings filed against the Defendants listed on Exhibit A (and against certain other parties) have been administratively coordinated pursuant to (i) the Case Management Order, dated November 1, 2016 [Dkt. No. 305] (the "CMO") and (ii) the Order to Administratively Coordinate Adversary Proceeding Dockets Under the Case Management Order and Pursuant to U.S.C. § 105, dated March 6, 2017 [Dkt. No. 398]. Notwithstanding this administrative coordination and the single caption placed on this Decision pursuant to the CMO, this Decision will be filed on the docket of each of the Adversary Proceedings listed on Exhibit A annexed hereto and shall apply to each such Adversary Proceeding.

[4]     In lieu of filing individual motions, certain Defendants represented by the same counsel collectively filed the Memorandum of Law in Support of Each Individual Transfer Defendant's Motion to Transfer Venue, dated August 7, 2017 [Dkt. No. 480] (the "AMLG Motion").  The AMLG Motion is included in the definition of Supplemental Motions.

## BACKGROUND

The Court assumes familiarity with the general background and history of the LBHI

chapter 11 cases; this Decision will provide limited background facts pertinent to the Motions.

Prior to its bankruptcy, LBHI, directly or through its affiliates, including Lehman

Brothers Bank, FSB ("LBB"), engaged in the purchase and sale of mortgage loans. LBHI

arranged directly or through affiliates such as LBB to purchase mortgage loans from loan

originators and other third parties (the "Sellers") including the Defendants; it then packaged such

loans for securitization or sale to other third parties. In transactions involving the Defendants,

the Defendants sold the mortgage loans to LBB (which thereafter assigned its rights thereunder

to LBHI)[5] pursuant to agreements (the "Agreements") in which, among other things, the

Defendants contractually agreed to indemnify LBB and hold it harmless from liabilities or losses

it might incur (including liabilities to third parties) as a result of breaches of the representations

and warranties in the Agreements.[6]

The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan

Mortgage Corporation ("Freddie Mac," and, together with Fannie Mae, the "GSEs") were two

subsequent purchasers of mortgage loans from LBHI. On September 15, 2008, LBHI and certain

of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary chapter 11 cases in

this Court. In September 2009, both GSEs filed proofs of claim against LBHI (collectively, the

---

[5]        The Complaints filed in the Adversary Proceedings (each as defined below) assert that LBB subsequently
assigned to LBHI all of its rights and remedies under the Agreements pertaining to the loans at issue. *See* Ex. 1 to
Rollin Decl. ¶ 20 (Complaint, *Lehman Brothers Holdings, Inc. v. Windsor Capital Mortgage Corporation*, Adv. Pro.
No. 16-01333 [Dkt. No. 1]) (the "Windsor Complaint"). The Windsor Complaint is an example of an adversary
complaint the Plan Administrator filed against one of the Defendants in the Adversary Proceedings. In the
Opposition, LBHI has stated that, unless otherwise noted, the allegations in the Complaints are substantially similar
regarding all Defendants. *See* Opposition at 3 n.5.
[6]        *See* Windsor Complaint ¶¶ 28, 32, 44.

"GSE Claims"), asserting breaches of representations, warranties, or covenants in numerous sale agreements for loans they had acquired from LBHI.

The GSE Claims asserted claims for, among other things, "alleged indemnity/reimbursement obligations" and "indemnity claims" arising from the sale of mortgage loans to the GSEs, including mortgage loans originated by and purchased from the Defendants and ultimately sold to the GSEs.[7]  In its review of the GSE Claims, LBHI determined that certain loans, including those brokered or sold by Defendants, contained various defects that violated the representations, warranties, and covenants under the Agreements.  Lehman has alleged that the representations, warranties, and covenants in the sale agreements between the GSEs and LBHI were co-extensive with those in the Agreements between LBB and the Defendants.[8]  Thus, Lehman asserts that Defendants' breaches, acts, and omissions caused LBHI to incur liability to the GSEs.

On December 6, 2011, this Court confirmed the Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors (the "Plan").  *See* Order Confirming Plan [Case No. 08-13555, Dkt. No. 23023] (the "Confirmation Order").[9]

In January 2014, LBHI settled its disputes with the GSEs regarding the allowance of the GSE Claims (the "GSE Settlements").  The Court approved the GSE Settlements by Orders dated January 31, 2014 and February 19, 2014 (the "GSE Settlement Orders") [Case No. 08-13555, Dkt. Nos. 42420, 42918].  Pursuant to the Fannie Settlement, Fannie Mae received an allowed claim for $2.15 billion in LBHI Class 7 under the Plan, and, pursuant to the Freddie

---

[7]      *See* Settlement Agreement, dated January 22, 2014, by and among LBHI, et al., and Fannie Mae (the "Fannie Settlement") §§ C, D [Case No. 08-13555, Dkt. No. 42153]; Settlement and Assignment Agreement, dated February 12, 2014, by and among LBHI, et al., and Freddie Mac (the "Freddie Settlement") §§ C, E [Case No. 08-13555, Dkt. No. 42754].

[8]      *See* Windsor Complaint ¶¶ 2, 35, 43.

[9]      The Plan is annexed as Exhibit A to the Confirmation Order.

Settlement, Freddie Mac received a one-time cash payment of $767 million from LBHI, each in settlement of all claims and disputes between the parties.[10]

Subsequently, the Plan Administrator identified over 11,000 loans and over 3,000 potential counterparties against which LBHI allegedly held third-party contractual claims for indemnification and/or reimbursement by virtue of the GSE Settlements.[11] To manage this volume of indemnification claims, the Court authorized the Plan Administrator to implement a pre-litigation mediation protocol with the Sellers from which it sought indemnification. *See* Alternative Dispute Resolution Procedures Order for Indemnification Claims of The Debtors Against Mortgage Loan Sellers, dated June 24, 2014 [Case No. 08-13555, Dkt. No. 45277].

To further facilitate its pursuit of recoveries from those Sellers with whom mediation was unsuccessful, the Plan Administrator initiated adversary proceedings in this Court, including those at issue here, against more than one hundred Sellers (including the Defendants) in tandem with six previously-filed adversary actions (collectively, the "Adversary Proceedings"). Pursuant to the CMO, the Adversary Proceedings have a central docket for court filings (Adv. Pro. No. 16-01019) and have been coordinated for administrative purposes, including scheduling motions and discovery procedures.

By the complaints filed in the Adversary Proceedings, the allegations of which are substantially identical across all Defendants (collectively, the "Complaints"), LBHI claims that each of the Defendants breached its obligations under the Agreements by selling or submitting defective mortgage loans into LBHI's loan sale and securitization channels, and, thus, LBHI has

---

[10]    *See* Fannie Settlement §§ 2.1, 3.1, 5; Freddie Settlement §§ 2.1-2.3.

[11]    The settlement agreements with the GSEs obligated the GSEs to provide the Plan Administrator with certain documents and to otherwise assist the Plan Administrator in bringing indemnification claims against the Sellers to indemnify LBHI for its liability to the GSEs. *See* Fannie Settlement §§ 3.1-3.6 (provisions requiring Fannie Mae to assist the Plan Administrator in pursuing "Rep and Warranty Default" claims); Freddie Settlement §§ 4.1-4.6 (similar provisions to assist the Plan Administrator in pursuing claims related to "Liquidated Rep and Warranty Default Loans").

a third-party indemnification claim against each Defendant for LBHI's liability to the GSEs
(collectively, the "Indemnification Claims").  Specifically, the Complaints allege that it was
Defendants' breaches of the representations, warranties, and/or covenants under the Agreements
that caused LBHI to have to compensate the GSEs pursuant to agreements between LBHI and
the GSEs that contained representations, warranties, and/or covenants co-extensive with those
contained in the Agreements.[12]

     The CMO provides a time frame for (i) the filing of so-called threshold motions such as
motions under Federal Rule of Civil Procedure 12(b) based on venue, jurisdiction, and/or failure
to state a claim and (ii) objections to such motions.[13]  On March 31, 2017, certain defendants in
the Adversary Proceedings filed an omnibus motion to dismiss the Complaints filed against such
defendants pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and (ii)
Fed. R. Civ. P. 12(b)(3) for improper venue [Dkt. No. 413] (the "Motion to Dismiss").  By
Memorandum Decision and Order dated August 13, 2018 [Dkt. No. 606], this Court denied the
Motion to Dismiss, finding that this Court has subject matter jurisdiction over each of the
Adversary Proceedings and that venue in this Court is proper.

     By the Omnibus Motion seeking to transfer venue of the Adversary Proceedings against
each of the Defendants listed on Exhibit A, Defendants assert that "even if this Court finds that
venue is proper, the Court should still exercise its discretion to transfer the cases filed against the
. . . Defendants to more appropriate venues."[14]  The CMO provides a time frame for the filing of

---

[12]     *See* Windsor Complaint ¶¶ 2, 35, 43.

[13]     *See* CMO ¶¶ 8-9 ("During Phase I, as set forth below, Defendants may file motions to dismiss pursuant to
Fed. R. Civ. P. 12(b) and other threshold motions as set forth more fully below (the "Phase I Motions"). No other
motions shall be filed during Phase I absent good cause shown. Within sixty (60) days after the commencement of
Phase I, the Defendants shall file a single consolidated motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) (lack
of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim upon which relief can be
granted), 12 (b)(7) (failure to join a party under Rule 19), 12(e) (for a more definite statement), and 12(f) (to strike),
addressing issues common to all Defendants . . . .").

[14]     *See* Omnibus Motion at 1.

so-called threshold motions such as motions (i) under Federal Rule of Civil Procedure 12(b)

based on lack of personal jurisdiction, improper process, and/or insufficient service of process

and/or (ii) under 28 U.S.C. § 1404 seeking transfer of venue.[15]  As permitted by the CMO,

certain Defendants filed letters requesting a pre-motion conferences, and this Court held an

omnibus conference on May 11, 2017 to address such letters.  On June 6, 2017, the Court entered

that certain Order Setting Briefing Schedule for Motions to Transfer Venue [Dkt. No. 451]

setting forth the time and manner for briefing on motions to transfer venue, which order the

parties have followed.  The Court heard oral argument on the Motions on June 12, 2018.

## GENERAL DISCUSSION APPLICABLE TO ALL MOVING DEFENDANTS

### A.  Applicable Law

Section 1334(b) of title 28 of the United States Code provides that federal courts "shall

have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or

arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  The transfer of venue of a

case or proceeding under title 11 is governed by section 1412 of title 28 of the United States

Code, which provides that "[a] district court may transfer a case or proceeding under title 11 to a

district court for another district, in the interest of justice or for the convenience of the parties."

28 U.S.C. § 1412.  Most courts in this District have interpreted the terms of section 1412 to apply

only to core bankruptcy proceedings because, unlike section 1334(b), the language of section

1412 notably does not reference proceedings "related to" title 11; accordingly, when evaluating

whether a transfer of venue is appropriate for a non-core adversary proceeding "related to" a case

---

[15]      *See* CMO ¶ 15 ("Within fifteen (15) days after the commencement of Phase I, if any Defendant intends to
file any threshold motion, including motions under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); 12(b)(4)
(improper process); 12(b)(5) (insufficient service of process): and 28 U.S.C. § 1404 (change of venue), which
arguably address issues unique to that Defendant (the "Individual Motions"), it shall request a pre-motion
conference.).

under title 11, such courts have applied section 1404(a). *See ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 249 n.3 (S.D.N.Y. 2017) (citing *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-CV-3474 (SAS), 2015 WL 5257003 at *7 (S.D.N.Y. Sept. 9, 2015); *Thomson McKinnon Sec., Inc. v. White (In re Thomson McKinnon Sec., Inc.)*, 126 B.R. 833, 834 (Bankr. S.D.N.Y. 1991)); *Onewoo Corp. v. Hampshire Brands, Inc. (In re Onewoo Corp.)*, 566 B.R. 136, 140 (Bankr. S.D.N.Y. 2017) (citations omitted). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a).

Because the United States Court of Appeals for the Second Circuit has not ruled as to which statutory section should be applied to requests to transfer venue of non-core adversary proceedings related to title 11 cases, other courts in this District have relied on section 1412 in such instances, rather than section 1404(a). *See Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13-CV-5349, 2013 WL 5798986, at *5 (S.D.N.Y. Oct. 22, 2013); *Urban v. Hurley*, 261 B.R. 587, 591-92 (S.D.N.Y. 2001); *Enron Corp., v. Dynegy Inc. (In re Enron Corp.)*, 2002 WL 32153911, at *3 (Bankr. S.D.N.Y. Apr. 12, 2002)).

Whether this Court conducts its analysis of the relief requested in the Motions by applying section 1412 or, as the Defendants request, by applying section 1404(a), is largely inconsequential. Courts in this District have determined that the analyses under section 1404 and section 1412 are substantially similar. *See ICICI Bank Ltd.*, 565 B.R. at 249 n.3 ("[i]n any event, the distinction makes little difference, because courts consider substantially the same factors in determining whether to grant a motion under § 1404(a) and § 1412") (citing *ResCap Liquidating Tr. v. PHH Mortg. Corp.*, 518 B.R. 259, 267 (S.D.N.Y. 2014); *Bank of Am., N.A. v. Wilmington*

*Tr. FSB*, 943 F. Supp. 2d 417, 426 n.5 (S.D.N.Y. 2013)); *see also Onewoo*, 566 B.R. at 140.

Because Defendants seek transfer pursuant to section 1404(a) and the Plan Administrator agrees

that the analysis is the same under section 1404(a) or under section 1412, the Court will apply

section 1404(a) here; this does not constitute a determination by this Court, however, that section

1404(a) is the appropriate statutory section to apply in all circumstances in which a transfer of a

non-core adversary proceeding related to a title 11 case is sought.

　　　　When considering whether to grant a request for transfer of venue pursuant to section

1404(a), courts examine whether (i) the case could have been brought in the proposed transferee

district; and (ii) the convenience of the parties and witnesses and the interest of justice favor

transfer.  *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (citations

omitted); *ICICI Bank Ltd.,* 565 B.R. at 250 (citations omitted).   Under the first prong of this test,

courts consider whether (a) the transferee court had subject matter jurisdiction and personal

jurisdiction over the defendants, and (b) venue would have been proper in the transferee court.

*See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (citations

omitted).  Under the second prong of this test, courts typically consider various factors

(hereinafter, the "Transfer Factors") including, but not limited to, the following: "(1) the

convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant

documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5)

the availability of process to compel the attendance of unwilling witnesses, (6) the relative means

of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the

plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality

of the circumstances."  *Berman*, 30 F. Supp. 2d at 657 (citations omitted); *see also Bank of Am.,*

943 F. Supp. 2d at 426.

In evaluating a motion to transfer venue, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 576 (S.D.N.Y. 2015) (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000)). Indeed, the balancing of the Transfer Factors is an equitable task within the broad discretion of the court. *Id.* Courts evaluate a motion to transfer venue "according to an individualized, case-by-case consideration of convenience and fairness." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (citations omitted).

The party moving for change of venue bears the burden of proof. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citations omitted). Courts in this Circuit have applied the clear and convincing standard in determining whether venue transfer is warranted; absent the movant demonstrating by clear and convincing evidence that transfer is warranted, a discretionary transfer is not typically granted. *See id.* (collecting cases). "The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice.'" *Berman*, 30 F. Supp. 2d at 656 (citations omitted).

### B.  Summary of the Parties' Positions

By the Motions, Defendants seek to transfer the venue of each Adversary Proceeding listed on Exhibit A to the respective district court listed on Exhibit A.[16] Defendants contend that the convenience of the parties is the single most important factor in determining whether to

---

[16]        Certain Defendants seeking transfer have listed more than one district court to which they seek (or alternatively seek) to transfer of the applicable Adversary Proceeding.  For example, Wintrust Mortgage seeks transfer of Adv. Pro. No. 16-1369 to the United States District Court for the District of Colorado or, in the alternative, to the United States District Court for the Northern District of Illinois.

transfer venue, and that the convenience of the parties weighs heavily in their favor because, for

each Adversary Proceeding at issue here, the majority of the parties, the non-party witnesses

(who cannot be compelled to testify at trial in this District), and the documentary evidence to be

utilized at trial is located outside of New York.[17]  Additionally, the Defendants argue that the

locus of operative facts in each of the Adversary Proceedings did not arise in the Southern

District of New York because none of the significant events material to the asserted claims

occurred in New York.[18]  Because the Defendants assert that there is little material connection

between the operative facts and this forum, Defendants assert that the plaintiff's choice of forum

should be entitled to no deference here.[19]  Defendants further submit that each individual

Defendant's case is predicated on different facts and will require different witnesses at trial; thus,

even though the Adversary Proceedings all relate to similar causes of action, each case must be

brought separately; therefore, there is little benefit to coordination in the same forum.[20]

     As more specifically discussed below, for the reasons set forth in the Supplemental

Motions and in the supporting declarations filed by the Defendants, each Defendant argues that

its circumstances are unique and that an equitable weighing of the Transfer Factors supports

transferring venue of its respective Adversary Proceeding.

     By its Opposition, LBHI contends that the Transfer Factors weigh in favor of maintaining

venue in this District because the interest of justice, which LBHI asserts is the most important

consideration in determining whether to transfer venue, strongly favors adjudicating all of the

Adversary Proceedings in one forum "to avoid duplicative litigation, save time and expense for

---

[17]    *See* Omnibus Motion at 7-10.
[18]    *See id.* at 9.
[19]    *See id.* at 11.
[20]    *See id.* at 12-13.

parties and witnesses, and avert inconsistent results."[21]  LBHI argues that this Court is

"intimately familiar" with the approximately one hundred Adversary Proceedings asserting

Indemnification Claims brought by LBHI in this Court, all of which involve common issues of

fact and law.  Since approximately two-thirds of the defendants in such Adversary Proceedings

(approximately 67 proceedings) have not sought transfer, this Court will continue to preside over

the majority of the Adversary Proceedings even if the Motions are granted.  Accordingly,

transferring one-third of the proceedings – the 32 Adversary Proceedings filed against the

Defendant movants here – to approximately 20 different courts around the country would disrupt

the efficiencies created by centralizing the proceedings in this Court.[22]  LBHI further contends

that the Defendants must overcome the presumption in favor of the plaintiff's choice of forum

and the presumption in favor of the district where the bankruptcy is pending, and they have

failed to do.  Because the Defendants have not met their burden to demonstrate by clear and

convincing evidence that transfer of any of the Adversary Proceedings is warranted, LBHI

requests that the Motions be denied.[23]

### C. Defendants Have Not Made a Clear and Convincing Showing That the Interest of Justice or the Convenience of the Parties Weighs in Favor of Defendants' Choices of Forum

Because section 1404(a) of title 28 provides, in pertinent part, that "[f]or the convenience

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought . . . ," the Court will begin by

analyzing certain of the most significant Transfer Factors here – first, as generally applicable to

---

[21]    Opposition at 2.
[22]    *See* Opposition at 11.
[23]    *See* Opposition at 8-10.

all Defendants, and second, on an individualized basis as to each Adversary Proceeding at issue.[24]

### 1.  Judicial Efficiency and the Interest of Justice

The Second Circuit has held that the "interest of justice" component is a "broad and flexible standard which must be applied on a case by case basis" in consideration of promoting "the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness."[25]  *Manville Forest*, 896 F.2d at 1391.  Here, the interest of justice weighs heavily in favor of denial of the Motions with respect to each Adversary Proceeding at issue.

Were the Court to grant the Motions, the transfer of 32 Adversary Proceedings to approximately twenty different districts around the country would disrupt the efficiencies achieved by having centralized proceedings in this Court.  Moreover, as noted by LBHI in its Opposition, defendants in approximately 67 of the approximately 100 Adversary Proceedings do not seek to transfer venue; therefore, this Court will continue to preside over the majority of LBHI's actions seeking indemnification from such Sellers even if it were to grant the Motions.  Judicial economy would not be served by having twenty different courts adjudicating common issues of law.  The ensuing litigations would be duplicative and would inevitably result in inconsistent rulings.  Such a scenario would entail an enormous waste of judicial and party resources.  This Court has previously emphasized during the initial stages of the Adversary Proceedings (in which numerous conferences and hearings have been held over the past few

---

[24]    *See* June 12, 2018 Hr'g Tr. 158:18-22 (counsel reminding the Court of its obligation to consider each motion on an individualized basis).

[25]    Although the Second Circuit in *Manville Forrest* analyzed the "interests of justice" component in the context of section 1412 rather than section 1404(a), the court drew its interpretation from the Supreme Court's decision in *Stewart Org.* regarding venue transfer under section 1404(a).  *See Manville Forest*, 896 F.2d at 1391 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988)).

years) that consolidated proceedings are appropriate to conserve the resources of the Court and

the parties.[26]

While the Court recognizes that each Adversary Proceeding entails distinct issues of fact,

LBHI's allegations are substantially identical across Defendants. Most of the allegations of

breach of representations and warranties contained in the Complaints stem from the same

document, the Seller's Guide. Accordingly, common issues of law exist across the Adversary

Proceedings, a factor which also weighs in favor of adjudication of all of the proceedings before

one court. Resources on all sides would be wasted by requiring additional courts to tackle the

learning curve required for these Adversary Proceedings. This Court, with its extensive

familiarity with the Lehman chapter 11 cases and, specifically, the legal issues surrounding the

Indemnification Claims asserted in each of the Adversary Proceedings, is in the best position to

resolve matters in each of the Adversary Proceedings at this time.[27]

Significantly, numerous other federal courts facing litigation regarding the

Indemnification Claims have observed that such litigation is best resolved in this Court. In each

of these actions, a federal court outside New York was confronted with an action brought by one

or more of the Sellers against LBHI seeking a declaratory judgment that the Indemnification

Claims are barred by the applicable statute of limitations. Each of these courts dismissed the

declaratory judgment action filed by such Sellers, acknowledging this Court's familiarity with

LBHI's chapter 11 proceedings and emphasizing the judicial efficiencies which would be gained

by centralizing litigation concerning the Indemnification Claims in this Court. *See iFreedom*

---

[26]     *See* CMO ¶ 1.

[27]     This Court has previously adjudicated matters involving claims as to tens of thousands of allegedly
deficient mortgage loans sold to Lehman entities prepetition. *See* Order Estimating Allowed Claim Pursuant to
RMBS Settlement Agreement, dated March 15, 2018 [Case No. 08-13555, Dkt. No. 57785] (attaching transcript of
March 8, 2018 bench decision rendered after 22 days of trial involving approximately 76,000 mortgage loan files,
which decision allowed claims of RMBS Trustees for approximately $2.38 billion).

*Direct Corp. v. Lehman Bros. Holdings Inc.*, No. 2:15-CV-00868, Dkt. No. 65, at 17 (D. Utah

Aug. 24, 2017)[28] ("[T]he Bankruptcy Court has shown an aptitude for managing such a complex

bankruptcy with all its correlative proceedings.  And the Bankruptcy Court is more familiar with

the underlying facts and issues than any other court."); *Guaranty Bank v. Lehman Bros. Holdings*

*Inc.*, No. 2015-CV-00549, Court Minutes and Order, Dkt. No. 32, at 3 (E.D. Wis. May 20,

2016)[29] ("[I]n looking at all of the economy and efficiency interests – not just those of the

plaintiff [loan Seller] – the decision that most favored economy and efficiency was for this court

to . . . dismiss this case, so that the issues the plaintiff had raised could be resolved in the

adversary proceeding pending in the bankruptcy court for the Southern District of New York.");

*Gateway Mortg. Group, L.L.C. v. Lehman Bros. Holdings Inc.*, No. 2016-CV-02123, Order of

Dismissal, Dkt. No. 32 (S.D. Tex. Sept. 13, 2016),[30] (dismissing case to permit Gateway to

pursue its claims in the Southern District of New York, where Lehman's bankruptcy case is

pending, and noting that "public policy . . . strongly disfavors duplicate proceedings in multiple

fora"), *aff'd*, 2017 WL 2347603 (5th Cir. May 30, 2017); *Sec. Nat'l Mortg. Co. v. Lehman Bros.*

*Holdings Inc.*, No. N16C-01-221, 2016 WL 6396343, at *10 (Del. Super. Ct. Aug. 24, 2016)

("This Court recognizes the obvious complexity of the Lehman bankruptcy and the diligent and

extraordinary efforts already undertaken (and completed) by the Bankruptcy Court [for the

Southern District of New York].  This Court should and will not waste judicial resources

duplicating that work already done.  Judicial efficiency weighs heavily in favor of dismissal.").

Moreover, in denying certain Sellers' motions to withdraw the reference from this Court

in several of the Adversary Proceedings, the United States District Court for the Southern

---

[28]     *See* Ex. 5 to Rollin Decl.
[29]     *See* Ex. 6 to Rollin Decl.
[30]     *See* Ex. 7 to Rollin Decl.

District of New York has determined in three separate decisions that, based on this Court's

familiarity with these chapter 11 cases, judicial economy would best be served if this Court

adjudicated the Indemnification Claims in the first instance.  *See Lehman Bros. Holdings Inc. v.*

*iFreedom Direct Corp.*, No. 16-CV-423 (VEC), Order, Dkt. No. 29 at 1 (S.D.N.Y. Mar. 7,

2017)[31] ("As of the date of the motion, there were adversary proceedings before the Bankruptcy

Court against more than 140 similarly-situated defendants, involving similar facts and common

legal issues.  Substantial efficiencies will be gained by consolidating the resolution of those

proceedings in a single forum" and "the bankruptcy judge is familiar with the facts and law in

these actions and is better positioned than [the District Court] to hear the cases in the first

instance."); *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, No. 15-CV-304 (PAE), 2015 WL

891663, at *4 (S.D.N.Y. Feb. 25, 2015) ("[The Bankruptcy Court] has, to say the least, far

greater familiarity with the underlying facts of the Lehman bankruptcy than this Court, and [it]

likely has a superior understanding of the law and theories relevant to the parties' dispute.  This

specialized knowledge will contribute to swifter resolution of the claims at issue.") (citations

omitted); *Lehman Bros. Holdings Inc. v. LHM Fin. Corp.*, No. 15-CV-300 (GHW), 2015 WL

2337104, at *2 (S.D.N.Y. May 12, 2015) (same).

        The unanimous decisions of these courts speak volumes.  The Adversary Proceedings

have been pending before this Court since their inception, and, as one court has recognized

explicitly, transfer of certain of these actions at this time would result in a waste of judicial

resources by duplicating work that has already been done.[32]  This Court has approved the GSE

Settlements, entered the ADR Order, and ruled on substantive motions to dismiss in certain of

the Adversary Proceedings with respect to (i) the statute of limitations (including interpreting

---

[31]      *See* Ex. 4 to Rollin Decl.
[32]      *See Sec. Nat'l Mortg.*, 2016 WL 6396343, at *10.

portions of the Agreements and the Seller's Guide); (ii) subject matter jurisdiction; and (iii)

improper venue.  It is already immersed in the common issues of law and fact central to the

actions.  In addition, this Court has held numerous conferences and hearings in the Adversary

Proceedings and has established procedures for administrative coordination which will serve to

streamline discovery and pretrial matters once these actions emerge from the motion to dismiss

phase.  Even if certain of the Adversary Proceedings eventually require a jury trial or cannot

otherwise be finally adjudicated by this Court, judicial efficiency and economy would still be

best achieved by having the pretrial stages of the proceedings coordinated in this Court.  The

District Court for the Southern District of New York has consistently and repeatedly found that

judicial efficiency supports maintaining the reference in this Court in Lehman matters even in

circumstances in which this Court lacked final adjudicative authority such that this Court's

findings were subject to *de novo* review if appealed.[33]

Certain defendants' assertions regarding their alleged entitlement to a jury trial also do

not compel transfer from this Court at this time.  In *Enron Corp. v. Belo Co. (In re Enron Corp.)*,

317 B.R. 232, 234–35 (S.D.N.Y. 2004), the District Court considered and rejected a defendant's

argument that its right to a jury trial constituted sufficient cause for permissive withdrawal of the

reference from the bankruptcy court.  In denying the motion, the court recognized other decisions

---

[33]    In actions unrelated to the Indemnification Claims, the District Court has denied motions to withdraw the
reference, emphasizing the importance of this Court's knowledge of the Lehman chapter 11 proceedings.  *See
Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, No. 14-CV-01083 (LGS), 2014 WL 3583089, at *4 (S.D.N.Y.
July 18, 2014) ("[J]udicial efficiency will be served by keeping the present action in the bankruptcy court given its
substantial experience with the Lehman bankruptcy proceedings, the breadth and complexity of which are
unparalleled . . . .  Although the bankruptcy court is limited to issuing a report and recommendation, which must be
reviewed *de novo* by the district court, neither court's efforts will be duplicative.  Multiple courts have observed that
experience strongly suggests that having the benefit of the report and recommendation will save the district court
and the parties an immense amount of time.") (internal quotation marks and citations omitted); *Moore Macro Fund,
LP v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, No. 14-CV-5053 (WHP), 2014 WL 4635576,
at *1 (S.D.N.Y. Sept. 5, 2014) ("Keeping this matter in the bankruptcy court promotes judicial economy.  The
bankruptcy court has handled the Lehman bankruptcy for over five years and is well equipped to address these
disputes."); *see also Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*, 18 F. Supp. 3d
553, 557-58 (S.D.N.Y. 2014).

from this District emphasizing the efficient use of judicial resources and balancing factors of

judicial economy and uniform administration of a bankruptcy case with a demand for a jury trial.

*See id.* (citing *Bianco v. Hoehn (In re Gaston & Snow),* 173 B.R. 302, 307 (S.D.N.Y. 1994);

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 761–62 (S.D.N.Y. 1994);

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),* 136 B.R. 59, 61 (S.D.N.Y. 1992)

("A rule that would require a district court to withdraw a reference simply because a party is

entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the

policy of favoring judicial economy that underlies the statutory bankruptcy scheme.")).  In

*Enron*, the court concluded that withdrawal of the reference during the pretrial stage of the

proceeding would be "premature" because the bankruptcy court was best equipped to handle

discovery and other pretrial matters since it had presided over the case for almost one year and

was already familiar with Enron's claims.  Other decisions in this District have reached the same

conclusion on similar facts.  *See*, *e.g.*, *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147,

150 (S.D.N.Y. 2004) ("While the plaintiff has a right to a jury trial, such a right does not compel

withdrawing the reference until the case is ready to proceed to trial."); *Hunnicutt Co. v. TJX*

*Cos., Inc. (In re Ames Dep't Stores)*, 190 B.R. 157, 162-63 (S.D.N.Y. 1995) ("withdrawal of the

reference . . . still depends on the particular circumstances of each case, including whether the

case is likely to reach trial . . .").  While the underlying issues in *Enron* differ from those at issue

in the instant cases, its holding is nonetheless instructive.  Transfer of the Adversary Proceedings

to district courts[34] around the country during their pretrial stages would be premature, inefficient,

and not in the interest of justice.

---

[34]    Indeed, it is highly likely that a transferee district court would refer pretrial matters to a magistrate judge, resulting in the same pretrial/trial dichotomy that now will occur if an Adversary Proceeding indeed ultimately requires a jury trial.  Of course, the parties always have the ability to consent to conducting a jury trial in the Bankruptcy Court.

## 2. Deference to Plaintiff's Choice Of Forum

When considering a motion to transfer venue, great deference is generally given to a plaintiff's choice of forum. *See Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d at 576 ("A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.") (citing *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009)).  Accordingly, courts have held that a court's power to transfer a case or proceeding should be exercised cautiously.  *See Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004) (collecting cases).  However, where the forum selected is not the plaintiff's home forum or the place where the operative facts of the action occurred, courts have held that this diminishes the weight assigned to this factor.  *See McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014) (citations omitted).

The Defendants contend that deference should not be afforded to the plaintiff's choice of forum where, as here, they assert that "there is 'little material connection' between the chosen forum and the facts and issues of the case."[35]  They argue that this Court's only interest in the litigation is the bankruptcy proceeding, and that there is no material connection to the formation, negotiation, or execution of the contracts at issue; to the parties to the loan transactions; or to any of parties involved in the origination of the subject loans.  In contrast, they submit that the venues to which they seek transfer are "where the operative facts occurred" and "have a greater interest in the controversy."[36]

The Court does not dispute that certain of the Adversary Proceedings could have been brought or could be litigated in venues other than the Southern District of New York, and it

---

[35]    Motion at 11.
[36]    Motion at 12.

acknowledges Defendants' arguments in that regard – venue can be proper in more than one forum.[37] Notwithstanding, Defendants have failed to acknowledge that certain events which gave rise to the Indemnification Claims occurred in New York as well, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the Defendants' alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.[38]

When analyzing venue, a court "may determine that there are several loci of operative facts." *Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017) (citing *Adams v. Key Tronic Corp.*, 1997 WL 1864, at *4 n.1 (S.D.N.Y. Jan. 2, 1997)). In venue transfer cases where key events occurred in both plaintiff's chosen forum and the movant's proposed forum, courts in this District have denied motions to transfer venue. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Novus Int'l, Inc.*, No. 09-CV-01108 (BSJ), 2011 WL 6937593, at *3 (S.D.N.Y. Dec. 28, 2011) (holding that where the operative facts did not occur "exclusively" in the transferee court, considerations regarding the loci of operative facts "weigh[] against transferring the case"). Here, the Court concludes that the Defendants have not established by clear and convincing evidence that this Court lacks any material connection to the Indemnification Claims such that deference to the plaintiff's choice of forum should be disregarded.

---

[37]    *See, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) ("We thus join several other circuits in holding that the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts . . .").

[38]    *See* Memorandum Decision and Order Denying Omnibus Motion to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue [Dkt. No. 606].

### 3.    Convenience of the Witnesses and Parties

The Defendants argue that the convenience of the witnesses, particularly third-party

witnesses, is the most important consideration under section 1404.[39]  By their Individual

Defendant Declarations, as further discussed *infra*, the Defendants contend that they, and their

material witnesses, would be severely inconvenienced were the trials on the Indemnification

Claims to take place in New York.  The Defendants list numerous individuals (*e.g.*, appraisers,

brokers, title officers, borrowers, and former employees of Defendants) who reside outside of

New York whom they assert they intend to call to testify in support of their individual defenses

against LBHI's claims.  Because they assert that (i) each witness's testimony is material; (ii) it is

inconvenient for the witnesses to travel to New York to testify; and (iii) if such witnesses were to

refuse to testify, the Court would be unable to compel non-party witnesses residing over 100

miles away to testify, the Defendants argue that the convenience of the witnesses weighs heavily

in favor of transferring venue of their respective Adversary Proceedings.

While the Defendants appear to recognize that, at trial, *LBHI* will have the burden to

establish on a loan-by-loan basis that the borrower for each allegedly breaching mortgage loan

made a material misrepresentation which caused a loss, the Defendants disregard this critical fact

when making their arguments regarding the quantity and nature of the witness testimony which

they will require for trial.  First, this Court observes, based on its experience in trying cases

similar to the Adversary Proceedings, that an appropriate trial regarding alleged breaches of the

Agreements may not necessarily involve dozens of witnesses providing live testimony at trial.

One reason for this is likely to be the passage of time; since the allegedly breaching loans were

each issued over a decade ago, witness availability and/or ability to provide meaningful

---

[39]        *See* June 12, 2018 Hr'g Tr. 131:16-133:8.

testimony based on recollections may be much more limited in the Adversary Proceedings than in a case in which allegedly breaching loans were originated more recently. In addition, the focus on live witness testimony ignores the central role that documentary evidence plays in cases such as these. The Court is skeptical that a trial in any one of the Adversary Proceedings will necessarily involve dozens of witnesses, as certain of the Defendants assert.[40]

Second, even if each Defendant does determine to call a number of witnesses at trial, Defendants have failed to provide evidentiary support for the assertions in the Motions and in the Individual Defendant Declarations that certain witnesses would refuse to travel to New York to testify. As LBHI points out, not one Defendant has provided a single witness affidavit stating that such witness would be unwilling to testify in New York; instead the statements made to the Court simply appear to be inadmissible hearsay. While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue. *See, e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

Further, as discussed *infra*, certain Defendants have failed to demonstrate definitively that their witnesses are in fact all located in the forum to which their seek transfer, such that the

---

[40]    For example, in *Lehman Brothers Holdings, Inc. v. Suburban Mortgage, Inc.* (Adv. Pro. 16-01295), the Defendant, Suburban Mortgage, Inc., maintains that, for the 12 loans at issue, it intends to call 41 witnesses, 37 of whom are non-party witnesses consisting of appraisers, underwriters, loan officers, real estate brokers/agents, and borrowers. *See* Memorandum of Law in Support of Defendant Suburban Mortgage, Inc.'s Motion to Transfer Venue [Dkt. No. 462] at 3.

convenience of the witnesses favors transfer to the requested forum. *See, e.g.*, June 12, 2018

Hr'g Tr. 176:17-178:3 (attorney for Guaranteed Rate, Inc. admitting, in response to questions

from the Court, that, while his client seeks transfer of its Adversary Proceeding to the Northern

District of Illinois, (i) only eight of the 22 allegedly defective loans at issue are "associated with

Illinois;" (ii) he does not know whether Guaranteed Rate's material third-party witnesses are

located in Illinois, as no investigation has been done as to where such persons reside; and (iii) he

does not know whether the borrowers on the eight loans originated in Illinois still reside there).

In fact, the witness lists in the Individual Defendant Declarations are replete with potential

witnesses who reside outside the district to which transfer is sought or whose state of residence

has not been confirmed with certainty at this time.  Finally, many of the vague statements

regarding witness inconvenience contained in the declarations (*e.g.*, statements asserting that

"cost of travel, loss of time at work and family obligations" make New York an "extremely

inconvenient" forum) are also unsupported by statements of the witnesses themselves explaining

how or why New York is any less convenient than any other forum.  It is not sufficient for the

moving party merely to shift the inconvenience to the other party, nor is it sufficient to

demonstrate that the equities lean slightly in favor of the movant.  *See In re Enron Corp.*, 274

B.R. 327, 342-43 (Bankr. S.D.N.Y. 2002) (citing *In re Garden Manor Associates, L.P.*, 99 B.R.

551, 555 (Bankr. S.D.N.Y. 1988)).[41]  As discussed more fully with respect to individual

---

[41]      The Court finds that certain of the other Transfer Factors – the location of relevant documents and the
relative means of the parties – are neutral or not dispositive to either side, and this Decision will not address them in
detail.  Regarding the forum's familiarity with the governing law, this factor weighs in favor of denial of transfer
where, as here, the agreements at issue require the application of New York law; in such instance, federal courts in
New York are presumed to be more familiar with New York law than a federal court in another state.  *See Eres N.V.
v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 482-83 (S.D.N.Y. 2009); *see also Royal Ins. Co. of Am. v. United
States*, 998 F. Supp. 351, 355 (S.D.N.Y. 1998) ("federal courts are presumed to be fully capable of applying
*nationally* applicable legal principles," but "federal courts have generally favored adjudication of a controversy by
the court which sits in the *state* whose law will provide the rules of decision") (citing *In re Eastern District
Repetitive Stress Injury Litigation*, 850 F. Supp. 188, 196 (E.D.N.Y. 1994)) (emphasis added).

Adversary Proceedings *infra*, while the Court recognizes that New York may be an inconvenient forum for certain parties and witnesses, each Defendant has failed to meet its burden to demonstrate that this factor weighs heavily in favor of transferring venue in its respective Adversary Proceeding.

## DISCUSSION OF EACH INDIVIDUAL DEFENDANT'S MOTION[42]

### A. America's Mortgage Alliance, Inc. and America's Mortgage, LLC (Adv. Pro. No. 16-01378)

America's Mortgage Alliance, Inc. and America's Mortgage, LLC (together, "America's Mortgage") have asserted that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01378 to the U.S. District Court for the District of Colorado (the "Colorado District Court"). In addition to joining the Omnibus Motion, America's Mortgage filed (i) the Memorandum of Law In Support of America's Mortgage Alliance, Inc.'s and America's Mortgage, LLC's Motion to Transfer Venue [Dkt. No. 478] (the "Am. Mortg. Motion") and (ii) the Declaration of Ardith White [Dkt. No. 478-1] (the "White Decl.") in support thereof.

America's Mortgage asserts that the most important factors weighing in favor of transferring venue of its Adversary Proceeding are (i) the convenience of the witnesses and parties and (ii) the locus of operative facts. It argues that such factors weigh in favor of transfer because (i) the majority of witnesses necessary for its defense are located in Colorado and it would be extremely inconvenient and costly for its witnesses to travel to New York; and (ii) most decisions related to the underwriting and sale of the loans at issue occurred in Colorado.[43]

---

[42] Exhibit A annexed hereto lists each individual Defendant and its proposed transferee court(s), and it reproduces and attempts to conform to the documents and the list attached to the Omnibus Motion and subsequently provided to the Court by counsel in an updated form. Any errors contained herein are not attributable to this Court. In particular, the Court notes that certain of the federal courts listed herein may be incorrectly named or do not exist, but the Court declines to rectify these errors in light of its denial of the Motions.

[43] *See* Am. Mortg. Motion at 4-5; White Decl. ¶¶ 8-9, 12-13.

Additionally, because (a) the America's Mortgage entities are both defunct and have no resources and (b) LBHI allegedly has not satisfied its burden to demonstrate that transfer to Colorado would be financially burdensome to LBHI, America's Mortgage argues that the "relative means of the parties" factor also weighs in its favor.[44]

The Court has considered each of America's Mortgage's arguments and finds that America's Mortgage has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01378 should be transferred to the Colorado District Court. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01378 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

America's Mortgage's stated concerns surrounding the convenience of witnesses, relative means of the parties, and locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, America's Mortgage (i) has provided no evidence to support its assertions regarding lack of financial means and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, its witnesses are unnamed, and it has provided no evidence as to whether such witnesses

---

[44]    *See* White Decl. ¶ 15; June 12, 2018 Hr'g Tr. 172:8-10, 174:16-176:5.

reside in Colorado at all or whether they would be unwilling or unable to travel. Finally, with

respect to the locus of operative facts, America's Mortgage fails to acknowledge that, while

certain decisions or activities relating to the loans at issue may have occurred in Colorado, other

facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i)

LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements

contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in

New York upon approval of the GSE Settlements. Moreover, this Court has already determined

that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings

here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01378 is denied.

### B. American Pacific Mortgage Corporation (Adv. Pro. No. 16-01360)

American Pacific Mortgage Corporation, individually, and as successor by merger to

Diversified Capital Funding, Inc., asserts that the convenience of the parties and the interest of

justice strongly favor transferring venue of Adversary Proceeding No. 16-01360 to the U.S.

District Court for the Eastern District of California. In addition to joining the Omnibus Motion,

American Pacific Mortgage Corporation filed (i) its Individual Brief in Support of its Motion for

Transfer of Venue, per 28 U.S.C. § 1404(a) [Dkt. No. 471] (the "APMC Motion") and (ii) the

Declaration of Chuck Nugent [Dkt. No. 471-2] (the "Nugent Decl.") in support thereof.

American Pacific Mortgage Corporation asserts that its Adversary Proceeding should be

transferred to the U.S. District Court for the Eastern District of California because (i) the "loans

were originated in California, by a California corporation, to California borrowers, secured by

California properties," and (ii) all of its potential witnesses and documentary evidence are

located in California and, as a result, it would be extremely inconvenient if venue were not transferred from the Southern District of New York.[45]

American Pacific Mortgage Corporation concedes that its prepetition brokerage agreement with LBB (the "APMC Brokerage Agreement") explicitly provides that the non-exclusive jurisdiction and venue of any disputes arising under such agreement shall be the state courts of New York County and the Federal Courts of the Southern District of New York.[46] LBHI asserts that two of the five loans at issue in the Adversary Proceeding against American Pacific Mortgage Corporation arise out of the APMC Brokerage Agreement; the other three loans relate to a loan purchase agreement between LBB and Diversified Capital Funding, Inc. which did not contain a forum selection clause.[47]  American Pacific Mortgage Corporation submits that (i) the forum selection clause contained in the APMC Brokerage Agreement should not control any claims related to the three loans originated by Diversified Capital Funding, Inc. and (ii) in the case of the two loans arising under the APMC Brokerage Agreement, the forum selection clause should be entitled to less weight because it is permissive rather than mandatory, and because the other Transfer Factors overwhelmingly favor transfer to California.[48]

The Court has considered each of American Pacific Mortgage Corporation's other arguments and finds that American Pacific Mortgage Corporation has failed to meet its burden to demonstrate by clear and convincing evidence that the Adversary Proceeding No. 16-01360 should be transferred to the U.S. District Court for the Eastern District of California.

---

[45]      APMC Motion at 3-4; *see also* Nugent Decl. ¶¶ 8-9.
[46]      *See* APMC Motion at 2-3; Nugent Decl. ¶ 3.
[47]      *See* APMC Motion at 2-3.  LBHI asserts that American Pacific Mortgage Corporation is liable for the loans originated by Diversified Capital Funding, Inc., a dissolved corporation; however, American Pacific Mortgage Corporation disputes such liability.  *See id.* at 2.
[48]      *See id.* at 5; June 12, 2018 Hr'g Tr. 164:1-24.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01360 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Further, although the forum selection clause under the APMC Brokerage Agreement is permissive rather than mandatory, a permissive forum selection clause is nonetheless afforded significant weight and necessarily indicates the parties' prior consent to litigation in the venue stated therein.  *See SBAV LP v. Porter Bancorp, Inc.*, No. 13-CV-372, 2013 WL 3467030, at *10 (S.D.N.Y. July 10, 2013) (collecting cases) (finding that non-exclusive forum selection clause deserves significant weight); *Orix Credit All., Inc. v. Mid-S. Materials Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) (citations omitted).  The fact that American Pacific Mortgage Corporation initially accepted the jurisdiction of the courts of New York when it entered into the APMC Brokerage Agreement reflects a commitment not to challenge New York as an inconvenient forum for any lawsuit related thereto.  *See SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *10.  In addition, while the forum selection clause does not cover all of the loans at issue, the Court finds that bifurcating this Adversary Proceeding into two litigations in two different fora would be contrary to judicial economy and the interest of justice.

Moreover, American Pacific Mortgage Corporation's stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, American Pacific Mortgage Corporation (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, its witnesses are unnamed, and it has provided no evidence as to whether such witnesses reside in California (or the specific district in California to which transfer is sought) at all or whether they would be unwilling or unable to travel. While American Pacific Mortgage Corporation asserts that the location of the operative documents is in California, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, American Pacific Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01360 is denied.

### C.  Approved Funding Corp. (Adv. Pro. No. 16-01284)

Approved Funding Corp. asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01284 to the U.S.

District Court for the District of New Jersey (the "New Jersey District Court").  In addition to

joining the Omnibus Motion, Approved Funding Corp. filed the AMLG Motion and the

Declaration of Shmuel Shayowitz [Dkt. No. 481] (the "Shayowitz Decl.") in support thereof.  By

his declaration, Mr. Shayowitz submits that venue should be transferred to the New Jersey

District Court because, among other reasons, (i) Approved Funding Corp. is headquartered and

has its principal place of business in River Edge, New Jersey, and the operative facts on which

the claims are based occurred there; (ii) it would be extremely inconvenient for Mr. Shayowitz

and the company's witnesses, who are located in New Jersey, Florida, and Colorado, to appear

and give testimony in the Southern District of New York; and (iii) such witnesses can be

compelled to testify in Colorado.[49]

The Court has considered each of Approved Funding Corp.'s arguments and finds that

Approved Funding Corp. has failed to meet its burden to show by clear and convincing evidence

that Adversary Proceeding No. 16-01284 should be transferred to the New Jersey District Court.

The Court has determined that the interest of justice, which favors centralizing litigation

of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert

inconsistent results, preserve judicial and party resources, and provide for the efficient

administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of

Adversary Proceeding No. 16-01284 in this Court.  The common issues of law in the Adversary

Proceedings, this Court's extensive experience with Lehman matters and with the

Indemnification Claims in particular (as noted by multiple federal courts across the nation

---

[49]    *See* Shayowitz Decl. ¶¶ 7-9. The Shayowitz Decl. appears to request that, if Adv. Pro. No. 16-01284 is not
transferred to the New Jersey District Court, it be transferred to the U.S. District Court for the District of Colorado.
Neither the Omnibus Motion nor the AMLG Motion explicitly contains this alternative request.

confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, Approved Funding Corp.'s stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Approved Funding Corp. (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, it has provided no evidence as to whether its witnesses (who reside in three different states) would be unwilling or unable to travel. The Court observes that the New Jersey District Court has three locations: one in Camden, which is approximately 100 miles from River Edge; one in Trenton, which is approximately 80 miles from River Edge; and one in Newark, which is approximately twenty miles from River Edge. This Court, which is located approximately twenty miles from River Edge, is no farther away from Approved Funding Corp.'s principal place of business than the closest location of the New Jersey District Court. Accordingly, Mr. Shayowitz's argument that it would be extremely inconvenient for him to travel to this Court "due to costs of travel, loss of time at work and family obligations"[50] carries little weight.

While Approved Funding Corp. asserts that the location of the operative documents is in New Jersey, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, Approved Funding Corp. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in New Jersey,

---

[50]    *Id.* ¶ 9.

other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i)

LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements

contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in

New York upon approval of the GSE Settlements.  Moreover, this Court has already determined

that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings

here.

      After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01284 is denied.

### D. Arlington Capital Mortgage Corporation and Gateway Funding Diversified Mortgage Services, L.P., n/k/a Finance of America Mortgage LLC (Adv. Pro. No. 16-01351)

      Arlington Capital Mortgage Corporation and Gateway Funding Diversified Mortgage

Services, L.P., n/k/a Finance of America Mortgage LLC ("Finance of America") have asserted

that the convenience of the parties and the interest of justice strongly favor transferring venue of

Adversary Proceeding No. 16-01351 to the U.S. District Court for the Eastern District of

Pennsylvania.  In addition to joining the Omnibus Motion, Arlington Capital Mortgage

Corporation and Finance of America filed the AMLG Motion; Arlington Capital Mortgage

Corporation filed the Declaration of Philip L. Russo [Dkt. No. 482] (the "Russo Decl.") in

support thereof[51] and Finance of America filed the Declaration of Sandy Sicilia [Dkt. No. 488]

(the "Sicilia Decl.") in support thereof.

      By his declaration, Mr. Russo states that venue should be transferred to the U.S. District

Court for the Eastern District of Pennsylvania because, among other reasons, (i) the documents

related to the three loans at issue are located in Pennsylvania and are voluminous; (ii) Arlington

---

[51]     The Russo Declaration states that, in 2008, Arlington Capital Mortgage Corporation sold its assets to Gateway Funding Diversified Mortgage Services, L.P.  *See* Russo Decl. ¶ 3.

Capital Mortgage Corporation is headquartered and has its principal place of business in

Bensalem, Pennsylvania, which is where the company's employees "performed" the loan

transactions; and (iii) it would be extremely inconvenient for Mr. Russo and the company's four

witnesses (who, based on recent investigations, live and work in Pennsylvania) to appear and

give testimony in the Southern District of New York.[52]

By her declaration, Ms. Sicilia states that venue should be transferred to the U.S. District

Court for the Eastern District of Pennsylvania because, among other reasons, (i) the documents

that support Finance of America's defense are located in Pennsylvania and are voluminous; (ii)

Finance of America is headquartered and has its principal place of business in Pennsylvania,

which is where the company's employees "performed" the loan transactions for the 24 loans at

issue; and (iii) it would be extremely inconvenient for Ms. Sicilia and the company's 31

witnesses (27 of whom are predominantly located in Pennsylvania) to appear and give testimony

in the Southern District of New York.[53]

The Court has considered each of the arguments of the Defendants in Adversary

Proceeding No. 16-01351 and finds that they have failed to meet their burden to demonstrate by

clear and convincing evidence that Adversary Proceeding No. 16-01351 should be transferred to

the U.S. District Court for the Eastern District of Pennsylvania.

The Court has determined that the interest of justice, which favors centralizing litigation

of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert

inconsistent results, preserve judicial and party resources, and provide for the efficient

administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of

Adversary Proceeding No. 16-01351 in this Court.  The common issues of law in the Adversary

---

[52]      *See* Russo Decl. ¶¶ 4-8.
[53]      *See* Sicilia Decl. ¶¶ 4, 6-8.

Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, these Defendants' stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Arlington Capital Mortgage Corporation and Finance of America (i) provide only vague, unsupported statements regarding witness inconvenience and (ii) have identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, they have provided no evidence to support their assertions that the majority of their witnesses reside in Pennsylvania and that they would be unwilling or unable to travel to New York. The Court also observes that not all witnesses identified in the Russo and Sicilia Declarations reside in Pennsylvania; certain witnesses listed reside in California, Colorado, or Florida.

Arlington Capital Mortgage Corporation and Finance of America state that they intend to call a total of 35 witnesses at trial. The Court is skeptical that a trial in this Adversary Proceeding will necessarily involve dozens of witnesses. These Defendants disregard the facts that (i) the plaintiff LBHI, not a defendant, bears the burden to establish on a loan-by-loan basis that the borrower for each allegedly breaching mortgage loan made a material misrepresentation which caused a loss; (ii) since the allegedly breaching loans were each issued over a decade ago, witnesses' ability to provide meaningful testimony based on recollections may be much more limited due to the passage of time; and (iii) documentary evidence may play a more central role than witness testimony at trial. Moreover, because the two declarants admit that not all of the

36

intended witnesses even reside in the Eastern District of Pennsylvania, and they fail to cite to any evidence explaining how or why New York would be any less convenient than the transferee district for such parties, the "convenience of witnesses" Transfer Factor does not weigh in favor of transfer of this Adversary Proceeding to the Eastern District of Pennsylvania. Additionally, while these Defendants assert that the location of the operative documents is in Pennsylvania and that this also weighs in favor of transfer, the Defendants do not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York.

Finally, with respect to the locus of operative facts, Arlington Capital Mortgage Corporation and Finance of America fail to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Pennsylvania, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01351 is denied.

### E.  Broadview Mortgage Corporation (Adv. Pro. No. 16-01286)

Broadview Mortgage Corporation asserts that the convenience of the parties and the interests of justice strongly favor transferring venue of Adversary Proceeding No. 16-01286 to the U.S. District Court for the Central District of California. In addition to joining the Omnibus Motion, Broadview Mortgage Corporation filed the AMLG Motion and the Declaration of David K. Leichtfuss [Dkt. No. 483] (the "Leichtfuss Decl.") in support thereof. By his declaration, Mr.

Leichtfuss states that venue should be transferred to the U.S. District Court for the Central

District of California because, among other reasons, (i) the documents that support Broadview

Mortgage Corporation's defense are located in California and "consist of large files;" (ii)

Broadview Mortgage Corporation is headquartered and has its principal place of business in

Orange County, California, which is where the company's employees "performed" the loan

transactions; and (iii) it would be extremely inconvenient for Mr. Leichtfuss and the company's

witnesses (who, based on recent investigations, live and work in California) to appear and give

testimony in the Southern District of New York.[54]

The Court has considered each of Broadview Mortgage Corporation's arguments and

finds that Broadview Mortgage Corporation has failed to meet its burden to show by clear and

convincing evidence that Adversary Proceeding No. 16-01286 should be transferred to the U.S.

District Court for the Central District of California.

The Court has determined that the interest of justice, which favors centralizing litigation

of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert

inconsistent results, preserve judicial and party resources, and provide for the efficient

administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of

Adversary Proceeding No. 16-01286 in this Court.  The common issues of law in the Adversary

Proceedings, this Court's extensive experience with Lehman matters and with the

Indemnification Claims in particular (as noted by multiple federal courts across the nation

confronted with litigation regarding the Indemnification Claims), and the deference afforded to a

plaintiff's choice of forum lend further support to this factor.

---

[54]        *See* Leichtfuss Decl. ¶¶ 4-8.

Moreover, Broadview Mortgage Corporation's stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Broadview Mortgage Corporation (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, it has provided no evidence as to whether its witnesses would be unwilling or unable to travel.

While Broadview Mortgage Corporation asserts that the location of the operative documents is Orange County, California and that such documents consist of large files, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York, regardless of their size. Finally, with respect to the locus of operative facts, Broadview Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01286 is denied.

### F.  Cherry Creek Mortgage Co., Inc. (Adv. Pro. No. 16-01287)

Cherry Creek Mortgage Co., Inc. asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01287 to the

Colorado District Court.  In addition to joining the Omnibus Motion, Cherry Creek Mortgage

Co., Inc. filed (i) the Supplemental Brief in Support of the Omnibus Motion to Transfers [Dkt.

No. 468] (the "Cherry Creek Motion") and (ii) the Declaration of Jerry Kaplan [Dkt. No. 468-1]

(the "Kaplan Decl.") in support thereof.

Cherry Creek Mortgage Co., Inc. asserts that its Adversary Proceeding should be

transferred to the Colorado District Court because (i) the majority of its witnesses are located in

Colorado so it would be costly and inconvenient to require such witnesses to travel from

Colorado to New York; (ii) both parties' attorneys are based out of, or have connections to,

Colorado and it would be costly to have counsel travel to New York; (iii) the locus of operative

facts – namely, the underwriting and sale of the loans at issue and the negotiation and execution

of the related agreements – occurred in Colorado; and (iv) all relevant documents are located in

Colorado.[55]

The Court has considered each of Cherry Creek Mortgage Co., Inc.'s arguments and finds

that Cherry Creek Mortgage Co., Inc. has failed to meet its burden to show by clear and

convincing evidence that Adversary Proceeding No. 16-01287 should be transferred to the

Colorado District Court.  The Court has determined that the interest of justice, which favors

centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative

litigation, avert inconsistent results, preserve judicial and party resources, and provide for the

efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue

of Adversary Proceeding No. 16-01287 in this Court.  The common issues of law in the

Adversary Proceedings, this Court's extensive experience with Lehman matters and with the

Indemnification Claims in particular (as noted by multiple federal courts across the nation

---

[55]    *See* Cherry Creek Motion at 2-4; Kaplan Decl. at 2-4; June 12, 2018 Hr'g Tr. 155:15-156:8, 157:9-11.

confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Cherry Creek Mortgage Co., Inc.'s stated concerns surrounding the convenience of witnesses, relative means of the parties, and locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Cherry Creek Mortgage Co., Inc. has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, its witnesses are unnamed, and it has provided no evidence as to whether such witnesses reside in Colorado at all or whether they would be unwilling or unable to travel. In addition, the assertions made by Cherry Creek Mortgage Co., Inc. regarding the location of counsel in Colorado are irrelevant, as courts do not consider the convenience of counsel when weighing the Transfer Factors. Finally, with respect to the locus of operative facts, Cherry Creek Mortgage Co., Inc. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Colorado, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01287 is denied.

### G. CMG Mortgage, Inc. (Adv. Pro. No. 16-01332)

CMG Mortgage, Inc. asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01332 to the Colorado District

Court or, in the alternative, to the U.S. District Court for the Northern District of California.[56]  In

addition to joining the Omnibus Motion, CMG Mortgage, Inc. filed the AMLG Motion and the

Declaration of Christopher M. George [Adv. Pro. No. 16-01332, Dkt. No. 28-2] (the "George

Decl.") in support thereof.

The George Declaration was also filed in support of CMG Mortgage, Inc.'s Supplemental

Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), dated August 7, 2017 [Adv. Pro. No.

16-01332, Dkt. No. 28] (the "Supplemental CMG Motion").  By the Supplemental CMG Motion,

CMG Mortgage, Inc. sought to transfer venue of its Adversary Proceeding in accordance with

certain allegedly mandatory forum selection clauses contained in two settlement agreements to

which it was a party; the forum selection clauses designated the federal district courts for the

District of Colorado or the Northern District of California as the exclusive venues for disputes

relating to such settlement agreements.  The Supplemental CMG Motion did not reflect that

CMG Mortgage, Inc. was seeking the same relief (venue transfer) on different grounds pursuant

to two distinct motions – (i) the Omnibus Motion/AMLG Motion and (ii) the Supplemental

CMG Motion.  On August 16, 2018, the Court entered an order denying the Supplemental CMG

Motion (which order was filed under seal) for the reasons set forth therein.  [Dkt. No. 607; Adv.

Pro. No. 16-01332, Dkt. No. 43].  Because such order did not specifically address the other

grounds on which CMG Mortgage, Inc. seeks to transfer venue, the Court will address these

arguments here, notwithstanding its previous denial of the request of CMG Mortgage, Inc. to

transfer venue of Adversary Proceeding No. 16-01332.

---

[56]    While Exhibit A to the Omnibus Motion requests that this Court transfer venue of Adversary Proceeding
No. 16-01332 to either the Colorado District Court or to the U.S. District Court for the Northern District of
California, the George Declaration solely requests transfer to the Colorado District Court.

By his declaration, Mr. George requests that venue of Adversary Proceeding No. 16-01332 be transferred to the Colorado District Court because, among other reasons, (i) the documents related to the loans at issue, "many of which are voluminous," are located in California; (ii) CMG Mortgage, Inc. is headquartered in, and has its principal place of business in, California, which is where "the largest number of" the loans at issue were originated by the company's employees; and (iii) it would be extremely inconvenient for the company's party and third party witnesses, "the largest number of which" are located in California, to appear and give testimony in the Southern District of New York.[57]

The Court has considered each of these arguments and finds that CMG Mortgage, Inc. has failed to meet its burden to demonstrate by clear and convincing evidence that the Adversary Proceeding No. 16-01332 should be transferred to the Colorado District Court or to the U.S. District Court for the Northern District of California.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01332 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

---

[57]    *See* George Decl. ¶¶ 11, 14, 16.

Moreover, CMG Mortgage, Inc.'s stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. While Mr. George requests transfer of venue to Colorado, his declaration refers to documents, events, and witnesses not in Colorado but in California.

Even if the Court were to consider whether venue should be transferred to California, however, CMG Mortgage, Inc. has not met its burden to show that such transfer is warranted. It provides only vague, unsupported statements regarding witness inconvenience, and it has identified no witnesses unwilling to appear voluntarily at a trial in New York. Its witnesses are unnamed, and it has provided no evidence that they reside in the Northern District of California (or in California at all) or that they would be unwilling or unable to travel to New York. Additionally, because Mr. George admits that not all of the intended witnesses even reside in California, and CMG Mortgage, Inc. has not introduced any evidence explaining how or why New York would be any less convenient than California for such parties, the "convenience of witnesses" Transfer Factor does not weigh in favor of transfer of this Adversary Proceeding to the Northern District of California.

While CMG Mortgage, Inc. asserts that the location of the operative documents is in California, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, CMG Mortgage, Inc. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements

contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01332 is denied.

### H. Commerce Home Mortgage, Inc. (Adv. Pro. No. 16-01376)

Commerce Home Mortgage, Inc., f/k/a BWC Mortgage Services and f/k/a Simonich Corporation, asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01376 to the U.S. District Court for the Northern District of California. In addition to joining the Omnibus Motion, Commerce Home Mortgage, Inc. filed the AMLG Motion and the Declaration of Scott Simonich [Dkt. No. 484] (the "Simonich Decl.") in support thereof. By his declaration, Mr. Simonich states that venue should be transferred to the U.S. District Court for the Northern District of California because, among other reasons, (i) the documents related to the five loans at issue are located in Northern California and such files consist of "hundreds of documents;" (ii) Commerce Home Mortgage, Inc. is headquartered and has its principal place of business in Northern California, which is where the company's employees "performed" the loan transactions; and (iii) it would be extremely inconvenient for the company's current and former employees and witnesses (who, based on recent investigations, mostly live and work in California) to appear and give testimony in the Southern District of New York.[58] The Simonich Declaration also states that certain witnesses reside in Tennessee and Texas.

---

[58]    *See* Simonich Decl. ¶¶ 6-10.

The Court has considered each of Commerce Home Mortgage, Inc.'s arguments and finds that it has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01376 should be transferred to the U.S. District Court for the Northern District of California.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01376 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, Commerce Home Mortgage, Inc.'s stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Commerce Home Mortgage, Inc. (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, it has provided no evidence as to whether its witnesses would be unwilling or unable to travel. Mr. Simonich also admits that not all of Commerce Home Mortgage, Inc.'s witnesses reside in California; yet, he fails to cite to any evidence from the witnesses themselves explaining how or why New York would be any less convenient than California for such parties. Commerce Home Mortgage, Inc. has failed to prove

that the "convenience of the witnesses" Transfer Factor overwhelmingly weighs in favor of transfer of this Adversary Proceeding to Northern California.

While Commerce Home Mortgage, Inc. asserts that the location of the operative documents is Northern California and that hundreds of documents would be needed for its defense, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York, regardless of quantity. Finally, with respect to the locus of operative facts, Commerce Home Mortgage, Inc. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01376 is denied.

### I. Congressional Bancshares, Inc. (Adv. Pro. No. 16-01003)

Congressional Bancshares, Inc., the surviving entity after merger with American Bank, asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01003 to the U.S. District Court for the District of Maryland. In addition to joining the Omnibus Motion, Congressional Bancshares, Inc. filed the AMLG Motion and the Declaration of Anne Balcer [Adv. Pro. No. 16-01003, Dkt. No. 80] (the "Balcer Decl.") in support thereof. By her declaration, Ms. Balcer states that venue should be transferred to the U.S. District Court for the District of Maryland because, among other reasons,

(i) Congressional Bancshares, Inc. is headquartered and has its principal place of business in Maryland, which is where the company's employees "performed" the loan transactions; and (ii) it would be extremely inconvenient for her and the company's witnesses (who, based on recent investigations, mostly live and work in Virginia, Maryland, and Pennsylvania) to appear and give testimony in the Southern District of New York.[59]

The Court has considered each of Congressional Bancshares, Inc.'s arguments and finds that it has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01003 should be transferred to the U.S. District Court for the District of Maryland. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01003 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, Congressional Bancshares, Inc.'s stated concerns surrounding the convenience of witnesses and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Congressional Bancshares, Inc. (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in

---

[59]    *See* Balcer Decl. ¶¶ 4-7.

New York.  In fact, it has provided no evidence as to whether its witnesses would be unwilling or

unable to travel to New York.  Ms. Balcer also admits that not all of Congressional Bancshares,

Inc.'s witnesses reside in Maryland; yet, she fails to cite to any evidence from the witnesses

themselves explaining how or why New York would be any less convenient than Maryland for

such parties.  Congressional Bancshares, Inc. has failed to prove that the "convenience of

witnesses" Transfer Factor overwhelmingly weighs in favor of transfer of this Adversary

Proceeding to Maryland.

Finally, with respect to the locus of operative facts, Congressional Bancshares, Inc. fails

to acknowledge that, while certain decisions or activities relating to the loans at issue may have

occurred in Maryland, other facts which gave rise to the Indemnification Claims occurred in

New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New

York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged

liability to LBHI matured in New York upon approval of the GSE Settlements.  Moreover, this

Court has already determined that the Indemnification Claims have a close nexus to the Plan and

the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01003 is denied.

### J.  Cornerstone Mortgage, Inc. (Adv. Pro. No. 16-01288)

Cornerstone Mortgage, Inc. asserts that the convenience of the parties and the interest of

justice strongly favor transferring venue of Adversary Proceeding No. 16-01288 to the U.S.

District Court for the Western District of Missouri or to the U.S. District Court for the Southern

District of Illinois.  In addition to joining the Omnibus Motion, Cornerstone Mortgage, Inc. filed

(i) its Individual Brief in Support of its Motion for Transfer of Venue, per 28 U.S.C. 1404(a)

[Dkt. No. 470-1] (the "Cornerstone Motion") and (ii) the Declaration of Pat Andre [Dkt. No. 470-2] (the "Andre Decl.") in support thereof.

Cornerstone Mortgage, Inc. asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the Western District of Missouri or to the U.S. District Court for the Southern District of Illinois because all of the documentation related to the loans at issue and all of the company's witnesses are "believed to reside in" either Illinois or Missouri, and it would be extremely inconvenient for such witnesses to appear and give testimony in the Southern District of New York.[60]  Additionally, Cornerstone Mortgage, Inc. contends that LBHI's choice of venue should be given no weight "because a plaintiff will pick the venue that is most advantageous to them."[61]

In support of its contention that LBHI's choice of forum should be given no deference, Cornerstone Mortgage, Inc. cites to *Atlantic Marine Construction. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49 (2013) (hereinafter, "*Atlantic Marine*").[62]  However, Cornerstone Mortgage, Inc. mischaracterizes the Supreme Court's holding in *Atlantic Marine*.  There, in a factually distinguishable case, the Supreme Court held that a plaintiff's choice of forum deserves no deference where the plaintiff has already contractually agreed to bring a suit exclusively in a forum other than the one in which the plaintiff commenced the lawsuit.  *See id.* at 62. Notwithstanding, the Supreme Court specifically acknowledged that courts must give weight to a plaintiff's choice of forum absent a forum selection clause.  *See id.* at 62 n.6 (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)).  Since Cornerstone Mortgage, Inc. has not asserted the presence of a forum-selection clause, *Atlantic Marine* is inapposite.

---

[60]     *See* Cornerstone Motion at 2-3; Andre Decl. ¶¶ 7-8.
[61]     *See* Cornerstone Motion at 3.
[62]     *See* Cornerstone Motion at 3; *see also* June 12, 2018 Hr'g Tr. 168:25-169:9.

The Court has considered each of Cornerstone Mortgage, Inc.'s other arguments and finds that it has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01288 should be transferred to the U.S. District Court for the Western District of Missouri or to the U.S. District Court for the Southern District of Illinois.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01288 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, Cornerstone Mortgage, Inc.'s stated concerns surrounding the convenience of witnesses and the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them.  Specifically, Cornerstone Mortgage, Inc. (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York.  In fact, it has provided no evidence as to the state of residence of its witnesses (instead, Mr. Andre simply states that they are "believed to reside in" Missouri or Illinois) or whether they would be unwilling or unable to travel to New York.

Finally, with respect to the locus of operative facts, Cornerstone Mortgage, Inc. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have

occurred in Missouri and Illinois, other facts which gave rise to the Indemnification Claims

occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations

in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the

alleged liability to LBHI matured in New York upon approval of the GSE Settlements.

Moreover, this Court has already determined that the Indemnification Claims have a close nexus

to the Plan and the chapter 11 proceedings here.

  After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01288 is denied.

### K.  First California Mortgage Company (Adv. Pro. No. 16-01313)

  First California Mortgage Company asserts that the convenience of the parties and the

interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01313 to the

U.S. District Court for the Northern District of California.  In addition to joining the Omnibus

Motion, First California Mortgage Company filed the AMLG Motion and the Declaration of

Christopher Hart [Dkt. No. 485] (the "Hart Decl.") in support thereof.  By his declaration, Mr.

Hart states that venue should be transferred to the U.S. District Court for the Northern District of

California because, among other reasons, (i) First California Mortgage Company is

headquartered and has its principal place of business in Northern California, which is where the

company's employees "performed" the loan transactions; and (ii) based on recent investigations,

each of the company's five witnesses live and work in California.[63]

  The Court has considered each of First California Mortgage Company's arguments and

finds that it has failed to meet its burden to show by clear and convincing evidence that

---

[63]  *See* Hart Decl. ¶¶ 4-7.

Adversary Proceeding No. 16-01313 should be transferred to the U.S. District Court for the Northern District of California.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01313 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, First California Mortgage Company's stated concerns surrounding the convenience of witnesses and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, while First California Mortgage Corporation submits the Hart Declaration's statements as proof that its witnesses all reside in California, (i) it has submitted no evidence from the witnesses themselves regarding their state of residence; (ii) it has not asserted that travel to New York would inconvenience any of these witnesses; and (iii) it has identified no witnesses unwilling to appear voluntarily at a trial in New York. First California Mortgage Corporation has failed to prove that the "convenience of witnesses" Transfer Factor overwhelmingly weighs in favor of transfer of this Adversary Proceeding to Northern California.

Finally, with respect to the locus of operative facts, First California Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at

issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01313 is denied.

### L.  First Mortgage Corporation (Adv. Pro. No. 16-01290)

First Mortgage Corporation asserts that the convenience of the parties and the interests of justice strongly favor transferring venue of Adversary Proceeding No. 16-01290 to the U.S. District Court for the Central District of California, Eastern Division.  In addition to joining the Omnibus Motion, First Mortgage Corporation filed the AMLG Motion and the Declaration of Clem Ziroli [Dkt. No. 486] (the "Ziroli Decl.") in support thereof.  By his declaration, Mr. Ziroli submits that venue should be transferred to the U.S. District Court for the Central District of California, Eastern Division, because, among other reasons, (i) the documents that support First Mortgage Corporation's defense are located in San Bernardino County, California; (ii) First Mortgage Corporation is headquartered and has its principal place of business in San Bernardino County, which is where the company's employees "performed" the loan transactions; and (iii) it would be extremely inconvenient for Mr. Ziroli and the company's witnesses (who, based on recent investigations, are all located in California) to appear and give testimony in the Southern District of New York.[64]

---

[64]    *See* Ziroli Decl. ¶¶ 6-10.

The Court has considered each of First Mortgage Corporation's arguments and finds that First Mortgage Corporation has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01290 should be transferred to the U.S. District Court for the Central District of California, Eastern Division. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01290 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

First Mortgage Corporation's stated concerns surrounding the convenience of witnesses, relative means of the parties, and locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, First Mortgage Corporation (i) has provided no evidence to support its assertions regarding lack of financial means and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, it has provided no evidence from its witnesses that they reside in California or that they would be unwilling or unable to travel.

Finally, with respect to the locus of operative facts, First Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New

York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01290 is denied.

### M. First National Bank of Omaha (Adv. Pro. No. 16-01364)

First National Bank of Omaha, as successor by merger to Circle One Mortgage Company and First National Bank, asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01364 to the Colorado District Court. In addition to joining the Omnibus Motion, First National Bank of Omaha filed (i) a Memorandum of Law in Support of First National Bank of Omaha's Motion to Transfer Venue [Dkt. No. 465] (the "Omaha Motion"); and (ii) the Declaration of Gary Voelker [Dkt. No. 466] (the "Voelker Decl.") in support thereof.

First National Bank of Omaha asserts that its Adversary Proceeding could, and should, have been brought in the Colorado District Court because, among other reasons, (i) all of the company's material witnesses are residents of Colorado and cannot be compelled to attend trial in New York; (ii) the locus of operative facts surrounding its Adversary Proceeding arose in Colorado, and not New York; (iii) the relevant documents are located in Colorado; and (iv) LBHI has recovered almost $3.3 billion and therefore, the "disparity in cash" available to LBHI as compared to First National Bank of Omaha favors transfer.[65]

---

[65]    *See generally* Omaha Motion at 6-12; Voelker Decl. ¶¶ 6-8.

The Court has considered each of First National Bank of Omaha's arguments and finds that First National Bank of Omaha has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01364 should be transferred to the Colorado District Court.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01364 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, First National Bank of Omaha's stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, First National Bank of Omaha (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. In fact, although Mr. Voelker states that all of the company's material witnesses are residents of Colorado and cannot be compelled to attend trial in New York, First National Bank of Omaha has provided no firsthand evidence from its witnesses that they would be unwilling or unable to travel to New York. While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to

testify, the Court cannot determine that this consideration weighs in favor of transfer of venue.

*See, e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at

*8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also

does not weigh in favor of transfer where defendant fails to provide any affidavits from its

witnesses stating that the witnesses will not voluntarily appear absent transfer).

While First National Bank of Omaha asserts that the location of the operative documents

is Colorado, a fact which it alleges that LBHI has admitted, First National Bank of Omaha

ignores LBHI's contention that hard copy documents located anywhere can be transmitted

electronically or scanned for use at a trial in New York, regardless of their current location.

With respect to the relative means of the parties, First National Bank of Omaha fails to

acknowledge case law holding that, when plaintiff and defendant are both corporations, the

relative resources of the parties are given little weight in the transfer analysis. *See, e.g.*, *It's a 10,*

*Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (citing *Toy Biz, Inc. v.*

*Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)).  The Court also observes that, even were

the Court to consider the relative means of the parties, First National Bank of Omaha has

provided no evidence regarding its financial means, which it would be required to do.  *See id.*

(citing *NBA Props., Inc. v. Salvino, Inc.*, No. 99-CV-11799, 2000 WL 323257, at *10 (S.D.N.Y.

Mar. 27, 2000))( "[A] party arguing for or against a transfer because of inadequate means must

offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his

finances.").  Contrary to the assertions of First National Bank of Omaha, the recoveries achieved

by LBHI in its chapter 11 cases are not a "war chest"[66] that can be utilized for prosecuting

---

[66]        *See* Omaha Motion at 9 ("LBHI holds a significant 'war chest' to finance this litigation").

litigation; LBHI's non-restricted cash is held for the benefit of its creditors who, as LBHI points out, will receive distributions but who will never be made whole on their claims.[67]

Finally, regarding the locus of operative facts, First National Bank of Omaha fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Colorado, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01364 is denied.

### N. Guaranteed Rate, Inc. (Adv. Pro. No. 16-01292)

Guaranteed Rate, Inc. asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01292 to the U.S. District Court for the Northern District of Illinois (or, in the alternative, to the U.S. District Court for the District of Delaware). In addition to joining the Omnibus Motion, Guaranteed Rate, Inc. filed (i) Defendant Guaranteed Rate, Inc.'s Individual Motion to Transfer Venue [Dkt. No. 472]; (ii) its Supplemental Brief in Support of its Individual Motion to Transfer Venue [Dkt. No. 477] (the "Guaranteed Rate Motion"); and (iii) the Declaration of John Elias [Dkt. No. 477-1] (the "Elias Decl.") in support thereof.

---

[67]      *See* Opposition at 25-26.

Guaranteed Rate, Inc. asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the Northern District of Illinois (or, in the alternative, to the U.S. District Court for the District of Delaware) because it contends that the convenience of the parties, the convenience of the witnesses, and the availability of process all weigh in favor of transfer.[68] Guaranteed Rate, Inc. bases its arguments on the fact that none of the properties related to the 22 loans at issue in its Adversary Proceeding and none of its anticipated witnesses is located in New York. Rather, the properties at issue are located in nine different states.[69]

Guaranteed Rate, Inc. appears to have selected the Northern District of Illinois as its requested venue because 8 of the 22 loans relate to properties located in Illinois and its principal place of business is in Illinois. Additionally, Guaranteed Rate, Inc. argues that (i) all relevant documents are located in Chicago or in the states in which the properties are located; (ii) the locus of operative facts is determined by the location where the contract was negotiated and executed, and its employees negotiated, executed, and performed its loan purchase agreements with LBB in Illinois; and (iii) plaintiff's choice of forum should be entitled to little or no weight because the Southern District of New York has no connection to the claims and defenses at issue in its Adversary Proceeding.[70]

The Court has considered each of Guaranteed Rate, Inc.'s arguments and finds that Guaranteed Rate, Inc. has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01292 should be transferred to the U.S. District Court for the

---

[68]     *See id.* at 10-11.
[69]     *See id.* at 10; Elias Decl. ¶ 11 (stating that the loans at issue relate to properties located in Colorado, Florida, Tennessee, Georgia, Oregon, Virginia, Michigan, Illinois, and California); June 12, 2018 Hr'g Tr. 176:23-24.
[70]     *See generally* Guaranteed Rate Motion at 11-14; Elias Decl. ¶¶ 8-9, 12.

Northern District of Illinois (or, in the alternative, to the U.S. District Court for the District of Delaware).

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01292 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Moreover, Guaranteed Rate, Inc.'s stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Guaranteed Rate, Inc.'s witnesses are unnamed, and it has provided no evidence as to the location of such potential witnesses or whether they would be unwilling or unable to travel to New York. Instead, it makes the unsupported assertion that its material non-party witnesses live in the states where the properties securing the allegedly breaching loans are located. At the hearing on the Motions, counsel to Guaranteed Rate, Inc. readily admitted that he did not know or investigate where each borrower is currently located.[71] Even if the Court assumes that the witnesses live in the states where the property securing the loans at issue are located, Guaranteed Rate, Inc. concedes that the majority of the loans at issue relate to properties outside of Illinois

---

[71]    *See* June 12, 2018 Hr'g Tr. 177:11-178:3.

and notably, none of the loans relates to property in Delaware.  Accordingly, for the majority of

Guaranteed Rate, Inc.'s witnesses, transferring this Adversary Proceeding to Illinois (or,

alternatively, to Delaware) would not necessarily be more convenient than New York, nor would

transfer alleviate issues of process.

While Guaranteed Rate, Inc. asserts that the location of the operative documents is

Chicago or the states in which the properties are located, it admits that the loans at issue relate to

properties in nine different states and that there may not be one central location of all the

operative documents.  Moreover, Guaranteed Rate, Inc. ignores LBHI's contention that hard

copy documents located anywhere can be transmitted electronically or scanned for use at a trial

in New York, regardless of their current location.  Accordingly, Guaranteed Rate, Inc.'s

argument that the location of the relevant documents supports transfer of its Adversary

Proceeding carries little weight.

Finally, regarding the locus of operative facts, Guaranteed Rate, Inc. fails to acknowledge

that, while certain decisions or activities relating to the loans at issue may have occurred in

Illinois, Colorado, and Delaware, other facts which gave rise to the Indemnification Claims

occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations

in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the

alleged liability to LBHI matured in New York upon approval of the GSE Settlements.

Moreover, this Court has already determined that the Indemnification Claims have a close nexus

to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01292 is denied.

### O.  Guild Mortgage Company (Adv. Pro. No. 17-01001)

Guild Mortgage Company asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 17-01001 to the U.S. District Court for the Western District of Washington and the U.S. District Court for the District of Arizona; and, by its individual motion, requests to sever the claims in its Adversary Proceeding into two separate actions.[72]  In addition to joining the Omnibus Motion, Guild Mortgage Company filed (i) Guild Mortgage Company's Memorandum of Points and Authorities in Support of its Individual Motion to Transfer Venue [Dkt. No. 459] (the "Guild Motion"); and (ii) the Declaration of Terry Schmidt [Dkt. No. 461] (the "Schmidt Decl.") in support thereof.

Guild Mortgage Company asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the District of Arizona with respect to the Guild Loans and to the U.S. District Court for the District of Washington with respect to the Liberty Loans.[73]  It contends that, because all of its supporting documents and witnesses (who all reside in western states – California, Arizona, Washington, Nevada, and Alaska) are located outside New York and it would not be able to compel process of such witnesses or documents, it will be deprived of "a real opportunity to defend itself against LBHI's claims" if it cannot produce evidence and

---

[72]    In the complaint filed by LBHI against Guild Mortgage Company [Adv. Pro. No. 17-01001, Dkt. No. 1] (the "Guild Complaint"), LBHI asserts that Guild Mortgage Company acquired the business of Liberty Financial Group, Inc. in a *de facto* merger and that Guild Mortgage Company is liable to LBHI as a successor-in-interest to Liberty Financial Group, Inc.  *See* Guild Complaint ¶ 4.  By the Guild Motion, Guild Mortgage Company contends that LBHI has incorrectly joined proceedings related to the loans originated by Guild Mortgage Company and sold to LBB (the "Guild Loans") with proceedings related to the loans originated by Liberty Financial Group, Inc. and sold to LBB (the "Liberty Loans").  *See* Guild Motion at 1.  As such, Guild Mortgage Company seeks to (i) separate the claims related to the Guild Loans from the claims related to the Liberty Loans, and (ii) transfer proceedings related to the Guild Loans to Arizona and those related to the Liberty Loans to Washington.  *See id.* at 2.

[73]    To the extent that the Court is not inclined to sever the claims related to the Liberty Loans from those related to the Guild Loans, Guild Mortgage Company requests to transfer both sets of claims to the District Court for the Western District of Washington because Washington state law purportedly applies to LBHI's successor liability claim with respect to the Liberty Loans.  *See id.*

witnesses at trial.[74]  Guild Mortgage Company also argues that it will be inconvenienced because New York is far from its principal place of business in San Diego, California and travel expenses to New York would be "exorbitantly burdensome" as compared to trial in Arizona or Washington.[75]

Guild Mortgage Company concedes that a number of LBHI's claims regarding the Guild Loans relate to a brokerage agreement (the "Guild Brokerage Agreement") which contains a forum selection clause pursuant to which Guild Mortgage Company consented to jurisdiction and venue for disputes in New York.[76]  Guild contends, however, that such forum selection clause (i) does not govern the Liberty Loans and (ii) should not be enforced because Guild Mortgage Company has made a sufficient showing that enforcement would be "unreasonable or unjust."[77]

The Court has considered each of Guild Mortgage Company's arguments and finds that Guild Mortgage Company has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 17-01001 should be transferred to the U.S. District Court for the Western District of Washington or to the U.S. District Court for the District of Arizona.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 17-01001 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the

---

[74]        *See* Guild Motion at 10-11, 13.
[75]        *See id.* at 13.
[76]        *See* Guild Motion at 4, 14-15; Ex. B to Schmidt Decl. (Guild Brokerage Agreement).
[77]        *See id.* at 15 (citing *MBC Financial Services. V. Boston Merch. Fin. LLC*, 2016 US Dist. LEXIS 140195, at *6 (S.D.N.Y. 2016)).

Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

In addition, while the Court declines to determine at this time whether or not the forum selection clause contained in the Guild Brokerage Agreement covers the Liberty Loans, the Court finds that bifurcating this Adversary Proceeding into two litigations in two different fora would be contrary to judicial economy and the interest of justice. Moreover, the CMO does not contemplate a motion to sever being made in Phase I,[78] and Guild Mortgage Company did not file a letter request seeking to file a supplemental brief regarding a motion to sever. LBHI requests that this Court not rule on the question of severance of this Adversary Proceeding at this time, as the parties are engaging in discovery regarding successor liability.[79] The Court declines to rule on the request to sever at this time.

Guild Mortgage Company's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against considerations regarding judicial efficiency and the interest of justice, are insufficiently substantial to outweigh them. Although Guild Mortgage Company asserts that its witnesses live in various states in the western part of the United States, it provides no support for this assertion, nor for its conclusion that New York would be any less convenient than Washington or Arizona for those witnesses that reside in neither of those states. It has also identified no witnesses unwilling to appear voluntarily at a trial in New York.

With respect to the locus of operative facts, Guild Mortgage Company fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have

---

[78]   *See* CMO ¶ 8.
[79]   *See* Opposition at 7 n. 14.

occurred in California, Arizona, and Washington, other facts which gave rise to the

Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and

had its business operations in, New York; (ii) the Agreements contain a New York choice of law

provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE

Settlements.  Moreover, this Court has already determined that the Indemnification Claims have

a close nexus to the Plan and the chapter 11 proceedings here.

Further, although the forum selection clause contained in the Guild Brokerage Agreement

is permissive rather than mandatory, a permissive forum selection clause is nonetheless afforded

significant weight and necessarily indicates the parties' prior consent to litigation in the venue

stated therein.  *See SBAV LP v. Porter Bancorp, Inc.*, No. 13 –CV-372, 2013 WL 3467030, at

*10 (S.D.N.Y. July 10, 2013) (collecting cases) (finding that non-exclusive forum selection

clause deserves significant weight); *Orix Credit All., Inc. v. Mid-S. Materials Corp.*, 816 F.

Supp. 230, 234 (S.D.N.Y. 1993) (citations omitted).  The fact that Guild Mortgage Company

initially accepted the jurisdiction of the courts of New York when it entered into the Guild

Brokerage Agreement reflects a commitment not to challenge New York as an inconvenient

forum for any lawsuit related thereto.  *See SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030,

at *10.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 17-01001 is denied.

### P.  Hartland Mortgage Centers, Inc. (Adv. Pro. No. 16-01317)

Hartland Mortgage Centers, Inc. asserts that the convenience of the parties and the

interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01317 to the

U.S. District Court for the District of Wisconsin.  In addition to joining the Omnibus Motion,

Hartland Mortgage Centers, Inc. filed the AMLG Motion and the Declaration of George P.

66

Kleanthis [Dkt. No. 487] (the "Kleanthis Decl.") in support thereof.  By his declaration, Mr.

Kleanthis states that venue should be transferred to the U.S. District Court for the District of

Wisconsin because, among other reasons, (i) Hartland Mortgage Centers, Inc. is headquartered

and has its principal place of business in Woodridge, Illinois, where Mr. Kleanthis negotiated,

executed, and "performed" the loan purchase agreement; (ii) the loans were originated and

underwritten in Wisconsin; (iii) all the documents that support its defense are in Illinois; (iv)

Hartland Mortgage Centers, Inc. has been out of business since 2014 and it would be financially

burdensome to defend the action in New York; and (v) it would be extremely inconvenient for

the company's witnesses (who, based on recent investigation, live and work in Wisconsin) to

appear and give testimony in the Southern District of New York.[80]

The Court has considered each of Hartland Mortgage Centers, Inc.'s arguments and finds

that Hartland Mortgage Centers, Inc. has failed to meet its burden to show by clear and

convincing evidence that Adversary Proceeding No. 16-01317 should be transferred to the U.S.

District Court for the District of Wisconsin.  The Court has determined that the interest of justice,

which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid

duplicative litigation, avert inconsistent results, preserve judicial and party resources, and

provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of

retaining venue of Adversary Proceeding No. 16-01317 in this Court.  The common issues of law

in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with

the Indemnification Claims in particular (as noted by multiple federal courts across the nation

confronted with litigation regarding the Indemnification Claims), and the deference afforded to a

plaintiff's choice of forum lend further support to this factor.

---

[80]    *See* Kleanthis Decl. ¶¶ 3-10.

Hartland Mortgage Centers, Inc.'s stated concerns surrounding the relative means of the parties, the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them.  Specifically, Hartland Mortgage Centers, Inc. (i) has provided no evidence to support its assertions regarding lack of financial means; (ii) provides only vague, unsupported statements regarding witness inconvenience; (iii) provides insufficient evidence that its potential witnesses reside in Wisconsin; and (iv) has identified no witnesses unwilling to appear voluntarily at a trial in New York.  While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue. *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

While Hartland Mortgage Centers, Inc. asserts that the location of the operative documents is in Illinois (and, notably, not in Wisconsin), it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York.  Finally, with respect to the locus of operative facts, Hartland Mortgage Centers, Inc. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Wisconsin and Illinois, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE

Settlements.  Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01317 is denied.

### Q.  Loan Simple, Inc. (Adv. Pro. No. 16-01309)

Loan Simple, Inc., f/k/a Ascent Home Loans, Inc., asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01309 to the Colorado District Court.  In addition to joining the Omnibus Motion, Loan Simple, Inc. filed the AMLG Motion and the Declaration of Nathan Dozois [Dkt. No. 489] (the "Dozois Decl.") in support thereof.  By his declaration, Mr. Dozois states that venue should be transferred to the Colorado District Court because, among other reasons, (i) the documents that support Loan Simple, Inc.'s defense are located in Colorado; (ii) Loan Simple, Inc. is headquartered and has its principal place of business in Colorado, which is where the company's employees "performed" the loan transactions; and (iii) it would be extremely burdensome and inconvenient for Mr. Dozois and the company's witnesses (who, based on recent investigations, are all located in Colorado) to appear and give testimony in the Southern District of New York.[81]

The Court has considered each of Loan Simple, Inc.'s arguments and finds that Loan Simple, Inc. has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01309 should be transferred to the Colorado District Court.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the

---

[81]    *See* Dozois Decl. ¶¶ 5-9.

Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No.

16-01309 in this Court.  The common issues of law in the Adversary Proceedings, this Court's

extensive experience with Lehman matters and with the Indemnification Claims in particular (as

noted by multiple federal courts across the nation confronted with litigation regarding the

Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further

support to this factor.

Loan Simple, Inc.'s stated concerns surrounding the convenience of witnesses, the

location of the operative documents, and the locus of operative facts, when balanced against the

foregoing considerations, are insufficiently substantial to outweigh them.  Specifically, Loan

Simple, Inc. (i) provides only vague, unsupported statements regarding witness inconvenience

and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York.  While

the Court recognizes that travel to New York may be inconvenient for some witnesses, in the

absence of proof that such witnesses would refuse to testify, the Court cannot determine that this

consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties, Inc. v. Salvino,*

*Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that

the availability of process to compel attendance also does not weigh in favor of transfer where

defendant fails to provide any affidavits from its witnesses stating that the witnesses will not

voluntarily appear absent transfer).

While Loan Simple, Inc. asserts that the location of the operative documents is in

Colorado, it does not address LBHI's contention that hard copy documents located anywhere

could be transmitted electronically or scanned for use at a trial in New York.  Finally, with

respect to the locus of operative facts, Loan Simple, Inc. fails to acknowledge that, while certain

decisions or activities relating to the loans at issue may have occurred in Colorado, other facts

which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is

headquartered in, and had its business operations in, New York; (ii) the Agreements contain a

New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York

upon approval of the GSE Settlements.  Moreover, this Court has already determined that the

Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01309 is denied.

### R.  MC Advantage, LLC (Adv. Pro. No. 16-01334)

MC Advantage, LLC, f/k/a Republic Mortgage Home Loans, LLC, asserts that the

convenience of the parties and the interest of justice strongly favor transferring venue of

Adversary Proceeding No. 16-01334 to the U.S. District Court for the District of Utah.  In

addition to joining the Omnibus Motion, MC Advantage, LLC filed the AMLG Motion and the

Declaration of Mathew Brumble [Dkt. No. 490] (the "Brumble Decl.") in support thereof.  By

his declaration, Mr. Brumble states that venue should be transferred to the U.S. District Court for

the District of Utah since, among other reasons, (i) as MC Advantage, LLC has sold all of its

assets and ceased all business operations, the cost of defending the Indemnification Claim in

New York would be burdensome; (ii) the documents that support MC Advantage, LLC's defense

are located in Utah and "are voluminous;" (iii) MC Advantage, LLC is headquartered and has its

principal place of business in Utah, which is where the company's employees "performed" the

loan transactions; and (iv) it would be extremely inconvenient for Mr. Brumble and the

company's witnesses (who are predominantly located in Utah or Colorado) to appear and give

testimony in the Southern District of New York.[82]

---

[82]    *See* Brumble Decl. ¶¶ 3, 6-10.

The Court has considered each of MC Advantage, LLC's arguments and finds that MC Advantage, LLC has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01334 should be transferred to the U.S. District Court for the District of Utah. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01334 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

MC Advantage, LLC's stated concerns surrounding the relative means of the parties, the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, MC Advantage, LLC (i) has provided no evidence to support its assertions regarding lack of financial means; (ii) provides only vague, unsupported statements regarding witness inconvenience; (iii) provides no support for its assertion that its witnesses reside in Utah; and (iv) has identified no witnesses unwilling to appear voluntarily at a trial in New York. While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue. *See, e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27,

2000) (finding that the availability of process to compel attendance also does not weigh in favor

of transfer where defendant fails to provide any affidavits from its witnesses stating that the

witnesses will not voluntarily appear absent transfer).

While MC Advantage, LLC asserts that the location of the operative documents is in

Utah and that such documents are voluminous, it does not address LBHI's contention that hard

copy documents located anywhere could be transmitted electronically or scanned for use at a trial

in New York, regardless of their size.  Finally, with respect to the locus of operative facts, MC

Advantage, LLC fails to acknowledge that, while certain decisions or activities relating to the

loans at issue may have occurred in Utah, other facts which gave rise to the Indemnification

Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business

operations in, New York; (ii) the Agreements contain a New York choice of law provision; and

(iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements.

Moreover, this Court has already determined that the Indemnification Claims have a close nexus

to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01334 is denied.

### S.  Mega Capital Funding, Inc. (Adv. Pro. No. 16-01304)

Mega Capital Funding, Inc. asserts that the convenience of the parties and the interest of

justice strongly favor transferring venue of Adversary Proceeding No. 16-01304 to the U.S.

District Court for the Central District of California, Western Division.  In addition to joining the

Omnibus Motion, Mega Capital Funding, Inc. filed the AMLG Motion and the Declaration of

Brian Na [Dkt. No. 491] (the "Na Decl.") in support thereof.  By his declaration, Mr. Na states

that venue should be transferred to the U.S. District Court for the Central District of California,

Western Division, because, among other reasons, (i) the documents that support Mega Capital

Funding, Inc.'s defense are located in California and are voluminous; (ii) Mega Capital Funding,

Inc. is headquartered and has its principal place of business in California, which is where the

company's employees "performed" the loan transactions; and (iii) it would be extremely

inconvenient for Mr. Na and the company's witnesses (who, based on recent investigation, are

all located in California) to appear and give testimony in the Southern District of New York.[83]

The Court has considered each of Mega Capital Funding, Inc.'s arguments and finds that

Mega Capital Funding, Inc. has failed to meet its burden to show by clear and convincing

evidence that Adversary Proceeding No. 16-01304 should be transferred to the U.S. District

Court for the Central District of California, Western Division. The Court has determined that the

interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one

forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party

resources, and provide for the efficient administration of the Adversary Proceedings, weighs

heavily in favor of retaining venue of Adversary Proceeding No. 16-01304 in this Court. The

common issues of law in the Adversary Proceedings, this Court's extensive experience with

Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal

courts across the nation confronted with litigation regarding the Indemnification Claims), and the

deference afforded to a plaintiff's choice of forum lend further support to this factor.

Mega Capital Funding, Inc.'s stated concerns surrounding the convenience of witnesses,

the location of the operative documents, and the locus of operative facts, when balanced against

the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Mega

Capital Funding, Inc. (i) provides only vague, unsupported statements regarding witness

inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in

---

[83]    *See* Na Decl. ¶¶ 4-8.

New York.  While the Court recognizes that travel to New York may be inconvenient for some

witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot

determine that this consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties,*

*Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27,

2000) (finding that the availability of process to compel attendance also does not weigh in favor

of transfer where defendant fails to provide any affidavits from its witnesses stating that the

witnesses will not voluntarily appear absent transfer).

While Mega Capital Funding, Inc. asserts that the location of the operative documents is

in California and that such documents are voluminous, it does not address LBHI's contention

that hard copy documents located anywhere could be transmitted electronically or scanned for

use at a trial in New York, regardless of their size.  Finally, with respect to the locus of operative

facts, Mega Capital Funding, Inc. fails to acknowledge that, while certain decisions or activities

relating to the loans at issue may have occurred in California, other facts which gave rise to the

Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and

had its business operations in, New York; (ii) the Agreements contain a New York choice of law

provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE

Settlements.  Moreover, this Court has already determined that the Indemnification Claims have

a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01304 is denied.

## T.  MegaStar Financial Corp. (Adv. Pro. No. 16-01301)

By the Omnibus Motion, MegaStar Financial Corp. asserts that the convenience of the

parties and the interests of justice favor transferring venue of Adversary Proceeding No. 16-

01301 to the Colorado District Court.  MegaStar Financial Corp. joined the Omnibus Motion, but

it did not join the AMLG Motion or submit an individual declaration or affidavit in support of its

contention that venue of its Adversary Proceeding should be transferred to the Colorado District

Court (as set forth on Exhibit A to the Omnibus Motion).

Having submitted no evidence in support of its request to transfer venue, MegaStar

Financial Corp. has not satisfied its burden to show by clear and convincing evidence that

Adversary Proceeding No. 16-01301 should be transferred to the Colorado District Court. For

the reasons set forth in this Court's general discussion applicable to all Defendants, *supra*, the

motion to transfer venue of Adversary Proceeding No. 16-01301 is denied.

### U.  New FED Mortgage Corporation (Adv. Pro. No. 16-01299)

New FED Mortgage Corporation asserts that the convenience of the parties and the

interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01299 to the

U.S. District Court for the District of Massachusetts.[84]  In addition to joining the Omnibus

Motion, New FED Mortgage Corporation filed the AMLG Motion and the Declaration of Brian

D'Amico [Dkt. No. 493] (the "D'Amico Decl.") in support thereof.  By his declaration, Mr.

D'Amico states that venue should be transferred to the U.S. District Court for the District of

Massachusetts because, among other reasons, (i) the documents that support New FED Mortgage

Corporation's defense are located in Danvers, Massachusetts; (ii) New FED Mortgage

Corporation has its principal place of business in Massachusetts, which is where the company's

employees "performed" the loan transactions; and (iii) it would be extremely inconvenient for

---

[84]     The D'Amico Decl. states that New FED Mortgage Corporation seeks to transfer venue of its Adversary
Proceeding to Gloucester District Court, which is a Massachusetts state court.   Exhibit A to the Omnibus Motion
states that the requested transferee court is the U.S. District Court Gloucester, which is not a court.  The Court will
treat New FED Mortgage Corporation's request as one to transfer venue of its Adversary Proceeding to the U.S.
District Court for the District of Massachusetts.

the company's witnesses (who, based on recent investigation, live and work in Massachusetts) to appear and give testimony in the Southern District of New York.[85]

The Court has considered each of New FED Mortgage Corporation's arguments and finds that New FED Mortgage Corporation has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01299 should be transferred to the U.S. District Court for the District of Massachusetts.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01299 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

New FED Mortgage Corporation's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, New FED Mortgage Corporation (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York.  While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue.

---

[85]    *See* D'Amico Decl. ¶¶ 5-9.

*See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

While New FED Mortgage Corporation asserts that the location of the operative documents is in Massachusetts, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, New FED Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Massachusetts, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01299 is denied.

### V. Oaktree Funding Corporation (Adv. Pro. No. 16-01298)

Oaktree Funding Corporation ("Oaktree") asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01298 to the U.S. District Court for the Central District of California or to the Colorado District Court. In addition to joining the Omnibus Motion, Oaktree filed the AMLG Motion and the Declaration of Ray Scott [Dkt. No. 494] (the "Scott Decl.") in support thereof. By his declaration, Mr. Scott states that venue should be transferred to the U.S. District Court for the Central District of

California or to the Colorado District Court because, among other reasons, (i) Oaktree is headquartered and has its principal place of business in San Bernardino County, California, which is where the company's employees "performed" the loan transactions; (ii) all of the documents that support its defenses are located in California and Colorado; and (iii) it would be extremely inconvenient for Mr. Scott and the company's nine other witnesses (who, based on recent investigations, are all located in California and Colorado) to appear and give testimony in the Southern District of New York, particularly because Mr. Scott has stated that he has a heart condition.[86]

The Court has considered each of Oaktree's arguments and finds that it has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01298 should be transferred to the U.S. District Court for the Central District of California or to the Colorado District Court.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01298 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Oaktree's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing

---

[86]        *See* Scott Decl. ¶¶ 3, 6-10.

considerations, are insufficiently substantial to outweigh them.  First, because Oaktree has

requested transfer of venue to one of two different districts which are not in the same state,

witness inconvenience will occur for some of its approximately ten witnesses regardless of

forum.  In addition, (i) with the exception of a statement regarding one witness's health concerns,

Oaktree provides only vague, unsupported statements regarding witness inconvenience; (ii)

Oaktree provides no evidence that its potential witnesses reside in California or Colorado; and

(iii) Oaktree has identified no witnesses unwilling to appear voluntarily at a trial in New York.

While the Court recognizes that travel to New York may be inconvenient for some witnesses, in

the absence of proof that such witnesses would refuse to testify, the Court cannot determine that

this consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties, Inc. v.

Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000)

(finding that the availability of process to compel attendance also does not weigh in favor of

transfer where defendant fails to provide any affidavits from its witnesses stating that the

witnesses will not voluntarily appear absent transfer).

While Oaktree asserts that the location of the operative documents is in California and

Colorado, it does not address LBHI's contention that hard copy documents located anywhere

could be transmitted electronically or scanned for use at a trial in New York.  Finally, with

respect to the locus of operative facts, Oaktree fails to acknowledge that, while certain decisions

or activities relating to the loans at issue may have occurred in California and Colorado, other

facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i)

LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements

contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in

New York upon approval of the GSE Settlements.  Moreover, this Court has already determined

80

that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01298 is denied.

### W. Parkside Lending, LLC (Adv. Pro. No. 16-01308)

Parkside Lending, LLC asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01308 to the U.S. District Court for the Northern District of California.  In addition to joining the Omnibus Motion, Parkside Lending, LLC filed (i) an Individual Brief in Support of its Motion to Transfer Venue per U.S.C. § 1404(a) [Dkt. No. 469] (the "Parkside Motion"); and (ii) the Declaration of Gail Dolton [Dkt. No. 469-2] (the "Dolton Decl.") in support thereof.

Parkside Lending, LLC asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the Northern District of California because (i) the one loan at issue was originated and is secured by property in California; (ii) Parkside Lending, LLC is headquartered and has its principal place of business in California, which where the company's employees "performed" the loan transaction; and (iii) all of its witnesses and documents necessary to support its defense are located in California, and it would be extremely inconvenient for its witnesses to appear and give testimony in the Southern District of New York.[87]  Additionally, relying on *Atlantic Marine*, Parkside Lending, LLC contends that LBHI's choice of venue should not be given weight "because a plaintiff will pick the venue that is most advantageous to them."[88]

---

[87]        *See* Parkside Motion at 2-3; Dolton Decl. ¶¶ 5-8.
[88]        *See* Parkside Motion at 3 (citing *Atlantic Marine*, 571 U.S. at 62); *see also* June 12, 2018 Hr'g Tr. 168:25-169:9 (same).

In support of its contention that LBHI's choice of forum should be given no deference, Parkside Lending, LLC cites to *Atlantic Marine*, 571 U.S. 49 (2013).[89]  However, Parkside Lending, LLC mischaracterizes the Supreme Court's holding in *Atlantic Marine*.  There, in a factually distinguishable case, the Supreme Court held that a plaintiff's choice of forum deserves no deference where the plaintiff has already contractually agreed to bring a suit exclusively in a forum other than the one in which the plaintiff commenced the lawsuit.  *See id*. at 62.  Notwithstanding, the Supreme Court specifically acknowledged that courts must give weight to a plaintiff's choice of forum absent a forum selection clause.  *See id.* at 581 n.6 (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)).  Since Parkside Lending, LLC has not asserted the presence of a forum-selection clause, *Atlantic Marine* is inapposite.

The Court has considered each of Parkside Lending, LLC's other arguments and finds that Parkside Lending, LLC has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01308 should be transferred to the U.S. District Court for the Northern District of California.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01308 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

---

[89]    *See* Parkside Motion at 3; *see also* June 12, 2018 Hr'g Tr. 168:25-169:9.

Parkside Lending, LLC's stated concerns surrounding the convenience of witnesses and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them.  Specifically, Parkside Lending, LLC (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York.  While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

Finally, with respect to the locus of operative facts, Parkside Lending, LLC fails to acknowledge that, while certain decisions or activities relating to the one loan at issue may have occurred in California, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements.  Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01308 is denied.

## X.  Republic State Mortgage Co. (Adv. Pro. No. 16-01365)

Republic State Mortgage Co., individually and as successor by merger to Union Trust

Mortgage Corporation, asserts that the convenience of the parties and the interest of justice

strongly favor transferring venue of Adversary Proceeding No. 16-01365 to the U.S. District

Court for the Southern District of Texas, Houston Division.  In addition to joining the Omnibus

Motion, Republic State Mortgage Co. filed the AMLG Motion and the Declaration of Paulina

McGrath [Dkt. No. 495] (the "McGrath Decl.") in support thereof.  By her declaration, Ms.

McGrath states that venue should be transferred to the U.S. District Court for the Southern

District of Texas, Houston Division, because, among other reasons, (i) the documents that

support Republic State Mortgage Co.'s defense are located in Houston, Texas and consist of

large files; (ii) Republic State Mortgage Co. is headquartered and has its principal place of

business in Texas, which is primarily where the company's employees "performed" the loan

transactions; and (iii) it would be extremely inconvenient for Ms. McGrath and the company's

witnesses (who, based on recent investigation, are primarily located in Texas, but certain of

whom are located in Virginia and Colorado) to appear and give testimony in the Southern

District of New York.[90]

The Court has considered each of Republic State Mortgage Co.'s arguments and finds

that Republic State Mortgage Co. has failed to meet its burden to show by clear and convincing

evidence that Adversary Proceeding No. 16-01365 should be transferred to the U.S. District

Court for the Southern District of Texas, Houston Division.  The Court has determined that the

interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one

forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party

---

[90]      *See* McGrath Decl. ¶¶ 5-9.

resources, and provide for the efficient administration of the Adversary Proceedings, weighs

heavily in favor of retaining venue of Adversary Proceeding No. 16-01365 in this Court. The

common issues of law in the Adversary Proceedings, this Court's extensive experience with

Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal

courts across the nation confronted with litigation regarding the Indemnification Claims), and the

deference afforded to a plaintiff's choice of forum lend further support to this factor.

Republic State Mortgage Co.'s stated concerns surrounding the convenience of witnesses,

the location of the operative documents, and the locus of operative facts, when balanced against

the foregoing considerations, are insufficiently substantial to outweigh them. Specifically,

Republic State Mortgage Co. (i) provides only vague, unsupported statements regarding witness

inconvenience; (ii) provides no evidence that all of its potential witnesses reside in Texas (and, in

fact, concedes that certain potential witnesses live in other states); and (iii) has identified no

witnesses unwilling to appear voluntarily at a trial in New York. Because Republic State

Mortgage Co.'s anticipated witnesses are not all located in Texas, witness inconvenience will

occur for some of its witnesses regardless of forum. Moreover, while the Court recognizes that

travel to New York may be inconvenient for certain witnesses, in the absence of proof that such

witnesses would refuse to testify, the Court cannot determine that this consideration weighs in

favor of transfer of venue. *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799

(AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of

process to compel attendance also does not weigh in favor of transfer where defendant fails to

provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear

absent transfer).

While Republic State Mortgage Co. asserts that the location of the operative documents is in Texas, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York, regardless of size. Finally, with respect to the locus of operative facts, Republic State Mortgage Co. fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Texas, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01365 is denied.

**Y.  Residential Home Funding Corporation (Adv. Pro. No. 16-01361)**

Residential Home Funding Corporation asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01361 to the New Jersey District Court. In addition to joining the Omnibus Motion, Residential Home Funding Corporation filed the AMLG Motion and the Declaration of Roberto Lupi [Dkt. No. 496] (the "Lupi Decl.") in support thereof. By his declaration, Mr. Lupi argues that venue should be transferred to the New Jersey District Court because, among other reasons, (i) the documents that support Residential Home Funding Corporation's defense are located in New Jersey; (ii) Residential Home Funding Corporation is headquartered and has its principal place of business in Parsippany, New Jersey, which is where the company's employees "performed" the loan transactions; and (iii) it would be extremely inconvenient for Mr. Lupi and the company's

witnesses (who, based on recent investigations, are located in New Jersey) to appear and give testimony in the Southern District of New York.[91]

The Court has considered each of Residential Home Funding Corporation's arguments and finds that Residential Home Funding Corporation has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01361 should be transferred to the New Jersey District Court. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01361 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Residential Home Funding Corporation's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Residential Home Funding Corporation (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. The Court observes that the New Jersey District Court has three locations: one in Camden, which is approximately 90 miles from Parsippany; one in Trenton, which is approximately 60 miles from Parsippany; and one in Newark, which is

---

[91]        *See* Lupi Decl. ¶¶ 4-8.

approximately twenty miles from Parsippany. This Court, which is located approximately twenty miles from Parsippany, New Jersey, is no farther away from Residential Home Funding Corporation's principal place of business than the closest location of the New Jersey District Court. Accordingly, Mr. Lupi's argument that it would be extremely inconvenient for him to travel to this Court "due to costs of travel, loss of time at work and family obligations"[92] carries little weight.

While Residential Home Funding Corporation asserts that the location of the operative documents is in New Jersey, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, Residential Home Funding Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in New Jersey, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01361 is denied.

### Z. Ross Mortgage Corporation (Adv. Pro. No. 16-01324)

Ross Mortgage Corporation asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01324 to the U.S.

---

[92]    *See* Lupi Decl. ¶ 8.

District Court for the Eastern District of Michigan, Southern Division.  In addition to joining the

Omnibus Motion, Ross Mortgage Corporation filed the AMLG Motion and the Declaration of

Timothy Ross [Dkt. No. 497] (the "Ross Decl.") in support thereof.  By his declaration, Mr. Ross

states that venue should be transferred to the U.S. District Court for the Eastern District of

Michigan, Southern Division, because, among other reasons, (i) the documents related to the one

loan at issue are located in Troy, Michigan; (ii) Ross Mortgage Corporation is headquartered and

has its principal place of business in Troy, Michigan, which is where the company's employees

"performed" the loan transaction; and (iii) it would be extremely inconvenient for Mr. Ross and

the company's witnesses (who, based on recent investigation, are located in Michigan or

Colorado) to appear and give testimony in the Southern District of New York.[93]

The Court has considered each of Ross Mortgage Corporation's arguments and finds that

Ross Mortgage Corporation has failed to meet its burden to demonstrate by clear and convincing

evidence that Adversary Proceeding No. 16-01324 should be transferred to the U.S. District

Court for the Eastern District of Michigan, Southern Division.  The Court has determined that

the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in

one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party

resources, and provide for the efficient administration of the Adversary Proceedings, weighs

heavily in favor of retaining venue of Adversary Proceeding No. 16-01324 in this Court.  The

common issues of law in the Adversary Proceedings, this Court's extensive experience with

Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal

courts across the nation confronted with litigation regarding the Indemnification Claims), and the

deference afforded to a plaintiff's choice of forum lend further support to this factor.

---

[93]        *See* Ross Decl. ¶¶ 5-9.

Ross Mortgage Corporation's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Ross Mortgage Corporation (i) provides only vague, unsupported statements regarding witness inconvenience and (ii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue. *See, e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

While Ross Mortgage Corporation asserts that the location of the operative documents is in Michigan, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York. Finally, with respect to the locus of operative facts, Ross Mortgage Corporation fails to acknowledge that, while certain decisions or activities relating to the one loan at issue may have occurred in Michigan, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements. Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01324 is denied.

### AA.    Sacramento 1st Mortgage, Inc. (Adv. Pro. No. 16-01350)

Sacramento 1st Mortgage, Inc., individually and as successor by merger to Comstock Mortgage, asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01350 to the U.S. District Court for the Eastern District of California.  In addition to joining the Omnibus Motion, Sacramento 1st Mortgage, Inc. filed (i) an Individual Motion to Transfer Venue [Dkt. No. 475-1] (the "Sacramento Motion"); and (ii) the Declaration of David Mendoza [Dkt. No. 475-2] (the "Mendoza Decl.") in support thereof.

Sacramento 1st Mortgage, Inc. asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the Eastern District of California because, among other reasons, (i) the seven loans at issue were originated in and are secured by property in California; (ii) Sacramento 1st Mortgage, Inc. is headquartered and has its principal place of business in California, which where its employees "performed" its origination activities; and (iii) all of the witnesses and documents necessary to support its defense are located in California, and it would be extremely inconvenient for its witnesses to appear and give testimony in the Southern District of New York.[94]

Sacramento 1st Mortgage, Inc. concedes, however, that its predecessor Comstock Mortgage was a party to a brokerage agreement with LBB (the "Comstock Brokerage Agreement") which contains a provision that the non-exclusive jurisdiction and venue of any disputes arising thereunder shall be the state courts of New York County and the Federal Courts

---

[94]    *See* Sacramento Motion at 2-3; Mendoza Decl. ¶¶ 6-9.

of the Southern District of New York.[95]  Three of the seven loans at issue in the Adversary

Proceeding against Sacramento 1st Mortgage, Inc. arise under the Comstock Brokerage

Agreement; the other four loans relate to a loan purchase agreement between LBB and

Sacramento 1st Mortgage, Inc.  By the Sacramento Motion, Sacramento 1st Mortgage, Inc. urges

the Court to decline to place significant weight on the forum selection clause contained in the

Comstock Brokerage Agreement because (i) such agreement does not relate to all of LBHI's

claims in Adversary Proceeding No. 16-01350 and (ii) the interest of justice and the convenience

of witnesses, which it asserts should take precedence, require transfer to California.[96]

Additionally, Sacramento 1st Mortgage, Inc. contends that LBHI's choice of venue should be

given no weight "because a plaintiff will pick the venue that is most advantageous to them."[97]

       In support of its contention that LBHI's choice of forum should be given no deference,

Sacramento 1st Mortgage, Inc. cites to *Atlantic Marine*, 571 U.S. 49 (2013).[98]  However,

Sacramento 1st Mortgage, Inc. mischaracterizes the Supreme Court's holding in *Atlantic Marine*.

There, in a factually distinguishable case, the Supreme Court held that a plaintiff's choice of

forum deserves no deference where the plaintiff has already contractually agreed to bring a suit

exclusively in a forum other than the one in which the plaintiff commenced the lawsuit.  *See id.*

at 62.  Notwithstanding, the Supreme Court specifically acknowledged that courts must give

weight to a plaintiff's choice of forum absent a forum selection clause.  *See id.* at 581 n.6 (citing

*Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)).  Here, there is a forum selection clause in the

Comstock Brokerage Agreement; because LBHI commenced this Adversary Proceeding in the

---

[95]        *See* Sacramento Motion at 2; Mendoza Decl. ¶ 3.
[96]        *See* Sacramento Motion at 4.
[97]        *See* Sacramento Motion at 4.
[98]        *See* Sacramento Motion at 4.

venue required by such clause, LBHI's choice of venue in New York for this Adversary

Proceeding does not run contrary to the holding of *Atlantic Marine*.

The Court has considered each of Sacramento 1st Mortgage, Inc.'s other arguments and

finds that Sacramento 1st Mortgage, Inc. has failed to meet its burden to show by clear and

convincing evidence that Adversary Proceeding No. 16-01350 should be transferred to the U.S.

District Court for the Northern District of California. The Court has determined that the interest

of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum

to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources,

and provide for the efficient administration of the Adversary Proceedings, weighs heavily in

favor of retaining venue of Adversary Proceeding No. 16-01350 in this Court. The common

issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman

matters and with the Indemnification Claims in particular (as noted by multiple federal courts

across the nation confronted with litigation regarding the Indemnification Claims), and the

deference afforded to a plaintiff's choice of forum lend further support to this factor.

Sacramento 1st Mortgage, Inc.'s stated concerns surrounding the convenience of

witnesses and the locus of operative facts, when balanced against the foregoing considerations,

are insufficiently substantial to outweigh them. Specifically, Sacramento 1st Mortgage, Inc. (i)

provides only vague, unsupported statements regarding witness inconvenience and (ii) has

identified no witnesses unwilling to appear voluntarily at a trial in New York. While the Court

recognizes that travel to New York may be inconvenient for some witnesses, in the absence of

proof that such witnesses would refuse to testify, the Court cannot determine that this

consideration weighs in favor of transfer of venue. *See*, *e.g.*, *NBA Properties, Inc. v. Salvino,

Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that

the availability of process to compel attendance also does not weigh in favor of transfer where

defendant fails to provide any affidavits from its witnesses stating that the witnesses will not

voluntarily appear absent transfer).

Further, with respect to the locus of operative facts, Sacramento 1st Mortgage, Inc. fails

to acknowledge that, while certain decisions or activities relating to the loans at issue may have

occurred in California, other facts which gave rise to the Indemnification Claims occurred in

New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New

York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged

liability to LBHI matured in New York upon approval of the GSE Settlements.  Moreover, this

Court has already determined that the Indemnification Claims have a close nexus to the Plan and

the chapter 11 proceedings here.

Finally, although the forum selection clause under the Sacramento Brokerage Agreement

is permissive rather than mandatory and does not cover all of the loans at issue, a permissive

forum selection clause is nonetheless afforded significant weight and necessarily indicates the

parties' prior consent to litigation in the venue stated therein.  *See SBAV LP v. Porter Bancorp,*

*Inc.*, No. 13 –CV-372, 2013 WL 3467030, at *10 (S.D.N.Y. July 10, 2013) (collecting cases)

(finding that non-exclusive forum selection clause deserves significant weight); *Orix Credit All.,*

*Inc. v. Mid-S. Materials Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) (citations omitted).  The

fact that Sacramento 1st Mortgage, Inc. initially accepted the jurisdiction of the courts of New

York when it entered into the Comstock Brokerage Agreement reflects a commitment not to

challenge New York as an inconvenient forum for any lawsuit related thereto.  *See SBAV LP v.*

*Porter Bancorp, Inc.*, 2013 WL 3467030, at *10.

94

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01350 is denied.

### BB.    Suburban Mortgage, Inc. (Adv. Pro. No. 16-01295)

Suburban Mortgage, Inc. asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01295 to the U.S. District Court for the District of Arizona, Phoenix Division.  In addition to joining the Omnibus Motion, Suburban Mortgage, Inc. filed (i) its Memorandum of Law in Support of Defendant Suburban Mortgage, Inc.'s Motion to Transfer Venue [Dkt. No. 462] (the "Suburban Motion"); and (ii) the Declaration of Vernon Rupp [Dkt. No. 463] (the "Rupp Decl.") in support thereof.

Suburban Mortgage, Inc. asserts that its Adversary Proceeding should be transferred to the U.S. District Court for the District of Arizona, Phoenix Division, because, among other reasons, the convenience of witnesses weighs in its favor.  Suburban Mortgage, Inc. submits that it has identified 37 non-party witnesses who could provide critical testimony regarding the 12 loans at issue and all of these potential witnesses reside in Arizona (with the exception of one who lives in Southern California).[99]  Suburban Mortgage Inc. contends that (i) such non-party witnesses are not subject to subpoena in New York and will not voluntarily come to New York[100] and (ii) it would impose "material economic hardship and/or life disruption" on such potential witnesses if they had to travel to New York, particularly for those who are self-employed, the "breadwinner" of their household, "recovering from a very serious illness," and compensated based on commission.[101]  Suburban Mortgage, Inc. also argues that the location of relevant

---

[99]    *See* Suburban Motion at 3, 9.
[100]    *See* Suburban Motion at 3, 8; Rupp Decl. ¶¶12-14.
[101]    *See* Suburban Motion at 8.

documents weighs in favor of transfer because all of its records and documents are located in Phoenix and only exist in paper form.[102]

In addition, Suburban Mortgage, Inc. asserts that judicial economy and the interest of justice support transfer of venue because, among other reasons, (i) "[t]his court has no familiarity with the underlying facts of this case;" (ii) there is no advantage to coordinated discovery concerning loans involving other defendants since each loan file is unique; and (iii) due to the fact that Suburban Mortgage, Inc. will request a jury trial, if venue is not transferred from this Court, it will be inefficient because two judges will necessarily have to become familiar with the underlying facts of its case.[103]

The Court has considered each of the arguments of Suburban Mortgage, Inc. and finds that it has failed to meet its burden to demonstrate by clear and convincing evidence that Adversary Proceeding No. 16-01295 should be transferred to the U.S. District Court for the District of Arizona, Phoenix Division.

The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01295 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

---

[102]    *See id.* at 12-13.
[103]    *See id.* at 13.

As stated *supra*, the Adversary Proceedings have been pending before this Court since their inception, and transfer of certain of these actions at this time would result in a waste of judicial resources by duplicating work that has already been done.  Contrary to the assertions of Suburban Mortgage, Inc., this Court is already immersed in the common issues of law and fact central to the actions.  In addition, this Court has held numerous conferences and hearings in the Adversary Proceedings and has established procedures for administrative coordination which will serve to streamline discovery and pretrial matters once these actions emerge from the motion to dismiss phase.  Even if, as Suburban Mortgage, Inc. argues, its Adversary Proceeding will eventually require a jury trial, judicial efficiency and economy would still be best achieved by having the pretrial stages of the proceedings coordinated in this Court.  While Suburban Mortgage, Inc. submits that having two judges – a bankruptcy judge and a district court judge – become familiar with its Adversary Proceeding would be inefficient, the Court observes that it is highly likely that a transferee district court would refer pretrial matters to a magistrate judge; thus, the same pretrial/trial dichotomy would occur regardless of whether venue is transferred.  Transfer of this Adversary Proceeding to a district court at this time would be premature, inefficient, and not in the interest of justice.

Moreover, Suburban Mortgage, Inc.'s stated concerns surrounding the convenience of witnesses, the locus of operative facts, and the location of documents, when balanced against consideration regarding the interest of justice, are insufficiently substantial to outweigh them.  While Suburban Mortgage, Inc. asserts that the location of the operative documents is in Arizona and this weighs in favor of transfer, it fails to address LBHI's contention that documents in paper form could be scanned and transmitted electronically for use at a trial in New York.  With respect to Suburban Mortgage, Inc.'s claims that New York will be an inconvenient forum for

the 41 witnesses (37 of which are non-party witnesses) that it intends to call at trial, the Court is

skeptical that a trial in this Adversary Proceeding will necessarily involve dozens of witnesses.

Suburban Mortgage, Inc. disregards the facts that (i) the plaintiff LBHI, not a defendant, bears

the burden to establish on a loan-by-loan basis that the borrower for each allegedly breaching

mortgage loan made a material misrepresentation which caused a loss; (ii) since the allegedly

breaching loans were each issued over a decade ago, witnesses' ability to provide meaningful

testimony based on recollections may be much more limited due to the passage of time; and (iii)

documentary evidence may play a more central role than witness testimony at trial.

Many of the conclusory statements regarding witness inconvenience contained in the

Rupp Declaration (*e.g.*, statements asserting it would impose "material economic hardship and/or

life disruption" on the potential witnesses if they had to travel to New York) are unsupported by

statements of the witnesses themselves, as is Mr. Rupp's blanket assertion that every one of the

37 potential non-party witnesses would not voluntarily travel to New York to testify.  While the

Court recognizes that travel to New York may be inconvenient for some witnesses, in the

absence of affidavits from such witnesses that they would refuse to testify, the Court cannot

determine that this consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties,

Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27,

2000) (finding that the availability of process to compel attendance also does not weigh in favor

of transfer where defendant fails to provide any affidavits from its witnesses stating that the

witnesses will not voluntarily appear absent transfer).

Finally, with respect to the locus of operative facts, Suburban Mortgage, Inc. fails to

acknowledge that, while certain decisions or activities relating to the loans at issue may have

occurred in Arizona, other facts which gave rise to the Indemnification Claims occurred in New

York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York;
(ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to
LBHI matured in New York upon approval of the GSE Settlements.  Moreover, this Court has
already determined that the Indemnification Claims have a close nexus to the Plan and the
chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,
the motion to transfer venue of Adversary Proceeding No. 16-01295 is denied.

### CC.    Sun American Mortgage Company (Adv. Pro. No. 16-01296)

Sun American Mortgage Company asserts that the convenience of the parties and the
interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01296 to the
U.S. District Court for the District of Arizona, Phoenix Division.  In addition to joining the
Omnibus Motion, Sun American Mortgage Company filed the AMLG Motion and the
Declaration of Terry Turk [Dkt. No. 499] (the "Turk Decl.") in support thereof.  By his
declaration, Mr. Turk argues that venue should be transferred to the U.S. District Court for the
District of Arizona, Phoenix Division, because, among other reasons, (i) all of the relevant
documents that support its defense are located in Arizona and such documents are "voluminous;"
(ii) Sun American Mortgage Company is headquartered and has its principal place of business in
Arizona, which is where the company's employees "performed" the loan transactions; and (iii) it
would be extremely inconvenient for Mr. Turk and the company's witnesses (who, based on
recent investigations, are located in Arizona) to appear and give testimony in the Southern
District of New York.[104]

---

[104]    *See* Turk Decl. ¶¶ 4-8.

The Court has considered each of Sun American Mortgage Company's arguments and finds that Sun American Mortgage Company has failed to meet its burden to demonstrate by clear and convincing evidence that Adversary Proceeding No. 16-01296 should be transferred to the U.S. District Court for the District of Arizona, Phoenix Division. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01296 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Sun American Mortgage Company's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. Specifically, Sun American Mortgage Company (i) provides only vague, unsupported statements regarding witness inconvenience; (ii) provides insufficient evidence that its potential witnesses reside in Arizona; and (iii) has identified no witnesses unwilling to appear voluntarily at a trial in New York. While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue. *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27,

2000) (finding that the availability of process to compel attendance also does not weigh in favor

of transfer where defendant fails to provide any affidavits from its witnesses stating that the

witnesses will not voluntarily appear absent transfer).

While Sun American Mortgage Company asserts that the location of the operative

documents is in Arizona, it does not address LBHI's contention that hard copy documents

located anywhere could be transmitted electronically or scanned for use at a trial in New York,

regardless of their size.  Finally, with respect to the locus of operative facts, Sun American

Mortgage Company fails to acknowledge that, while certain decisions or activities relating to the

loans at issue may have occurred in Arizona, other facts which gave rise to the Indemnification

Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business

operations in, New York; (ii) the Agreements contain a New York choice of law provision; and

(iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements.

Moreover, this Court has already determined that the Indemnification Claims have a close nexus

to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01296 is denied.

### DD.    Windsor Capital Mortgage Corporation (Adv. Pro. No. 16-01333)

Windsor Capital Mortgage Corporation asserts that the convenience of the parties and the

interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01333 to the

U.S. District Court for the Southern District of California.  In addition to joining the Omnibus

Motion, Windsor Capital Mortgage Corporation filed the AMLG Motion and the Declaration of

Fred Thrane [Dkt. No. 500] (the "Thrane Decl.") in support thereof.  By his declaration, Mr.

Thrane argues that venue should be transferred to the U.S. District Court for the Southern

District of California because, among other reasons, (i) Windsor Capital Mortgage Corporation

ceased operations in 2009, generates no income, and has no assets; (ii) Windsor Capital

Mortgage Corporation is headquartered and has its principal place of business in San Diego,

California, which is where the company's employees "most likely performed" the eleven loan

transactions at issue;[105] and (iii) it would be extremely inconvenient for Mr. Thrane and the

company's witnesses (who are unidentified) to appear and give testimony in the Southern

District of New York, particularly given that he is unable to travel because of his health.[106]

     The Court has considered each of Windsor Capital Mortgage Corporation's arguments

and finds that Windsor Capital Mortgage Corporation has failed to meet its burden to show by

clear and convincing evidence that Adversary Proceeding No. 16-01333 should be transferred to

the U.S. District Court for the Southern District of California.  The Court has determined that the

interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one

forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party

resources, and provide for the efficient administration of the Adversary Proceedings, weighs

heavily in favor of retaining venue of Adversary Proceeding No. 16-01333 in this Court.  The

common issues of law in the Adversary Proceedings, this Court's extensive experience with

Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal

courts across the nation confronted with litigation regarding the Indemnification Claims), and the

deference afforded to a plaintiff's choice of forum lend further support to this factor.

     Windsor Capital Mortgage Corporation's stated concerns surrounding the relative means

of the parties, the convenience of witnesses, and the locus of operative facts, when balanced

against the foregoing considerations, are insufficiently substantial to outweigh them.  With the

---

[105]    Mr. Thrane admits that Windsor Capital Mortgage Corporation is licensed in many states and, therefore, he cannot confirm where the loan transactions were performed without seeing the loan documentation which, he asserts, LBHI has refused to provide.  *See* Thrane Decl. ¶ 6.

[106]    *See* Thrane Decl. ¶¶ 3-8.

exception of Mr. Thrane's statement regarding his health concerns, Windsor Capital Mortgage

Corporation provides no other evidence to support its claims of witness inconvenience.  Rather,

it makes vague, unsupported statements and cites to no evidence (i) that its unnamed witnesses

reside in California or (ii) that such witnesses would be unwilling or unable to travel to New

York.

Moreover, Windsor Capital Mortgage Corporation has provided no evidence to support

its assertions regarding lack of financial means.  It fails to acknowledge case law holding that,

when plaintiff and defendant are both corporations, the relative resources of the parties are given

little weight in the transfer analysis.  *See*, *e.g.*, *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F.

Supp. 2d 332, 338 (S.D.N.Y. 2010) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331

(S.D.N.Y. 1998)).  The Court also observes that, even were the Court to consider the relative

means of the parties, Windsor Capital Corporation has provided no evidence regarding its

financial means, which it would be required to do.  *See id.* (citing *NBA Props., Inc. v. Salvino,*

*Inc.*, No. 99-CV-11799, 2000 WL 323257, at *10 (S.D.N.Y. Mar. 27, 2000))( "[A] party arguing

for or against a transfer because of inadequate means must offer documentation to show that

transfer (or lack thereof) would be unduly burdensome to his finances.").

Finally, with respect to the locus of operative facts, Windsor Capital Mortgage

Corporation fails to acknowledge that, while certain decisions or activities relating to the loans at

issue may have occurred in California, other facts which gave rise to the Indemnification Claims

occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations

in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the

alleged liability to LBHI matured in New York upon approval of the GSE Settlements.

Moreover, this Court has already determined that the Indemnification Claims have a close nexus to the Plan and the chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01333 is denied.

### EE.    Wintrust Mortgage (Adv. Pro. No. 16-01369)

Wintrust Mortgage, as successor by merger to SGB Corp., asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01369 to the Colorado District Court (or, in the alternative, to the U.S. District Court for the Northern District of Illinois).  In addition to joining the Omnibus Motion, Wintrust Mortgage filed (i) its Memorandum of Law in Support of Defendant Wintrust Mortgage's, as Successor by Merger to SGB Corp., Motion to Transfer Venue [Dkt. No. 474] (the "Wintrust Motion"); and (ii) the Declaration of David Hrobon [Dkt. No. 476] (the "Hrobon Decl.")[107] in support thereof.

Wintrust Mortgage asserts that its Adversary Proceeding should be transferred to the Colorado District Court or, in the alternative, to the U.S. District Court for the Northern District of Illinois because, among other reasons, (i) SGB Corp., its predecessor, had its principal place of business in Colorado;[108] (ii) Wintrust Mortgage has its principal place of business in Illinois; (iii) the negotiation of, and performance under, the loan purchase agreement that SGB Corp. signed with LBB occurred predominantly in Colorado, and therefore, the locus of operative facts is in Colorado; (iv) Wintrust Mortgage expects to call a number of third-party witnesses at trial,

---

[107]    In his declaration, Mr. Hrobon states that he is President and CEO of "Wintrust Mortgage Company." Hrobon Decl. ¶ 1. Other filings in Adversary Proceeding No. 16-01369, including certain pleadings filed by this Defendant, refer to "Wintrust Mortgage Corporation."  *See, e.g.*, *Notice of Appeal*, Adv. Pro. No. 16-01369, Dkt. No. 40.  For purposes of this Decision, the Court will refer to the Defendant in Adversary Proceeding No. 16-01369 as "Wintrust Mortgage," and it declines to make any determination as to the correct name.

[108]    Wintrust Mortgage also asserts that Aurora Loan Services, with which SGB Corp. had allegedly contracted, had its principal place of business in Colorado, and that SGB Corp. "treated its relationship with [Aurora] and [LBB] as being one relationship."  Hrobon Decl. ¶ 2.

most of whom are believed to live in Colorado and cannot be compelled to appear in New York; and (v) the documentation relating to the loans in question is kept in Illinois.[109] Additionally, Wintrust Mortgage submits that the relative means of the parties weigh in favor of transfer, arguing that because LBHI has recovered almost $3.3 billion, it has a "significant war chest" with which to finance litigation, in contrast to the less than $2 billion in assets held by Barrington Bank & Trust, of which Wintrust Mortgage is a division.[110]

The Court has considered each of Wintrust Mortgage's arguments and finds that it has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01369 should be transferred to the Colorado District Court or to the U.S. District Court for the Northern District of Illinois. The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01369 in this Court. The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

Wintrust Mortgage's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them. First, because Wintrust Mortgage has requested transfer of venue to one of two different districts which are not in the

---

[109]    *See generally* Wintrust Motion at 4-10; Hrobon Decl. ¶¶ 2-7.
[110]    *See* Wintrust Motion at 10.

same state, witness inconvenience will occur for some of its approximately ten witnesses

regardless of forum.  In addition, (i) Wintrust Mortgage provides only vague, unsupported

statements regarding witness inconvenience; (ii) it provides insufficient evidence regarding the

state of residence of its potential witnesses; and (iii) it has identified no witnesses unwilling to

appear voluntarily at a trial in New York.  While the Court recognizes that travel to New York

may be inconvenient for some witnesses, in the absence of proof that such witnesses would

refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of

venue.  *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL

323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel

attendance also does not weigh in favor of transfer where defendant fails to provide any

affidavits from its witnesses stating that the witnesses will not voluntarily appear absent

transfer).

While Wintrust Mortgage asserts that the location of the operative documents is in

Illinois, it does not address LBHI's contention that hard copy documents located anywhere could

be transmitted electronically or scanned for use at a trial in New York.  Finally, with respect to

the locus of operative facts, Wintrust Mortgage fails to acknowledge that, while certain decisions

or activities relating to the loans at issue may have occurred in Colorado, other facts which gave

rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered

in, and had its business operations in, New York; (ii) the Agreements contain a New York choice

of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of

the GSE Settlements.  Moreover, this Court has already determined that the Indemnification

Claims have a close nexus to the Plan and the chapter 11 proceedings here.

With respect to the relative means of the parties, Wintrust Mortgage fails to acknowledge case law holding that, when plaintiff and defendant are both corporations, the relative resources of the parties are given little weight in the transfer analysis. *See*, *e.g.*, *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)). The Court also observes that, even were the Court to consider the relative means of the parties, Wintrust Mortgage has provided no evidence regarding its financial means, which it would be required to do. *See id.* (citing *NBA Props., Inc. v. Salvino, Inc.*, No. 99-CV-11799, 2000 WL 323257, at *10 (S.D.N.Y. Mar. 27, 2000))( "[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances."). Contrary to Wintrust Mortgage's assertions, the recoveries achieved by LBHI in its chapter 11 cases are not a "war chest" that can be utilized for prosecuting litigation; LBHI's non-restricted cash is held for the benefit of its creditors who, as LBHI points out, will receive distributions but who will never be made whole on their claims.[111]

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons, the motion to transfer venue of Adversary Proceeding No. 16-01369 is denied.

### FF.    WR Starkey Mortgage, LLP (Adv. Pro. No. 16-01326)

WR Starkey Mortgage, LLP asserts that the convenience of the parties and the interest of justice strongly favor transferring venue of Adversary Proceeding No. 16-01326 to the U.S. District Court for the Eastern District of Texas, Sherman Division. In addition to joining the Omnibus Motion, WR Starkey Mortgage, LLP filed the AMLG Motion and the Declaration of Todd Bergwall [Dkt. No. 501] (the "Bergwall Decl.") in support thereof. By his declaration, Mr.

---

[111]       *See* Opposition at 25-26.

Bergwall states that venue should be transferred to the U.S. District Court for the Eastern District of Texas, Sherman Division, because, among other reasons, (i) the documents that support WR Starkey Mortgage, LLP's defense are located in Houston, Texas and are voluminous; (ii) WR Starkey Mortgage, LLP is headquartered and has its principal place of business in Texas, which is where the loan transactions were "performed;" and (iii) it would be extremely inconvenient for Mr. Bergwall and the company's witnesses (who, based on recent investigations, are all located in Texas or Colorado) to appear and give testimony in the Southern District of New York.[112]

The Court has considered each of WR Starkey Mortgage, LLP's arguments and finds that WR Starkey Mortgage, LLP has failed to meet its burden to show by clear and convincing evidence that Adversary Proceeding No. 16-01326 should be transferred to the U.S. District Court for the Eastern District of Texas, Sherman Division.  The Court has determined that the interest of justice, which favors centralizing litigation of all of the Adversary Proceedings in one forum to avoid duplicative litigation, avert inconsistent results, preserve judicial and party resources, and provide for the efficient administration of the Adversary Proceedings, weighs heavily in favor of retaining venue of Adversary Proceeding No. 16-01326 in this Court.  The common issues of law in the Adversary Proceedings, this Court's extensive experience with Lehman matters and with the Indemnification Claims in particular (as noted by multiple federal courts across the nation confronted with litigation regarding the Indemnification Claims), and the deference afforded to a plaintiff's choice of forum lend further support to this factor.

WR Starkey Mortgage, LLP's stated concerns surrounding the convenience of witnesses, the location of the operative documents, and the locus of operative facts, when balanced against the foregoing considerations, are insufficiently substantial to outweigh them.  Specifically, WR

---

[112]     *See* Bergwall Decl. ¶¶ 4-8.

Starkey Mortgage, LLP provides only vague, unsupported statements regarding witness inconvenience, and Mr. Bergwall admits that not all of WR Starkey Mortgage, LLP's potential witnesses reside in Texas.  WR Starkey Mortgage, LLP fails to cite to any evidence from the witnesses themselves explaining how or why New York would be any less convenient than Texas for such parties.  The Court observes that witness inconvenience will occur for some of these potential witnesses regardless of forum.  In addition, WR Starkey also has not identified any witnesses unwilling to appear voluntarily at a trial in New York.  While the Court recognizes that travel to New York may be inconvenient for some witnesses, in the absence of proof that such witnesses would refuse to testify, the Court cannot determine that this consideration weighs in favor of transfer of venue.  *See*, *e.g.*, *NBA Properties, Inc. v. Salvino, Inc.*, No. 99-CV-11799 (AGS), 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000) (finding that the availability of process to compel attendance also does not weigh in favor of transfer where defendant fails to provide any affidavits from its witnesses stating that the witnesses will not voluntarily appear absent transfer).

While WR Starkey Mortgage, LLP asserts that the location of the operative documents is in Texas, it does not address LBHI's contention that hard copy documents located anywhere could be transmitted electronically or scanned for use at a trial in New York, regardless of size.  Finally, with respect to the locus of operative facts, WR Starkey Mortgage, LLP fails to acknowledge that, while certain decisions or activities relating to the loans at issue may have occurred in Texas, other facts which gave rise to the Indemnification Claims occurred in New York, namely, that (i) LBHI is headquartered in, and had its business operations in, New York; (ii) the Agreements contain a New York choice of law provision; and (iii) the alleged liability to LBHI matured in New York upon approval of the GSE Settlements.  Moreover, this Court has

already determined that the Indemnification Claims have a close nexus to the Plan and the

chapter 11 proceedings here.

After balancing the Transfer Factors, this Court concludes that, for the foregoing reasons,

the motion to transfer venue of Adversary Proceeding No. 16-01326 is denied.

## CONCLUSION

The Court has balanced the Transfer Factors, recognizing that no single factor is

determinative and that the relative weight to be afforded to each factor depends on the particular

circumstances of each case.  The interest of justice, which favors centralizing litigation in one

forum to (i) avoid duplicative litigation; (ii) save time and expense; and (iii) efficiently

administer adversary proceedings based on similar claims weighs heavily here in favor of

retaining venue of all of the Adversary Proceedings in this Court.  It bears emphasis that multiple

federal courts across the country, when confronted with litigation related to the Indemnification

Claims, have agreed that this Court is the most appropriate forum to hear these Adversary

Proceedings, given its extensive experience with Lehman matters and with the Indemnification

Claims in particular.  Defendants' stated concerns surrounding the convenience of witnesses, the

location of operative documents, and the locus of operative facts, when balanced against this

factor, are insufficiently substantial to outweigh it and the deference granted to the plaintiff's

choice of forum.  Each Defendant has failed to meet its burden to demonstrate by clear and

convincing evidence that transfer of the Adversary Proceeding in which it is currently a

Defendant to the venue(s) set forth on Exhibit A is warranted.  For all of the foregoing reasons,

the Motions are denied.[113]

---

[113]     Because the Court finds that transfer of venue is not warranted for any of the Adversary Proceedings on
Exhibit A, it declines to reach the other prong of a transfer analysis – whether the proposed transferee district is one
in which the matter could have been brought because subject matter jurisdiction, personal jurisdiction, and venue are
proper in such district.  While the Defendants assert in the Motions that, pursuant to 28 U.S.C. §1404(a), the

IT IS SO ORDERED.

Dated: October 2, 2018
New York, New York

/S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE

Indemnification Claims could have been brought in the various transferee districts proposed by the Defendants, the Court will not address these arguments at this time.