**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>- against -<br><br>1ST ADVANTAGE MORTGAGE, LLC, *et al.*,<br><br>Defendants. | Adversary Proceeding<br><br>No. 16-01019 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>- against -<br><br>UNIVERSAL AMERICAN MORTGAGE<br>COMPANY, LLC,<br><br>Defendant. | Adversary Proceeding<br><br>No. 16-01297 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>- against -<br><br>EAGLE MORTGAGE HOLDINGS, LLC, as<br>successor by merger to EAGLE HOME<br>MORTGAGE, INC.; and UNIVERSAL<br>AMERICAN MORTGAGE COMPANY, LLC,<br><br>Defendants. | Adversary Proceeding<br><br>No. 16-01383 (SCC) |

**MEMORANDUM DECISION AND ORDER DENYING UNIVERSAL AMERICAN
MORTGAGE COMPANY, LLC'S AND EAGLE MORTGAGE HOLDINGS, LLC'S
<u>JOINT SUPPLEMENTAL MOTION TO DISMISS ON UNIQUE ISSUES</u>**

A P P E A R A N C E S:

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
By:    William A. Maher, Esq.
       Paul R. DeFilippo, Esq.
       Adam M. Bialek, Esq.
       Mara R. Lieber, Esq.

       -and-

FOX ROTHSCHILD LLP
1225 17th Street
Suite 2200
Denver, CO 80202
By:    Michael A. Rollin, Esq.
       Maritza Dominguez Braswell, Esq.

*Counsel for Lehman Brothers Holdings Inc.*

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Ste. 2300
Miami, FL 33131
By:    Philip R. Stein, Esq.
       James J. Ward, Esq.

*Counsel for Universal American Mortgage Company, LLC and
Eagle Mortgage Holdings, LLC*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Joint Supplemental Motion to Dismiss on Unique Issues filed by

Universal American Mortgage Company, LLC ("UAMC") and Eagle Mortgage Holdings, LLC

("Eagle" and, together with UAMC, the "Defendants"), dated June 15, 2017 [Dkt. No. 453][1] (the

"Motion").  On August 29, 2017, Lehman Brothers Holdings Inc. ("LBHI" or the "Plan

Administrator") filed its opposition to the Motion [Dkt. No. 507] (the "Opposition"), together

with the Declaration of Adam M. Bialek [Dkt. No. 507-1] (the "Bialek Decl.").  On September

28, 2017, the Defendants filed a reply to the Opposition [Dkt. No. 517] (the "Reply").

## BACKGROUND

The Court assumes familiarity with the general background and history of the LBHI

chapter 11 cases; this Decision will provide limited background facts pertinent to the Motion.

### A.    LBHI's Loan Business

Prior to its bankruptcy, LBHI, directly or through its affiliates, including Lehman

Brothers Bank, FSB ("LBB"), engaged in the purchase and sale of mortgage loans.  LBHI

arranged directly or through affiliates such as LBB to purchase mortgage loans from loan

originators and other third parties (the "Sellers") including the Defendants; it then packaged such

loans for securitization or sale to other third parties.  In transactions involving UAMC, UAMC

sold mortgage loans to LBB pursuant a Loan Purchase Agreement dated September 20, 2005 (as

amended by an Addendum dated October 1, 2006, the "UAMC LPA") pursuant to which, among

other things, UAMC contractually agreed to indemnify LBB and hold it harmless from liabilities

---

[1]    The adversary proceedings filed against the Defendants (and against certain other parties) have been administratively coordinated pursuant to (i) the Case Management Order, dated November 1, 2016 [Dkt. No. 305] (the "CMO") and (ii) the Order to Administratively Coordinate Adversary Proceeding Dockets Under the Case Management Order and Pursuant to U.S.C. § 105, dated March 6, 2017 [Dkt. No. 398].  Docket numbers used herein refer to documents filed in Adversary Proceeding No. 16-01019 unless otherwise indicated.

or losses it might incur (including liabilities to third parties) as a result of breaches of the representations and warranties in the UAMC LPA.[2]  In transactions involving Eagle, Eagle (or its predecessor, Eagle Home Mortgage, Inc.) sold mortgage loans to LBB pursuant to a Loan Purchase Agreement dated October 21, 2004 (the "Eagle LPA" and, together with the UAMC LPA, the "Agreements") pursuant to which, among other things, Eagle contractually agreed to indemnify LBB and hold it harmless from liabilities or losses it might incur (including liabilities to third parties) as a result of breaches of the representations and warranties in the Eagle LPA.[3] In conjunction with the sale by LBB to LBHI of the loans at issue, the Complaints assert that LBB subsequently assigned to LBHI all of its rights and remedies under the Agreements pertaining to such loans.[4]

Each of the Agreements specifically incorporates the terms and conditions of the Seller's Guide of loan administrator, Aurora Loan Services LLC (the "Seller's Guide").[5]  Under the Seller's Guide, the seller makes certain representations, warranties, and covenants to the purchaser of mortgage loans about, among other things, the quality, characteristics, and underwriting of each mortgage loan; the property securing the mortgage loans; and the borrowers.[6]  In the event the seller breaches a representation, warranty, or covenant thereunder, the Seller's Guide delineates various forms of remedies.

Specifically, section 710 of the Seller's Guide, entitled "Repurchase Obligation" provides, in relevant part, that

---

[2]      *See* Ex. J to Bialek Decl. ¶¶ 13, 27 (Second Amended Adversary Complaint, *Lehman Brothers Holdings Inc. v. Universal Am. Mortg. Co., LLC*, Adv. Pro. No. 16-01297 [Dkt. No. 1] (the "UAMC Complaint")).
[3]      *See* Ex. K to Bialek Decl. ¶¶ 15, 29 (Second Amended Adversary Complaint, *Lehman Brothers Holdings Inc. v. Eagle Mortgage Holdings, LLC,* Adv. Pro. No. 16-01383 [Dkt. No. 1] (the "Eagle Complaint" and, together with the UAMC Complaint, the "Complaints")).
[4]      *See* UAMC Complaint ¶ 19; Eagle Complaint ¶ 21.
[5]      *See* UAMC Complaint ¶ 14; Eagle Complaint ¶ 16.  A representative copy of Section 7 of the Seller's Guide is attached as Ex. L to the Bialek Decl.
[6]      *See* UAMC Complaint ¶ 22; Eagle Complaint ¶ 24.

> In the event of a breach of any of the representations, warranties or covenants contained in Section 700 through 710 herein . . . and unless Purchaser determines that such breach has been cured . . . Seller shall, at Purchaser's option, repurchase the related Mortgage Loan . . . at the Repurchase Price.

Ex. L to Bialek Decl. (Seller's Guide) § 710.  Section 711 of the Seller's Guide, entitled

"Indemnification and Third Party Claims," provides, in relevant part, that

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

Ex. L to Bialek Decl. (Seller's Guide) § 711.

### B.    The Bankruptcy Proceedings

On September 15, 2008, LBHI and certain of its subsidiaries and affiliates (collectively,

the "Debtors") filed voluntary chapter 11 cases in this Court.

On December 6, 2011, this Court confirmed the Modified Third Amended Joint Chapter

11 Plan of LBHI and Its Affiliated Debtors (the "Plan").  *See* Order Confirming Plan [Case No.

08-13555, Dkt. No. 23023] (the "Confirmation Order").[7]

### C.    Prior Actions

In March 2011, LBHI filed suit against UAMC in the United States District Court for the

Southern District of Florida (Case No. 11-CV-20859) (the "Florida Action"), alleging breaches

of representations and warranties regarding eight mortgage loans that UAMC sold to LBB

---

[7]    The Plan is annexed as Exhibit A to the Confirmation Order.

pursuant to the UAMC LPA.[8]  On January 9, 2013, the United States District Court for the

Southern District of Florida dismissed without prejudice seven of the eight counts in the

complaint initiating the Florida Action, finding that such counts lacked commonality of factual

circumstances, and granted LBHI the right to re-file each of such counts as a separate

complaint.[9]

Immediately following dismissal of the Florida Action, LBHI filed seven actions in the

United States District Court for the District of Colorado (the "Colorado District Court"), each

relating to one loan at issue.[10]  In five of the seven actions (collectively, the "Colorado Actions"),

the Colorado District Court granted summary judgment in favor of UAMC on the basis that

LBHI's breach of contract claims were barred by the statute of limitations.[11]  *See Lehman Bros.

Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 12 F. Supp. 3d 1355 (D. Colo. 2014); *Lehman

Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-CV-00087, 2014 WL 1715365

(D. Colo. April 30, 2014); *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No.

13-CV-00088, 2014 WL 1715225 (D. Colo. April 30, 2014); *Lehman Bros. Holdings Inc. v.

Universal Am. Mortg. Co., LLC*, No. 13-CV-00093, 2014 WL 1715204 (D. Colo. April 30,

2014); and *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-CV-00092,

2014 WL 4269118 (D. Colo. August 28, 2014).  LBHI appealed the five summary judgment

decisions to the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit").  In a

consolidated appeal, the Tenth Circuit affirmed the five summary judgment decisions, finding

that LBHI's breach of contract claims accrued in 2006 and 2007 at the time LBHI purchased the

---

[8]        *See* Bialek Decl. ¶ 2.
[9]        *See* Ex. A to Bialek Decl. at 1-2 (Order Severing Claims and Requiring Supplemental Briefing in Florida
Action).
[10]       *See* Bialek Decl. ¶ 5.  The seven actions filed in the Colorado District Court were assigned Case Nos. 13-
CV-00087 through 13-CV-00093.
[11]       *See* Bialek Decl. ¶ 7.

loans at issue and, therefore, the claims asserted in the Colorado Actions filed by LBI in 2011 and 2012 were time-barred by the three-year statute of limitations for breach of contract under Delaware law. *See Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 660 F. App'x 554, 556 (10th Cir. 2016) (hereinafter, "*Universal American*").[12]

## D.    The GSEs

The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and, together with Fannie Mae, the "GSEs") were two subsequent purchasers of mortgage loans from LBHI.  In September 2009, both GSEs filed proofs of claim against LBHI (collectively, the "GSE Claims"), asserting breaches of representations, warranties, or covenants in numerous sale agreements for loans they had acquired from LBHI.  The GSE Claims asserted claims for, among other things, "alleged indemnity/reimbursement obligations" and "indemnity claims" arising from the sale of mortgage loans to the GSEs, including mortgage loans originated by and purchased from the Defendants and ultimately sold to the GSEs.[13]

In its review of the GSE Claims, LBHI determined that certain loans, including those brokered or sold by the Defendants, contained various defects that violated the representations, warranties, and covenants under the Agreements.  LBHI has alleged that the representations, warranties, and covenants in the sale agreements between the GSEs and LBHI were co-extensive

---

[12]    The consolidated opinion in *Universal American* also addressed the appeal of an order granting a motion filed by Standard Pacific Mortgage, Inc. to dismiss the claims of Aurora Commercial Corp. *See Aurora Commercial Corp. v. Standard Pac. Mortg., Inc.,* No. 12-CV-3138, 2014 WL 1056383 (D. Colo. Mar. 19, 2014).

[13]    *See* Settlement Agreement, dated January 22, 2014, by and among LBHI, et al., and Fannie Mae (the "Fannie Settlement") §§ C, D [Case No. 08-13555, Dkt. No. 42153]; Settlement and Assignment Agreement, dated February 12, 2014, by and among LBHI, et al., and Freddie Mac (the "Freddie Settlement") §§ C, E [Case No. 08-13555, Dkt. No. 42754].

with those in the Agreements between LBB and the Defendants.[14]  Thus, Lehman asserts that

Defendants' breaches, acts, and omissions caused LBHI to incur liability to the GSEs.

In January 2014, LBHI settled its disputes with the GSEs regarding the allowance of the

GSE Claims (the "GSE Settlements").  The Court approved the GSE Settlements by Orders

dated January 31, 2014 and February 19, 2014 (the "GSE Settlement Orders") [Case No. 08-

13555, Dkt. Nos. 42420, 42918].  Pursuant to the Fannie Settlement, Fannie Mae received an

allowed claim for $2.15 billion in LBHI Class 7 under the Plan, and, pursuant to the Freddie

Settlement, Freddie Mac received a one-time cash payment of $767 million from LBHI, each in

settlement of all claims and disputes between the parties.[15]

### E.    The Adversary Proceedings

Subsequent to entering into the GSE Settlements, the Plan Administrator identified over

11,000 loans and over 3,000 potential counterparties against which LBHI allegedly held third-

party contractual claims for indemnification and/or reimbursement by virtue of the GSE

Settlements.[16]  To manage this volume of indemnification claims, the Court authorized the Plan

Administrator to implement a pre-litigation mediation protocol with the Sellers from which it

sought indemnification.  *See* Alternative Dispute Resolution Procedures Order for

Indemnification Claims of The Debtors Against Mortgage Loan Sellers, dated June 24, 2014

[Case No. 08-13555, Dkt. No. 45277].

---

[14]    *See* UAMC Complaint ¶¶ 2, 37; Eagle Complaint ¶¶ 2, 39.

[15]    *See* Fannie Settlement §§ 2.1, 3.1, 5; Freddie Settlement §§ 2.1-2.3.

[16]    The settlement agreements with the GSEs obligated the GSEs to provide the Plan Administrator with certain documents and to otherwise assist the Plan Administrator in bringing indemnification claims against the Sellers to indemnify LBHI for its liability to the GSEs.  *See* Fannie Settlement §§ 3.1-3.6 (provisions requiring Fannie Mae to assist the Plan Administrator in pursuing "Rep and Warranty Default" claims); Freddie Settlement §§ 4.1-4.6 (similar provisions to assist the Plan Administrator in pursuing claims related to "Liquidated Rep and Warranty Default Loans").

To further facilitate its pursuit of recoveries from those Sellers with whom mediation was unsuccessful, the Plan Administrator initiated adversary proceedings in this Court, including those at issue here, against more than one hundred Sellers (including the Defendants) in tandem with six previously-filed adversary actions (collectively, the "Adversary Proceedings"). Pursuant to the CMO, the Adversary Proceedings have a central docket for court filings (Adv. Pro. No. 16-01019) and have been coordinated for administrative purposes, including scheduling motions and discovery procedures.

On December 22, 2016, LBHI filed the UAMC Complaint, initiating Adversary Proceeding No. 16-01297 against UAMC; on December 30, 2016, LBHI filed the Eagle Complaint, initiating Adversary Proceeding No. 16-01383 against Eagle and UAMC.[17]  By the Complaints, LBHI claims that each of the Defendants breached its obligations under the Agreements by selling or submitting defective mortgage loans into LBHI's loan sale and securitization channels, and, thus, LBHI has a third-party indemnification claim against each Defendant for LBHI's liability to the GSEs (together, the "Indemnification Claims"). Specifically, the Complaints allege that it was Defendants' breaches of the representations, warranties, and/or covenants under the Agreements that caused LBHI to have to compensate the GSEs pursuant to agreements between LBHI and the GSEs that contained representations, warranties, and/or covenants co-extensive with those contained in the Agreements.[18]

The CMO provides a time frame for (i) the filing of so-called threshold motions such as motions under Federal Rule of Civil Procedure 12(b) based on venue, jurisdiction, and/or failure

---

[17]    LBHI asserts that UAMC expressly and/or impliedly assumed Eagle and its predecessor's alleged obligations and their alleged liability to LBHI.  *See* Eagle Complaint ¶ 3.

[18]    *See* UAMC Complaint ¶¶ 2, 37; Eagle Complaint ¶¶ 2, 39.

to state a claim and (ii) objections to such motions.[19]  On March 31, 2017, certain defendants in

the Adversary Proceedings (including the Defendants) filed an omnibus motion to dismiss the

complaints filed against such defendants pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction and (ii) Fed. R. Civ. P. 12(b)(3) for improper venue [Dkt. No. 413]

(the "Motion to Dismiss").  By Memorandum Decision and Order, dated August 13, 2018 [Dkt.

No. 606], this Court denied the Motion to Dismiss, finding that this Court has subject matter

jurisdiction over each of the Adversary Proceedings and that venue in this Court is proper.

The CMO also provides a time frame for the filing of so-called threshold motions to

address unique issues of individual defendants.[20]  As permitted by the CMO, Defendants filed

the instant Motion seeking dismissal of the Complaints pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure ("Rule 12(b)(6)"), made applicable by Rule 7012(b) of the Federal

Rules of Bankruptcy Procedure, for failure to state a claim upon which relief can be granted.

The Court heard oral argument on the Motion on June 12, 2018.

By the Motion, the Defendants argue that the Complaints should be dismissed because

the rulings in the Colorado Actions and in *Universal American* have preclusive effect as to

LBHI's claims against the Defendants; as such, they assert that the allegations in the Complaints

are barred by claim preclusion and by issue preclusion.  LBHI vehemently disagrees.  The

Court's ruling follows.

---

[19]    *See* CMO ¶¶ 8-9 ("During Phase I, as set forth below, Defendants may file motions to dismiss pursuant to
Fed. R. Civ. P. 12(b) and other threshold motions as set forth more fully below (the "Phase I Motions"). No other
motions shall be filed during Phase I absent good cause shown. Within sixty (60) days after the commencement of
Phase I, the Defendants shall file a single consolidated motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) (lack
of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim upon which relief can be
granted), 12 (b)(7) (failure to join a party under Rule 19), 12(e) (for a more definite statement), and 12(f) (to strike),
addressing issues common to all Defendants . . . .").
[20]    *See* CMO ¶ 15 ("Within fifteen (15) days after the commencement of Phase I, if any Defendant intends to
file any threshold motion, including motions under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); 12(b)(4)
(improper process); 12(b)(5) (insufficient service of process): and 28 U.S.C. § 1404 (change of venue), which
arguably address issues unique to that Defendant (the "Individual Motions"), it shall request a pre-motion
conference.").

## DISCUSSION

### A. Applicable Law

Rule 12(b)(6) permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss brought under Rule 12(b)(6), a court must accept the material factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).

### B. Claim Preclusion, or *Res Judicata*[21]

#### 1. Applicable Law

In connection with a motion to dismiss under Rule 12(b)(6), a defendant may invoke an affirmative defense of claim preclusion when it is clear from the complaint and the matters of which a court may take judicial notice that a prior court judgment precludes the plaintiff's claims as a matter of law. *Pricaspian Dev. Corp. v. Total S.A.*, No. 08-CV-9724, 2009 WL 4163513, at *4 (S.D.N.Y. Nov. 25, 2009), *aff'd*, 397 F. App'x 673 (2d Cir. 2010) (citing *Candelaria v. Erickson*, No. 01-CV-8594, 2007 WL 1793443, at *2 (S.D.N.Y. June 18, 2007)). Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Federal common law governs a court's application of claim preclusion to an earlier

---

[21] Although the parties interchangeably use (i) the term "*res judicata*" to refer to claim preclusion and (ii) the term "collateral estoppel" to refer to issue preclusion, as is the practice of certain courts, other courts, including the United States Supreme Court, have employed the term "*res judicata*" as an overarching label for both claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (noting that claim preclusion and issue preclusion "are collectively referred to as 'res judicata'"). For the sake of clarity, this Court will use the terms "claim preclusion" and "issue preclusion" rather than the terms "*res judicata*" and "collateral estoppel."

federal court judgment and requires the court to apply "the law that would be applied by state courts in the state in which the [original rendering court] sits." *See Pricaspian Dev. Corp. v. Total S.A.*, 2009 WL 4163513, at *4 (citing *Semtek Int'l. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001)). Accordingly, since the United States District Court for the District of Colorado rendered the decisions in the Colorado Actions, the parties do not dispute that Colorado law applies here. Under Colorado law, the claim preclusion doctrine applies when:

> (1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and (4) the parties to the proceedings were identical or in privity with one another.

*Meridian Service Metropolitan District v. Ground Water Commission (In the Matter of Water Rights)*, 361 P.3d 392, 398 (Colo. 2015) (citing *Gallegos v. Colorado Ground Water Comm'n*, 147 P.3d 20, 32 (Colo. 2006)). Claim preclusion bars not only issues actually decided, but also any issues that could have been, but were not, raised in the first proceeding. *See Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005).

Assuming all factors in the claim preclusion test are satisfied, the preclusive effect is not altered by the fact that a court may later determine that a prior judgment may have been wrongly decided or may have rested on a legal principal subsequently overruled in another case. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (collecting cases). Indeed, "an 'erroneous conclusion' reached by the court in the first suit does not deprive the defendants in the second action 'of their right to rely upon the plea of [claim preclusion].'" *Id.* (citing *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927)).

Under Colorado law, a defendant bears the burden of setting forth facts sufficient to satisfy the elements of claim preclusion or issue preclusion. *Edmond v. Clements*, No. 11-CV-00248, 2012 WL 2523077, at *11 (D. Colo. Jan. 19, 2012).

10

### 2. Analysis

By the Motion, Defendants assert that the Complaints should be dismissed on the basis of

claim preclusion because (i) LBHI is attempting to relitigate the same claims that were already

dismissed in the Colorado Actions, which decisions were affirmed by the Tenth Circuit, and (ii)

LBHI is precluded from making claims that it could have asserted in the Colorado Actions.[22]

Defendants contend that the first, second, and fourth elements of the claim preclusion

doctrine under Colorado law are easily satisfied because (i) the summary judgment decisions in

the Colorado Actions were final and have been affirmed by the Tenth Circuit; (ii) LBHI is suing

the same party, UAMC, under the same contract, the UAMC LPA, in connection with the same

transactions, the sale of mortgage loans sold from UAMC to LBB, which loans were

subsequently sold to LBHI; and (iii) the Colorado Actions involved the same parties – UAMC

and LBHI.[23]

Additionally, Defendants assert that the third element of the claim preclusion doctrine –

that the claims for relief in the two actions must be identical – is satisfied because the claims for

relief in the Colorado Actions and those in these Adversary Proceedings are all claims arising

under the same agreements – the UAMC LPA and the Seller's Guide.  They point to the

"transactional approach" applied by Colorado courts, whereby a contract is generally considered

to denote a single transaction for the purposes of claim preclusion and, therefore, claims for

breaches of such contract must ordinarily be brought in the same action.[24]  Under Colorado law,

argue the Defendants, even those claims that arise from severable parts of a divisible contract are

---

[22]     *See* Motion at 1.
[23]     *See* Motion at 6.
[24]     *See* Motion at 7 (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335-36 (10th Cir. 1988); *see also Loveland Essential Group, LLC v. Grommon Farms, Inc.*, 318 P.3d 6, 10 (Colo. App. 2012) ("Generally, a contract is considered to denote a single transaction for the purpose of claim preclusion, and therefore claims for different breaches of a contract ordinarily must be brought in the same action.").

considered to be part of the same transaction for purposes of claim preclusion, and "claims are tied by the same injury where they concern all or any part of the transaction or series of connected transactions, out of which the [original] action arose."[25]   Accordingly, the Defendants submit that, even if the Colorado Actions and these Adversary Proceedings assert claims for breach on account of different loans, because the allegations in all of the actions arise under the same agreements, the judgments entered in the Colorado Actions (and affirmed by the Tenth Circuit) extinguished all claims held by LBHI with respect to such agreements.[26]

Alternatively, Defendants contend that, even if the Court is persuaded that the claims LBHI asserted in the Colorado Actions are different from those now asserted in these Adversary Proceedings, because the claims in the Adversary Proceedings *could* have been brought in the Colorado Actions, they are now barred by claim preclusion.   Defendants' position is that Colorado's transactional approach would deem the claims "identical" for purposes of claim preclusion because they are all tied to alleged injuries under the UAMC LPA.[27]   In other words, even if LBHI did not assert third-party indemnification claims in the Colorado Actions, claim preclusion nonetheless applies because LBHI could have asserted in the Colorado Actions such indemnification claims pursuant to section 711 of the Seller's Guide.   Defendants argue that LBHI's breach of contract claims in the Colorado Actions and its indemnification claims in these Adversary Proceedings arise from the same series of connected transactions, and claims based on the same transaction or series of connected transactions may not be split.[28]

---

[25]      *See* Motion at 6-7 (citing *Meeper, LLC v. Powers*, No. 12-CV-01732-WYD-KMT, 2016 WL 369558, at *4 (D. Colo. Feb. 1, 2016) (citing *Loveland Essential Group, LLC v. Grommon Farms, Inc.*, 318 P.3d at 10)).
[26]      *See* Motion at 6-7.
[27]      *See* Motion at 7.
[28]      *See* Motion at 7-8.

By the Opposition, LBHI argues, persuasively, that claim preclusion does not apply because the third factor of the claim preclusion test – that the claims in the prior action and the instant action are identical – has not been satisfied.  LBHI asserts that (i) the claims raised in the Colorado Actions involved entirely different mortgage loans, contracts, and loan originators than those asserted in Adversary Proceeding No. 16-01383, and (ii) the claims asserted in Adversary Proceeding No. 16-01297 are based on entirely different mortgage loans.[29]  Accordingly, because each claim of breach arises from a unique set of facts, circumstances, defects, and damages, LBHI contends that (i) the claims in the Prior Actions and in these Adversary Proceedings cannot be deemed to arise out of a single transaction, even if certain of the claims may arise from the same contract (as in the case of the UAMC Complaint), and (ii) as a result, the claims in these Adversary Proceedings need not have been brought in the Colorado Actions.[30]  Additionally, and dispositively, LBHI argues that claim preclusion cannot apply here because LBHI's third-party indemnification claims against the Defendants did not accrue until LBHI entered into the GSE Settlements in 2014, as this Court has previously ruled;[31] as such, LBHI could not have raised these claims in the Colorado Actions, which were commenced in January 2013.[32]

---

[29]    *See* Opposition at 1.

[30]    *See* Opposition at 8-9 (citing to *CitiMortgage, Inc. v. Chicago Bancorp. Inc.*, 2015 WL 631365, at *5 (E.D. Mo. 2015) (rejecting claim splitting defense as to claims regarding mortgage loans sold under same contract as loans in the prior action); *ResCap Liquidating Trust v. U.S. Bank, N.A.*, 2017 WL 2437242, at *5 (D. Minn. June 5, 2017) (*res judicata* inapplicable where "the two suits involve[d] different sets of loans and thus different operative facts"); *ResCap Liquidating Trust v. PNC Bank, N.A.*, 2017 WL 3129748, at *7 (D. Minn. July 21, 2017) (same); *Lehman Bros. Holdings Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 942 F. Supp. 2d 516, 532 (E.D. Pa. 2013) (*res judicata* inapplicable because prior lawsuit involved different loans and a different legal theory and thus "the documents necessary at trial" and "material facts" were different)).

[31]    In *Lehman Bros. Holdings v. Hometrust Mortg. Co. (In re Lehman Bros. Holdings)*, 530 B.R. 601 (Bankr. S.D.N.Y. 2015), this Court held that LBHI's claim for indemnification under section 711 of the Seller's Guide did not accrue until its liability to a third party was fixed or payment was made – as is the case here, on the date of the GSE Settlements.

[32]    *See* Opposition at 10.

13

The Court finds that the claims asserted by LBHI in Adversary Proceeding No. 16-01297 and Adversary Proceeding No. 16-01383 are not barred by claim preclusion. While the Defendants correctly cite the proposition that, under Colorado law, a contract generally is considered to denote a single transaction for the purpose of claim preclusion, such that claims for different breaches of a contract ordinarily must be brought in the same action, *see Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d at 1335-36, the Tenth Circuit has explicitly noted that this is only the case "so long as the breaches antedated the original action." *Id.* at 1336. The Court of Appeals of Colorado has also concluded that "[c]laim preclusion does not bar a later action on claims [under the same contract] which arise after the original action is filed, but before judgment in the original action." *See Loveland Essential Group, LLC v. Grommon Farms, Inc.*, 318 P.3d at 14.

Here, the Colorado Actions were commenced in 2013, prior to LBHI's entry into, and the Court's approval of, the GSE Settlements in 2014. LBHI's Indemnification Claims against each Defendant did not accrue until its liability to the GSEs was fixed upon entry of the GSE Settlement Orders in early 2014; accordingly, the Indemnification Claims did not arise in time for LBHI to have pled them in the Colorado Actions. As such, they are not barred by claim preclusion.

Moreover, even assuming, *arguendo*, that the claims asserted in the Adversary Proceedings could have been raised in the Colorado Actions, the Court finds that, because the claims in each of the actions arise from the sale of different loans, each with a unique set of facts, circumstances, alleged defects, and asserted damages, such claims cannot be considered "identical" for purposes of the claim preclusion inquiry, even if the claims arise under the same contract. Each purchase of an individual loan by LBB from a Defendant cannot be considered as

14

part of a single transaction merely because the parties agreed that each loan purchase and sale would be governed by the same terms and conditions set forth in the Seller's Guide. As LBHI correctly asserts, multiple federal courts (including the United States District Court for the Southern District of Florida, the venue for the Florida Action) have held that claims regarding mortgage loans sold under the same contract need not or should not be brought in the same action.[33] So too here.

Finally, specifically with respect to Adversary Proceeding No. 16-01383, claim preclusion also cannot apply because this Adversary Proceeding involves a different defendant and a different contract than those involved in the Colorado Actions. Eagle, a defendant in Adversary Proceeding No. 16-01383, was not a party to the Colorado Actions, and the Defendants have not asserted that Eagle was in privity with UAMC when the Colorado Actions were commenced. Further, the claims in the Colorado Actions related to loans sold by UAMC under the UAMC LPA, whereas the claims in Adversary Proceeding 16-01383 relate to loans sold by Eagle under the Eagle LPA. Accordingly, neither the requirement that the claims for relief be identical nor the requirement that the parties to the proceedings be identical (or in privity with one another) is satisfied with respect to the claims LBHI has asserted in Adversary Proceeding No. 16-01383.

For all of the foregoing reasons, the Motion to dismiss the Complaints on the basis of claim preclusion is denied.

---

[33]    *See* Opposition at 8-9 (citing to *CitiMortgage, Inc. v. Chicago Bancorp. Inc.*, 2015 WL 631365, at *5 (E.D. Mo. 2015) (rejecting claim splitting defense as to claims regarding mortgage loans sold under same contract as loans in the prior action); *ResCap Liquidating Trust v. U.S. Bank, N.A.*, 2017 WL 2437242, at *5 (D. Minn. June 5, 2017) (*res judicata* inapplicable where "the two suits involve[d] different sets of loans and thus different operative facts"); *ResCap Liquidating Trust v. PNC Bank, N.A.*, 2017 WL 3129748, at *7 (D. Minn. July 21, 2017) (same); *Lehman Bros. Holdings Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 942 F. Supp. 2d 516, 532 (E.D. Pa. 2013) (*res judicata* inapplicable because prior lawsuit involved different loans and a different legal theory and thus "the documents necessary at trial" and "material facts" were different)).

### C.  Issue Preclusion, or Collateral Estoppel

### 1.  Applicable Law

Under the doctrine of issue preclusion, a final judgment forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. at 892 (internal quotation marks omitted) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).  Like the doctrine of claim preclusion, federal common law determines the preclusive effect of an earlier federal court judgment and incorporates the issue preclusion rules applied in the state in which the original rendering court sits.  *Taylor v. Sturgell*, 553 U.S. at 891 n.4.

Colorado law provides that issue preclusion bars relitigation of a factual or legal matter that was previously litigated and decided in an earlier matter.  *Rantz v. Kaufman*, 109 P.3d 132, 138 (Colo. 2005) (en banc) (internal quotations marks omitted) (citing *Carpenter v. Young*, 773 P.2d 561, 565 (Colo. 1989).  Specifically, under Colorado law, a party is collaterally estopped from relitigating an issue if

> (1) [t]he issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) [t]he party against whom estoppel [is] sought was a party to or was in privity with a party to the prior proceeding; (3) [t]here was a final judgment on the merits in the prior proceeding; [and] (4) [t]he party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Rantz v. Kaufman*, 109 P.3d at 139 (citing *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999)); *see also S.O.V. v. People in Interest of M.C.*, 914 P.2d 355, 359 (Colo. 1996) (en banc).  Issue preclusion is broader than claim preclusion in one sense since it can preclude relitigation of an issue even where the claims for relief are different from those asserted in the first action.  Because issue preclusion only applies to issues actually litigated,

however, it is narrower than claim preclusion, which also applies to claims which could have been raised in a prior suit but were not. *Rantz v. Kaufman*, 109 P.3d at 138-39 (citing *City and County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991)); *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d at 608.

### 2. Analysis

The central dispute with respect to the applicability of issue preclusion here pertains to whether the first prong of the test for issue preclusion has been satisfied. Stated differently, are the issues in these Adversary Proceedings identical to issues "actually litigated and necessarily adjudicated" in the Colorado Actions?[34] The Defendants assert that LBHI's claims in the Complaints are barred by issue preclusion because *Universal American* affirmed the Colorado District Court's ruling that all of LBHI's claims in the Colorado Actions (including claims for indemnity) were untimely under the applicable statute of limitations.[35] Specifically, the Defendants maintain that the Tenth Circuit expressly extended its holding that LBHI's "breach of contract" claims were barred by the statute of limitations to include claims for indemnity by LBHI. In support of such contention, the Defendants cite to *Universal American*, in which the court stated that

> we would regard Lehman Holdings' claims as causes of action for breach of contract even if Lehman Holdings had pleaded them as claims for indemnity . . . . the causes of action accrued when Universal American . . . sold the defective loans with the representations and warranties. . . . Thus, <u>all</u> of the claims are presumptively time-barred under Delaware's three-year period of limitations.[36]

---

[34]    *See Rantz v. Kaufman*, 109 P.3d at 139.
[35]    *See* Motion at 9-10.
[36]    *See* Motion at 10 (citing *Universal American*, 660 F. App'x at 568-69 (emphasis added and internal quotations and citations omitted)); Reply at 5 (same).

Accordingly, Defendants argue that LBHI is collaterally estopped from asserting that the

Indemnification Claims in these Adversary Proceedings are timely because, in affirming the

Colorado District Court's summary judgment rulings, the Tenth Circuit held that LBHI's breach

of contract and indemnity claims were barred by the statute of limitations.[37]

LBHI argues that this Court should reject the Defendants' collateral estoppel argument

because the Defendants have failed to satisfy their burden to demonstrate that *Universal*

*American* should be given preclusive effect here.  Specifically, LBHI asserts that the claims

adjudicated in the Colorado Actions and on appeal were claims for breach of contract under

section 710 of the Seller's Guide[38] and the Complaints filed in these Adversary Proceedings

assert claims for indemnification under section 711 of the Seller's Guide – two entirely different

provisions of the same document and two different legal issues.[39]  Because in *Universal*

*American* the Tenth Circuit did not analyze, in *dicta* or otherwise, the issue of express

contractual indemnification claims against a third-party under section 711 – the issue in these

Adversary Proceedings – LBHI maintains that *Universal American* "does not control, or even

---

[37]     Defendants also argue that the second, third, and fourth elements of the issue preclusion test – identical parties, final judgment on the merits, and opposing party's opportunity to fully and fairly litigate issues in the prior proceeding – are satisfied because the parties in the Colorado Actions and in these Adversary Proceedings are identical, the Tenth Circuit's opinion in *Universal American* is final, and LBHI raised the same timeliness issues in litigating the Colorado Actions.  *See* Motion at 9.  The Court declines to address these arguments because it finds that the Defendants have failed to meet their burden to demonstrate that the first element of the issue preclusion inquiry has been satisfied.  Notwithstanding, the Court notes that, as discussed in Section B.2 *supra*, the parties in the Colorado Actions and the parties in Adversary Proceeding No. 16-01383 are not identical, because Eagle, a defendant in Adversary Proceeding No. 16-01383, was not a party to the Colorado Actions, and the Defendants have not asserted that Eagle was in privity with UAMC when the Colorado Actions were commenced.

[38]     Section 710 of the Seller's Guide provided LBHI the right to require sellers to repurchase defective mortgage loans sold directly to LBB, a right which accrued upon the breach of a representation or warranty that materially and adversely affected the value of the mortgage loan.  The remedy was the contractually defined "Repurchase Price."  *See* Opposition at 2-3 (citing Ex. L to Bialek Decl. § 710).

[39]     Section 711 of the Seller's Guide gave LBHI an indemnification right triggered by "claims, losses, damages, . . . judgments and any other costs, fees, and expenses . . . [that are] in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement.  *See* Opposition at 3 (citing Ex. L to Bialek Decl. § 711).

relate to" the indemnification claims at issue here.[40]  As such, LBHI submits that the issues

raised in the instant proceeding and in the prior proceedings are not identical, as required by the

first prong of the collateral estopped inquiry, and collateral estoppel does not apply.

The Court agrees.  Under Colorado law, a litigant is precluded from rearguing an issue

only if such issue is identical to an issue actually litigated and necessarily adjudicated in the prior

proceeding.  *See Rantz v. Kaufman*, 109 P.3d at 139; *see also Bebo Const. Co. v. Mattox &

O'Brien, P.C.*, 990 P.2d at 85-86.  An issue is deemed to be "actually litigated" where (i) one of

the parties, by appropriate pleading, asserts such issue through a claim or cause of action against

the other party and (ii) such issue has been submitted for determination and actually determined

by the adjudicatory body.  *Id.* at 85.  An issue is "necessarily adjudicated" when a determination

on such issue was necessary to a judgment.  *Id.* at 86.  In *Universal American*, the Tenth Circuit

observed that, in the Colorado Actions, LBHI had pled only breach of contract claims with

indemnity as a remedy for breach, as opposed to pleading indemnification claims as a distinct

cause of action, stating that

> In its five amended complaints and motions for partial summary judgment, Lehman
> Holdings referred to indemnification only as one of the ways that Universal
> American breached the contract, stating that the breaches consisted of failure to
> repurchase the loans "and/or fail[ure] to indemnify Lehman for its losses."
>
> Lehman Holdings never asserted indemnification as a cause of action distinct from
> the cause of action for breach of contract.  For example, in none of the five amended
> complaints is there any mention of Freddie Mac, Fannie Mae, or any payment by
> Lehman Holdings to a third party.  Through the amended complaints and summary
> judgment briefing, Lehman Holdings presented the claim in district court solely as
> one for breach of contract, with indemnity as a remedy rather than a distinct cause
> of action.

*Universal American*, 660 F. App'x at 567); *see also iFreedom Direct Corp. v. Lehman Bros.

Holdings Inc.*, 2017 WL 2729079, at *2 (D. Utah June 23, 2017) (stating that, in *Universal*

---

[40]       *See* Opposition at 4 (citing *Universal American*, 660 F. App'x at 568-69).

*American*, "LBHI did not assert 'indemnification as a cause of action distinct from the cause of action for breach of contract,' unlike its Indemnification Claims asserted in the Bankruptcy Court"); *In re RFC & RESCAP Liquidating Tr. Action*, No. 13-CV-3351, 2018 WL 3911424, at *63 (D. Minn. Aug. 15, 2018) ("In reaching its ruling, the court [in *Universal American*] relied on New York precedent involving the implied right of indemnity. . . . Here, however, Plaintiffs expressly assert a stand-alone cause of action for *contractual* indemnity that does not allege a refusal to indemnify or breach of the indemnification provision."). Because the Tenth Circuit found that LBHI had not asserted a cause of action for express contractual third-party indemnification in the Colorado Actions, the Court concludes that the issue of whether or not the Indemnification Claims are time-barred under the applicable statute of limitations was not actually litigated and necessarily adjudicated in *Universal American*.

Moreover, in *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, 530 B.R. at 610-12, this Court rejected the argument by another loan seller that the determination in certain of the Colorado Actions that LBHI's claims were barred by the statute of limitations barred LBHI from asserting its Indemnification Claims in the Adversary Proceeding filed in this Court against such loan seller.[41] This Court held that the rulings of the Colorado District Court did not address a claim for indemnification under section 711 of the Sellers' Guide and that the Indemnification Claims were not barred by the statute of limitations. After analyzing sections 710 and 711 of the Seller's Guide and canvassing every case in which the parties' loan purchase agreement (or documents closely akin to such agreement) had been at issue, this Court held that LBHI's claim for indemnification under section 711 of the Seller's Guide did not accrue until the date of the

---

[41]    The Court's ruling in *Lehman Bros. Holdings v. Hometrust Mortg. Co.* was issued prior to the Tenth Circuit's decision in *Universal American*.

Fannie Mae Settlement, when its liability to a third party was fixed or payment was made.[42]  As

such, only at that time did the six-year statute of limitations begin to run.  In denying the

defendants' motion for leave to appeal, the District Court observed that "[t]here can be no

'substantial doubt' that [this Court's statute of limitations] decisions were correct." *Hometrust*

*Mortg. Co. v. Lehman Bros. Holdings Inc.*, Nos. 15-CV-4060, 15-CV-4061, 2015 WL 5674899,

at * 3 (S.D.N.Y. Sept. 25, 2015) (citation omitted).

Notably, in *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, this Court observed that

none of the decisions in the Colorado Actions (two of which had been decided at the time)

mentions, let alone analyzes, section 711 of the Seller's Guide or attempts to determine whether

it confers a right of action for indemnification separate from "indemnification" under section 710

of the Seller's Guide for breaches of representations, warranties, and/or covenants.  *Lehman*

*Bros. Holdings v. Hometrust Mortg. Co.*, 530 B.R. at 610.  Similarly, section 711 was not

discussed in *Universal American*, which decision barred as untimely LBHI's claims for breach of

contract under section 710.  The Indemnification Claims asserted by LBHI in the Complaints are

contractual indemnification claims under section 711 of the Seller's Guide that did not accrue

until LBHI's liability to the GSEs was fixed upon the approval of the GSE Settlements in 2014.

Causes of action for express contractual indemnification have not been actually litigated and

necessarily adjudicated in the prior proceedings pointed to by the Defendants – the Colorado

Actions and *Universal American*.  Accordingly, the Court finds no basis for collateral estoppel to

apply here.

---

[42]     This Court found that sections 710 and 711 of the Seller's Guide must be read together to provide the
purchaser (i) rights under section 710, which rights include indemnification, and (ii) additional rights under section
711, of a different character than those given under section 710, including rights exercisable by third parties who
were not parties to the Agreement in the first instance. *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, 530 B.R.
at 609.

For all of the foregoing reasons, the Motion to dismiss the Complaints on the basis of

issue preclusion is denied.

IT IS SO ORDERED.

Dated: October 31, 2018
New York, New York

 /S/ Shelley C. Chapman
UNITED STATES BANKRUPTCY JUDGE