**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al*., | Case No. 08-13555 (SCC) |
| Debtors. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 16-01019 (SCC) |
| Plaintiff, | |
| v. | |
| 1st ADVANTAGE MORTGAGE, L.L.C., *et al.*, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01790 (SCC) |
| Plaintiff, | |
| v. | |
| APPROVED FUNDING CORP., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01793 (SCC) |
| Plaintiff, | |
| v. | |
| BROADVIEW MORTGAGE CORPORATION, | |
| Defendant. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01715 (SCC) |
| Plaintiff, | |
| v. | |
| LHM FINANCIAL CORPORATION, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01867 (SCC) |
| Plaintiff, | |
| v. | |
| AMERICAN BANK and CONGRESSIONAL BANCSHARES, INC. (successor-in-interest), | |
| Defendants. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01840 (SCC) |
| Plaintiff, | |
| v. | |
| ARLINGTON CAPITAL MORTGAGE CORPORATION and GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P., | |
| Defendants. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01800 (SCC) |
| Plaintiff, | |
| v. | |
| HARTLAND MORTGAGE CENTERS, INC., | |
| Defendant. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINZS INC., | Adv. Pro. No. 18-01791 (SCC) |
| Plaintiff, | |
| v. | |
| LOAN SIMPLE, INC. f/k/a ASCENT HOME LOANS, INC. f/k/a PLACER FINANCIAL INC., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01717 (SCC) |
| Plaintiff, | |
| v. | |
| LUXURY MORTGAGE CORP., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01806 (SCC) |
| Plaintiff, | |
| v. | |
| NEW FED MORTGAGE, CORP., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01808 (SCC) |
| Plaintiff, | |
| v. | |
| OAKTREE FUNDING CORP., | |
| Defendant. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01811 (SCC) |
| Plaintiff, | |
| v. | |
| MC ADVANTAGE, LLC, f/k/a REPUBLIC MORTGAGE HOME LOANS, LLC, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01813 (SCC) |
| Plaintiff, | |
| v. | |
| REPUBLIC STATE MORTGAGE CO., individually and as successor by merger to Union Trust Mortgage Corporation, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01815 (SCC) |
| Plaintiff, | |
| v. | |
| RESIDENTIAL HOME FUNDING CORP., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01831 (SCC) |
| Plaintiff, | |
| v. | |
| ROSS MORTGAGE CORPORATION, | |
| Defendant. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01824 (SCC) |
| Plaintiff, | |
| v. | |
| STERLING NATIONAL MORTGAGE COMPANY, INC., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01826 (SCC) |
| Plaintiff, | |
| v. | |
| SUN AMERICAN MORTGAGE COMPANY, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01735 (SCC) |
| Plaintiff, | |
| v. | |
| SUN WEST MORTGAGE COMPANY, INC., | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01828 (SCC) |
| Plaintiff, | |
| v. | |
| WINDSOR CAPITAL MORTGAGE CORPORATION, | |
| Defendant. | |

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01827 (SCC) |
| Plaintiff, | |
| v. | |
| WR STARKEY MORTGAGE, LLP, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01721 (SCC) |
| Plaintiff, | |
| v. | |
| SEATTLE BANK f/k/a SEATTLE SAVINGS BANK, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 16-01291 |
| Plaintiff, | |
| v. | |
| GATEWAY MORTGAGE GROUP, LLC, | |
| Defendant. | |
| LEHMAN BROTHERS HOLDINGS INC., | Adv. Pro. No. 18-01825 |
| Plaintiff, | |
| v. | |
| SUBURBAN MORTGAGE, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS RMBS COMPLAINTS PURSUANT TO RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND STANDING**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT .................................................................................1

ALLEGATIONS IN THE RMBS COMPLAINT AND FACTUAL BACKGROUND
BEARING ON SUBJECT MATTER JURISDICTION..............................................3

BACKGROUND ......................................................................................................6

    1.   The Assignments..................................................................................10

    2.  Securitization Agreements ...................................................................12

ARGUMENT ...........................................................................................................12

    I.      There is no Subject Matter Jurisdiction Because the
             RMBS Indemnity Claims are not Property of the LBHI Bankruptcy Estate ..............12

         A.  Legal Standard ...............................................................................12

         B.  The RMBS Indemnity Claims Were not Property of the
             LBHI Bankruptcy Estate .............................................................16

         C.  LBHI is not a Third Party Beneficiary Because this Status is Only
             Afforded When the Applicable Agreement Rights are Assigned .........................23

    II.     LBHI lacks standing to bring the RMBS Indemnity Claims .......................................25

         A.  Lacks Standing Because it Transferred and Assigned all Rights, Title
             and Interest to the Claims Brought Against it by RMBS Trustees Effectively
             Divesting Itself of Standing to Bring this RMBS Indemnity Claims ...................25

CONCLUSION ........................................................................................................34

**TABLE OF AUTHORITIES**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*,
    731 F.2d 112, 125 (2d Cir. 1984)........................................................................ 26, 30, 33

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11, 18 (2d Cir. 1997)................................................................................... 26

*Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*,
    671 F.3d 140, 145 (2d Cir. 2011)............................................................................... 14

*APWU v. Potter*,
    343 F.3d 619, 627 (2d Cir. 2003)........................................................................... 14, 15

*Banque Arabe et Internaitonale D'Investissement v. Maryland Nat'l Bank*,
    57 F.3d 146, 151 (2d Cir. 1995)............................................................................ 31, 33

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    778 F. Supp. 2d 375, 410–11 (S.D.N.Y. 2011)............................................................ 28

*Cardtronics, LP v. St. Nicholas Beverage Discount Center, Inc.*,
    8 A.D.3d 419, 420, 778 N.Y.S.2d 299 (2d Dep't 2004)................................................. 32

*Carter* v. *HealthPort Technologies, LLC*,
    822 F.3d 47, 56-57 (2d Cir.2016) ....................................................................... 11, 14, 15

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239, 243 (2d cir. 2014) ................................................................................ 13

*Chimart Assocs. v. Paul*,
    66 N.Y.2d 570, 574–75, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986)............................ 28

*Cortlandt St. Recovery Corp v. Deutsche Bank AG, London Branch*,
    No. 12 Civ. 9351, 2013 WL 3762882 (S.D.N.Y. July 18, 2013) .................................... 21

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*
    66 N.Y.2d 38, 43- 44, 495 N.Y.S.2d 1, 4-5, 485 N.E.2d 408 (N.Y. 1985) ..................... 24

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002)................................... 30

*Gunn v. Minton*,
    568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013)........................................... 12

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428, 434(2011)............................................................................................... 13

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.,*
No. 13-cv-519 (RJS), 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014)............................... 33

*Huntress v. U.S.,*
No. 18-CV-2974, 2019 WL 1434572, at *1 (S.D.N.Y. March 29, 2019) ........................ 15

*Hylton v. J.P. Morgan Chase Bank, N.A.,*
338 F. Supp.3d 263, 273 (S.D.N.Y. 2018)........................................................................ 13

*In re Lehman Brothers Holdings Inc.,*
Case No. 08-13555(SCC), Adv. Pro. No. 16-01019(SCC),
2018 WL 3869606, *4 (Bankr. S.D.N.Y. Aug. 13, 2018) ..................................... 2, 18, 25

*J.S. ex rel. N.S. v. Attica Cent. Sch.,*
386 F.3d 107, 110 (2d Cir. 2004)............................................................................... 13, 14

*Katz v. Donna Karan Co., L.L.C.,*
872 F.3d 114, 119 (2d Cir. 2017).................................................................................... 14

*Kearney v. Cavalry Portfolio Servs., LLC,*
No. 12-CV-00860 DLI RML, 2014 WL 3778746, at *6 (E.D.N.Y. July 31, 2014)........ 32

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)........................................... 12

*Lightfoot v. Cendant Mortg. Corp.,* —— U.S. ——,
137 S.Ct. 553, 560, 196 L.Ed.2d 493 (2017) ................................................................... 12

*Lunney v. U.S.,*
319 F.3d 550, 554 (2d Cir. 2003)). .................................................................................. 13

*Makarova v. United States,*
201 F.3d 110, 113 (2d Cir. 2000)............................................................................... 13, 14

*Matkal LLC v. VG Rush Corp.,*
18-cv-2833, 2018 WL 1748601, at * 3 (E.D.N.Y.  April 18, 2019)................................. 13

*Matter of Trusts Established under the Pooling and Servicing Agreements relating to the
Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through
Certificates,* Series 2007-C#), 17 Civ. 1998, (S.D.N.Y. March 25, 2019, 2019 WL
1331393, at * * 2-3 ......................................................................................................... 15

*Multibank 2009-1 RES-ADC Venture, LLC v. Pinecrest at Newskowin, LLC,*
No. 3:11-CV-853-BR, 2013 WL 1702224 (D. Or. Apr. 16, 2013)( ................................. 31

*Nat'l Credit Union Admin. Bd. v. U.S. Bank, Nat'l Ass'n,*
No. 14-cv-9928 (KBF), 2016 WL 796850, at *8 (S.D.N.Y. Feb. 25, 2016) ........ 31, 32, 34

*Nat'l Fin. Co. v. Uh*,
720 N.Y.S.2d 17, 18 (1st Dep't 2001) ............................................................................. 26

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.*), 335 B.R. 66, 73-74 (Bankr.
S.D.N.Y. 2005) ................................................................................................................ 18

*Phoenix Consulting, Inc. v. Republic of Angola*,
216 F.3d 36, 40 (D.C. Cir. 2000) .............................................................................. 15, 33

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
757 F.3d 79, 85 (2d Cir. 2014).......................................................................................... 23

*Residential Funding Co., LLC v. Greenpoint Mortgage Funding Inc.*,
519 B.R. 593 (S.D.N.Y. 2014)..................................................................................... 18, 19

*Security National Mortg. Co. v. Aurora Bank FSB*,
No. 2:11-CV-00434 DN, 2014 WL 7366063 at *4 (D. Utah Dec. 24, 2014)........... 4, 7, 22

*Solutia Inc. v. FMB Corp.*,
385 F. Supp. 324, 338 (S.D.N.Y. 2005)............................................................................ 24

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
752 F.3d 239, 243 (2d Cir. 2014)...................................................................................... 13

*Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon*,
No. 16 CIV. 1597 (NRB), 2017 WL 1103033, at *3 (S.D.N.Y. Mar. 21, 2017)............. 31

*U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*,
916 F.3d 116, 120 (2nd Cir. 2019).................................................................................... 25

*United Internat'l Holdings, Inc. v. The Wharf (Holdings) LTD.*,
988 F. Supp.2d 367, 373 (S.D.N.Y. 1997)........................................................................ 24

*Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC,* 651 F. App'x 5, 7 (2d Cir. 2016)............. 25

*W.W.W. Assocs., Inc. v. Giancontieri*,
77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990).................................... 30

*Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*,
No. 16-CV-3643 (VSB), 2018 WL 4684112, at *5 (S.D.N.Y. Sept. 28, 2018), appeal
withdrawn, No. 18-3244, 2018 WL 7140572 (2d Cir. Nov. 28, 2018) ........................... 26

## Statutes

11 U.S.C. § 101(5) .................................................................................................................... 19

28 U.S.C. § 1334(b) .................................................................................................................. 17

**MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS'
MOTION TO DISMISS RMBS COMPLAINTS PURSUANT TO RULE 12(b)(1) FOR
LACK OF SUBJECT MATTER JURISDICTION AND STANDING**

Pursuant to the Amended Case Management Order Case No. 16-01019, Docket No. 867, and subject to their reservation of rights, the Moving Defendants[1] hereby repeat and reincorporate by reference, the arguments made in the Motions to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue [Docket No. 413] (the "GSE Motion to Dismiss") in which some of the Moving Defendants sought dismissal of contractual indemnification claims (the "GSE Indemnity Claims") asserted in complaints (the "GSE Complaints") previously filed by Plaintiff Lehman Brothers Holdings Inc. ("Plaintiff" or "LBHI").  In the alternative, the Moving Defendants now move, pursuant to Rule 12 (b)(1), Fed. R. Civ. P., made applicable by Bankr. Rule 7012(b), to dismiss the complaints LBHI has asserted against them in connection with its settlement with the trustees of residential mortgage-backed securities trusts ("RMBS Complaints"), for lack of subject matter jurisdiction and standing on the ground that LBHI did not have pre-petition claims against the Moving Defendants with respect to the claims at issue in the RMBS Complaints ("the RMBS Claims") or the right to sue when it initiated the RMBS Complaints.

## PRELIMINARY STATEMENT

Plaintiff Lehman Brothers Holdings Inc.  ("Plaintiff" or "LBHI") brings the instant RMBS Complaints for contractual indemnification against the Moving Defendants based on its assertion that is an assignee of Lehman Brothers Bank, FSB ("LBB"). Plaintiff seeks indemnification from the Moving Defendants, which sold or brokered residential mortgage loans

---

[1] List all moving defs here. Please include Suburban Mortgage, Inc.

to LBB, which LBB is alleged to have then sold to LBHI; LBHI, in turn securitized the loans and sold them in residential mortgage backed-securities pools that it sponsored to various residential mortgage-backed securities trusts ( "the RMBS Trusts").

LBHI previously brought claims against mortgage originators and brokers for contractual indemnification based on settlements it entered with the Fannie Mae and Freddie Mac ("GSEs"). Certain defendants moved to dismiss those GSE Complaints, for lack of subject matter jurisdiction and on the ground that venue was improper, which motion was denied by this Court. In the Court's August 2018 decision denying the GSE Motion to Dismiss the Court determined that it had "related to" subject matter jurisdiction over the GSE Indemnity Claims because (i) the GSE Indemnity Claims were contingent, unmatured claims owned by LBHI before it filed its bankruptcy petition on September 15, 2008, and (ii) any recovery on the GSE Indemnity Claims would be paid to creditors of the LBHI bankruptcy estate. *In re Lehman Brothers Holdings Inc., Lehman Brothers Holdings Inc. v. 1st Advantage Mortgage, LLC, et al.,* Case No. 08-13555 (SCC), Adv. Pro. No. 16-01019 (SCC), 2018 WL 3869606 (Bankr. S.D.N.Y. Aug. 13, 2018)("the GSE Subject Matter Decision"). Specifically, with respect to its determination that the GSE Indemnity Claims were property of the LBHI bankruptcy estate, the Court held:

> [T]he [GSE] Indemnification Claims existed as contingent and unmatured contract indemnification claims until the right to indemnification was fixed. LBHI held such claims **at the time of [LBHI's] bankruptcy filing** before the claims were ripe for litigation, and the Plan preserved such clams and re-vested them in the Plan Administrator for liquidation once such claims matured and ultimately, distribution, if litigation of such claims was successful.

*Lehman Bros.,* 2018 WL 3869606 at *9. (emphasis added).

This Court's decision was premised on its assumption that LBHI acquired the rights to indemnification from LBB before LBHI's bankruptcy petition was filed when they were "contingent and unmatured claims," *Id.* at *9, such that they were "Litigation Claims" as defined

in the Plan, and that LBHI held them pre-petition.  But LBHI did not hold, pre-petition,  the purported indemnification claims Plaintiff asserts against the Moving Defendants  based on the settlement with the RMBS Trustees ("RMBS Indemnity Claims" or "RMBS Claims"). Accordingly, the RMBS Indemnity Claims do not fall under the "related to" jurisdiction[2] of the bankruptcy court. As demonstrated below, the documents pursuant to which LBHI contends it was assigned the rights and remedies enabling it to assert the RMBS Claims establish that LBHI, did not own the RMBS Indemnity Claims on the date LBHI filed for bankruptcy, September 15, 2008 (the "petition date").  Since the RMBS Indemnity Claims were never property of the LBHI bankruptcy estate, the Court does not have subject matter jurisdiction over the RMBS Indemnity Claims and those claims must be dismissed.

Alternatively, because LBHI was divested of any remedies or representations and warranties it had with respect to the loans at issue in the RMBS Complaints prior to the petition date, LBHI has no standing to bring the RMBS Complaints – and the RMBS Indemnity Claims must be dismissed.

## ALLEGATIONS IN THE RMBS COMPLAINT AND FACTUAL BACKGROUND BEARING ON SUBJECT MATTER JURISDICTION AND STANDING

According to the RMBS Complaints, between 2003 and 2007, Lehman Brothers Bank, FSB ("LBB") purchased residential home mortgage loans from the Moving Defendants.  RMBS Complaints[3] at ¶¶10 -11.  Shortly after purchasing the loans from the Moving Defendants, LBB

---

[2] A bankruptcy court can retain post-confirmation jurisdiction where: (i) the matter has a close nexus to the bankruptcy plan or proceeding, such as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan; and (ii) the plan provides for the retention of jurisdiction over the dispute.

[3] The RMBS Complaints pertaining to each individual Moving Defendant is generally the same. For ease of reference, the paragraphs enumerated herein refer to the adversary complaint for WR Starkey Mortgage LLP in 18-0127-scc, attached as Ex. 4 to the accompanying Declaration of Tracy Henderson in Support of Moving Defendants'

sold them to LBHI.[4] Complaints at ¶10. LBHI in turn packaged the loans for securitization and conveyed the loans and accompanying contract rights and obligations under various Assignment and Assumption Agreements, ("AAA") Mortgage Loan Sale and Servicing Agreements (the "MSLAAs") to a "Depositor[5], which then simultaneously conveyed the Loans to various RMBS Trusts through another set of contracts typically denominated as "Trust Agreements." RMBS Complaints at ¶¶28-30. Once the loans were deposited into a RMBS Trust, they were securitized and certificates were issued representing rights to cash flows from the securitized loan portfolio. RMBS Complaint at ¶28.

The initial sales between the Moving Defendants and LBB were governed by Loan Purchase Agreements and/or Broker Agreements (collectively the "Underlying Agreements"). RMBS Complaint at ¶¶12-16. The Loan Purchase Agreements incorporated by reference a Seller's Guide; the Broker Agreements did not. RMBS Complaint at ¶14. The RMBS Complaints do not allege either when LBB's sale of the Loans to LBHI or when LBB's assignment of remedies and representations and warranties by LBB to LBHI occurred; they allege only that "[i]n conjunction with the sale by LBB to LBHI of the Defective Loans, LBB

---

Motion to Dismiss, dated May 13, 2019 ("Henderson Dec."). Another adversary proceeding complaint, against Suburban Mortgage, Inc., Adv. Pro. No. 18-01825, is attached as Ex. A to the accompanying Declaration of Lani Adler in Support of Moving Defendants' Motion to Dismiss, dated May 13, 2019 ("Adler Dec.").

[4] *Security National Mortg. Co. v. Aurora Bank FSB*, No. 2:11-CV-00434 DN, 2014 WL 7366063 at *4 (D. Utah Dec. 24, 2014)(Not only was LBB full compensated for the sale of the loans to LBHI, but all of the loans were purchased by LBHI "without recourse" so that LBHI had not remedies against LBB for any deficiencies in the loans).

[5] The "Depositor" used by LBHI was a third-party entity named Structured Asset Securities Corporation ("SASC"). SASC's role was to create RMBS Trusts and, "[c]oncurrently with the execution" of the Trust Agreements, to "transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse…all right, title and interest of the Depositor in and to the [Loans]." *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 120 (2nd Cir. 2019).

assigned to LBHI all of its rights and remedies under the Agreements pertaining to the loans."
RMBS Complains ¶19 or 20.

In the RMBS Complaints, LBHI alleges that it relied on the representations and warranties contained in in the Underlying Agreements between the Moving Defendants and LBB regarding the loans, when LBHI made "co-extensive" representations to the RMBS Trustees that were based, "in part" on the representations made by the Moving Defendants to LBB. RMBS Complaint at ¶¶22, 26, 29, 35. According to publicly filed documents and statements made by LBHI, there are five agreements[6] (the "Assignment Agreements"), dated in 2008, 2010, 2012, 2013, and 2014 which purported to assign certain rights, remedies, representations, and warranties contained in the Underlying Agreements to LBHI with respect to particular loans.

Each of 2008, 2012, 2013 and 2014 Assignment Agreements had a schedule attached to it which listed the parties that sold loans (the "Originators") to LBB. The copy of the 2010 Assignment Agreement publicly filed by LBHI[7] did not have any schedule attached to it, and does not reference one. Adler Dec. Ex. C. Pursuant to the Assignments Agreements, as of the date of each respective Assignment Agreement, LBB purports to have assigned to LBHI all of its rights with respect to certain loans, including LBB's rights in and to any or all representations, warranties, or covenants made by the Originators to LBB in the Seller's Guide, along with any

---

[6] Public filings made by LBHI demonstrate that there were five (5) Assignments between LBHI and LBB dated September 2, 2008, June 25, 2010, February 13, 2012, May 9, 2013, and May 13, 2014 (the "Assignments"). Copies of the four Assignments which are available are attached as Exhibits A-D to the Adler Declaration.. *See also* Docket No. 49254, Case No. 18-13555 (SCC)(stating that the May 9, 2013 and May 13, 2014 Assignments restate an undated assignment agreement which contains an effective date of February 13, 2012); Since Moving Defendants are not aware of a publicly filed copy of the May 9, 2013 Assignment Agreement, none is attached to Moving Defendants' moving papers; and its terms are not specifically discussed in this brief.

[7] A copy of this 2010 Assignment Agreement is attached as Exhibit E to a Declaration of Scot Osborne, a Vice President of LBHI, dated Feb. 24, 2016, and filed that day by LBHI in Adv. Pro. No. 15-01426 (SCC) [Case No. 15-01426, Doc. 23-4].

other remedies LBB could pursue against the Originators based on the Originators' breach of representation, warranty or covenant under the Seller's Guide. At the time LBB sold the loans to LBHI, it did not transfer, or always transfer, all rights or remedies. For example, in an Assignment and Assumption Agreement between LBB, as Assignor, and LBHI, as Assignee, dated as of September 2005 and available on EDGAR, *see* Henderson Dec. Ex. 1, LBB explicitly withheld from the assignment of other rights to the mortgage loans, and did not assign to LBHI, LBB's rights to indemnification with respect to the mortgage loans it was assigning to LBHI. *Id*. at para. 1(a).

Due to the dates of the transfer of rights as outlined in this motion, the RMBS Indemnity Claims were not property of the LBHI bankruptcy estate, the Court lacks subject matter jurisdiction to consider the RMBS Complaints and the RMBS Complaints should be dismissed. Alternatively, because LBHI had transferred any rights to bring the RMBS Claims to the RMBS Trustees before the LBHI Petition Date, and did not have those rights when it initiated the RMBS Complaints, LBHI lacks standing.

## **BACKGROUND**

In the 2016 GSE Complaints, LBHI alleged that the defendant mortgage originators sold loans to non-debtor and non-party Lehman Brothers Bank ("LBB'), which then sold the loans to LBHI, which, allegedly, in turn sold the loans to Fannie Mae and Freddie Mac. These LBHI GSE claims against the mortgage originators were for "contractual indemnification" based on the defendants' alleged agreement to indemnify LBB, found in various Underlying Agreements and LBB's subsequent assignment of the indemnification remedy to LBHI. *See id.*, 2018 WL 3869606 at **1-2. The GSE Complaints alleged that the defendant mortgage originators are obligated to "indemnify" LBHI, for the unspecified amounts of money it paid to Fannie Mae and

Freddie Mac to settle claims made by the GSE'. According to the GSE complaints, the indemnification claims are based on *LBHI's breaches* of representations it made to Fannie Mae and Freddie Mac, which representations and warranties were, purportedly, "co-extensive" with those representations and warranties that the defendant mortgage originators made, and allegedly breached, when the mortgage originators sold the loans to LBB. *Id.* at *2. The GSE Complaints also alleged that LBHI "relied" on the representations made by the defendant mortgage originators to LBB, and that LBHI "made representations and warranties to Fannie Mae and/or Freddie Mac based, in part, on the representations [the] Defendant[s] made to LBB." GSE Compl. Para. 29 [Case No. 08-13555 (SCC), Doc. 54206].

While the GSE Complaints alleged that the defendants were obligated to indemnify LBHI as the "assignee" of LBB,[8] the GSE Complaints did not allege *when* the assignment of LBB's indemnification remedy to LBHI occurred or *when* LBB assigned the mortgage originators' representations and warranties, or remedies to LBHI. In fact, LBB sold the loans to LBHI without recourse or without making any representations and warranties and was fully compensated[9]. In the GSE Subject Matter Decision, stated that LBB assigned "its rights" to LBHI after LBB sold the loans to LBHI, noting that "Defendants sold the mortgages to LBB (which *thereafter* assigned its rights thereunder to LBHI) . . . ." *Id.*, 2018 WL 3869606, at *1 (emphasis added). The provisions in the Sellers Guide which explicitly address describe assignment, Sections 701 and 713.3, state clearly that "[i]n addition to [LBB's] right to assign its

---

[8] *See* GSE Compl. [Case No. 08-13555(SCC), Doc. No. 54206] Paras. 12,18, 21, 26, 27.

[9] *Security National Mortg. Co. v. Aurora Bank FSB,* No. 2:11-CV-00434 DN, 2014 WL 7366063, at *4 (D. Utah Dec. 24, 2014)( Not only was Lehman Bank fully compensated for the sale of the Loans to LBHI, but all of the Loans were purchased by LBHI "without recourse" so that LBHI had no remedies against Lehman Bank for any deficiencies in the Loans.).

rights and duties under the Loan Purchase Agreement and the Seller's Guide, Seller agrees that [LBB] *separately* LBB may assign to any other party and or all representations, warranties or covenants made by Seller to Purchaser in the Seller's Guide and Loan Purchase agreement, along with any or all of the remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies." (emphasis added). Adler Dec.

In the instant RMBS Complaints, LBHI also asserts that it is entitled to indemnification from the Moving Defendants for settlements LBHI entered into with the trustees of "hundreds of trusts", RMBS Compl. Para. 2 [Case No. 18-01825, Doc 1] (a copy is attached as Exhibit A to the moving Adler Dec), and that it has the right to sue to enforce an obligation for contractual indemnification against the moving Defendants allegedly contained in an agreement to which each of the Moving Defendants, on the one hand, and non-party, non-debtor LBB, on the other hand, were parties, because LBHI is the "assignee" of LBB. RMBS Compl. Paras. 12, 17, 18, 20, 22, 27, 28, 32, 45; Adler Dec. Ex. A.

However, the RMBS Complaints conspicuously fail to allege *any* facts as to *when* LBB assigned the indemnification remedy or the representations and warranties to LBHI. In the absence of any factual allegations as to when the assignment was made, or which demonstrate that on the petition date LBHI actually had acquired from LBB and retained the rights a) to sue the moving defendants for "contractual indemnification;" and b) to enforce the representations and warranties the Moving Defendants made to LBB when the Moving Defendants sold LBB the loans pursuant to certain Underlying Agreements[10], LBHI has failed to meet its burden to

---

[10] The Underlying Agreements in all cases are generally dated between 2001 and 2007 according to the Exhibit A attached to the Moving Defendants' complaints. *See*, e.g., Adler Dec.

make a prima facie showing that LBHI possessed these indemnification claims before it filed its bankruptcy petition. Regardless of whether the claims were contingent and unmatured, LBHI has not sufficiently alleged facts, nor can it allege sufficient facts in response to this fact-based challenge, which demonstrate, by a preponderance, that there is related to subject matter jurisdiction or that LBHIt has standing to assert these claims pursuant to a contract to which it was not a party.

As discussed below, since the documents evidencing such Assignments by LBB to LBHI, and the contractual conveyance of certain rights by LBHI during subsequent securitization of the at-issue loans[11], are critical and necessary to the Court's determination of this motion, the Court must consider them. Copies of these Assignment Agreements,, Assignment and Assumption Agreements, Mortgage Loan Sale and Servicing Agreements and Trust Agreements, available from public record filings,[12] are attached as exhibits to the accompanying Adler and Henderson Declarations, dated May 13, 2019 which are incorporated by this reference herein, and establish that LBB did not assign either the indemnification remedy or the representations and warranties to LBHI prior to the filing of the bankruptcy petition and/or that LBHI was contractually divested, pre-petition, of the rights it sues to enforce and on which its claim for contractual indemnification is predicated.. Accordingly, LBHI has not alleged – and cannot allege – facts sufficient for it to adequately make out subject matter jurisdiction or standing, such that the RMBS Complaints asserted against the Moving Defendants must be dismissed.

---

[11] Defined as loans Moving Defendants sold to LBB, which sold them to LBHI, which then conveyed them to Depositor SASC, and simultaneously securitized them in to RMBS trusts.

[12] *See* Affidavit of Lani Adler, Esq. and Tracy L. Henderson, Esq filed concurrently herein and incorporated herein by this reference.

### 1. The Assignments

There are five assignment agreements on which LBHI purportedly relies to claim it obtained the rights to Indemnification. Adler Dec. Ex. A-D. LBHI has admitted in public record filings that there were five written assignments from LBB to LBHI, which assigned "all LBB's rights under the LPAs" [or Broker Agreements, where applicable] to LBHI," dated September 2, 2008, June 25, 2010, February 12, 2013, May 9, 2013, and May 13, 2014.[13]

The 2008 Assignment Agreement ("2008 Assignment") between LBB and LBHI purports to memorialize a previous agreement. It purports to "assign, transfer and convey all of its rights in and to the Agreements including the representations, warranties or covenants…along with all of the remedies. Adler Dec. Ex. A. The 2010 Assignment Agreement ("2010 Assignment") between Aurora Bank, FSB f/k/a LBB and LBHI states that it concerns loans brokered by the entities shown on the schedule attached to it[14]. Adler Dec. Ex. B. This 2010 Assignment related to brokered loans does not incorporate the Sellers Guide and likewise purports to "assign, transfer and convey" the same rights; however, LBB retained "rights, interests and remedies" in certain loans not sold to LBHI. The 2010 Assignment Agreement does not reference any attached schedule listing the mortgage brokers or brokered loans supposedly covered by it, and the copy of it publicly filed by LBHI does not have any schedule attached to it. [15]

---

[13] Copies of each are attached as Exhibits B through E to the Adler Dec [except for the May 9, 2013, as to which Moving Defendants could not file a publicly filed copy]. Opposition of Lehman Brothers Holdings Inc. to Motions Seeking an Order Vacating the Alternative Dispute Resolution Procedures Order for Indemnification Claims Against Mortgage Loan Sellers, dated April 14, 2014, [Case No. 08-13555(SCC), Doc 49254] ("LBHI 2015 Opposition Brief"), at 9. According to the LBHI 2015 Opposition Brief, the May 9, 2013 and May 13, 2014 purported to restate an assignment agreement that is undated which asserts it is effective as of Feb. 13, 2012.

[14] No publicly filed copy has a schedule attached however.

[15] *See* Declaration of Scot Osbourne referenced herein.

The February 13, 2012 Assignment[16] ("2012 Assignment") and the May 13, 2014 Assignment ("2014 Assignment"), titled the Second Amended and Restated Assignment and Assumption Agreement ("2014 Assignment"), between Aurora and LBHI, acknowledge and also references the September 2, 2008 Assignment. The 2014 Assignment expressly states that the 2008 Assignment was amended several times. This 2014 Assignment then lists all assignments subsequent to 2008 and purports to amend the Schedule A attached and "grant transfer and assign" to LBHI all "right title and interests" under certain Loan Purchase Agreements.

Each of the 2008, 2012 and 2014 Assignment Agreements has a Schedule attached to it which contains a list of specific entities. Certain Moving Defendants, like Suburban Mortgage, Inc., appear only in the 2012 and or 2014 assignments, and not in the 2008 Assignment Agreement., Certain other Moving Defendants appear in multiple versions, and it cannot be determined which entities are subject to the 2010 or 2013 Assignment Agreements because there is either no schedule attached or it is fully redacted. While none of the assignment agreements specify which particular loans were the subject of the various assignment of rights made by LBB to LBHI, **each of the 2010, 2012 and 2014 Assignment Agreements expressly states that is assigning rights, remedies, and representation and warranties that LBB had not previously assigned to LBHI**.[17] *See*, e.g., May 13, 2014 Assignment Agreement, Para. 1, Adler Dec. Ex. D.

---

[16] LBHI has publicly filed a copy of an "Assignment and Assumption Agreement, which states it is "effective as of February 13, 2012. Adler Dec. While that agreement is signed, it conspicuously lacks an indication as to when it was signed.

[17] The Moving Defendants are not aware of a publicly filed 2013 Assignment Agreement; and take the position that. on this motion, it is LBHI's burden to provide a copy of it, with an unredacted Schedule attached to it. *See generally Carter v. Healthport Technologies, LLC,* 822 F.3d 47, 57 (2d Cir. 2016).

### 2. Securitization Agreements

There are three agreements at issue in the securitization process[18] employed by LBHI which are applicable to all Moving Defendants. Henderson Dec., Ex 1-3. The first is an Assignment and Assumption ("Assumption Agreement") agreement between LBB and LBHI. The second is a Mortgage Loan Sale and Servicing Agreement ("MSLAA") between LBHI and a Depositor, typically Structured Asset Securities Corporation ("SASC"). The third and final is the Trust Agreement in which SASC, as Depositor, Aurora Loan Services, LLC, as Master Servicer, and varying entities such as U.S. Bank National Association, as Trustee, are parties. ("Trust Agreement"). The details of the provisions of these documents are set forth in the next section.

## ARGUMENT

### I. There is No Subject Matter Jurisdiction Because the RMBS Indemnity Claims Are Not Property of the LBHI Bankruptcy Estate

#### A. Legal Standard

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); and may not preside over cases absent subject matter jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, —— U.S. ——, 137 S.Ct. 553, 560, 196 L.Ed.2d 493 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases."); *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute...."). Lack of subject matter jurisdiction cannot be waived or forfeited, and may be raised at any time by a party or by the court *sua*

---

[18] There are hundreds of trusts involved in these cases and many Moving Defendants' at-issue loans are securitized in multiple trusts. For ease of reference, Moving Defendants provide example agreements applicable to one of the trusts. http://www.lbhirmbssettlement.com/trusts.php.

*sponte.* "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press...." *Matkal LLC v. VG Rush Corp.,* 18-cv-2833, 2018 WL 1748601, at * 3 (E.D.N.Y. April 18, 2019) (quoting *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434(2011)). A case is to be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P., if the Court lacks the statutory or constitutional power to adjudicate it. *Makarvova v. U.S.*, 201 F. 3d 110, 113 (2d Cir. 2018).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003)(quoting *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003)).

On a motion to dismiss pursuant to Rule 12(b)(1), the court "must accept as true all material *factual* allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Cf. *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d cir. 2014) (in considering a Rule 12(b)(1) motion, the court "must take all *uncontroverted facts* in the complaint . . .as true") (*Tandon v. Captain's Cove Marina of Bridgeport, Inc*.,752 F.3d 239, 243 (2d Cir. 2014) (emphasis added) (emphasis added). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," *id.*, as well as matter of which judicial notice may be taken," *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp.3d 263, 273 (S.D.N.Y. 2018), but the court "may not relay on conclusory or hearsay statements contained in the affidavits." *J.S., 386 F. 3d at 110.* If, as here, "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside

the pleadings, such as affidavits." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). In that case, the party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter* v. *HealthPort Technologies, LLC,* 822 F.3d 47, 56-57 (2d Cir.2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3dat 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)(per curiam)). To make that determination, a court must accept as true the complaint's allegations "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter*, 822 F.3d at 57. "In opposition to such a motion, [a plaintiff] must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir] p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.' " *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need

to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57; *Matter of Trusts Established under the Pooling and Servicing Agreements relating to the Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates,* Series 2007-C#), 17 Civ. 1998, (S.D.N.Y. March 25, 2019, 2019 WL 1331393, at * * 2-3.  In *APWU*, the Second Circuit quoted *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) , stating that "when a defendant 'challeges[s] the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant .. .[but must i]nstead  go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.  343 F.3d at 627.  *See Huntress v. U.S.*, No. 18-CV-2974, 2019 WL 1434572, at *1 (S.D.N.Y. March 29, 2019).

While the Moving Defendants' position is that the RMBS Complaints are facially defective, since LBHI conspicuously fails to allege facts which meet is burden to show  that it was assigned the RMBS Indemnity Claims prior to the LBHI Petition Date, the Moving Defendants also make a factual challenge under Rule 12(b)(1), because the Assignment Agreements and other documents, which reflect what claims and rights LBHI could possibly have owned and when with respect to the loans sold to LBHI by the Moving Defendants, demonstrate that subject matter jurisdiction and standing are lacking.

**B.      The RMBS Indemnity Claims Were Not Property of the LBHI Bankruptcy Estate**

The RMBS Indemnification Claims must be dismissed here because the RMBS Complaints fail to plead facts sufficient to establish subject matter jurisdiction, and because the Assignment Agreements and other documents reflecting LBHI's acquisition of and/or transfer of the RMBS Indemnity Claims establish that the RMBS Indemnity Claims were not property of the LBHI bankruptcy estate.

In the RMBS Complaints, LBHI asserts that it is entitled to indemnification from the Moving Defendants for settlements LBHI entered into with the trustees of "hundreds of trusts", RMBS Complaints at ¶2 [Case No. 18-01825, Doc 1] (a copy is attached as Exhibit A to the affidavit of Lani A. Adler In Support of Certain Defendants' Motion to Dismiss the RMBS Complaints ("Adler Dec."). LBHI also claims the right to sue to enforce an obligation for contractual indemnification against the Moving Defendants contained in an Underlying Agreement to which each of the Moving Defendants, on the one hand, and non-party, non-debtor LBB, on the other hand, were parties, because LBHI is allegedly the "assignee" of LBB. RMBS Complaints at ¶¶12, 17, 18, 20, 22, 27, 28, 32, 45; Adler Dec. Ex. A.

However, the RMBS Complaints conspicuously fail to allege *when* LBB transferred to LBHI any rights or remedies it may have had against the Moving Defendants and *when*, if at all, LBB transferred to LBHI the representations and warranties allegedly made by the Moving Defendants to LBB.  In an apparently purposeful effort by LBHI to obscure the dispositive issue of when the assignments on which it bases its right to sue occurred, the RMBS Complaints only allege, with respect to when the assignments occurred, that "[i]n conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under

the Agreements pertaining to the loans." RMBS Complaints at ¶20, Adler Dec.. Ex. A.[19] Neither do the RMBS Complaints specify which Assignments transferred which rights to which particular loans.  LBHI's failure to allege when it was assigned the rights and remedies with respect to each loan is fatal to LBHI's affirmative burden to plead facts, not conclusions, sufficient to establish both subject matter jurisdiction and standing. The publicly filed (generally filed by LBHI) Assignments and securitization documents establish that LBHI did not own the RMBS Indemnity Claims on the LBHI Petition Date --  such that "related to" subject matter jurisdiction and standing are lacking, and the RMBS Complaints must be dismissed.

As evidenced in the 2010, 2012 and 2014 Assignment Agreements, Adler Dec. Ex. C, D, and E, LBB did not assign to LBHI either any indemnification remedy under Section 7 of the Sellers Guide with respect to the Selling Defendants' loans at issue or any rights to enforce the representations and warranties the Moving Defendants made to LBB, with respect to the loans at issue, until long after the LBHI Petition Date and/or until after the Plan was confirmed. Alternatively, as discussed in Point II, infra, LBHI was divested of any rights that LBB may possibly have assigned to LBHI when LBHI transferred its rights and remedies, pre-petition, to the RMBS Trusts.

As discussed in the Moving Defendants' papers in support of GSE Motion to Dismiss, and in the GSE Subject Matter Decision, the only basis for subject matter jurisdiction over the non-core, wholly state law "contractual indemnification" claims asserted against the Moving Defendants in the RMBS Complaints is "related to" jurisdiction. 28 U.S.C. § 1334(b). *See In re*

---

[19] LBHI made the identical allegation in the GSE Complaints, which allegation, according to the Court's GSE Subject Matter Decision, meant that LBB "subsequently" – i.e., at some point in time after LBB sold the loans to LBHI – "assigned to LBHI all of its rights and remedies under the Agreements [between LBB and the mortgage originator defendants] pertaining to the loans at issue." 2018 WL 3869606, at *1 & n. 3.

*Lehman Brothers Holdings Inc.*, Case No. 08-13555(SCC), Adv. Pro. No. 16-01019(SCC), 2018 WL 3869606, *4 (Bankr. S.D.N.Y. Aug. 13, 2018) (the "GSE Subject Matter Decision").

In the GSE Subject Matter Decision, the Court determined that the GSE Indemnification Claims were "related to" the bankruptcy proceeding, for purposes of finding subject matter jurisdiction, because the requirements of the "close nexus" test were met. *Id.* Under that test, which applies in post-confirmation proceedings, such as these, "a party must demonstrate that a 'close nexus' exists between the action and a confirmed plan or bankruptcy proceeding – rather than just a 'conceivable effect' – by demonstrating that (i) the 'matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement;' and (ii) the plan provides for the retention of jurisdiction over the matter." *Id.* (quoting *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005) (other internal citations omitted)) [20]

Relying on the decision in *Residential Funding Co., LLC v. Greenpoint Mortgage Funding Inc.,* 519 B.R. 593 (S.D.N.Y. 2014) ("ResCap"), in the GSE Subject Matter Decision, this Court determined that it has related to jurisdiction over the GSE Indemnification Claims because like the Plan in *ResCap*, the LBHI Plan provided for the retention of such claims and that funds recovered from the claims would be distributed to creditors of the estate.  2018 WL 3869606, at *7.  The Court went on to find that the GSE Indemnification Claims fell within the LBHI Plan's definition of "Litigation Claims" since "LBHI retained all Litigation Claims that

---

[20] In its GSE Subject Matter Jurisdiction, the Court Noted that whether the "close nexus" test, rather than the conceivable effect test, should be applied in assessing whether there is "related to" jurisdiction over a post-confirmation proceeding is an "open question" in the Second Circuit, 2018 WL 3869606, at *6, but found that the GSE Indemnification claims had a "close nexus" to the Plan.  The Moving Defendants reiterate that the "close nexus" test is that which must be applied to the question of whether there is related to jurisdiction over the RMBS Complaints.

the Debtors possessed prior to the Effective Date of the Plan," and that "Litigation Claims, as defined in the Plan included "any and all Causes of Action held by a Debtor." *Id.* In turn, "Causes of Action," were defined under the LBHI Plan to include unliquidated, contingent and unmatured claims. *Id.* The Court noted that "[t]he definition of a 'claim' under the Bankruptcy Code includes an 'unmatured' or 'contingent' right of payment. *See* 11 U.S.C. § 101(5)." *Id.* at *9. Accordingly, this Court determined that the close *nexus* test was met because "LBHI held such [contingent and unmatured contract indemnification claims] *at the time of the Debtors' bankruptcy filing before the claims were ripe for litigation, and the Plan preserved such claims and re-vested them in the Plan Administrator for liquidation once such claims matured and ultimately, distribution, if litigation of such claims was successful." Id.*

The Court's characterization of the GSE Indemnification Claims as prepetition claims held by LBHI was determinative of its decision that it had "related to" subject matter jurisdiction. *See id.* at *8 ("under the Plan, the Indemnification Claims are considered prepetition Litigation Claims of the Debtors which were preserved by the Plan and which can now be asserted by the Plan Administrator."); *Id.* at 10 ("here, the Indemnification Claims arose prepetition, were held by LBHI as contingent claims throughout the cases, and ripened into litigable claims by virtue of the entry of the GSE Settlement Orders.")

However, unlike the situation in *ResCap*, where the defendant mortgage originators from whom indemnification was sought sold their loans directly to the entity that became the debtor, in this case, the Moving Defendants sold their loans to *non-debtor* and non-party LBB. As to the loans that were sold to LBB by the Moving Defendants, LBB did not assign to LBHI, and LBHI did not acquire, either the contractual indemnification remedy or the Moving Defendants' selling representations and warranties until years after the LBHI Petition Date.

Therefore, the analysis and reasoning that led this Court to decide that it had "related to" subject matter jurisdiction over the GSE Indemnification Claims cannot be utilized to generate related to subject matter jurisdiction over the RMBS Indemnification Claims. With respect to the RMBS claims, the 2010, 2012 and 2014 Assignment Agreements show that LBHI did not have any contingent, unmatured or other claims with respect to the Moving Defendants' on or before the LBHI Petition Date. No assignment had been made by LBB to LBHI at that time with respect to the Moving Defendants' loans. The 2008 Assignment Agreement does not indicate which loans it pertained to; and since many Moving Defendants are listed on the attachment to the 2008 Assignment Agreement, as well as the attachments to the 2012 and 2014 Assignment Agreements, it is impossible to know – or for Plaintiff to meet its burden to show – which of the Moving Defendant's loans were covered, if at all, by which Assignments. In the alternative, as discussed in Point II below, LBHI contractually divested itself of any rights it may have once had pre-petition when it sold and securitized the loans to the RMBS Trusts prior to the LBHI Petition Date. For those Moving Defendants listed only on the 2012, 2013 and 2014 Assignment Agreements, no pre-petition assignment of any rights or remedies was made by LBB to LBHI.[21]

---

[21] Moving Defendants are not aware of any schedule listing mortgage brokers attached to the 2010 Assignment Agreement. When this 2010 Assignment Agreement was filed by LBHI as Exhibit D to a declaration filed by Scot Osborne, a Vice President of LBHI, on or about Feb. 24, 2016, and dated the same date, no schedule was attached to it. [Case No. 08-13555, Adv. Pro. No. 15-01426, Doc. 23-4]. This 2010 Assignment Agreement does not have any language indicating to which brokers and which loans it applies. See Adler Dec. Ex. B. Additional evidence that LBB did not assign to LBHI, pre-petition, any rights with respect to any loans brokered by any of the Moving Defendants who are alleged in the RMBS Complaints to have brokered loans to LBB, such as Suburban Mortgage, Inc., is found in a document entitled "Assignment Agreement, dated September 2009, attached in Exhibit 99.1 to an 8-K Report filed by LBHI in November 2010, and available on EDGAR. Adler Dec. Ex. C. That Assignment Agreement specifies that LBB, the Assignor, "Hereby assigns, transfers and conveys to the Assignee [LBHI] all of its rights and remedies in and to [the Broker Agreements and other agreements between LBB and the brokers concerning the brokered loans], including rights in and to an or all promises representations, warranties or covenants made to Assignor in the Agreements to the extent related to the Mortgage Loans, along with any or all of the Assignor's remedies available under other parties to the Agreements for their breach of any promise, representation, warranty or covenant under the Agreements to the extent they related to the Mortgage Loans." Adler Dec. Ex. C, at para. 1(a). Necessarily, this demonstrates that no rights or remedies or representations or warranties concerning any

The 2012 and 2014 Assignment Agreements each states on its face that in it, the assignor, Aurora Bank, FSB (formerly known as LBB), is assigning "all of its rights, title, obligations and other interests under the Loan Purchase Agreements with respect to the Transferred Mortgage Loans *that have not previously been assigned to the Assignee . . . "*: Adler Dec. para. 1. While the absence of any specificity as to what was being assigned under these agreements precludes their effectiveness, *see Cortlandt St. Recovery Corp v. Deutsche Bank AG, London Branch*, No. 12 Civ. 9351, 2013 WL 3762882 (S.D.N.Y. July 18, 2013), independent of that, the Assignment Agreements make clear on their face that nothing was assigned with respect to the loans of those Moving Defendants which are not listed on the schedule attached to any earlier assignment.

Additionally, and in the alternative, as set out more specifically below, with respect to Defendants listed in the schedule attached to the 2008 Agreement, either (a) once LBHI transferred to the RMBS Trustees and/or to SASCO, whatever rights and remedies it may have held, if any, when it sold the loans to the RMBS Trustees before the LBHI Petition Date, LBHI was divested of them; or (b) LBB no longer had any rights or remedies, or representations or warranties to assign on September 2, 2008, because it had already transferred them to LBHI when LBB sold the loans to LBHI between 2004 and 2007. Under either scenario, as discussed in greater detail below, the 2008 Assignment Agreement was invalid and/or ineffective, because the parties to it had already disposed of the rights one purported to assign and the other to accept. Accordingly, no finding that LBHI has pre-petition rights, remedies or representations and warranties sufficient to predicate subject matter jurisdiction or standing can be based on the 2008 Assignment Agreement.

---

of the loans brokered by any of the Moving Defendants to LBB had been assigned or otherwise transferred by LBB to LBHI before, at the earliest, September 2009.

Further, it is a matter of public record that the LBB sold the loans to LBHI "without recourse[22]" by LBB to LBHI.

The 2008, 2010, 2012, and 2014 Assignment Agreements[23] establish that LBB attempted to assign certain rights to representations and warranties, and remedies to LBHI separately, and at a point in time that occurred after LBB allegedly sold the loans at issue to LBHI in 2004-2007 and after LBHI filed its bankruptcy petition. According to the allegations of the RMBS Complaints, LBHI sold the loans it purchased from LBB to the RMBS Trustees pre-petition between 2003-2007. Necessarily, then, neither LBB nor LBHI was a holder of the mortgage loan or note[24] as of the dates of any of the Assignments[25] -- 2008, 2010, 2012, and 2014, notwithstanding that these two Assignment Agreements state unequivocally – and inaccurately -- that LBHI "is the sole party with any beneficial interest under the Loan Purchase Agreements with respect to the Transferred Mortgage Loans;" 2008 Assignment Agreement para. 7; 2014 Assignment Agreement at Para. 4(a), Adler Dec., Ex. B and K. For the RMBS Trustees to have asserted proofs of claim against LBHI, based upon their pre-petition acquisition of the mortgage loans sold and brokered by the Moving Defendants to LBB, those Trustees must have acquired beneficial and ownership interests under the Loan Purchase Agreements with respect to those loans from LBHI.

---

[22] *Security National Mortg. Co. v. Aurora Bank FSB*, No. 2:11-CV-00434 DN, 2014 WL 7366063 at *4 (D. Utah Dec. 24, 2014)(Not only was LBB full compensated for the sale of the loans to LBHI, but all of the loans were purchased by LBHI "without recourse" so that LBHI did not acquire remedies against LBB when it purchased the loans.

[25] The RMBS Complaints rely on and reference the Trust Agreements, the Seller's Guide and the assignment by LBB to LBHI of all of LBB's "rights and remedies under the Agreements pertaining to the loans." RMBS Compl. Para. 20. Accordingly, the Court properly should consider them on this motion.

Since LBHI did not own the rights, representations and warranties, and "contractual indemnification" remedy it seeks to enforce against the Moving Defendants on the LBHI Petition Date, LBHI did not have any pre-petition claim against these Moving Defendants, and the RMBS Indemnification Claims cannot be "Litigation Claims" as defined under the Plan. Accordingly, there is no "close nexus" between the Plan and the RMBS Indemnity Claims and the RMBS Complaints against them must be dismissed for lack of subject matter jurisdiction."

### C. LBHI is not a Third Party Beneficiary Because This Status is Only Afforded When the Applicable Agreement Rights are Assigned

The RMBS Complaints also baldly allege that under Section 711 of the Seller's Guide, "LBHI, as a subsequent holder of any mortgage loan, "shall be a third party beneficiary of the LPAs." RMBS Complaints at ¶21. However, such an allegation is ineffective to cause LBHI to become an intended third party beneficiary, with standing to enforce the agreement entered into by each of the Moving Defendants with LBB. Under New York law, only an intended third party beneficiary may enforce a contract. *Rajamin v. Deutsche Bank Nat'l Trust Co*., 757 F.3d 79, 85 (2d Cir. 2014). While LBHI pleads in the RMBS Complaints that it is the "third party beneficiary of the LPAs and Broker Agreements, Section 7 of the Seller's Guide, provides clearly that a party to which LBB assigns the mortgage originator's representations and warranties, and/or the remedies available against the mortgage originator, *only* becomes an "intended third party beneficiary of these representations, warranties, covenants and remedies," once the assignment has occurred. Seller's Guide, Sections 701, 713.3. Adler Dec., Ex. G. Stated another way, until it actually and effectively received a valid assignment of such remedies and rights, LBHI could not possibly have had intended third party beneficiary status with respect to the loans sold by the Moving Defendants.

Accordingly, under the Seller's Guide, LBHI did not become a third party beneficiary of the representations and warranties allegedly made by the Moving Defendants to LBB, or of the indemnification remedy assigned by LBB to LBHI, if it ever did, until at least the date of the earliest assignment agreement which effectively transferred the rights to the particular loan at issue. Section 711 of the Sellers Guide states that one must be a noteholder in order to be a "third party beneficiary," rather than an "intended third party beneficiary," the phrase used in Sections 701 and 713.3 of the Sellers Guide – which two sections explicitly address assignment of remedies and of representations and warranties. Only Sections 701 and 713.3 address the separate assignment by LBB of the "representations, warranties or covenants" made the mortgage originators to LBB and assignment by LBB of the "remedies available" against the mortgage originators. *See* Adler Dec. Ex. G. Nor is there any allegation in the RMBS Complaints that LBHI ever held the notes.        Moreover, New York law precludes third party beneficiary status where another may likewise recover. *See Solutia Inc. v. FMB Corp.*, 385 F. Supp. 324, 338 (S.D.N.Y. 2005); *United Internat'l Holdings, Inc. v. The Wharf (Holdings) LTD.*, 988 F. Supp.2d 367, 373 (S.D.N.Y. 1997) ("if another besides the third party may recover, beneficiary status is negated."). Since here, others in addition to LBHI, such as the Depositor (SASC) or the RMBS Trustees, are alleged to have become noteholders, LBHI is at best an incidental third party beneficiary, not an intended third party beneficiary – without rights to enforce the agreements between the Moving Defendants and LBB. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.* 66 N.Y.2d 38, 43- 44, 495 N.Y.S.2d 1, 4-5, 485 N.E.2d 408 (N.Y. 1985). Accordingly, LBHI does not have standing to enforce the RMBS Indemnification Claims against the Moving Defendants, and cannot predicate subject matter jurisdiction on the fact that LBHI may once have owned the mortgage or the note.

## II.    LBHI lacks standing to bring the RMBS Indemnity Claims

### A.    Lacks Standing Because it Transferred and Assigned all Rights, Title and Interest to the Claims Brought Against it By RMBS Trustees Effectively Divesting Itself of Standing to Bring this RMBS Indemnity Claims

In the alternative, even if it were assumed for purposes of argument, that LBHI could produce a valid written assignment that vests rights in it at some point in time, LBHI was contractually divested of all rights to bring the RMBS Indemnity pursuant to three more agreements. Specifically, pursuant to the Assignment and Assumption Agreements, Mortgage Loan Sale and Servicing Agreement and Trust Agreements ("Securitization Agreements")(See Henderson Declaration, Exhibits 1-3, incorporated by reference herein) that caused the loans to be pooled and securitized *prior*[26] to the filing of the Bankruptcy Petition in September 2008, the specific provision in each Securitization Agreement conveyed all "right title and interest" away from LBB, such that there was nothing to assign to LBHI in 2008, 2010, 2012, 2013 or 2014.. Unlike the settlements in the GSE cases, the settlement between LBHI and the RMBS Trustees did not provide for the  the RMBS trustees to assign any remedies or rights back to LBHI. As the minimum requirement for an injury-in-fact is that the plaintiff must have legal title to, or a proprietary interest in, the claim, this divestiture causes LBHI to fail to meet that constitutional standing requirement.

A legally effective assignment of the rights to a claim <u>deprives </u>the assignor of standing to bring any such claim.  *See*, e.g., *Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC,* 651 F. App'x 5, 7 (2d Cir. 2016) (summary order) ("[The assignor's] assignment of its rights

---

[26] *In re Lehman Bros. Holdings Inc.,* No. 08-13555, 2018 WL 3869606, at *1 (Bankr. S.D.N.Y. Aug. 13, 2018); "In the same moment that the parties closed on the MLPAs, SASC acquired an interest in the Trust's assets, placed the assets in the Trusts, and transferred the Trusts to the Trustee (U.S. Bank)." *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, at 120.

extinguished its claims against [the assignee] and deprived it of any interest in this litigation. [The assignor] therefore lacks standing."); *Nat'l Fin. Co. v. Uh*, 720 N.Y.S.2d 17, 18 (1st Dep't 2001) (holding that claim had "passed to its assignee" and assignor was "no longer the real party in interest"); cf. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). An unequivocal and complete assignment extinguishes an assignor's rights against an obligor to the respective contract and leaves the assignor without standing to sue the obligor. *Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co*., No. 16-CV-3643 (VSB), 2018 WL 4684112, at *5 (S.D.N.Y. Sept. 28, 2018), appeal withdrawn, No. 18-3244, 2018 WL 7140572 (2d Cir. Nov. 28, 2018).

The key to the analysis is in the pertinent contractual language in each of the referenced Securitization Agreements. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc*., 106 F.3d 11, 18 (2d Cir. 1997). Every trust at issue in this case was created pursuant to these Securitization Agreements to which LBHI was a party. Chronologically, LBB was first divested of the rights to assign to LBHI when it, pursuant to an Assignment and Assumption Agreement ("AAA") conveyed all "rights title and interest" in the loans *and* Underlying Agreements to LBHI. LBHI was then divested of the assigned rights in a subsequent Mortgage Loan Sale and Servicing Agreement ("MSLAA") as it conveyed ownership rights to Structured Asset Securities Corporation ("SASC") who simultaneously, conveyed all the rights and property into the corpus of a Trust via a Trust Agreement.

First, pursuant to an example 2005 AAA[27] (See Exhibit 1 to Henderson Dec.) to which LBB, as the Assignor, and LBHI, as the Assignee were parties, the rights conveyed by LBB to LBHI in Section 1 consisted of the following:

> (a) The Assignor (LBB) hereby assigns to the Assignee (LBHI) all of **its right, title and interest in and to the Mortgage Loans and the Sale/Servicing Agreements[28]**, to the extent relating to the Mortgage Loans[29] (**other than the rights of the Assignor to indemnification thereunder),** and the Assignee hereby assumes all of the Assignor's obligations under the Sale/Servicing Agreements, to the extent relating to the Mortgage Loans, from and after the date hereof. The Assignee hereby accepts such assignment, and shall be entitled to exercise all such rights of the Assignor under the Sale/Servicing Agreements, as if the Assignee had been a party to each such agreement.

> 6(a) Upon discovery or notice of any breach by a seller of any representation, warranty or covenant under a Sale/Servicing Agreement, the Assignee's sole recourse shall be to enforce such seller's[30] obligations under the related Sale/Servicing Agreement.

Under this 2005 AAA, as expressly set forth in the WHEREAS clauses, the flow of the securitization transactions from LBB, to LBHI as assignee, to SASC as Depositor, and then to a trustee, in this case LaSalle National Bank Association. In this AAA the conveyance was expressed as a transfer of the "right, title and interest" in the loans together with the "right, title

---

[27] Assignment and Assumption Agreement dated September 1, 2005 between LBB and LBHI www.sec.gov/Archives/edgar/data1340642/000116231805000870/exhibit991.htm. Every MSLAA and Trust Agreement reference an Assignment and Assumption Agreement ("AAA") with a particular date. Defendants could not locate an AAA that matches a particular dated AAA referenced in the MSLAA and Trust Agreement. Further, according to the SEC website, the AAA are in an Exhibit which states "to be retained in a separate closing binder entitled "LXS 2007-3 Mortgage Loan Schedules" at the Washington, DC offices of McKee Nelson LLP." Defendants are this firm and believe this firm has dissolved.

[28] Defined per the AAA to mean the Underlying Agreements between LBB and the Moving Defendants.

[29] Loans acquired pursuant to the Underlying Agreements.

[30] Original mortgage originators and brokers.

and interest" in each Sale/Servicing Agreement[31]. Further, in Section 18 of the AAA, exists a negating clause[32] that expressly states that AAA benefits *no other party*.

> 18. Benefits of Assignment
>
> Nothing in this Assignment Agreement, express or implied, shall give to any Person, other than the parties to this assignment agreement, and their successors, any benefit or any legal or equitable right, power, remedy or claim under this Assignment Agreement.

This is an effective and complete assignment of the loans and the rights under the Agreements at issue in this case from LBB to LBHI.

Next in the chain of the RMBS securitization transactions, pursuant to an example MSLAA[33] (See Exhibit B attached to Henderson Dec.) between LBHI as the "Seller" and SASC as the "Purchaser" which references an AAA, the applicable clause relating to a conveyance states in pertinent part:

> WHEREAS, pursuant to either (i) an assignment and assumption agreement (the "AAA"), dated as of February 1, 2006[34], between the Bank, as assignor, and the Seller, as assignee, the Bank has assigned **all of its right, title and interest in and to the foregoing Bank Transfer Agreements[35] and related Mortgage Loans….**

---

[31] This 2005 AAA expressly referenced in the WHEREAS clauses that LBB was a party to certain mortgage loan purchase agreements (the Underlying Agreements), flow agreements and other agreements collectively called "Sale/Servicing Agreements."

[32] Deliberate choices by "sophisticated, counseled parties dealing at arm's length" in a "multimillion dollar transaction" must be given effect. *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 574–75, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986). This is particularly true when the controlling agreement contains an integration clause specifying that the written document is the "entire agreement" between the parties on the subject. (*See* Henderson Dec.) The "negating clause" is a "decisive" bar to such enforcement, particularly where, as here, the contract also contains a prohibition on assignment. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,* 778 F. Supp. 2d 375, 410–11 (S.D.N.Y. 2011).

[33] Mortgage Loan Sale and Assignment Agreement between LBHI ("Seller") and SASC ("Purchaser" and "Depositor") dated 9.1.2007 Lehman XS Trust Series 2007-17H.

[34] For purposes of argument, Moving Defendants are using a September 2, 2005 AAA because they are unable to locate any other dated AAA.

[35] Defined as certain agreements to include the Underlying Agreements and the previous AAA.

Seller desires to sell, **without recourse, all of its rights title and interest** in and to the Mortgage Loans to the Depositor, assign all rights and interest under each Transfer and Servicing Agreement….

The MSLAA likewise acknowledges the concurrently executed Trust Agreement:

WHEREAS the Seller and Depositor acknowledge and agree that the Depositor will convey the Mortgage Loans to a Trust Fund created pursuant to the Trust Agreement…

Section 1.01 Sale of Mortgage Loans

Concurrently with the execution and delivery of this Agreement, the Seller does hereby transfer, assign…and otherwise convey to the Depositor, without recourse…**all right title and interest of the seller in and to the Mortgage Loans**…[36]

Concurrently…The Seller and Depositor further agree that this Agreement *incorporates the terms and condition of any AAA….*

Section 1.05 Grant Clause

It is intended that the conveyance of Sellers right, title and interest in and to the mortgage Loans and other property conveyed pursuant to this Agreement on closing date shall be construed as a sale of the property and not grant of security interest….

Section 1.06 Assignment of Depositor

Concurrently with execution of this agreement, the Depositor shall assign its interest under this agreement with respect to the Mortgage Loans to the trustee and the Trustee shall succeed to all rights of Depositor under this Agreement…..

Notably pursuant to this MSLAA, the trust is the intended third party beneficiary…

Section 2.08 Benefits of Agreement

The parties to this Agreement agree that it is appropriate, in furtherance of the intent of such parties set forth herein, that the Trustee enjoys the full benefit of the provisions of this Agreement each as an intended third party beneficiary…

Finally, pursuant to a Trust Agreement[37], (See Exhibit C attached to Henderson Dec.) the next in

the chain of securitization and entered into by SASC as Depositor, and U.S. Bank National

---

[36] Conveyance includes right to all payments, rights in the Transfer and Servicing Agreements to the extent related to the mortgage loans, and security interest in collateral and other irrelevant items. It *further* incorporates by reference the terms and conditions of *any* Assignment and Assumption Agreement.

Association as Trustee, simultaneously with the MSLAA,[38] in section 2.01, SASC conveyed **"all right title and interest"** in a) the Mortgage loans b) right to all payments, any REO property or proceeds, c) rights under insurance policies, d) Depositor's security interest in the collateral, and d) concurrently **all rights and interest** under the Mortgage Loan Sale and Servicing Agreement. The language in each of these three Securitization Agreements unequivocally evince that LBHI was, at the time of the execution of the MSLAA and Trust Agreements, or in this particular case February 2006, divested of any rights to the claims relating to the mortgage loans and Underlying Agreements.

Under New York law, if a party to a contract made an unequivocal and complete assignment, it would no longer have the right to sue under the contract. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (explaining that under New York law "[a]n unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor"). To determine whether the assignment is complete and unequivocal, we look to the terms of the agreement, construing the agreement "in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002). Absent any ambiguity in the text of the agreement, "[e]vidence outside the four corners of the document as to what was really intended" is inadmissible. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."

---

[37] LXS 2006-3.

[38] Dated February 2, 2006 between SASC as Depositor, Aurora Loan Services LLC ("ALS") as Master Servicer, and U.S. Bank National Association as Trustee for LXS 2006-3.

*Greenfield,* 750 N.Y.S.2d 565, 780 N.E.2d at 170 as cited in *Triaxx Prime CDO 2006-1, Ltd. v. Ocwen Loan Servicing*, LLC, No. 18-10687, 2019 WL 623880, at *4 (11th Cir. Feb. 13, 2019)

A "Grant" of "all of its right, title and interest" in "any and all ... property" is broad enough to include the transfer of the right to bring contract claims relating to any "instruments [and] securities…" *See Banque Arabe et Internaitonale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 151 (2d Cir. 1995) (because the assignment "clearly transferred [the assignor's] rights and interests" in the agreement, it transferred "any claims grounded in contract" relating to that agreement) as cited in *Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon*, No. 16 CIV. 1597 (NRB), 2017 WL 1103033, at *3 (S.D.N.Y. Mar. 21, 2017); *Multibank 2009-1 RES-ADC Venture, LLC v. Pinecrest at Newskowin, LLC*, No. 3:11-CV-853-BR, 2013 WL 1702224 (D. Or. Apr. 16, 2013)(An assignment at law contemplates "a completed transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned.").

*Nat'l Credit Union Admin. Bd. v. U.S. Bank, Nat'l Ass'n,* No. 14-cv-9928 (KBF), 2016 WL 796850, at *8 (S.D.N.Y. Feb. 25, 2016) is instructive. In this case, like here, based on residential backed mortgage securities, the NCUA, the conservator for the credit unions, or entities that bought the certifications from the Trust, filed a complaint against a Trustee. The claim was based on similar transfers of securities to the Trust and stemmed from alleged breaches and failures by the Trustees on the underlying agreements. *Id* at *6. The initial conveyance language of the mortgage loans in section 2.01 was similar to the language at issue here and included the rights to the Mortgage Loan Sales Agreements. *Id* at *7. According to the NCUA Court which reviewed the very similar, if not identical to the relevant at issue language outlined herein, the adequacy of the facts in the pleadings, considered documents and contracts

attached and incorporated into to the motion to dismiss, found that the conveyance in the underlying agreements was broad in scope and effect such that the Sellers conveyed *in toto* all interest they ever had to the underlying breach claims. *Id* at *8. On that basis, the NCUA court found that both direct and derivative claims were foreclosed because the rights they may have had were relinquished. *Id* at *8.

Accordingly, to the extent that LBHI contends that it acquired the indemnification remedy and the representations and warranties at the time it purchased the loans, originated by the Moving Defendants, from LBB, then LBHI likewise transferred the remedies, rights, representations and warranties when it purported to transfer all of its right, title and interest in the loans to the RMBS Trusts. The consequence is that LBHI was divested, by contract, of all of its rights to the RMBS Indemnity Claims *pre-petition* due to that transfer to the RMBS Trusts, as shown in the Securitization Agreements. Under New York law, if the assignment effectuated a *full conveyance* of the right or title conveyed, then the assignee, or the Trustees here, becomes the real party in interest. The definition of "real party in interest" is set forth as follows:

> If, as between the assignor and assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest. In other words, the plaintiff must have some title, legal or equitable, to the thing assigned.

*Kearney v. Cavalry Portfolio Servs.*, LLC, No. 12-CV-00860 DLI RML, 2014 WL 3778746, at *6 (E.D.N.Y. July 31, 2014); *See Cardtronics, LP v. St. Nicholas Beverage Discount Center, Inc.,* 8 A.D.3d 419, 420, 778 N.Y.S.2d 299 (2d Dep't 2004) ("Where, as here, the valid assignment of a claim is absolute on its face and the assignor is divested of all control and right to the cause of action, the assignee is the proper party in interest and has the right to commence and prosecute an action in its own name without joining the assignor as a necessary party"). *Id.* at *7 (E.D.N.Y. July 31, 2014). Once LBHI transferred all of its right, title and interest to the

RMBS Trusts, which it did pre-petition, LBHI no longer had the rights to sue the Moving Defendants based on their alleged breaches of the Underlying Agreements.

Based on the provisions in the Securitization Agreements, the RMBS Indemnity claims are contractually barred. In *Phoenix Light SF Ltd. v. U.S. Bank National Ass'n*, No. 14-cv-10116 (KBF), 2015 WL 2359358 (S.D.N.Y. May 18, 2015), the judge held that granting away "all ... right, title and interest" in the underlying assets", "contractually barred" a CDO issuer's claim because "[a]ssignment of 'all ... **right, title and interest' constitutes a full assignment of the right to commence litigation . . . . ."(emphasis Added)**; *See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 152 (2d Cir.1995) (Under New York law, a contract granting all "rights, title and interest" to another results in a "transfer" of claims). The *Phoenix* Court, which is applicable here, held that an assignment of this type divests plaintiffs of any rights they otherwise may have had to commence litigation on their own behalf." *Id*. at *2. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir.1984) ("An unequivocal and complete assignment extinguishes the assignor's rights ... and leaves the assignor without standing to sue." (citation omitted)). Likewise, in *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-519 (RJS), 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014), Judge Sullivan held that granting away "all ... right, title and interest" in two contracts contractually barred a CDO issuer's claim relating to those contracts because "[a] party that has assigned away its rights under a contract lacks standing to sue for breach of that contract." *Id*. at *15-16.

The same reasoning applies here where, pursuant to the various conveyances expressed in the Securitization Agreements, documents which were executed and performed pre-petition, LBHI relinquished whatever rights or claims it may have had, and is therefore contractually

barred from being able to pursue the RMBS Indemnity Claims against Moving Defendants, because LBHI conveyed all rights related to the at-issue mortgages and held nothing back. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, supra,* at *8. More particularly, based on the foregoing Securitization Agreement language from 2005 and 2007, LBHI conveyed all of its rights related to the mortgage loans, to the Depositor, or SASC, then to the respective trusts and therefore lacks the requisite constitutional standing to bring these claims.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the RMBS Complaints asserted against the Moving Defendants must be dismissed for lack of subject matter jurisdiction and standing.

Dated: New York, New York
     May 13, 2019

**LANI ADLER PARTNERS LLC**

By:    */s/ Lani A. Adler*
       Lani A. Adler
       ladler@laniadlerpartners.com

275 West 96th Street, Suite 15G
New York, New York 10025
Telephone: (646) 732-3260

**Attorneys for Defendant Suburban Mortgage, Inc.**

**AMERICAN MORTGAGE LAW GROUP**

By:    */s/ Tracy L. Henderson, Esq.*
       Tracy L. Henderson, Esq.
       *Pro Hac Vice*
       thenderson@americanmlg.com

775 Baywood Drive, Suite 100
Petaluma, California 94954
Telephone: (707) 456-4043

**Attorneys for Certain Defendants**

**SHAPIRO BIEGING BARBER OTTESON LLP**

By:    */s/ John C. Leininger*
       John C Leininger
       Texas Bar No. 24007544
       jcl@sbbolaw.com

1540 Lyndon B. Johnson Freeway
Suite 1540
Dallas, Texas 75240
Telephone: (214) 377-0146

**Attorneys for Seattle Bank f/k/a Seattle Savings Bank; and Gateway Mortgage Group, LLC**